

**CORPORATION SERVICE COMPANY**

# Notice of Service of Process

CXT / ALL
**Transmittal Number: 4008118**
**Date Processed: 05/23/2005**

Primary Contact:  Jim Akers
Marriott International Inc.
1 Marriott Drive
Dept. 52-923
Washington, DC 20058

**RECEIVED**

MAY 2 6 2005

Marriott Int'l. Law
Keith N. Jones

Copy of transmittal only sent to:   Doris Spinks
Mr. Keith Jones

| | |
|---|---|
| **Entity:** | Marriott International, Inc.
Entity ID Number 1722823 |
| **Entity Served:** | Marriott International, Inc. |
| **Title of Action:** | Britt A. Shaw vs. Marriott International, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Contract |
| **Court:** | Superior Court , District Of Columbia |
| **Case Number:** | 05-0003679 |
| **Jurisdiction Served:** | District Of Columbia |
| **Date Served on CSC:** | 05/20/2005 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney :** | Paul D. Cullen, Sr.
202-944-8600 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC.**
2711 Centerville Road  Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

05  1138

# FILED

JUN – 8 2005

NANCY MAYER WHITTINGTON, CLEF
·· DISTRICT COURT

CA Form 1

## Superior Court of the District of Columbia

CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

*Brett A. Shaw*
*14 Sloane Avenue*
*London, Sw3 3JF United* Plaintiff
vs. *on behalf of himself Kingdom*
*and others similarly situated*

05-0003679

*MARRIOTT INTERNATIONAL, INC.*
*Marriott Drive* Defendant
*Washington, DC 20058*

Civil Action No. _____

*SERVE: Registered Agent*
*Prentice Hall Corporation System, Inc.*
*1090 Vermont Avenue, NW*
*Washington, DC 20005*

**SUMMONS**

To the above named Defendant:

        You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

        You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Paul D. Cullen, Sr,*
*Randal C Cohere*
*Susan Van Bell*
*The Cullen Law Firm*
Name of Plaintiff's Attorney

*1101 30th Street, NW*
Address
*Suite 300*
*Washington, DC 20007*
*(202) 944-8600*
Telephone

*Clerk of the Court*

By _____
                                    Deputy Clerk

Date _____

**PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170**

**YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170**

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/Mar 83



**Superior Court of the District of Columbia**
**Civil Division**

Shaw, B. vs. Marriott International, Inc                           C.A. No. 05ca003679

### INITIAL ORDER

Pursuant to D.C. Code §11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case is assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued by the judge to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to any defendant who has failed to so respond, a default and judgement will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients prior to the Conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference once, with the consent of all parties, to either of the two succeeding Fridays. Requests must be made not less than six business days before the scheduling conference date. No other continuance of the Conference will be granted except upon motion for good cause shown.

May 13,2005                        Chief Judge Rufus G. King, III

Case Assigned to:   Calendar #6  (Judge Geoffrey Alprin)

Initial conference: @ 9:00am  08/19/05      Courtroom: 320 Main Bldg., 3rd Floor
                                                              500 Indiana Ave., N.W.
                                                              Washington, D.C. 20001

## IN THE SUPERIOR COURT OF THE
## DISTRICT OF COLUMBIA

BRITT A. SHAW )
12 Sloane Avenue )
London, SW3 3JF, United Kingdom )
on behalf of himself and all others )
similarly situated, )

05-0003679

Plaintiff,

RECEIVED
Civil Clerk's Office

MAY 1 3 2005

Superior Court of the
District of Columbia
Washington, D.C.

v. )

MARRIOTT INTERNATIONAL )
Marriott Drive, Washington, DC 20058 )

Defendant. )

Case No.
Class Action
Demand for Jury Trial

*Serve: Registered Agent*
*Prentice-Hall Corporation System, Inc.*
*1090 Vermont Ave, NW*
*Washington, DC 20006*

