## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

               Plaintiffs,

    v.

MARRIOTT INTERNATIONAL, INC.
10400 Fernwood Road
Bethesda, Maryland 20817

               Defendant.

Civil Action No. 05-1138 (GK)

## MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Defendant Marriott International, Inc., by its attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6) and the doctrine of *forum non conveniens*, moves to dismiss the plaintiffs' First Amended Class Action Complaint and Demand for Jury Trial. The bases for this motion are set forth more fully in the accompanying Memorandum of Points and Authorities in Support of Motion to Dismiss the First Amended Class Action Complaint.

Respectfully submitted,

Dated: July 21, 2005

_/s/  Benjamin S. Boyd_____
Benjamin S. Boyd (Bar No. 413698)

DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, N.W.
7th Floor
Washington, D.C. 20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085


_/s/  Jeffrey E. Gordon_____
John C. Dougherty (admission pending)
Jeffrey E. Gordon (MD23264)
Sonia Cho (MD26995)

DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone (410) 580-3000
Facsimile (410) 580-3001

*Attorneys for Defendant*
*Marriott International, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

                Plaintiff,

    v.

MARRIOTT INTERNATIONAL, INC.,
10400 Fernwood Road
Bethesda, Maryland 20817

                Defendant.

Civil Action No. 05-1138 (GK)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT

Dated: July 21, 2005

Benjamin S. Boyd (Bar No. 413698)

DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, N.W.
7th Floor
Washington, D.C. 20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085

John C. Dougherty (admission pending)
Jeffrey E. Gordon (MD23264)
Sonia Cho (MD26995)

DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
Telephone (410) 580-3000
Facsimile (410) 580-3001

*Attorneys for Defendant*
*Marriott International, Inc.*

# TABLE OF CONTENTS

I.      INTRODUCTION...................................................................................................... 1

II.     BACKGROUND FACTS AND ALLEGATIONS............................................... 2

III.    ARGUMENT ............................................................................................................ 4

    A.  Plaintiffs' Claims  Lack A Sufficient Nexus To The District Of
        Columbia's Consumer Protection Procedures Act And Should
        Therefore Be Dismissed. ........................................................................... 4

    1.  The CPPA And Its Legislative History Show That It Is Not
        Intended To Have Broad Extraterritorial Reach. ...................................... 6

    2.  Relevant Case Law Negates Plaintiffs' Broad Extraterritorial
        Interpretation of the CPPA. ...................................................................... 7

    3.  Policy Considerations Militate Against the Extraterritorial
        Interpretation of the CPPA that Plaintiffs Urge........................................ 9

    B.  The Voluntary Payment Doctrine Bars Plaintiffs' Unjust Enrichment
        Claim.......................................................................................................... 10

    C.  This Case Should Be Dismissed for Forum Non Conveniens............................... 12

    1.  Russia Provides an Adequate Alternative Forum for this Lawsuit. ....................... 13

    2.  Analysis of Private and Public Interest Factors Weighs
        against the Court's Exercise of Jurisdiction over This Lawsuit. ........................... 15

        a.  The Private Interest Factors Strongly Favor Litigation in Russia.............. 15

            i.   Relative Ease of Access to Sources of Proof................................ 15

            ii.  Location of Witnesses and Documentary Evidence...................... 16

            iii. Convenience of the Parties. .......................................................... 17

        b.  The Public Interest Factors Favor Litigation in Russia. ............................ 17

i.    There is No Local Public Interest in the Dispute, And This Class Action Lawsuit Imposes An Unnecessary Burden on the Community. ...................................... 18

ii.    Russia's Interest In Adjudicating This Case Far Outweighs Any Interest Of The District of Columbia. ...................................................................................... 19

iii.    Local Law Does Not Apply To This Case, And The Court Should Avoid Conflict Of Laws Issues And Interpretation Of Foreign Law. ....................................................... 19

IV.    CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

### CASES

Alexis v. District of Columbia, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999) ................................... 4

Atkinson v. Atkinson, 82 F.2d 847, 848 (D.C. Cir. 1936) .............................................................. 6

Avianca, Inc. v. Corriea, 1992 U.S. Dist. LEXIS 4709, at *20 (D.D.C.
    Apr. 13, 1992) ........................................................................................................................ 10

* BPA International, Inc. v. Kingdom of Sweden, 281 F. Supp.2d 73
    (D.D.C. 2003) ...................................................................................................... 13, 14, 15, 17

Chairman of the Board of Trustees v. Waldron, 401 A.2d 172 (Md. 1979) .................................. 6

Chris Albritton Const. Co. v. Pitney Bowes, Inc., 304 F.3d 527 (5th Cir.
    2002) ...................................................................................................................................... 11

Ely Lilly & Co. v. Home Ins. Co., 764 F.2d 876 (D.C. Cir. 1985) ............................................... 19

Freund v. Avis Rent-A-Car System, Inc., 114 Ill.2d 73, 499 N.E.2d 473
    (1986) ................................................................................................................................ 10, 11

Goshen v. Mutual Life Ins. Co. of New York, 730 N.Y.S.2d 46 (N.Y.
    App. Div. 2001), aff'd, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (N.Y.
    2002) ..................................................................................................................................... 6, 9

* Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 67 S.Ct. 839 (1947) ................................. passim

Illinois Glass Co. v. Chicago Telephone Co., 234 Ill. 535 (1908) ............................................... 10

Jackson v. American Univ., 52 Fed. Appx. 518, 2002 WL 31818236, at *1
    (D.C.C. Dec. 13, 2002) .......................................................................................................... 13

 * Jackson v. Culinary School of Washington, 788 F.Supp. 1233 (D.D.C.),
    rev'd, 27 F.3d 573 (D.C. Cir. 1994), vacated on other grounds, 515 U.S.
    1139 (1995) ......................................................................................................................... 6, 8, 9

Kowal v. MCI Communications, 16 F.3d 1271, 1276 (D.C. Cir. 1994) ......................................... 4

Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) .................................................................... 14

* Nelson v. Nationwide Mortgage Corp., 659 F.Supp. 611 (D.D.C. 1987) ............................... 7, 9

Pain v. United Technologies Corp., 637 F.2d 775 (D.C. Cir. 1980) ........................................... 17

Piper Aircraft Co. v. Reynolds, 454 U.S. 235, 102 S. Ct. 252 (1981) ......................... 13, 14, 15, 17

Saleh v. Titan Corp., 361 F. Supp.2d 1152 (S.D. Cal. 2005) ......................................................... 14

Sierra Club v. Flowers, 276 F. Supp.2d 62 (D.D.C. 2003) ............................................................ 14

Williams v. Central Money Co., 974 F. Supp. 22 (D.D.C. 1997), aff'd, 176
    F.3d 497 (D.D.Cir. 1999) ...................................................................................................... 7, 8

### FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(6) ................................................................................... 1, 4

### STATE STATUTES

D.C. Code § 28-3901, *et seq.* ........................................................................................................ 2

### TREATISES

73 Am. Jur. 2d Statutes § 250 (2001) .......................................................................................... 6

Defendant Marriott International, Inc. ("Marriott") submits this memorandum in support of its motion to dismiss the plaintiffs' First Amended Class Action Complaint and Demand for Jury Trial ("Amended Complaint"). The Court should dismiss the Amended Complaint because: (1) the Amended Complaint fails to state a claim upon which relief may be granted; and (2) the doctrine of *forum non conveniens* requires that this lawsuit, which seeks recovery of alleged "upcharges" by Marriott for stays in properties it franchises or manages in Moscow, Russia, be dismissed in favor of an adequate alternative forum in Russia pursuant to the analysis set forth in the United States Supreme Court's decision in <u>Gulf Oil Corporation v. Gilbert</u>, 330 U.S. 501 (1947).

## I.    INTRODUCTION

Plaintiffs' Amended Complaint embodies an artful attempt to manufacture connections between the Plaintiffs' alleged claims and the District of Columbia's Consumer Protection Procedures Act ("CPPA"). Plaintiffs, however, cannot overcome the stark reality that their claims link them to Moscow, Russia and not to the District of Columbia (the "District"). All of the fundamental factual allegations in the Amended Complaint point to Russia:

- Plaintiffs' claims are predicated on alleged "upcharges" for their stays in hotels in Moscow, Russia;
- Plaintiff Irina Paliashvili is described as a "permanent resident" of the District, but it seems apparent that she is a Russian citizen; and
- The other two named plaintiffs, Britt Shaw and Neal Charness, are not residents of the District and have no connection to the District other than through this lawsuit.

As discussed below, the CPPA has never been, and cannot fairly be, interpreted to reach claims based on factual allegations so remotely connected to the District. Indeed, Plaintiffs'

1

claims are linked so closely to Russia and so tenuously to the District that the entire lawsuit

should be dismissed under the doctrine of *forum non conveniens.*

## II.    BACKGROUND FACTS AND ALLEGATIONS

On May 13, 2005, the original complaint in this putative class action was filed against

Marriott in the Superior Court for the District of Columbia by the sole named Plaintiff, Britt A.

Shaw ("Shaw").  According to the original complaint, Shaw is an American citizen who lives in

London, U.K.  Based on the jurisdictional and class allegations contained in the original

complaint, Marriott removed the case to this Court on June 8, 2005.  On July 1, 2005, before the

time for Defendant's first responsive pleading expired, Plaintiffs filed their Amended Complaint,

adding two new named plaintiffs, Irina Paliashvili ("Paliashvili") and Neal M. Charness

("Charness").  According to the Amended Complaint, Paliashvili is a "permanent resident" of the

District of Columbia (Amended Complaint ("Am. Compl.") ¶ 13),[1] and Charness is a resident of

Michigan.  (Id. ¶ 14.)  All three named plaintiffs seek to be representatives of the proposed class

(id. ¶¶ 12-14), which is defined in paragraph 63 as those "who have been harmed as a result of

the actions of Marriott, which constitute violations of the Consumer Protection Procedures Act,

D.C. Code § 28-3901 *et seq*., during the time period between May 2002 and the present ('the

Class')."  (Id. ¶ 63.)

