## DECLARATION OF WILLIAM ELLIOTT BUTLER

I, WILLIAM ELLIOTT BUTLER, pursuant to 28 U.S.C. Section 1746, as and for my legal opinion regarding certain issues of Russian law which arise in connection with the litigation known as *Shaw, et al. v. Marriott International Inc.*, declare and state as follows:

### I.  BACKGROUND

1. I am fluent in the Russian language and have a reading knowledge of Ukrainian. I authored the leading *Russian-English Legal Dictionary* (Moscow, 1995; 2d ed., New York and Moscow, 2001). A copy of my curriculum vitae is attached as Exhibit A.

2. I am submitting this Declaration in connection with a case pending in the United States District Court for the District of Columbia, known as *Shaw, et al. v. Marriott International Inc.*, Case No. 05-0003679 (GK).

3. I have been asked to review and comment upon the Amended Class Action Complaint and Demand for Jury Trial ("Amended Complaint"), with a view to assisting the Court to comprehend in an Anglo-American context some of the issues raised by the claims in the Amended Complaint, and also to make my own observations, where appropriate, on applicable Russian law.

### II.  MATERIAL REVIEWED

4. I have reviewed Russian legal materials in the Russian language in connection with the preparation of this Declaration. The principal sources of law in Russia include the legislation adopted by that country after the dissolution of the former Soviet Union, legislation of the Soviet era which was adopted by Russia when it became a republic of the Soviet Union, and legislation of the former USSR itself which is deemed to be still in force in Russia. I have reviewed the USSR legislation in force at the relevant times and also the

normative (that is, acts containing rules of conduct binding upon persons) legal acts of Russia insofar as they are accessible. I have access to the official gazettes for Russia in hard copy through specialist libraries in London and Moscow. I also have access to, and have used, computer databases of Russian legislation which originate in Russia. In particular, I use Consultantplus which is the largest computer legal database available commercially in Russia.

5. I have examined the Russian Civil Code, adopted in three parts between 1994 and 2002, in force currently as amended, and rely upon my published translation thereof. I also have examined the currency control and consumer protection legislation of the Russian Federation.

6. In addition, I have examined laws of the parliament, decrees of the Government, normative acts of the President, and any other normative legal acts which I deem to be relevant to this matter. I would note that Russia does not officially publish all government decrees and presidential enactments. The official gazette and computer databases are, therefore, not complete or exhaustive. All observations in this Declaration are consequently subject to the condition that they do not and cannot take into account normative materials which are unpublished, classified, secret, or otherwise inaccessible to me.

7. I also have drawn upon my own considerable experience in managing law firms within the Commonwealth of Independent States, where I have arranged accommodation and support for visiting clients and participated extensively in local commercial life, including routine hard currency transactions since 1960 by cash and credit card.

III. THE RUSSIAN JUDICIAL SYSTEM

8.  The Russian Federation has a judicial system comprised of courts of ordinary jurisdiction and arbitrazh courts. The latter specialize in "commercial" or "business" cases. Each of these components of the judicial system has its own appellate courts and each is headed by a supreme court (in the case of courts of ordinary jurisdiction, by the Supreme Court of the Russian Federation; in the case of arbitrazh courts, by the Supreme Arbitrazh Court of the Russian Federation).

9.  Foreign citizens have the right to bring suit in either of the above courts against a Russian juridical person (which I assume for purposes of this Declaration, the relevant Marriott hotels in Moscow to be). A case of this nature would be heard by a single professional judge, and the Plaintiffs would be at liberty to demand monetary damages for losses sustained if they can be proven. Plaintiffs are also at liberty to hire a Russian advocate to act on their behalf, and indeed, judging from the Amended Complaint, they already have retained a Russian legal advisor to assist them.

10. Consumer complaints against businesses are frequently brought to Russian courts. It is my opinion that Russian courts have considerable experience in adjudicating such complaints, and any plaintiff would have the merits of his or her case fairly adjudicated in the Russian courts.

