IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, et al.,<br>on behalf of themselves and all others<br>similarly situated,<br><br>        Plaintiffs,<br>v.<br>MARRIOTT INTERNATIONAL, INC.,<br><br>        Defendant. | Civil Action No. 05-1138 (GK)<br><br>**Next Status Conference**:<br>**November 15, 2005  9:30 AM** |

**MARRIOTT INTERNATIONAL, INC.'S REPLY
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
THE FIRST AMENDED CLASS ACTION COMPLAINT**

Benjamin S. Boyd (Bar No. 413698)

DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW, 7th Floor
Washington, D.C.  20036
202-861-3900
202-223-2085 (facsimile)

John C. Dougherty (admission pending)
Jeffrey E. Gordon ( Bar No. MD23264)
Sonia Cho (Bar No. MD26995)

DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant*
*Marriott International, Inc.*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT.........................................................................................................................1

    A.  The CPPA Does Not Apply To This Matter. ................................................................1

    B.  The CPPA Does Not Reach Consumer Transactions That Occurred Outside The District, Except In Limited Circumstances That Are Not Present Here. ................4

    C.  The Legal Authority Upon Which Plaintiffs Rely Is Inapposite. .................................6

    D.  Plaintiffs' Attempt To Focus This Litigation Solely On The On-Line Reservation Aspect Of The Transaction Is Disingenuous At Best ...............................7

    E.  Plaintiffs' Equitable Estoppel Argument Is Fatally Flawed. ........................................8

    F.  The Court's Consideration of Marriott's Exhibits in Support of Its Argument of Forum Non Conveniens Does Not Convert Marriott's Motion into One for Summary Judgment. ....................................................................................................9

III. CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Bigelow v. Virginia, 421 U.S. 809 (1975) .................................................................................... 4

BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996) ................................................................... 3

Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573 (1986) ............... 4

Duvall v. TRW, Inc., 578 N.E.2d 556 (Ohio Ct. App. 1991) ......................................................... 4

Edgar v. MITE Corp., 457 U.S. 624 (1982) ................................................................................ 4

Flynn v. Ohio Building Restoration, Inc., 260 F. Supp.2d 156 (D.D.C. 2003) ............................ 9

Goldberg-Marchesano-Kohlman v. Old Republic Surety Co., 727 A.2d 858 (D.C. 1999) ............ 8

Healy v. Beer Inst., Inc., 491 U.S. 324 (1989) ............................................................................ 4

In re Adelphia Communications Corp., 325 B.R. 89 (Bankr. S.D.N.Y. 2005) ............................. 5

In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 288 F.3d 1012 (7th Cir. 2002) .......... 4

In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360 (E.D. La. 1997) .................... 4

Land v. Dollar, 330 U.S. 731 n.4 (1947) ..................................................................................... 9

New York Life Ins. Co. v. Head, 234 U.S. 149 (1914) ................................................................ 4

Oliveira v. Amoco Oil Co., 726 N.E.2d 51 (Ill. App. Ct. 2000), rev'd in part and vacated in part on other grounds, 2002 WL 1340895 (Ill. June 20, 2002) ........................................................ 4

Phillips Petroleum Co. v. Shutts, 472 U.S. 797 (1985) ............................................................ 4, 7

Transamerica Leasing Inc. v. La Republica de Venezuela, 21 F. Supp.2d 47 (D.D.C. 1998) ....... 9

**Federal Rules**

Rule 12(b)(6) .................................................................................................................................. 9

Rule 56 ........................................................................................................................................... 9

## I.  INTRODUCTION

Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss First Amended Class Action Complaint ("Plaintiffs' Opposition") is nothing more than a desperate attempt to persuade this Court that their claims are somehow subject to the District of Columbia's Consumer Protection Procedures Act ("CPPA").  Plaintiffs' Opposition does little to negate the premise of Marriott's Motion to Dismiss the First Amended Class Action Complaint ("Marriott's Motion"):  Plaintiffs' claims are linked very closely to Russia and so remotely to the District of Columbia that the Amended Complaint fails to state a claim under the CPPA and the entire lawsuit should be dismissed under the doctrine of *forum non conveniens* in favor of a more appropriate forum in Russia.