## CLASS ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff, Britt A. Shaw brings this action under Rule 23 of the District of Columbia Rules

of Civil Procedure, seeking legal and equitable relief on behalf of himself and all others similarly

situated against Defendant Marriott International, Inc. ("Marriott"), and alleges as follows:

### NATURE OF THE ACTION

1.     This case involves Marriott's violations of the District of Columbia Consumer

Protection Procedures Act and unjust enrichment received by Marriott as a result of Marriott's

misrepresentations and omissions to its hotel guests – Plaintiff and Class members herein –

regarding pricing practices at Marriott's Moscow, Russia hotel properties. Guests at Marriott's

Moscow hotel properties are charged 18 percent more than the amount quoted and confirmed to

those guests by Marriott when they make their reservations. Marriott profits from deceptive

1

trade practices perpetrated by it upon its guests.

2.    Marriott is a worldwide provider of hospitality services headquartered in Washington, DC.

3.    Defendant Marriott is a leading member of the worldwide hospitality industry with over 2,600 lodging properties in the United States and in 65 other countries and territories. The foundation for Marriott's success has been its strong consumer franchise with the traveling public. Marriott has promoted its historic roots in the District of Columbia and the fact that it continues to maintain its headquarters in the District of Columbia as an important part of its brand image and franchise with the traveling public. Patrons of Marriott hotels have grown to trust and rely upon the Marriott name. This is especially so with overseas travelers who rely on the Marriott name and the sense of trust and security that that name represents when traveling to distant, unfamiliar places.

4.    Plaintiff alleges that Marriott has breached the bonds of trust with the traveling public by representing to those who book accommodations for its Moscow, Russia hotel properties that they will be charged sums published in U.S. dollars by Marriott from its world-wide headquarters when in fact final bills are rendered in Russian Rubles in amounts having no relationship to the sums previously quoted by Marriott. Marriott's false and misleading representations and failures to disclose material facts to consumers creates the impression that transactions with hotel guests involve an actual currency exchange when in fact no U.S. dollars are ever tendered by hotel guests for exchange into Russian Rubles by Marriott or its accomplices in Moscow. Final bills for rooms, food, other hotel services and local taxes are always rendered by the hotel and paid by the guest in Russian Rubles in amounts that are

2

generally 18 percent higher than the dollar equivalent at the official exchange rate set by the Central Bank of Russia. The hidden upcharge from the rates established by Marriott at its headquarters is not apparent until the guest gets home and receives a statement in dollars from his/her credit card company. That statement reflects the actual dollar equivalent at the official exchange rate of Marriott's upcharged hotel bill in Russian Rubles.

5.    This trade practice, which results in several thousand consumers being billed millions of dollars each year, is based upon misrepresentations of material facts, failures to disclose material facts tending to mislead, and the offering of goods or services without the intent to sell them as offered, perpetrated by Marriott from its corporate headquarters in violation of the District of Columbia Consumer Protection Procedures Act ("CCPA"), D.C. Code §28-3901 *et seq.*

6.    Further, Plaintiff and members of the class he seeks to represent have conferred benefits upon Marriott by paying for hotel accommodations and related goods and services in amounts in Russian Rubles substantially greater than the equivalent amount in U.S. dollars quoted by Marriott and agreed to by the hotel guests when they booked their reservations through Marriott's worldwide reservation system.

7.    Marriott has perpetrated, administered and/or has had knowledge of this trade practice and has accepted and retained those benefits thereby becoming unjustly enriched. Marriott is accountable under the laws of the District of Columbia for these deceptive acts and trade practices and for the sums by which Marriott has become unjustly enriched.

8.    Because of the long standing, widely circulated and unambiguous promotion of its historic roots and continued presence in the District of Columbia, the District of Columbia has an

3

important interest in holding Marriott accountable under the District of Columbia Code for deceptive acts and trade practices perpetrated as a matter of corporate policy.