---

[1]  It seems apparent from the description of Paliashvili as a "permanent resident" (Am. Compl. ¶ 13), and from her law firm's website biography, that she is a citizen of Russia.  (See print-outs from the Russian-Ukrainian Legal Group, P.A.'s website, www.rulg.com, attached as Exhibit A.)  Moreover, it appears that she has no residential address in the District.  The address provided for her on the Amended Complaint is the address of the Russian-Ukrainian Legal Group, P.A., for which she is the President and Senior Counsel.  (Id.; see Am. Compl. at 1.)

The Amended Complaint is based on purported "undisclosed upcharges" Marriott billed to plaintiffs for stays in Marriott hotels in Moscow, Russia. (See Am. Compl. ¶ 38(e).) Plaintiffs allege that they each made Internet reservations to stay at one or more Marriott hotels in Moscow on one or more occasions between May 2002 and May 2005. (Id. ¶¶ 46, 59.) Plaintiffs allege that at the time of the reservations, the room rates per night were quoted in U.S. dollars (id. ¶¶ 47, 59), but that upon check-out from the hotels in Russia, they were presented with hotel bills showing an amount identified as "UNT" (id. ¶¶ 49, 59), and that the "bill also showed an amount in Russian Rubles that is generally 18 percent higher than the U.S. Dollar/UNT value converted into Russian Rubles at the official exchange rate." (Id. ¶ 41.) Plaintiffs allege that, while the exact total amounts they were being charged in Russian Rubles were disclosed on their hotel bills at the time of check-out (id. ¶¶ 51-53), the hotel bills' disclosures were misleading because the Internet rates quoted in U.S. dollars at the time of their reservations gave them the impression that they would ultimately pay the exact amounts quoted in U.S. dollars. (Id. ¶¶ 73-78.) Plaintiffs allege that, because Moscow Marriott hotels use hotel exchange rates other than the official exchange rate as set by the Central Bank of Russia to calculate the final amount that a guest will pay for his or her hotel stay, the guests are misled with regard to the amount they actually pay at check-out and are charged more than they were quoted for each hotel room. (See id. ¶¶ 41-43, 76, 78.) Further, Plaintiffs allege that these practices "originat[ed]" as a matter of corporate policy from Marriott's "headquarters." (See ¶¶ 5, 8, 15.) The Amended Complaint contains two counts: Count I, Unlawful Trade Practices under the CPPA, and Count II, Unjust Enrichment. (See id. ¶¶ 71-86.)

Defendant Marriott is a publicly traded company incorporated under the laws of Delaware. (Declaration of Jeff B. Stant ("Stant Decl.") ¶ 3.) Its headquarters and principal place

of business are located at 10400 Fernwood Road, Bethesda, Maryland  20817  (Id. ¶ 4.)  Marriott

maintains a mailing address in the District of Columbia for business purposes, which is Marriott

Drive, Washington, D.C.  20058.  (Id. ¶ 5.)  Any mail sent to that address, however, is actually

delivered to Marriott's headquarters in Maryland.  (Id.)

## III.    ARGUMENT

**A.    Plaintiffs' Claims Lack A Sufficient Nexus To The District Of Columbia's Consumer Protection Procedures Act And Should Therefore Be Dismissed.**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must

accept as true all of the plaintiff's well-pleaded factual allegations.  Alexis v. District of

Columbia, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999).  The court, however, need not accept

inferences unsupported by the facts alleged in the complaint, Kowal v. MCI Communications, 16

F.3d 1271, 1276 (D.C. Cir. 1994), and need not accept the plaintiff's legal conclusions as true.

Alexis, 44 F. Supp.2d at 337.  In accordance with these standards, Marriott's Rule 12(b)(6)

motion should be granted.

Plaintiffs ask the Court to give not just extraterritorial but global application to the CPPA.

No other state's consumer protection act has been accorded so expansive a territorial reach.  The

CPPA should not be the first.  To the contrary, the CPPA's language, its legislative history, the

case law interpreting it, sound policy, and common sense all speak against Plaintiffs'

extraordinary request.

Plaintiffs' Amended Complaint is based on their stay in hotel rooms in Moscow, Russia.

Judging from the Plaintiffs' allegations, their tactic for attempting to bring these Moscow-based

transactions within the CPPA involves two steps.  First, the Plaintiffs focus on their alleged use

of Marriott's Internet website to make reservations for the Moscow hotels.  Second, they attempt

to link this Internet aspect of the overall transaction to the District.  This tactic, however, must fail in light of the host of factors, discussed below, that weigh against application of the CPPA to the Plaintiffs' claims.

Before addressing these factors, it will aid analysis to review the contacts that, according to the Plaintiffs' allegations, their claims had or did not have with the District.  Plaintiffs' alleged contacts with the District are the following:

- Plaintiffs allege that Marriott's headquarters are in the District and that Marriott "perpetrated" its alleged deceptive trade practices from these headquarters.  (Am. Compl. ¶¶ 3, 5, 11, 15.)

- Plaintiffs allege that Marriott has publicly promoted its historic roots in the District.  (Id. ¶¶ 3, 8.)

- Plaintiffs allege that plaintiff Irina Paliashvili is a "permanent resident" of the District.  (Id. ¶ 13.)