IV. RUSSIAN LEGISLATION RELATING TO CURRENCY CONTROLS

11. From reviewing the Amended Complaint, at the core of Plaintiffs' claims in this case appear to be their dissatisfaction with the use of the so-called "pre-arranged monetary units" (or in this case, "UNT") in the hotels in Russia and the adequacy of disclosure relating to the use of UNTs. Based on my experience and understanding of Russian law, the use of pre-arranged monetary units and the related requirements of

disclosure imposed on businesses in Russia are entirely governed by Russian currency legislation.

12.   The legal basis for using pre-arranged monetary units at the present time is Article 317 of the Civil Code of the Russian Federation, entitled "Currency of Monetary Obligations," which provides:[1]

> 1.   Monetary obligations must be expressed in rubles (Article 140).
>
> 2.   It may be provided in a monetary obligation that it shall be subject to payment in rubles in an amount equivalent to a determined amount in foreign currency or in prearranged monetary units (ecu, special borrowing rights, and others). In the event the amount subject to payment in rubles shall be determined according to the official exchange rate of the respective currency or prearranged monetary units on the day of payment unless other exchange rate or another date for determining it has been established by a law or by agreement of the parties.
>
> 3.   The use of foreign currency, and also of payment documents in foreign currency, shall be permitted when effectuating the settlement of accounts on the territory of the Russian Federation with regard to obligations in the instances and on the conditions determined by a law or in the procedure established by it.

## V.   CURRENT COMMERCIAL PRACTICES IN RUSSIA WITH REGARD TO EXCHANGE RATES

13.   Since 1988, I have personally spent up to thirty to forty percent of my time in the former Soviet Union and the Russian Federation, when I first began to practice law with western law firms in various capacities. It became a common commercial practice, at least from the early 1990s onward, for both domestic and foreign companies in Russia to fix their prices either in United States dollars or pre-arranged monetary units rather than in Soviet or Russian rubles. This practice originated during severe inflationary periods and enabled businesses to avoid reprinting their menus or price lists every day in order to reflect adjustments in exchange rates.

---

[1] See W. E. Butler, *Civil Code of the Russian Federation* (2003), p. 125.

14. As credit cards took hold in Russia, the practice was extended to them. Some establishments even fixed different rates depending upon whether a customer paid in cash or by credit card to reflect the percentage imposed by the credit card companies on the proprietor of the establishment.

15. My own experience with Russian hotels is similar to that of the Plaintiffs. United States dollar rates are commonly advertised in, for example, *The Moscow Times*, published five times weekly in Moscow in the English language or a sister publication in St. Petersburg. Weekend breaks are widely offered at US dollar rates. But those who take advantage of these rates actually pay in rubles upon check-out, whether they pay in cash or by credit card. This is because, although Russian legislation still permits prices to be fixed in U.S. dollars, Euros or other pre-arranged monetary units, it requires that the settlement of accounts be in rubles.

## VI. APPLICATION OF RUSSIAN LAW

16. Based upon my review of the Amended Complaint and my previous discussion of the issues raised by Plaintiffs in this case, it is my opinion that a court adjudicating this matter would need to interpret and apply Russian law to resolve the claims. Because of the complexity and nuances of Russian law on these issues, Russian courts are the most appropriate forum to hear this matter.

Dated 20 July 2005

_____
William E. Butler

# EXHIBIT A

**Curriculum Vitae of
William E. Butler**

# CURRICULUM VITAE

## WILLIAM ELLIOTT BUTLER

William Elliott Butler, FSA, is a preeminent authority on the legal systems of Russia, the other members of the Commonwealth of Independent States (CIS), and Mongolia and extensively involved in the field of public and private international law. He advises international organisations, governments, and leading companies and financial institutions who invest or do business in those countries with particular reference to the interface between domestic law and practice with international investment transactions. His experience extends to banking, securities, project finance, the creation and operation of companies of all types, commercial agreements, licensing, technology transfer, privatisation, finance and other leasing, concessions, economic zones, shipping, aircraft, oil and gas, nuclear power, electric power, and environmental protection.