## II.  ARGUMENT

A.  <u>The CPPA Does Not Apply To This Matter</u>.

Plaintiffs – one permanent resident of the District of Columbia, one Michigan resident, and one former New York resident who currently resides in London, England – attempt to maintain claims against Marriott in this Court for "undisclosed upcharges" for stays in hotels in Moscow, Russia.  Plaintiffs have not alleged– nor can they allege –that the "undisclosed upcharges" related to stays in hotels in Washington D.C. (the "District"), Maryland, or anywhere in the United States.  Instead, Plaintiffs hypothesize that Marriott should be held accountable under the CPPA because Marriott allegedly made false and misleading representations regarding the rates charged in its Russian hotel properties on the "*marriott.com*" website.  Plaintiffs do not allege that the on-line rate quotes were viewed by Plaintiffs in the District, or that the on-line

information was hosted or otherwise maintained in the District. Instead, Plaintiffs' Opposition suggests that the CPPA applies only because Marriott has represented that it is headquartered in the District. See, e.g., Plaintiffs' Opposition at 2, 9-12, 22, 23. As explained in Marriott's Motion, and further below, this basis for urging the application of Washington, D.C. law to this case is undermined by relevant legal authority and common sense.

Plaintiffs allege that because Moscow Marriott hotels use hotel exchange rates other than the official exchange rate as set by the Central Bank of Russia to calculate the final amount that a guest will pay for his or her hotel stay, the guests are misled with regard to the amount they actually pay at check-out and are charged more than they were quoted for each hotel room. (See Am. Compl. ¶¶ 41-43, 76, 78). Thus, no harm can be effectuated until Plaintiffs are charged by the Russian hotels. In fact, the essence of the Amended Complaint is that something nefarious occurred in Russia by using currency units instead of quoting rates in Rubles, and that the exchange rate set by the Russian franchised and managed hotels is unreasonable. These claims, and certainly Marriott's defenses, will involve Russian law and discovery which underscores that Russia is the proper forum and a thorough understanding of Russian law is needed to adjudicate these claims.

Plaintiffs' Opposition attempts to shift the focus away from the transactions between Plaintiffs and the Russian hotels and focuses primarily on the initial aspect of the hotel stay: the on-line reservation. Even though Plaintiffs do not allege that any reservation was made in the District, Plaintiffs ignore the Russian connections and assert that this matter is governed by the CPPA simply because Marriott has represented that it is headquartered in the District. See, e.g., Plaintiffs' Opposition at 2, 3, 9-12, 22. This argument must fail.

2

Plaintiffs assert:

> As the First Amended Complaint makes clear, the representation that Marriott's corporate headquarters is located in Washington, D.C. is made in several places in Marriott's website. It appears in the "Corporate Information," "Careers," "Investor Relations," and "Our Brands" sections of the website. The representation is also made in Marriott's press releases, which are accessible on the website. This is the same website where guests make hotel reservations. Thus, the numerous representations about Marriott's location in the District made in the website provide a link between those representations and the transactions at issue.[5]
>
> The physical location where Marriott's website is hosted, whether in Frederick, Maryland or India is not transparent to the consumer and is entirely immaterial.

Plaintiffs' Opposition at 3 & n.5.

Plaintiffs essentially seek to regulate Marriott's business in Russia through its alleged website misrepresentations regarding Marriott's links to the District by making Marriott subject to the CPPA at the behest of plaintiffs resident anywhere in the world. On the Plaintiffs' theory, a person in Wyoming — or Warsaw, Poland, for that matter — could bring suit against Marriott under the CPPA based on no contacts whatsoever with the District, simply because of Marriott's alleged website misrepresentations regarding its links to the District. The CPPA, however, does not provide for such a remedy,[1] and no other consumer protection act has been given such a boundary-less interpretation. To the contrary, federal and state courts across the country have consistently rejected the proposition that any state has the right to project its regulatory authority beyond its borders to cover transactions that occurred entirely in other states. See, e.g., BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568-73 (1996) (Alabama jury could not apply Alabama law to punish defendant for transactions taking place in other states); Healy v. Beer Inst., Inc., 491

---

[1] See Marriott's Motion at 6-9.