## JURISDICTION AND VENUE

9.   This Court has personal jurisdiction over Defendant pursuant to D.C. Code § 13-422, D.C. Code § 13-423 and/or D.C. Code § 13-334.

10.   This Court has subject matter jurisdiction pursuant to D.C. Code § 28-3905 (k)(1).

11.   Marriott is a Delaware corporation headquartered in the District of Columbia. Marriott is authorized to conduct and regularly does conduct business in the District of Columbia.

## PARTIES TO THE ACTION

12.   Plaintiff Britt A. Shaw is an American citizen whose last U.S. residence was in New York. Mr. Shaw currently resides in London, England. Mr. Shaw brings this action as representative of the proposed class defined herein. Mr. Shaw suffered damages resulting from Marriott's misrepresentations and omissions, as set forth below, within the three years preceding the filing of this Complaint.

13.   Marriott International, Inc. is incorporated in the State of Delaware and is headquartered in the District of Columbia. Marriott is authorized to, and regularly does conduct business within the District of Columbia. The causes of action alleged herein arise out of Marriott's policies and trade practices originating in the District of Columbia. Marriott is accountable to Plaintiffs and the class they seek to represent under the laws of the District of Columbia.

4

## FACTUAL ALLEGATIONS

## MARRIOTT INTERNATIONAL

14.     Marriott International, Inc. is a leading worldwide hospitality company.
Marriott's worldwide hospitality system includes more than 2600 lodging properties located in
the United States and 65 other countries and territories including four affiliated hotels in
Moscow, Russia, named the Marriott Tverskaya, Marriott Grande, Marriott Royal Aurora, and
Renaissance Moscow. Marriott also operates the Renaissance Baltic hotel in St. Petersburg and
the Renaissance Samara in Samara.

15.     Marriott has engaged in a longstanding, widely circulated and unambiguous
promotion of its historic roots in the District of Columbia. Marriott's ties to the Nation's Capitol
form an important part of its brand identification and consumer franchise.

16.     Marriott's heritage is described in corporate documents released to the public by
the Defendant and by members of the Marriott family, who are among its largest shareholders.
Defendant Marriott traces its origin to a root beer stand opened in Washington, D.C. in 1927 by
J. Willard and Alice S. Marriott. That root beer stand was the forerunner of a successor
corporation, Hot Shoppes, Inc., incorporated in 1929 in the District of Columbia.

17.     Marriott attributes its reputation for superior customer service to a long tradition
started by J. Willard Marriott, with his goal that Hot Shoppes provide "Good Food and Good
Service at a Fair Price." Marriott takes pride in "the Marriott philosophy," which it traces to
values instilled by J. Willard Marriott. Marriott also prides itself as a corporation that stands out
for community service and civic responsibility, as part of the legacy of Alice S. Marriott.

5

18.     The Marriott legacy has been continued by J.W. Marriott, Jr., who became CEO of the corporation in 1972.

19.     Marriott represents that there is a "Marriott Way," which is about serving its associates, customers and the community.

20.     Marriott represents that "the perpetuation of a company's culture has a proven positive financial impact." Marriott's origins in and its continuing ties to the District of Columbia form an integral part of Marriott's corporate culture and persona.

21.     On the "Corporate Information," section of Marriott's website, the corporation's "Contact Information" is listed as "Corporate Headquarters, Marriott International, One Marriott Drive, Washington, D.C. 20058."

22.     The "Careers" section of Marriott's website states, "The company is headquartered in Washington, D.C." and provides the address: Marriott International, Marriott Drive, Washington, D.C. 20058.

23.     The "Investor Relations" section of Marriott's website also states that Marriott is headquartered in Washington, D.C.

24.     The "Our Brands" section of Marriott's website contains a "Marriott International Factoid," which states, "Did you know Marriott International: Is headquartered in Washington DC."

25.     Marriott's Annual Reports to shareholders for 2000, 2001, 2002, 2003 and 2004, which are all available on Marriott's website, state the Corporate Headquarters address is "Marriott International, Inc., Marriott Drive, Washington, D.C. 20058."