On the other side of the ledger:

- Plaintiffs do *not* allege that Plaintiffs Shaw and Charness are District residents. To the contrary, Mr. Shaw's last American residence was New York, and he presently lives in London, England.  (Id. ¶ 12.)  Mr. Charness is a resident of Michigan.  (Id. ¶ 14.)

- Plaintiffs do *not* allege that Marriott's website, through which the Plaintiffs allegedly made reservations for the Moscow hotel rooms, is hosted in the District or that any of the Plaintiffs accessed the website while in the District.  (See id. ¶¶ 45-59.)

- Plaintiffs do *not* allege that their transaction with Marriott regarding payment for the Moscow hotel rooms took place in the District or involved any contacts with Marriott in the District.  (See id. ¶¶ 55-56.)

- Plaintiffs *do* allege that each stayed at Marriott properties in Russia, (id. ¶¶ 45, 59), and were charged a rate 18 percent higher than the amount in Russian rubles due at the official exchange rate by these Russian hotels.  (Id. ¶¶ 55, 56, 59.)

With these contacts, or lack of contacts, as background, the following factors demonstrate the inapplicability of the CPPA to the Plaintiffs' claims.

1.   **The CPPA And Its Legislative History Show That It Is Not Intended To Have Broad Extraterritorial Reach.**

It is a settled rule of statutory interpretation that, unless expressly stated otherwise, legislation is presumed to be intended not to operate outside the territorial jurisdiction of the state enacting it.  See Atkinson v. Atkinson, 82 F.2d 847, 848 (D.C. Cir. 1936);  Chairman of the Board of Trustees v. Waldron, 401 A.2d 172, 177 (Md. 1979);  Goshen v. Mutual Life Ins. Co. of New York, 730 N.Y.S.2d 46, 47 (N.Y. App. Div. 2001), aff'd, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (N.Y. 2002); see also 73 Am. Jur. 2d Statutes § 250 (2001).  There is nothing in the language or legislative history of the CPPA suggesting that that statute was intended to operate outside the District's boundaries.  See Jackson v. Culinary School of Washington, Ltd., 27 F.3d 573, 582 n.14 (D.C. Cir. 1994), vacated on other grounds, 515 U.S. 1139 (1995).  To the contrary, the CPPA's legislative history was enacted "to provide consumers in the District with procedures for the redress of improper trade practices."  See Exhibit B (March 24, 1976 Committee Report, on Bill 1-253, Council of the District of Columbia) (emphasis added).

**2.    Relevant Case Law Negates Plaintiffs' Broad Extraterritorial Interpretation of the CPPA.**

Plaintiffs' attempt to expand the reach of the CPPA to business transactions that occurred in a foreign country should be dismissed.  Pertinent case law demonstrates this.  In Nelson v. Nationwide Mortgage Corp., 659 F. Supp. 611 (D.D.C. 1987), the plaintiff, a District resident, obtained a loan for the purpose of renovating real property she owned in the District.  She obtained the loan from a Virginia corporation with its principal place of business in Virginia.  The loan transaction occurred in Virginia.  She later sued the lender and a purchaser of the loan, alleging a claim under the CPPA.  The court ruled that the CPPA could not be applied on these facts, noting that "[n]othing in [the CPPA] or interpretive caselaw indicates. . . a legislative intent [to give broad extraterritorial effect to the statute] and absent such affirmative evidence the Court will not presume that the statute was intended to apply to every commercial transaction involving a District of Columbia resident." Id. at 616-17.

In Williams v. Central Money Co., 974 F. Supp. 22 (D.D.C. 1997), aff'd, 176 F.3d 497 (D.D.Cir. 1999), the Court reached the opposite conclusion.  It noted that "[i]f the CPPA did not apply to cases like this one, loan and mortgage companies could defeat [the CPPA] and evade D.C. consumer protection laws by locating themselves just across the District line from the D.C. citizens they seek as customers."  974 F. Supp. at 27.  The Court of Appeals for the District of Columbia Court affirmed.  176 F.3d 497.  The facts in Williams, however, are readily distinguishable from those in this case.  In Williams, the loan in question was made using District property as collateral and the loan agreement contained District of Columbia choice of law clauses.  Moreover, the Williams case involved a plaintiff particularly vulnerable to predatory lenders who locate themselves just across the District boundaries.  The present case does not present analogous facts.

More apposite than <u>Williams</u> is <u>Jackson v. Culinary School of Washington</u>, 788 F.Supp. 1233 (1992), <u>rev'd</u>, 27 F.3d 573 (D.C. Cir. 1994), <u>vacated on other grounds</u>, 515 U.S. 1139 (1995).  In that case, former students of a defunct culinary school filed a class action against certain lenders, the Secretary of Education, several guarantee associations, and other defendants, seeking declaratory and injunctive relief.  The students alleged that the school had fraudulently induced them to take out guaranteed student loans.  The culinary school was located in the District;  some of the students signed their loan documents in the District; one of the students was a resident of the District; but the primary lenders and guaranty agencies were based outside the District.  788 F. Supp. at 1252;  27 F.3d at 581.  On these facts, the district court held that the plaintiffs' allegations presented a sufficient nexus to assert a claim under the CPPA.  788 F. Supp. at 1252.  The District of Columbia Circuit Court of Appeals, however, reversed, stating that "we find ourselves unable to say with confidence that D.C. law will apply in *any* future coercive action brought by the declaratory judgment defendants."  27 F.3d at 581 (emphasis in original).  The Court of Appeals, in a footnote, favorably cited the <u>Nelson</u> case for the conclusion that "nothing in the CPPA suggests legislative intent to give the statute broad extraterritorial effect."  27 F.3d at 582 n.14.