For more than three decades he has advised on and given formal legal opinions with respect to all aspects of Russian and Soviet Law before English and American courts and tribunals and in international arbitrations, and has prepared expert opinions and reports for the Office of the Legal Advisor, United States Department of State, the United States Department of Justice, the Department of Health and Social Security of the United Kingdom, the Department for International Development (DFID) of the United Kingdom, and for international organisations, banks, large corporations, and industry associations.

Professor Butler holds a Chair of Comparative Law in the University of London and is the founder and Director of The Vinogradoff Institute, University College London, and on secondment has acted as the founder and Dean (1993-98) of the Faculty of Law and M. M. Speranskii Professor of International and Comparative Law, Moscow Higher School of Social and Economic Sciences (1994-2004). He is a Member of the Senior Common Room of St Antony's College, Oxford University (2004-). During Spring 2002 he acted as a part-time professor in the Chair of Civil Law, Moscow State Legal Academy, where he introduced the standard course on Comparative Law.

In May 1992 he was elected Academician of the Russian Academy of Natural Sciences and in November 1992, of the National Academy of Sciences of Ukraine. He has served as Dean of the Faculty of Laws, University College London (1977-79) and of the University of London (1988-90). He has been Visiting Professor of Law at New York University School of Law (1978) and Harvard Law School (1986-87), Lecturer at the Hague Academy of International Law (1985), Visiting Professor of Law, Washington and Lee University (Spring 2005), and Visiting Scholar countless times at Moscow State University and the Institute of State and Law of the USSR (now Russian) Academy of Sciences.

In 1989 he was appointed Special Counsel and Chairman of a Working Group attached to the Commission for Economic Reform of the USSR Council of Ministers. In this capacity he evaluated key draft *perestroika* legislation and was co-author of the Draft USSR Law on Pledge which, in May 1992, was the basis for legislation enacted by the Russian Federation Supreme Soviet and then of similar laws adopted in Belarus, Kazakhstan, Kyrgyzia, Turkmenistan, Ukraine, and Uzbekistan. The same Working Group prepared the Edict of the President of the Russian Federation on Trust Ownership, adopted 24 December 1993. He also

has advised the President and the Prime Minister of Lithuania and deputies and members of the Government of the RSFSR on draft legislation, was a member of the team funded by the United Kingdom Know-How Fund to advise on the Russian Project Finance Bank (registered January 1993), and was a member of the Task Force which developed the Open Sector Concept in the Soviet Union, now known as the Free Entrepreneurship Zone.

In 1992 he was appointed a member of the European Commission Joint Task Force on Law Reform in the Independent States and advised the World Bank on energy and banking legislation in Russia and Kazakhstan. In September 1992 he served as a member of a team which advised, on behalf of the World Bank, the State Property Fund of Kyrgyzia on the legal framework for privatisation. In 1992 he also was appointed to the group drafting the Russian Law on Securities in collaboration with the Institute of Legislation and Comparative Law attached to the Russian Federation Supreme Soviet. From July 1992-February 1993 he was seconded as Senior Legal Counsel to the Russian Federation State Committee for the Administration of State Property, where he headed a small team of legal specialists to prepare draft Russian laws on trust ownership, securities and investment funds, joint-stock societies, full partnerships, Kommandit partnerships, and limited responsibility partnerships. In June 1993 he was appointed Convenor of the Anglo-Russian Working Group to draft a legal assistance treaty. In May 1994 he became Counsel to a Russian working party drafting legislation on finance leasing, and in November 1994 delivered lectures to the Ukrainian Ministry of Justice on commercial law at the invitation of the Council of Europe. In January 1995 he advised the Belarus Supreme Soviet on parliamentary procedure under a TACIS project and from July 1995, Uzbekistan on privatisation investment funds. In 1998-99 he served as Special Counsel to the Commission for National Reconciliation in Tadzhikistan on behalf of the United Nations, advising on constitutional reforms. In March 2000, at the request of the Union of Jurists in Moscow, I assisted as an expert with the application of the Republic Azerbaidzhan for membership of the Council of Europe, helping to independently assess the record of that country in implementing law reforms and acted as a formal signatory of the Report. In October-November 2002 he acted as a Consultant to a health project in Russia for the Department for International Development of the Government of the United Kingdom, and in Spring 2003 completed a substantial report for International Family Health on the legal regime of harm reduction programmes in Russia. In December 2004 he was appointed one of two foreign members of the Committee on Corporate Management Reform attached to the Ministry of Trade and Economic Development of the Russian Federation.