3

U.S. 324, 336 (1989) (Commerce Clause "precludes the application of a state statute to commerce that takes place wholly outside of the State's borders") (internal quotation marks omitted); Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 582-83 (1986) (rejecting New York's attempt to "project its legislation" into other states) (internal quotation marks omitted); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818-23 (1985) (Kansas court could not apply forum law to claims of class members who had no connection with Kansas); Edgar v. MITE Corp., 457 U.S. 624, 641-43 (1982) (plurality op.) (Illinois anti-takeover statute impermissibly regulated transactions occurring entirely outside of Illinois); Bigelow v. Virginia, 421 U.S. 809, 824 (1975) ("[a] State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State"); New York Life Ins. Co. v. Head, 234 U.S. 149, 161 (1914) ("[I]t would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that State . . . without throwing down the constitutional barriers by which all the States are restricted within the orbits of their lawful authority and upon the preservation of which the Government under the Constitution depends."); In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 288 F.3d 1012, 1018 (7th Cir. 2002); In re Ford Motor Co. Bronco II Prod. Liab. Litig., 177 F.R.D. 360, 371 (E.D. La. 1997); Oliveira v. Amoco Oil Co., 726 N.E.2d 51, 61-62 (Ill. App. Ct. 2000), rev'd in part and vacated in part on other grounds, 2002 WL 1340895 (Ill. June 20, 2002); Duvall v. TRW, Inc., 578 N.E.2d 556, 559 (Ohio Ct. App. 1991).

B.    The CPPA Does Not Reach Consumer Transactions That Occurred Outside The District, Except In Limited Circumstances That Are Not Present Here.

Plaintiffs' Opposition states: "Marriott attempts to read protection of non-residents out of the CPPA . . . Any reading of the CPPA must be informed by reference to the international

4

obligations of the United States." Plaintiffs' Opposition at 17. Plaintiffs' assertion here is incorrect and involves a degree of word play. "Non-resident" can mean someone, such as Ms. Paliashvili, who resides in the District but is not a U.S. citizen. "Non-resident" can also mean someone, such as Plaintiffs Shaw and Charness, who live outside the District.

This distinction, however, is not central to Marriott's argument. Marriott's Motion plainly states that the CPPA does not reach consumer transactions that occurred outside the District, except in the limited circumstances described in the Williams case.[2] If the consumer transaction occurred inside the District, it is immaterial whether the plaintiff is a District resident, a nonresident in the sense of Ms. Paliashvili, or a nonresident in the sense of Shaw and Charness (i.e., if Shaw and Charness happened to be visiting the District and were victims of consumer fraud while in the District, they could invoke the CPPA). This was the holding in the Goshen case regarding New York's statute. See 746 N.Y.S.2d at 864 ("As both the text of the statute and the history suggest, the intent is to protect consumers in their transactions that take place in New York state. It was not intended to police the out-of-state transactions of New York companies, nor was it intended to function as a per se bar to out-of-state plaintiffs' claims of deceptive acts leading to transactions within the state"); see also In re Adelphia Communications Corp., 325 B.R. 89, 103 (Bankr. S.D.N.Y. 2005) ("The Goshen court held that application of the New York statute would not turn on the residency of the parties; it would instead protect consumers in their transactions that take place in New York State").

---

[2] Plaintiffs' attempt to analogize predatory loan practices in Williams with the instant case is disingenuous at best. In Williams, plaintiff sued upon a loan transaction in Maryland that was secured by D.C. property. The court expressly stated that the CPPA should apply to prevent loan and mortgage companies who engage in similar loan practices from evading the CPPA. No such facts are present in the instant case.