26.    Marriott International, Inc.'s Form 8-K Report, submitted to the United States Securities and Exchange Commission ("SEC") on February 8, 2005, shows the Corporate Headquarters address as Marriott Drive, Washington, D.C. 20058.

27.    Marriott's General Counsel is identified in Martindale Hubbell as being located at One Marriott Way, Washington, DC 20058.

28.    Marriott has received numerous awards and accolades, which it touts in its press releases. Marriott has issued numerous press releases in 2005 including the following:

> *- Marriott Brands Receive Top Honors in Consumer Surveys* (2/7/05)
>
> *- Marriott is the Most Admired Company in the Lodging Industry for 6th Straight Year, According to Fortune* (2/25/05)
>
> *- Business Ethics Selects Marriott as Only Hotel Company for its '100 Best Corporate Citizens' List* (4/13/05)

29.    The final paragraph of each of Marriott's press releases contains an information summary about the company. The February 25, 2005 and April 13, 2005 releases noted above state as follows:

> MARRIOTT INTERNATIONAL, INC. (NYSE:MAR) is a leading lodging company with more than 2,600 lodging properties in the United States and 65 other countries and territories. **** *The company is headquartered in Washington, D.C.*, and has approximately 133,000 employees. It is ranked as the lodging industry's most admired company and one of the best places to work by Fortune magazine. In fiscal year 2004, Marriott International reported sales from continuing operations of $10 billion. For more information or reservations, please visit our web site at www.marriott.com

(Emphasis added).

30.    Thus, Marriott represents to the press, the general public, the traveling public seeking to book worldwide reservations on its website, its investors, potential employees,

numbers of the legal community and the SEC that its corporate headquarters are located in Washington, D.C.

31.    Marriott's numerous representations that its corporate headquarters are located in Washington, DC provides a continuity to the history and tradition of the company, beginning with the root beer stand founded by J. Willard Marriott in Washington, D.C., the "Mighty Mo's" served at its Hot Shoppes throughout the District of Columbia and its suburbs, and the corporate philosophy and reputation embodied by the Marriott name. Defendant Marriott's roots and continued association with Washington, DC represent an integral part of its brand identification and consumer franchise.

## MARRIOTT PROFITS FROM THE SUCCESS OF ITS AFFILIATED HOTEL PROPERTIES

32.    Marriott International has represented to the Securities and Exchange Commission that it has "complete control over inventory and pricing" (10K Annual Report to SEC for 2004 at p.10). Marriott's profits are tied in to hotel revenues under the terms of its management agreements and its franchise agreements. (2004 Annual Report, p. 11). Marriott's management agreements typically provide that Marriott earns a management fee, comprised of a base fee, which is a percentage of the revenues of the hotel, and an incentive management fee, which is based on the profits of the hotel. (Form 10-K SEC Report, Fiscal year ended 12/29/00, p. 3)

33.    Marriott's franchising programs permit the use of certain brand names and lodging systems by other hotel owners and operators. Under those programs, Marriott receives, in part, an initial application fee and continuing royalty fees, which typically range from four

8

percent to six percent of room revenues for all brands. (Form 10-K SEC Report, Fiscal year ended 12/29/00, p. 3)

34.    Thus, whether Marriott owns, operates, manages or franchises its lodging properties in Russia, Marriott includes these hotel properties as part of its worldwide hospitality system and its profits increase as hotel revenues and profits from these properties increase.

## TRANSACTIONS FORMING BASIS OF PLAINTIFF'S CLAIMS

35.    Marriott's Form 10-K Annual Report to the SEC, for the fiscal year ended December 31, 2004, discloses that Marriott operates 18 system-wide hotel reservation centers that handle worldwide reservations for all Marriott lodging brands. These system-wide hotel reservation centers allow Marriott to exercise complete control over its inventory and pricing. Patrons are encouraged to make reservations through Marriott's website although reservations made over the telephone are subject to the same terms and conditions as disclosed on the website.