The guiding principle to be drawn from the <u>Nelson</u> and <u>Jackson</u> cases, interpreted together with <u>Williams</u>,  is that the CPPA is not to be given a broad extraterritorial reach, but policy considerations, in exceptional circumstances, may warrant a limited extraterritoriality.  These cases, however, provide no support for the fundamental proposition urged by the Plaintiffs in this case, namely, that the CPPA should not only be extended outside the boundaries of the District, but the United States, based on allegations that the defendant has its headquarters in the District and "perpetrated"  its alleged deceptive practices in the District.

In fact, this broad proposition was recently expressly rejected by the New York Court of Appeals in <u>Goshen v. Mutual Life Insurance Co. of New York</u>, 774 N.E.2d 1190, 1195-96 (N.Y. 2002).  In <u>Goshen</u>, the Court of Appeals held that New York's Consumer Protection Act "was not intended to police the out-of-state transactions of New York companies," even if the alleged fraudulent scheme was "hatched" or originated in New York.  As the <u>Nelson</u> and <u>Jackson</u> cases show, there is no more support under the CPPA for policing foreign transactions than there is under the New York statute.

3.      **Policy Considerations Militate Against the Extraterritorial Interpretation of the CPPA that Plaintiffs Urge.**

With the single exception of Paliashvili, the only CPPA-supporting contact with the District by Marriott on which Plaintiffs rely is the allegation that Marriott has its headquarters in the District (and the related allegations that Marriott has historical connections to the District and "perpetrated" its alleged deceptive practices there).[2]  Policy considerations militate strongly against giving this allegation the importance and weight that the Plaintiffs ask be accorded to it. The logical consequence of Plaintiffs' request is that any business with headquarters in the District would become subject to the CPPA for any alleged consumer fraud occurring in any state or foreign country – for it is an easy matter to allege that if a business has its headquarters in the District, it must have "perpetrated" its alleged wrong there.  Predicating CPPA jurisdiction on such a weak foundation would broaden the CPPA to almost unlimited territorial application, contravening the Court of Appeals' admonition in <u>Jackson</u> that the statute was not intended to have broad extraterritorial reach.  Such a result would also significantly deter businesses from

---

[2]  Even if Plaintiffs were correct that any policy regarding the alleged wrongful practice originated from Marriott's headquarters, that fact would not strengthen plaintiffs' position with regard to the contacts between their claims and the District.  As explained previously, Marriott's headquarters are located in Bethesda, Maryland.  (Stant Decl. ¶ 4.)

locating their headquarters in the District, and, more importantly, would undermine the authority of other states and jurisdictions to enforce their own consumer protection laws.  None of these results is consistent with the legislative intent of the CPPA.

Paliashvili's contacts with the District differ from those of the two other plaintiffs in that she allegedly is a "permanent resident" of the District.  Paliashvili is apparently a Russian citizen who is the President of the Russian-Ukrainian Legal Group, P.A.  According to her firm's website, she divides her working time between the District, Kiev and Moscow.  (See Exhibit A.)  Under the circumstances of this case, however, her claim also lacks a sufficient nexus with the CPPA.  The consumer transaction at issue is the rate the hotels charged the Plaintiffs for use of rooms in Moscow, Russia.  Paliashvili's alleged use of Marriott's Internet website was a small part of that transaction, and, in any event, Plaintiffs do not link her website use to the District.  The transaction of which Ms. Paliashvili complains, in short, was a transaction that occurred within Russia and not a transaction within the District, or even closely tied to the District.  Accordingly, the CPPA does not govern her transaction.

**B.    The Voluntary Payment Doctrine Bars Plaintiffs' Unjust Enrichment Claim.**

Plaintiffs' Unjust Enrichment Claim (Count II), is barred by the voluntary payment doctrine.  That doctrine bars a plaintiff's claim for restitution on a payment made under a defendant's claim of right, when the plaintiff paid voluntarily and with full knowledge of the relevant facts.  Avianca, Inc. v. Corriea, 1992 U.S. Dist. LEXIS 4709, at *20 (D.D.C. Apr. 13, 1992); see also Freund v. Avis Rent-A-Car System, Inc., 114 Ill.2d 73, 79, 499 N.E.2d 473, 475 (1986) (quoting Illinois Glass Co. v. Chicago Telephone Co., 234 Ill. 535, 541 (1908)) ("It has been universally recognized that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on

the ground that the claim was illegal.").  To defeat the application of the voluntary payment doctrine, a plaintiff needs to show not only that the claim for payment was unlawful, but also that the payment was not made voluntarily and under circumstances amounting to compulsion.  See, e.g., Freund, at 79, 499 N.E.2d at 475; Chris Albritton Const. Co. v. Pitney Bowes, Inc., 304 F.3d 527, 531 (5th Cir. 2002).