In May 1995 he was elected to a five-year term as a member of the Russian International Court of Commercial Arbitration, and re-elected for a further term in 2000. He has acted in more than twenty Moscow arbitrations, including as Chairman of the tribunal.

In 1991 he was elected the first Foreign Member of the Union of Jurists in Moscow, and in 1990 an honorary member of the Soviet Association of Maritime Law, and in 1995 an Honorary Member of the Kazakhstan Association of Business Lawyers. In February 2004 he was elected a member of the Union of Russian Jurists.

In 1996 he was awarded a Certificate of Honour by the International Union of Jurists (CIS) for services to Russian law and in June 2003, the G. I. Tunkin Medal by the Russian International Law Association for services to international law. On 2 December 2003 he was awarded a Certificate of Honour by the Russian Association of Maritime Law and on 11 October 2004 was awarded the Ivan Fedorov Medal and Diploma for services to Anglo-Russian cultural relations.

He has acted as Of Counsel to Cole Corette & Abrutyn (1988-92) and Clifford Chance (1992-94) and as Partner and Head of the CIS London Group and the Almaty and Tashkent offices of White & Case (1994-96). From 1997-2001 he was a co-founder and Senior Partner in the PwC (later Landwell) CIS International Law Firm in Moscow, and in 2002 co-founded Phoenix Law Associates CIS, a Russian law firm located in Moscow.

He is admitted to the Bar of the District of Columbia (1967) and the Bar of the Supreme Court of the United States (1970), and has been licensed by the respective Ministry of Justice in Uzbekistan (1996) and the Russian Federation (1997).

With specific reference to Tadzhikistan, during his term as Special Counsel to the Commission for National Reconciliation in Tadzhikistan he collected materials for a volume published as *Tadzhikistan Legal Texts* (1999), which remains the most substantial and representative collection of Tadzhik legal materials in English. He has advised on a number of international disputes concerning Tadzhikistan law and/or parties.

## Citizenship

Dual citizenship: United States/British

## Education

      B.A., The American University (SIS), 1961
      M.A., The Johns Hopkins School of Advanced International Studies, 1963
      J.D., Harvard Law School, 1966 (Addison Brown Prize)
      LL.M., School of Law of the Academy University of Law, Institute of State and Law, Russian Academy of Sciences, 1997
      Ph.D., The Johns Hopkins School of Advanced International Studies, 1970 (Phi Beta Kappa)
      LL.D., University of London, 1979