5

If, then, the focus of the dispute is on the consumer <u>transaction</u> and not the residence of the parties, all of the Plaintiffs' arguments about international treaties are irrelevant. Marriott's Motion does not assert that Paliashvili, or Shaw and Charness for that matter, should be treated any differently from Washington D.C. citizens and residents. The critical point is simply that the consumer transactions of which Plaintiffs complain did not occur in the District, or are otherwise linked to the District in any way.

C.  <u>The Legal Authority Upon Which Plaintiffs Rely Is Inapposite</u>.

Plaintiffs assert:

> Applying the protections of the CPPA to nonresident plaintiffs is also consistent with the approach taken by numerous courts in other states, which have certified classes consisting of nonresidents in consumer protection cases, including cases in New York, California and Illinois. For example, recently in <u>O'Neill v. St. Judge Med., Inc.</u>, the court denied a motion to dismiss a class action with international plaintiffs brought under Minnesota's consumer protection laws.
>
> As discussed above, the inclusion of nonresident plaintiffs also does not present a <u>jurisdictional</u> problem. In <u>Shutts</u>, the Supreme Court held that notice and failure to opt out were sufficient to exercise personal jurisdiction over nonresident absent class members. . . .
>
> The same rationale applied to the inclusion of international plaintiffs. There is no rule of law prohibiting the inclusion of international putative class members. In fact, a number of reported class actions include foreign plaintiffs among the absent class members and, to the contrary, international plaintiffs are often included in class actions.

Plaintiffs' Opposition at 22.

As discussed previously, the pivotal issue to determine the applicability of the CPPA is not the residency of the Plaintiffs, but rather where the consumer transaction at issue took place. The fact that certain courts have "certified classes consisting of nonresidents" tells us nothing.

6

The proper question is: where did the consumer transactions take place? None of the cases cited by Plaintiffs involved out-of-state consumer transactions.

The Plaintiffs' reference to the <u>Shutts</u> case and personal jurisdiction is baffling. The issue of personal jurisdiction over nonresident class members was not raised in Marriott's Motion and is premature. It should be addressed at the class certification stage, if that stage is ever reached. Notably, a point neglected to be mentioned by Plaintiffs' Opposition is that the <u>Shutts</u> holding undermines Plaintiffs' potential class action claims: Plaintiffs cannot use the forum state's laws for all plaintiffs in a nationwide class action absent "a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class." <u>Shutts</u>, 472 U.S. at 821. The Supreme Court thus held in that case that the Kansas court could not apply Kansas law to claims of class members who had no connection with Kansas. <u>Id.</u> Accordingly, it is very unlikely that D.C. law would apply to plaintiffs Shaw and Charness since neither appears to have any meaningful connection to the District.

D.    <u>Plaintiffs' Attempt To Focus This Litigation Solely On The On-Line Reservation Aspect Of The Transaction Is Disingenuous At Best</u>.

The Amended Complaint is based on alleged upcharges for stays in hotels in Moscow, Russia. Based on the Amended Complaint, the stays occurred in Russia, and the alleged upcharges, which occurred after the hotel stays, were first presented to the Plaintiffs in Russia. Plaintiffs' Opposition, however, focuses on the initial on-line reservation aspect of the entire hotel transaction to support their argument that the CPPA applies: "Marriott's deception, made as a D.C. corporation, led to this litigation." Plaintiffs' Opposition at 23. This argument strains credulity. Plaintiffs do not -- and cannot -- allege that (1) the hotel stays occurred in the District; (2) the Plaintiffs were charged in the District; or (3) Marriott accepted any of Plaintiffs' money in the District. Moreover, Plaintiffs do not even allege that the on-line reservations were made

7

by Plaintiffs in the District, or that the on-line reservation information was generated in the District. Instead, Plaintiffs simply make the bald assertion that the CPPA applies because Marriott allegedly made false and misleading statements in the District because it has represented that it is headquartered there. See, e.g., Plaintiffs' Opposition at 2, 9, 11, 22, 23.