36.    The section of Marriott's website used to advertise its hotel offerings and make reservations for its world-wide hotel properties contains several material misrepresentations or omissions which have a tendency to mislead within the meaning of the CPPA.

a)    Prices for hotel accommodations in Russia are quoted in U.S. Dollars notwithstanding the fact that such bills are always paid in Russian Rubles and never in U.S. Dollars.

b)    Potential guests are presented with a currency calculator that translates specific amounts of U.S. Dollars into Russian Rubles at the official exchange rate set by the Central Bank of Russia. The inclusion of this currency calculation tends to mislead potential patrons into assuming: (1) that their dealings with Marriott and its Moscow hotel properties will involve foreign exchange transactions when, in fact, no such transactions are involved; and (2) that the U.S. dollar denominated hotel rates quoted

9

on the same website will be converted into Russian Rubles at the official exchange rate when, in fact, that is not the case.

c)    Marriott occasionally represents that all charges are payable in local currency subject to the "hotel exchange rate" notwithstanding the fact that its Moscow hotels do not provide currency exchange services. U.S. Dollars are never surrendered to acquire Russian Rubles as would be the case in a true currency exchange transaction. Guests are required to settle their hotel bills in Russian Rubles and no currency exchange between the guest and the hotel takes place.

d)    Marriott fails to disclose in its reservation system that the final bill for room, food, other hotel services and taxes will be raised by 18 percent under the guise of a "hotel exchange rate." When Marriott's hotel managers in Moscow convert a guest's hotel bill from dollars to Russian Rubles they first substitute dollars with the same number of units of a pseudo currency called "currency unit" and simply multiply the currency unit amount by a bogus number that results in an amount in Russian Rubles that is 18 percent higher than the ruble equivalent of the guest's hotel bill in dollars when calculated at the official exchange rate.

e)    Marriott offers a "Look No Further Best Rate Guarantee" to potential guests notwithstanding the fact that the rates quoted in U.S. Dollars have no relationship to the final room rate in Russian Rubles following Marriott's undisclosed upcharge. In fact, Marriott has no intention of selling its Moscow hotel rooms or services at rates advertised or offered by it.

37.    The transactions at issue arose out of reservations made by Plaintiff Shaw and

Class members to stay at Marriott owned, operated, managed or franchised hotels in Moscow,

Russia. It is not clear to Plaintiffs how widespread beyond Moscow and Russia the practices

complained of herein may be. The geographic scope of the practices alleged herein must await

discovery during the course of this litigation.

38.    When Plaintiff Class members made their reservations, Marriott provided a

confirmed room rate per night quoted in U.S. dollars and a currency calculator that converted

U.S. dollars into Russian Rubles at the official exchange rate.

39.    At the time of check-out from a Moscow hotel, Plaintiffs were provided with a hotel bill showing an amount identified as "UNT" that was numerically identical to the U.S. Dollar value of its hotel charges. The bill also shows an amount in Russian Rubles that is generally 18 percent higher than the U.S. Dollar / UNT value converted into Russian Rubles at the official exchange rate.

40.    The hotel bill appears to show that the consumer is paying the same amount as the confirmed room rate in U.S. dollars provided by Marriott when the reservation was made. However, the amount shown in Russian Rubles and charged to the guest's credit card is generally 18 percent higher than the number of Russian Rubles due at the official exchange rate.

41.    When the consumer receives his or her credit card bill for the hotel charges, the actual amount charged in U.S. dollars is approximately 18 percent more than the rate quoted by Marriott on its website in U.S. dollars. That is because the credit card company converts the amount of the hotel bill shown in Russian Rubles back into U.S. Dollars at the official exchange rate.

42.    Contrary to the misleading impression created on Marriott's website, the transaction between the hotel guest and Marriott in Moscow does not involve an exchange in currency. The guest is required to pay in Russian Rubles or to charge the amount in Russian Rubles to his credit card. The only foreign exchange transaction that takes place is between the guest and his credit card company which must bill the guest a sufficient amount in dollars to acquire enough Russian Rubles at the official exchange rate to pay the hotel.