Here, Plaintiffs' unjust enrichment claim is undermined by their Amended Complaint. The Amended Complaint states that Plaintiffs knew the exact amount in Rubles they were paying for their hotel stays, and that they paid those amounts voluntarily. Specifically, the Amended Complaint describes Plaintiff Shaw's credit card transaction after his hotel stay at the Renaissance Moscow on the night of April 19, 2005 as follows:

> 51.    The bill shows a "Local Currency Balance" of 21078.40 RUR (Russian Rubles).
>
> 52.    The bill states "Exchange Rate 1 UNIT[*sic*]=32.00 RUR.
>
> 53.    Mr. Shaw was charged a total of 21078.40 RUR, which equals 32 Russian Rubles per "Unit" of 658.70.
>
> 54.    Mr. Shaw paid the hotel bill using his American Express card.

(Am. Compl. ¶¶ 51-54.)

Plaintiffs do not allege that there was any mistake of fact as to the exact total amount in Rubles Mr. Shaw paid at check-out, or that he paid under duress, coercion or any kind of circumstances that made his payment of the hotel bill involuntary.  Moreover, there is no allegation that Mr. Shaw ever disputed or protested the total amount of the hotel bill to either Marriott or American Express after he first became aware of this alleged "undisclosed upcharge" when he received his credit card statement in the days following his trip to Moscow.  (See id. ¶ 55.)  Instead, Shaw filed the original complaint in this putative class action in the Superior

Court for the District of Columbia three weeks after his hotel stay in Moscow.  Having voluntarily paid the hotel bill with full knowledge of all the relevant facts—*i.e.*, the exact amount in Rubles that he was paying for his hotel bill which he knew would be exchanged into U.S. dollars by his credit card company—Shaw's unjust enrichment claim should be dismissed.

The voluntary payment doctrine applies with equal force to the claims of the two other named Plaintiffs.  The Amended Complaint simply states that:  "[t]he experiences of Plaintiff Irina Paliashvili, who stayed at the Marriott Tverskaya from June 20-23, 2004, and Plaintiff Neal M. Charness, who stayed at the Marriott Tverskaya from November 19-20, 2004 and the Marriott Grande from December 8-10, 2004 are the same" as the transaction described for Plaintiff Shaw.  (See id. ¶ 59.)  Therefore, the unjust enrichment count as to all Plaintiffs should be dismissed because Paliashvili and Charness had the same hotel bill and credit card transactions as Shaw.

**C.    This Case Should Be Dismissed for *Forum Non Conveniens*.**

The United States District Court for the District of Columbia is the wrong forum for this lawsuit because the events that form the basis of Plaintiffs' Amended Complaint have no substantial connection with this forum.  Plaintiffs allege that they were charged 18 percent more in Russian Rubles than they would have been charged at the official exchange rate for their stays in Marriott hotels located in Russia.  Plaintiffs do not – and cannot – allege that any facet of the alleged harm occurred in the District.  Indeed, the only tenuous nexus that exists between this lawsuit and the District is the fact that one of the named plaintiffs, Paliashvili, is alleged to be "a permanent resident" of the District.  (See Am. Compl. ¶ 13.)  That allegation alone does not render this judicial district the most convenient forum for adjudicating this dispute.  Instead,

Plaintiffs' allegations point to Moscow, Russia as the proper forum in which their claims should be litigated.

The doctrine of *forum non conveniens* permits a court to dismiss an action over which it has jurisdiction when there is an adequate alternative forum in which the case can be more conveniently heard.  BPA International, Inc. v. Kingdom of Sweden, 281 F. Supp.2d 73, 84-85 (D.D.C. 2003).  This analysis involves two steps.  The court must first determine if there is an adequate alternative forum and, if so, must then weigh the pubic and private interest factors identified by the Supreme Court in Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508-09, 67 S.Ct. 839 (1947), to determine which forum will be most convenient and will best serve the ends of justice.  Id.  "The forum non conveniens determination is committed to the sound discretion of the trial court."  Id. at 85 (citing Piper Aircraft Co. v. Reynolds, 454 U.S. 235, 102 S. Ct. 252 (1981)).  The weight of either the private interest factors or the public interest factors may be cause for dismissal.  Jackson v. American Univ., 52 Fed. Appx. 518, 518-19, 2002 WL 31818236, at *1 (D.C.C. Dec. 13, 2002).

In this case, Russia provides an adequate alternative forum, and the private and public interest factors set forth in Gilbert weigh heavily in favor of litigating this matter in Russia.

**1.      Russia Provides an Adequate Alternative Forum for this Lawsuit.**

An alternative forum exists if the defendant is "amenable to process" in the other jurisdiction.  Piper Aircraft, 454 U. S. at 255.  Additionally, the alternative forum's judicial system must permit litigation of the subject matter of the dispute.  See id. at 235, 254 n.22.