## Publications

He is the author, co-author, editor, or translator of more than 120 books on Soviet, Russian, Ukrainian, Belarus, Tadzhikistan, Uzbekistan, Kazakhstan, Baltic, and other CIS legal systems. Salient recent titles include: *Soviet Law* (London, Butterworths, 1983; 2d ed., 1988); *Russian Law* (Oxford, Oxford University Press, 1999; 2d ed., 2003);[1] *Civil Code of the Russian Federation* (Oxford, Oxford University Press, 2003); *Russian Company and Commercial Legislation* (Oxford, Oxford University Press, 2003); *Russian Civil Legislation* (Boston/The Hague, Kluwer Law International, 1999); *Criminal Code of the Russian Federation* (4th ed.; London, Wildy, Simmonds & Hill, 2004); *Tax Code of the Russian Federation* (Boston/The Hague, Kluwer Law International, 1999); *Russian Legal Texts* (with J. E. Henderson: Boston/The Hague, Kluwer Law International, 1998); *Russian Legal Bibliography* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 1997-); *Russian Company Law* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 2000); *Russian Family Law* (London, Simmonds & Hill; Boston/The Hague,

---

[1] Cited United States Court of Appeals, 2004.

Kluwer Law International, 1998); *Civil Code of the Republic Belarus* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 2000); *Civil Code of the Republic Uzbekistan* (3d ed.; London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 1999); *Civil Code of the Republic Kazakhstan* (3d ed; London, Simmonds & Hill, 1997); *Turkmenistan Civil Code* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 1999); *Tadzhikistan Legal Texts* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 1999); *Uzbekistan Legal Texts* (London, Simmonds & Hill; Boston/The Hague, Kluwer Law International, 1999); *Intellectual Property Law in the Russian Federation* (London, Simmonds & Hill, 2002); *The Corporation and Securities Under Russian and American Law* (with Maryann E. Gashi-Butler) (Moscow, Zertsalo, 1997); *The Soviet Legal System* (together with J. N. Hazard and P. B. Maggs); Dobbs Ferry, Oceana Publications, 1977; new ed., 1984); *Russian-English Legal Dictionary* (Ardsley, Transnational, 2001). *Foreign Investment Law in the Commonwealth of Independent States* (2002); *The Law of Treaties in Russia and Other Member Countries of the Commonwealth of Independent States* (Cambridge University Press, 2002); *Intellectual Property Law in the Russian Federation* (4th ed.; London, Simmonds & Hill, 2005); *Economic Code of Ukraine* (London, Wildy, Simmonds & Hill, 2004), and others. In addition he has published numerous articles in the leading law reviews of the United Kingdom, the Russian Federation, and the United States.

In 2003 he completed a major study for the Department for International Development, published separately in the English and Russian languages as: *HIV/AIDS and Drug Misuse in Russia: Harm Reduction Programmes and the Russian Legal System* (London, DFID/IFH, 2003).

He also has published translations of more than 2000 normative legal acts adopted in the former USSR, all CIS countries, and Mongolia, a full bibliography of which is contained in the Transnational Publishers edition of his *Russian-English Legal Dictionary* (2001).

In 1995 he founded the quarterly journal *Sudebnik*, published jointly by The Vinogradoff Institute, University College London, and the Moscow Higher School of Social and Economic Sciences. He serves on the editorial boards of the principal English-language journals, law reviews, and yearbooks devoted to Russia and other CIS legal systems, amongst them the *Review of Central and East European Law* (Leiden), the *Uppsala Yearbook of East European Law* (Sweden), the *Parker School Journal of East European Law* (Columbia University), and *Statutes & Decisions* (New York). Commencing in 2004, he became the founding editor of *Russian Law: Theory and Practice*, issued by the Russian Academy of Legal Sciences and Consulting Editor of *The Journal of Comparative Law* (2005-).

In October 2003 he was elected a Trustee of The Hakluyt Society and has served as a Member of the Committee for Central and Inner Asia attached to The British Academy since its inception and as a member of The Bentham Committee since 2003. He has been appointed editor of Bentham's works on international law.

## Details

*Who's Who* (1986-)
*Debrett's People of Today*
*International Who's Who*

*Marquis Who's Who in the World*
*Marquis Who's Who in American Law*
*Marquis Who's Who in Finance and Industry*
*Who's Who in Education* (2d-5th editions)

Case 1:05-cv-01138-GK    Document 7-5    Filed 07/21/2005    Page 12 of 12