Plaintiffs have cited no authority for dividing up a unitary consumer transaction such as staying in a hotel into slivers and then linking one sliver — in this case, the initial website reservation process — to the CPPA when the other components — the gravamen of the transaction — occurred thousands of miles from the District and cannot be governed by the CPPA.

E.    Plaintiffs' Equitable Estoppel Argument Is Fatally Flawed.

Plaintiffs invoke equitable estoppel as a legal theory for preventing Marriott from denying that it is "subject to the laws of the District of Columbia." Plaintiffs' Opposition at 15-16. Essential elements of a claim of equitable estoppel, however, include a misrepresentation, the plaintiff's reliance on the misrepresentation, and the plaintiff's prejudicial change of position in reliance on the misrepresentation. Goldberg-Marchesano-Kohlman v. Old Republic Surety Co., 727 A.2d 858, 862 (D.C. 1999). Plaintiffs have not alleged in their Amended Complaint, or even in their opposition memorandum, that they relied on the alleged website misrepresentations regarding Marriott's location in booking their hotels in Russia. Even if they were able to concoct an allegation of reliance, how did that reliance prejudice them? They would need to allege and prove that they would not have booked the hotels in Russia if they found out that Marriott was headquartered in Bethesda, Maryland and not in the District. Such an allegation would indeed be absurd.

8

F.  The Court's Consideration of Marriott's Exhibits in Support of Its Argument of Forum Non Conveniens Does Not Convert Marriott's Motion into One for Summary Judgment.

Plaintiffs erroneously claim that, if the Court considers the "affidavits and documentary evidence" submitted by Marriott in support of its Motion, then the Motion must be decided as one for summary judgment.  See Plaintiffs' Opposition at 4.  Marriott's exhibits were submitted in support of the argument that this Court should dismiss the case under the doctrine of *forum non conveniens*, which is a motion disputing the Court's exercise of jurisdiction, and not a motion under Rule 12(b)(6).  See Flynn v. Ohio Building Restoration, Inc., 260 F. Supp.2d 156, 161 (D.D.C. 2003) (quoting Land v. Dollar, 330 U.S. 731, 735 n.4 (1947)) (when a question of jurisdiction is raised the court may inquire into the facts as they exist by affidavit or other evidence, and consideration of documents outside pleadings does not convert motion into one for summary judgment); Transamerica Leasing Inc. v. La Republica de Venezuela, 21 F. Supp.2d 47, 55-56 (D.D.C. 1998) (court has wide latitude to consider matters outside the pleadings for jurisdictional purposes, and declarations and exhibits will not be stricken where they were offered to assist the Court in deciding existence of subject matter jurisdiction).

On the other hand, for purposes of the 12(b)(6) argument that the Plaintiffs' claims should be dismissed because the CPPA does not apply to this lawsuit, Marriott accepted as true Plaintiffs' factual allegations in the Amended Complaint, including their allegation that Marriott's headquarters are located in the District.  See Marriott's Motion at 4, 5, 9.  It is only in the context of a Rule 12(b)(6) defense for failure to state a claim upon which relief can be granted that, if matters outside the pleadings are considered by the Court, the motion should be disposed of as one for summary judgment under Rule 56.  See Flynn, at 161 (internal citation omitted) ("the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment.").  That is not the case here.

9

### III.   CONCLUSION

For these reasons, and for the reasons stated in its Motion to Dismiss, Marriott requests that this Court dismiss the entire action for failure to state a claim, and in the alternative, for *forum non conveniens*.

Dated:  August 15, 2005                                              Respectfully submitted,


  /s/  Benjamin S. Boyd_____
Benjamin S. Boyd (Bar No. 413698)

DLA Piper Rudnick Gray Cary US LLP
1200 Nineteenth Street, NW, 7th Floor
Washington, D.C.  20036
202-861-3900
202-223-2085 (facsimile)

  /s/ Jeffrey E. Gordon_____
John C. Dougherty (admission pending)
Jeffrey E. Gordon ( Bar No. MD23264)
Sonia Cho (Bar No. MD26995)

DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant
Marriott International, Inc.*