43.    A stay at the Renaissance Moscow Hotel (a Marriott Hotel) by Plaintiff Britt A. Shaw on April 19, 2005, provides a representative example of the transactions at issue.

11

44.    Mr. Shaw made his reservation on the Marriott website on April 14, 2005.

45.    Mr. Shaw received a confirmation of his reservation with a quoted room rate of $425.00 U.S. dollars per night. The confirmation specifically stated the rate was quoted in U.S. dollars.

46.    Mr. Shaw used the currency calculator on the Marriott website in order to determine what he would be charged in Russian Rubles, and the calculator indicated a rate of 27.78 Russian Rubles per one U.S. Dollar.

47.    The hotel bill provided Mr. Shaw at checkout shows a rate for the room of 425.00, along with other hotel expenses, for a total of "658.70 UNT."

48.    The term "UNT" is not defined on the bill.

49.    The bill shows a "Local Currency Balance" of 21078.40 RUR (Russian Rubles).

50.    The bill states "Exchange Rate 1 UNIT = 32.00 RUR.

51.    Mr. Shaw was charged a total of 21078.40 RUR, which equals 32 Russian Rubles per "Unit" of 658.70.

52.    Mr. Shaw paid the hotel bill using his American Express card.

53.    When Mr. Shaw received his American Express statement, he was charged $775.69 U.S. dollars for his stay in Moscow.

54.    Mr. Shaw paid $116.99 more in U.S. dollars than he had been quoted by Marriott because, when American Express charged Mr. Shaw in dollars for the amount it was required to pay the hotel in Russian Rubles, American Express used the official exchange rate of just over 27 Russian Rubles per dollar.

55.    Consequently, Mr. Shaw paid approximately 18 percent more for the hotel stay than the quoted and confirmed rate provided by Marriott.

56.    Marriott made more profit from Mr. Shaw's stay in Moscow than it would have made if he had paid the quoted rate.

57.    The trade practices used by Marriott to reap increased profit from Mr. Shaw were repeated thousands of times in transactions involving Plaintiff Class members resulting in substantial unjust profits to Marriott.

58.    On information and belief, Marriott's unlawful trade practices are not restricted to its Moscow properties, but are also perpetrated on guests at other hotel properties, including but not limited to the other properties in Russia.  Plaintiffs will seek discovery to confirm the extent to which these practices may be ongoing with respect to other Marriott properties.

59.    Marriott's conduct has been in willful disregard for the rights of the Plaintiffs. Marriott has persisted in these unlawful trade practices and should be held accountable by the imposition of punitive damages as provided for in the CPPA.

## CLASS ACTION ALLEGATIONS

60.    This action is brought as a class action pursuant to District of Columbia Rule of Civil Procedure 23 and is properly maintainable as a class action as set forth below.

61.    **Class Description.**  Plaintiff brings this action on behalf of himself and all other similarly situated who have been harmed as a result of the actions of Marriott , which constitute violations of the Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq.*, during the time period between May 2002 and the present ("the Class").

13

62. **Impracticability of Joinder.** This action is properly brought as a class action. The Class is composed of thousands of geographically dispersed persons, the joinder of whom in one action is impracticable. The disposition of Plaintiff's and Class members' claims in a class action will provide substantial benefits to both parties and the Court. The Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged since the rights of each class member were infringed or violated in a similar fashion based upon Defendant's uniform conduct. Notice can be provided through records of Marriott or by publication, the cost of which is properly imposed upon Marriott. The Class consists of thousands of persons and thus, joinder of all potential class members would be impracticable.