Because the Amended Complaint is based on alleged "upcharge" practices occurring in Marriott's Moscow, Russia hotels, Russia is an adequate alternative forum.  Plaintiffs could have

brought their action in Moscow, Russia, where Marriott is subject to process for the actions alleged in the Amended Complaint. Russian law provides remedies against business practices that allegedly cause damages to consumers. (Declaration of William E. Butler ("Butler Decl.") ¶¶ 9-10.) Therefore, if plaintiffs had filed this claim in Russia, they would have been able to seek a remedy under Russian law for the damages alleged in the Amended Complaint. (Id. ¶ 9.) Dismissal in this forum would not deprive plaintiffs of a more appropriate forum in which to pursue their claims.

While a plaintiff's choice of forum is usually given a strong presumption, that choice merits much less deference when the plaintiff is also a stranger to the forum. BPA International, at 85 (citing Piper Aircraft, at 256). Here, two of the three named Plaintiffs are "strangers to this forum," and the third is a "permanent resident" with an apparent Russian citizenship. Moreover, Plaintiffs' choice of forum is subject to scrutiny since this is a putative class action. See Saleh v. Titan Corp., 361 F. Supp.2d 1152, 1157 (S.D. Cal. 2005) ("the weight to be given the plaintiff's choice of forum is discounted where the action is a class action"); Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight"). There is even less deference to the plaintiff's choice of forum when there is a lack of significant contact or connection between the forum and the events underlying the cause of action. See Sierra Club v. Flowers, 276 F. Supp.2d 62, 67 (D.D.C. 2003) ("When the connection between the controversy, the plaintiff, and the chosen forum is attenuated, the court pays less deference to plaintiffs' choice of forum.").

**2.      Analysis of Private and Public Interest Factors Weighs against the Court's Exercise of Jurisdiction over This Lawsuit.**

In a *forum non conveniens* analysis, to determine whether the forum has so little to do with the controversy that the court should decline to take jurisdiction, the Court must balance certain enumerated "private interest" and "public interest" factors.  See Gilbert, 330 U.S. at 508.

**a.      The Private Interest Factors Strongly Favor Litigation in Russia.**

The private interests that must be considered in determining a *forum non conveniens* motion are:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gilbert, 330 U.S. at 508.  See also BPA International, at 85 (citing Gilbert); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 242, 102 S. Ct. 252, 70 L. Ed. 419, 427 (1981).  Under these private interest factors, the court should weigh relative advantages and obstacles to fair trial.  Gilbert, 330 U.S. at 508.  Analysis of each of these factors favors litigation of this case in Russia.

**i.      Relative Ease of Access to Sources of Proof.**

Because Plaintiffs' claims arise out of actions or conduct allegedly occurring in Moscow, Russia, access to sources of proof would be much easier if the case were heard in Russia rather than in the District.  In the context of Plaintiffs' allegations in this case, it is clear that the sources of proof necessary for their claims as well as Marriott's defenses will turn on testimony of witnesses and documentary evidence that are not located in the District, but predominantly in Russia.

The crux of Plaintiffs' claims is that Marriott's disclosures regarding the pricing policy were somehow inadequate and misrepresented what the guests were in fact going to pay for their hotel stays in Moscow. (Am. Compl. ¶¶ 40-58.) The rationale behind any pricing policy with respect to Moscow hotels and the adequacy of related disclosures to potential guests will turn on the requirements of Russian law to which Marriott is subject in order to lawfully conduct business in Russia. (See Butler Decl. ¶¶ 11-12.) The sources of proof relating to the requirements of Russian law as well as Marriott's conduct in compliance with or in violation of such laws are located in Russia. Nothing in the Amended Complaint leads to an inference or conclusion that any relevant witnesses or documentary evidence in connection with this lawsuit would be located in the District of Columbia.

### ii.    Location of Witnesses and Documentary Evidence.

Many, if not most, of the potential witnesses and evidence relating to this lawsuit are located in Russia, including those hotel personnel with whom the named plaintiffs would have personally dealt in connection with their stays at the Renaissance Moscow, Moscow Marriott Tverskaya and Moscow Marriott Grande. The majority of the potential witnesses will be well beyond the reach of this Court's 100-mile subpoena power, and the Court, therefore, will not have the ability to compel the attendance of any of those witnesses in Russia who may have critical knowledge directly relating to the claims or defenses asserted in this case, including the pricing or disclosure practices in the Russian hotel and services industry. Moreover, the Russian hotels are owned by a joint venture controlled by the City of Moscow. Some of the hotels are operated by third party franchisees. The City of Moscow and franchisees of the Marriott hotels have rights and interests that will be directly impacted by this lawsuit. Many of the potential witness will not be subject to jurisdiction in the United States. To the extent that jurisdiction

could be achieved, the cost of obtaining witness attendance will be significantly lower in Russia than if the case were tried in the District.  Not only will fact witnesses be present in Russia, but the Plaintiffs' claims will likely require expertise in Russian legal practice, including potentially the testimony of Russian practitioners located in Russia.

### iii.    Convenience of the Parties.

Another private factor to consider is whether the plaintiffs' choice of forum was to vex, harass or oppress the defendant in any way.  As stated above, the District is a less convenient forum than Russia for Marriott's witnesses.  However, it would not be any less convenient for the named Plaintiffs to litigate this case in Russia than in the District because litigation in the District would require extensive travel for Plaintiffs.  Moreover, Plaintiffs arguably believe Moscow is an adequate and convenient forum since they already have retained Russian counsel based in Moscow to assist in this litigation.