63. **Commonality.** Marriott has acted in ways that affect all members of the proposed class similarly. Questions of fact and law are common to each member of the Class. The questions of law or fact predominate over questions that may affect particular Class members, including the following:

a) whether Marriott engaged in a common course of conduct that would tend to mislead Plaintiff, Class members, or the public concerning the transactions at issue herein;

b) whether Marriott's trade practices with respect to the transactions at issue herein violated the District of Columbia Consumer Protection Procedures Act;

c) whether Marriott was unjustly enriched by its trade practices with respect to the transactions at issue herein;

d) whether Plaintiff and Class members are entitled to statutory, compensatory and punitive damages and injunctive relief.

64. **Typicality.** Plaintiff's claims are typical of the claims of the proposed Class as a whole because each Class member was wronged by the same offending conduct. Therefore, proof of Plaintiff's claims will similarly prove the claims of absent members of the Class.

14

65.     **Fair and Adequate Representation.**  Plaintiff is capable of fairly and

adequately protecting the interests of the Class because his claims are common to the Class and

proof of those claims will prove the claims of absent Class members.  Plaintiff's interests are in

harmony with the interests of other members of the Class and are not adverse.  Plaintiff's

counsel, The Cullen Law Firm PLLC, has been appointed class counsel in numerous class action

lawsuits filed around the country, and is fully capable of adequately representing the Class.

66.     **Class Certification Appropriate To Avoid Inconsistent Standards of**

**Conduct.**  Inconsistent or varying adjudications concerning individual Class members would

establish incompatible standards of conduct for the Defendant.

67.     **Class Certification Appropriate Under D.C. Rule Civ. P.23(b)(2)**.

Defendant has acted on grounds generally applicable to all Class members.  Thus,

injunctive and declaratory relief is appropriate with respect to the potential Class as a whole,

making class certification appropriate under District of Columbia Rule of Civil Procedure

23(b)(2).

68.     **Class Certification Appropriate Under D.C. Rule Civ. P. 23(b)(3)**.

The questions of law enumerated in the counts below are not only common to all members of the

Class, but also predominate over individualized issues of law or fact, which are essentially

limited to the precise amount of damages owed to each class member.  Other factors favoring the

certification of this suit as a class action include:

> a)      given the size of individual Class members' claims and the expense of
> litigating those claims, few, if any, Class members could or would afford
> to seek legal redress individually for the wrongs Defendant committed
> against them, and absent Class members have no substantial interest in
> individually controlling the prosecution of individual actions;

15

b)      this action will promote an orderly and expeditious administration and adjudication of the Class members' claims, economies of time and effort and resources will be fostered, and uniformity of decisions will be ensured;

c)      no substantial difficulties are likely to be encountered in managing this class action.

## COUNT I
## UNLAWFUL TRADE PRACTICES

69.    Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 68 as though fully restated herein.

70.    The District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, prohibits unlawful trade practices. The prohibited trade practices include, in part, the misrepresentation of a material fact which has a tendency to mislead, failure to state a material fact if such failure tends to mislead, and offering of goods or services without the intent to sell them as offered (D.C. Code § 28-3904 (e), (f), (h)).

71.    Defendant has misled consumers by misrepresenting a material fact, that the amount that the consumer would pay for the Moscow hotel room would be that quoted by Marriott in U.S. dollars when the reservation was confirmed.

72.    Defendant has misled consumers by failing to inform consumers of a material fact, that the actual rate to be charged would be stated in Russian Rubles in an amount unrelated to any official exchange rate or to the amount in dollars quoted to the consumer by Marriott.

73.    Defendant has misled consumers by falsely representing that charges incurred by them would be the subject of a foreign exchange transaction when in fact Plaintiff and Class members were never required to tender U.S. Dollars in exchange for Russian Rubles.

16

74.    Defendant has misled consumers by presenting them with a currency converter on its website that converts U.S. Dollars into Russian Rubles at the official exchange rate, thus tending to make them believe that their hotel charges in Russian Rubles would be determined on the basis of the official exchange rate.