### b.    The Public Interest Factors Favor Litigation in Russia.

In determining whether dismissal is appropriate under *forum non conveniens*, the court must also consider the public interest in equitable administration of the laws.  It should determine whether the suit is "unnecessarily burdensome" on the court, "or on the residents of the community in which the suit is brought and whether the community where the action leading to the suit actually took place has an interest in the litigation," BPA International, at 85 (citing Piper Aircraft and Gilbert), and whether local or foreign law will be applicable.  Pain v. United Technologies Corp., 637 F.2d 775, 791-95 (D.C. Cir. 1980).

The analysis of public interest factors weighs in favor of dismissal of this action.  The locus of the dispute is in Russia.  Russia has a more significant interest in litigating the dispute.

A District of Columbia jury would be burdened by having to decide a case having very tenuous or no connection at all with the District. It is also likely that Russian law will apply to the adjudication of this case. In sum, none of the public interest factors justifies allowing this action to proceed in this jurisdiction.

> **i.    There is No Local Public Interest in the Dispute, And This Class Action Lawsuit Imposes An Unnecessary Burden on the Community.**

None of the alleged events giving rise to this lawsuit took place in the District. None of the parties has any connection with the District vis-a-vis the claims in this case, except for the "permanent residency" of one named plaintiff in this judicial district.

In their Amended Complaint, Plaintiffs assert repeatedly that Marriott's headquarters are based in the District of Columbia. (See Am. Compl. ¶¶ 2, 3, 11, 23-29, 32, 33.) Based on that false assertion, Plaintiffs then argue that the courts of the District have an interest in regulating Marriott's business practices occurring in Russia because the business policies at issue must have originated from Marriott's headquarters allegedly located in the District. (See id. ¶ 15.) Plaintiffs' assertions are wrong.

Marriott's worldwide headquarters have been located at 10400 Fernwood Road, Bethesda, Maryland 20817 since 1979. (Stant Decl. ¶ 4.) This identification of Marriott's world headquarters can be found on the cover page of every single filing submitted to the Securities and Exchange Commission by Marriott, including the filings cited by Plaintiffs in the Amended Complaint. (See Am. Compl. ¶¶ 28, 34.) Curiously, Plaintiffs make no mention of these references to the true location of Marriott's headquarters, and rely instead on what they call Marriott's "numerous representations that its corporate headquarters are located in Washington,

D.C." (See id. ¶ 33.) Notwithstanding Plaintiffs' efforts, they cannot overcome the fact that

Marriott is not headquartered in the District.

> **ii.     Russia's Interest In Adjudicating This Case Far Outweighs Any Interest Of The District of Columbia.**

One of the public interest factors warranting dismissal for *forum non conveniens* is when

the transaction that is the subject of the cause of action occurred primarily in a foreign

jurisdiction. This principle, as described in Gilbert by the United States Supreme Court,

considers the policy of "local interest in having localized controversies decided at home." 330

U. S. at 509. This matter falls squarely within the Gilbert analysis, and the local currency and

related economic issues should be decided at home: Russia. To the extent that District of

Columbia's courts might have any interest in regulating the conduct of Marriott in Russia, such

interest is far outweighed by Russia's more substantial interest in that conduct. Russia has a

strong public interest in the subject matter of the litigation not only because the transactions took

place there, but because they involve sensitive areas of Russian economic policy.

> **iii.    Local Law Does Not Apply To This Case, And The Court Should Avoid Conflict Of Laws Issues And Interpretation Of Foreign Law.**

As a federal district court sitting in diversity, this Court will be required to apply the

choice-of-law principles of the District of Columbia. Under the District of Columbia's choice-

of-law analysis, the relevant inquiry is which jurisdiction has the "more substantial interest" in

applying its substantive law to the dispute. Ely Lilly & Co. v. Home Ins. Co., 764 F.2d 876, 882

(D.C. Cir. 1985). As stated previously, Russia has the most substantial interest in applying its

substantive laws to this dispute. This is a lawsuit that should have, and could have, been brought

in Russia which, unlike the District, has substantial connections to the Plaintiffs' claims and also

has a significant interest in resolving this lawsuit and regulating business conduct occurring within its borders.

## IV.    CONCLUSION

Based on the foregoing, Marriott requests that this Court dismiss the entire action for failure to state a claim, and in the alternative for *forum non conveniens*.

Dated:  July 21, 2005

   /s/   Benjamin S. Boyd
Benjamin S. Boyd (Bar No. 413698)

DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, N.W.
7th Floor
Washington, D.C. 20036-2412
Telephone (202) 861-3900
Facsimile (202) 223-2085

   /s/   Jeffrey E. Gordon
John C. Dougherty (admission pending)
Jeffrey E. Gordon (MD23264)
Sonia Cho (MD26995)

DLA Piper Rudnick Gray Cary US LLP
The Marbury Building
6225 Smith Avenue
Baltimore, Maryland  21209-3600
410.580.3000
410.580.3001 (facsimile)

*Attorneys for Defendant*
*Marriott International, Inc.*