75.    Defendant has offered goods or services without the intent to sell them as offered because Marriott quotes a price in U.S. dollars to the consumer at the time the reservation is made that Marriott knows is not the amount in dollars that the consumer will actually end up paying.

76.    These material misrepresentations and omissions tend to mislead reasonable consumers into believing that the quoted and confirmed room rate, set in U.S. dollars by Marriott's reservation service, is the amount that the consumer would actually be charged and pay when staying in the Moscow hotels, when in fact the actual charges to the consumer for the room and other hotel services are substantially higher.

77.    Defendant's practices violate the CPPA. Marriott's persistent conduct in these unlawful trade practices and willful disregard for the rights of the Plaintiffs warrants an award of punitive damages as permitted under the CPPA.

78.    As a direct and proximate result of the Defendant's violations of the CPPA, named Plaintiff and Class members have suffered losses, and are entitled to the statutory damages provided in D.C. Code § 28-3905.

## COUNT II
## UNJUST ENRICHMENT

79.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 78 as though fully restated herein.

80.     The named Plaintiff and the Class have conferred a benefit upon the Defendant by paying for their Moscow hotel rooms and other hotel charges in an amount greater in Russian Rubles than the amount quoted and confirmed by Marriott in U.S. dollars.

81.     Defendant had knowledge of this practice.

82.     Defendant has accepted and retained the benefits from this practice.

83.     Defendant has retained the benefits of this practice under inequitable circumstances because the Defendant has made material misrepresentations and omissions. The true method of computing payment is not disclosed and the information provided by Defendant with respect to the room charges is misleading and inaccurate. The real method used to compute the hotel charges is hidden, misleading, and not a genuine cost incurred by Marriott arising out of currency exchange rates.

84.     As a result of Defendant's unjust enrichment, named Plaintiff and the Class are entitled to a constructive trust upon, or restitution of, all of the excess monies paid, and all benefits received by Defendant in relation to those excess charges, i.e. interest.

18

### PRAYERS FOR RELIEF

WHEREFORE, Plaintiff Britt A. Shaw, individually and for all others similarly situated, respectfully requests that this Court:

1.      Certify a class comprised of persons who have been improperly charged excess amounts for rooms and other hotel charges at the hotels owned, operated, managed or franchised by Marriott during the time period between May 2002 and the present;

2.      Enter an order enjoining Defendant from failing to adequately disclose its practices and continuing to engage, use, or employ its unlawful trade practices.

3.      Enter a judgment in favor of the Plaintiff Class on all counts of the complaint;

4.      Order an accounting of all sums received by Marriott in connection with the excessive room rates and other hotel amenities charged to all Class members;

5.      Enter an award of damages to Class members in an amount equal to treble damages or $1,500 per violation whichever is greater pursuant to D.C. Code § 28-3905, plus punitive damages;

6.      Enter an order awarding a constructive trust upon and/or restitution of the monies wrongfully acquired by Defendant through its trade practice of charging amounts in excess of what was promised for room and other services at its hotels, plus a reasonable rate of interest, so as to restore all moneys wrongfully acquired by Defendant to the affected persons;

7.      Create a common fund made up of all damages awarded to class members;

8.      Award class counsel reasonable attorneys' fees pursuant to D.C. Code § 28-3905;

9.      Award class counsel a reasonable attorney's fee out of the common fund;

19

10.     Award interest as prescribed by law;

11.     Award costs of this suit; and

12.     Award such other relief as this Court may deem to be just and proper.

Respectfully submitted,

Paul D. Cullen, Sr., D.C. Bar No. 100230

Of Counsel:

Mark W. Borghesani, Esq
D.C. Bar No. 426734
19 Sivtsez Vrazhek Per., kv. 10
Moscow 119003 Russia
+7-916-640-0290 (Telephone)

Daniel E. Cohen, D.C. Bar No. 414985

Susan Van Bell, D.C. Bar No. 439972

THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
(202) 944-8600 (Telephone)
(202) 944-8611 (Telecopier)
Attorneys for Plaintiffs

20