**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
BRITT A. SHAW, et al.            )
                                 )
        Plaintiffs,              )
                                 )
    v.                           )        Civil Action No. 05-1138 (GK)
                                 )
MARRIOTT INTERNATIONAL, INC.     )
                                 )
        Defendant.               )
_____)
```

<u>MEMORANDUM OPINION</u>

Plaintiffs, Britt A. Shaw, Irina Paliashvili, and Neal M. Charness filed this putative class action complaint against Defendant Marriott International, Inc. ("Marriott").[1] They allege unlawful trade practices in violation of the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28-3901, <u>et</u> <u>seq.</u>, and unjust enrichment.

This matter is before the Court on Marriott's Motion to Dismiss [Dkt. No. 7]. Upon consideration of the Motion, Opposition, Reply and the entire record herein, and for the reasons stated below, Marriott's Motion to Dismiss is **denied**.

---

[1] Marriott is a Delaware corporation. As discussed below, the location of Marriott's headquarters is disputed in this suit. Marriott operates over 2,600 hotels in the United States and 65 other countries and territories.

I.    **BACKGROUND**

A.    **Facts**[2]

This case involves Marriott's alleged "misrepresentations and omissions to its hotel guests -- Plaintiffs and [the putative] class members herein -- regarding pricing practices at Marriott's Moscow, Russia hotel properties." Am. Compl. ¶ 1.

According to Plaintiffs, prospective guests of Marriott's Moscow, Russia hotels log onto the Marriott website where Marriott provides price quotes in U.S. dollars. The Marriott website also provides a currency calculator that translates U.S. dollars into Russian rubles at the official exchange rate set by the Central Bank of Russia.

Upon checkout, Marriott renders the final bill in U.S. dollars, which is then converted into Russian rubles at an exchange rate that is higher than the official exchange rate set by the Central Bank of Russia. Guests pay the bill in rubles. They arrive home to discover on their credit card statements that the credit card company has converted the payment amount back into U.S. dollars at the lower, official exchange rate. As a result of this gap between the exchange rates, hotel guests pay a final price

---

[2] For purposes of ruling on a motion to dismiss, the factual allegations of the complaint must be accepted as true and liberally construed in favor of the plaintiff. See EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 625 (D.C. Cir. 1997). Therefore, the facts set forth herein are taken from the Plaintiffs' Amended Complaint or from the undisputed facts presented in the parties' briefs.

approximately 18 percent higher than the original price Marriott
quoted, and confirmed at the time of mailing the reservations, as
calculated on its website into Russian rubles, at the official
exchange rate set by the Central Bank of Russia.

Putative class representative Britt A. Shaw made a reservation
on the Marriott website on April 14, 2005 to stay at the
Renaissance Moscow Hotel (a Marriott hotel) on April 19, 2005. He
received a confirmation with a quoted room rate of U.S.$425 per
night. The currency calculator on Marriott's website indicated an
exchange rate of 27.78 Russian rubles per one U.S. dollar.

When he checked out of the Renaissance Moscow Hotel, his bill
was reflected in undefined units entitled "UNT"s. The bill showed
the room rate of 425.00, along with other hotel expenses, for a
total of "658.70 UNT." The bill indicated an exchange rate of 32
Russian rubles per UNT, for a total charge of 21078.40 rubles. He
paid his bill with his American Express card. When he received his
American Express statement, his hotel bill was charged at
U.S.$775.69, which reflects the credit card's conversion of the
21078.40 rubles into U.S. dollars at the official exchange rate of
27 Rubles per U.S. dollar.

Plaintiffs allege that Ms. Paliashvili, Mr. Charness, and
other putative class members had similar experiences as a result of
Marriott's misrepresentations.

Mr. Shaw is an American citizen who currently lives in London,

-3-

England but previously resided in New York; Ms. Paliashvili is a permanent resident of the District of Columbia; Mr. Charness is a resident of the state of Michigan.

### B.    Procedural History

On May 13, 2005, Plaintiffs filed this suit in the Superior Court of the District of Columbia.  Marriott removed the case to this Court on June 9, 2005.  Plaintiffs filed their Amended Complaint on July 1, 2005.  The Amended Complaint, filed under Rule 23 of the Federal Rules of Civil Procedure, alleges that Marriott's misrepresentations and omissions to its hotel guests regarding its pricing practices violated the CPPA and provided unjust enrichment to Marriott.  They seek an order enjoining Marriott from engaging in the complained of pricing practices, the greater of damages in the amount of $1,500 per violation or treble damages, a constructive trust or restitution of the monies wrongfully withheld by Marriott, as well as attorney's fees, interest and costs.

Marriott filed this Motion to Dismiss on July 21, 2005 [Dkt. No. 7].  Marriott claims that the Amended Complaint should be dismissed for failure to state a claim or, in the alternative, on the basis of <u>forum</u> <u>non</u> <u>conveniens</u>.  Plaintiffs filed an Opposition on August 3, 2005 [Dkt. No. 11], and Marriott filed a Reply on August 15, 2005 [Dkt. No. 13].

## II.  STANDARD OF REVIEW

A motion to dismiss should only be granted "when it appears

beyond doubt that, under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief." <u>Hishon v. King & Spaulding</u>, 467 U.S. 69, 73 (1984). Because such motions "summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, [they] should be treated with the greatest of care." <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1254 (D.C. Cir. 1987). Accordingly, the factual allegations of the Complaint must be presumed true and liberally construed in favor of Plaintiff. <u>Shear v. Nat'l Rifle Ass'n of Am.</u>, 606 F.2d 1251, 1253 (D.C. Cir. 1979).

Likewise, in considering a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all material factual allegations in the complaint. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Walker v. Jones</u>, 733 F.2d 923, 925-26 (D.C. Cir. 1984). However, the plaintiff bears the burden of establishing that the court has jurisdiction. <u>District of Columbia Retirement Bd. v. United States</u>, 657 F. Supp. 428, 431 (D.D.C. 1987), citing <u>KVOS, Inc. v. Associated Press</u>, 299 U.S. 269 (1936).

### III. ANALYSIS

    **A.   Marriott's Motion to Dismiss the Case for <u>Forum</u> <u>Non</u> <u>Conveniens</u> Is Denied Because the Private and Public Interest Factors Favor Litigation in the District of Columbia**

Marriott seeks to dismiss this case on the ground that Russia is a more convenient forum. The decision to dismiss on this basis

"is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). To prevail on a forum non conveniens motion, the moving party must pass a two part test. First, there must be an adequate alternative forum "in which the defendant is amenable to process." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). Second, if an alternative forum exists, the court must weigh a variety of "public interest" and "private interest" factors to determine which is the most appropriate forum for the case. Id. at 508-09. The burden of proving that an adequate alternative forum exists rests with the defendant. El-Fadl v. Cent. Bank of Jordan, 75 F.3d 668, 677 (D.C. Cir. 1996).

Marriott argues that Plaintiffs' claims should be dismissed on the basis of forum non conveniens because the events alleged in the Amended Complaint occurred in Russia. Accordingly, it argues, the case should be tried in Russia, under Russian law, where the "upcharging" in question actually occurred and where all the necessary evidence is located.

Marriott mischaracterizes Plaintiffs' claims. Plaintiffs clearly state that they "do not question the hotels' right, under Russian law and custom, to charge whatever it [sic] will." Pls.' Opp'n at 24. Rather, the Amended Complaint alleges that Marriott, a United States corporation, provided false representations to its prospective guests, at the time they sought information and made their reservations, regarding hotel pricing. As Plaintiffs

-6-

explain, "[t]he crux of Plaintiffs' claims is that Marriott, acting as [a] D.C.-based company, told prospective guests that they would pay certain rates for accommodations at its Moscow hotels, intending that these guests would rely on that information." Pls.' Opp'n at 23.

Plaintiffs claim that Marriott, by its misrepresentations, violated District of Columbia law, not Russian law. They claim that the development of Marriott's corporate policies, and the creation and publication of its website, occurred at Marriott's headquarters in the United States. Whether the use of an inflated currency conversion rate is legal under Russian law, or whether Marriott's business practices in Russia satisfy Russian legal requirements, is irrelevant. The ultimate location of Plaintiffs' hotel stays is irrelevant. Marriott's argument for dismissal on the basis of forum non conveniens is entirely contingent on its mischaracterization.

As to the existence of an adequate alternative forum, Marriott's expert on Russian law, William E. Butler, provides a Declaration stating that "[f]oreign citizens have the right to bring suit in [Russian courts] against a Russian juridical person (which I assume for purposes of this Declaration, the relevant Marriott hotels in Russia to be)." Pls.' Opp'n at 24, citing Butler Dec. ¶ 9. The Declaration does not address the question of whether the actual Defendant in this case, Marriott International,

Inc., could be sued in Russian courts. Nor does Marriott indicate that it would accept service of process and consent to such suit. Moreover, it is clear that discovery will be essential in this case to ascertain, _inter alia_, the nature of Marriott's corporate policies regarding price quotes and other website information. The record, including the Declaration, is barren regarding whether and to what extent such discovery procedures exist in Russia.

The Declaration focuses on the propriety of the Russian hotels' use of pre-arranged monetary units and their disclosure in Russia. As discussed above, that issue is irrelevant since it is not the subject of Plaintiffs' claim. Significantly, the Declaration does not address whether Plaintiffs' misrepresentation claims could be brought in Russian courts and whether such a cause of action even exists under Russian law. Accordingly, Marriott failed to meet its burden of "'provid[ing] enough information to enable the District Court' to evaluate the alternative forum." El-Fadl, 75 F.3d at 677 (quoting Reyno, 454 U.S. at 258).

In any event, even assuming Marriott is correct that Russia is an adequate alternative forum, it has failed to demonstrate that the balancing of public and private interest factors, which is the second step in the _forum non conveniens_ analysis, weighs strongly enough in its favor to warrant dismissal. See Friends for All Children, Inc. v. Lockheed Aircraft Corp., 717 F.2d 602, 607 (D.C. Cir. 1983) ("[W]e . . . find it unnecessary to resolve the

complicated question of whether adequate alternative fora are available because, even on the assumption that such fora exist, the other factors make it clear that the <u>forum</u> <u>non</u> <u>conveniens</u> motion should be denied."). This balancing is not a mechanical test; the public and private factors need not both weigh equally in favor of an alternative forum. <u>See</u> <u>Jackson v. American Univ.</u>, 52 F. App'x 518, 518-19 (D.C. Cir. 2002).

The private factors to consider include the ease of access to proof, the ability to compel the attendance of witnesses, costs of transporting witnesses, the ability of the court to enforce a judgment, and other expenses or inefficiencies. <u>Reyno</u>, 454 U.S. at 241 n.6. These factors overwhelmingly favor litigation in the District of Columbia over litigation in Russia. Although Marriott states with little explanation that the witnesses and evidence are more accessible in Russia, this assertion is contingent on its mischaracterization of Plaintiffs' claims as limited to the hotel checkout transaction. In fact, the proof in this case relates to the information available on Marriott's website and its accuracy, Marriott's process of selecting what information was made available, and the testimony of those who accessed and allegedly relied upon that information. As Plaintiffs point out, "[t]he witnesses and evidence related to Marriott's reservations practices are where those practices and policies are formulated, which is likely to be Marriott's headquarters." Pls.' Opp'n at 10. None of

-9-

these sources of proof is more easily accessed in Russia.

There is no question that testimony from Marriott's witnesses related to these claims is more accessible in the District of Columbia, as are business records and other documents. Marriott's assertion that it is headquartered in Maryland, rather than the District of Columbia, does not weigh in favor of Russia as a more appropriate forum since there is no dispute that it is headquartered in the United States. One of the named Plaintiffs, a central witness in the case, is a resident of the District of Columbia. Moreover, as Plaintiffs point out "[a]ll of the evidence in this case is in English. The Marriott reservation website, terms and conditions, reservation confirmations, and final bills issued by the hotel are in English," not Russian. Pls.' Opp'n at 25.

Public interest factors to be considered include administrative difficulties flowing from court congestion, the local interest in having localized controversies decided in a jurisdiction's home forum, the necessity to apply law foreign to the jurisdiction, and the burden of deciding a case involving foreign affairs. Gulf Oil, 330 U.S. at 508-09. While this case increases the burden on our courts, the District of Columbia has an interest in a matter brought by one of its residents under its consumer protection laws. Moreover, as the Court discusses below, Marriott has not demonstrated a need to apply Russian law in this case.

When Plaintiffs' claims are properly construed, it is clear that Russia is not a convenient forum for parties in this litigation, and that Russia does not have a greater interest in having this controversy decided there. For these reasons, the Court declines to exercise its discretion to dismiss the case under the doctrine of <u>forum</u> <u>non</u> <u>conveniens</u>.

**B.    Marriott's Motion to Dismiss the CPPA Claim (Count I) Is Denied Because the District of Columbia Has a Greater Interest than the Country of Russia in Application of Its Consumer Protection Laws**

Plaintiffs bring their misrepresentation action pursuant to the CPPA, D.C. Code §§ 28-3904(e), (f), (h).[3] They claim that "Marriott has made misrepresentations of material facts, failed to disclose a material fact which has a tendency to mislead and has offered services without the intent to sell them as offered, all in violation of [the CPPA]." Pls.' Opp'n at 1. Specifically, they allege that Marriott made the following misrepresentations of

---

[3] Sections 28-3904(e), (f), and (h) of the D.C. Code provide:

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to: . . .

(e) misrepresent as to a material fact which has a tendency to mislead;
(f) fail to state a material fact if such failure tends to mislead; . . .
(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered. . . .

material facts:  " [(1)] Marriott provides confirmed quotes for
room rates in U.S. dollars or dollar equivalents, [(2)] Marriott's
website contains a currency converter that a guest may use to
determine the amount that would be charged in local currency, [and
(3)] The currency converter utilizes official exchange rates."
Pls.' Opp'n at 7 (internal citations omitted).

Plaintiffs allege that these constitute misrepresentations
because Marriott failed to inform consumers of the following
material facts: "[(1)] The confirmed quoted U.S. dollar rate is not
what the consumer will be charged at the Moscow hotels, [(2)] The
amount that will be charged at the Moscow hotels will be in Russian
rubles at a rate unrelated to any official exchange rate, [and (3)]
The amount that will be charged at the Moscow hotels will be
upwards of 18% more than the rate quoted in US dollars."  Id.
(internal citations omitted).  Moreover, Plaintiffs claim Marriott
misled them by intimating through the presence of the currency
converter that any dollar conversion to local currency will be at
local exchange rates.

Marriott contends that the CPPA does not apply outside of the
District of Columbia.  Because Plaintiffs and their claims are not
sufficiently connected with the District of Columbia, it argues,
the CPPA is not applicable in this case.

"The Consumer Protection Procedures Act is a comprehensive
statute designed to provide procedures and remedies for a broad

spectrum of practices which injure consumers." <u>Atwater v. District
of Columbia Dep't of Consumer & Reg. Affairs</u>, 566 A.2d 462, 465
(D.C. 1989).  It is, "an ambitious piece of legislation which seeks
to prohibit a long list of 'unlawful trade practices.'" <u>DeBerry v.
First Gov't Mortg. & Investors Corp.</u>, 170 F.3d 1105, 1108 (D.C.
Cir. 1999) (<u>citing</u> <u>Howard v. Riggs National Bank</u>, 432 A.2d 701, 708
(D.C. 1981)).  "The purposes of the CPPA are to 'assure that a just
mechanism exists to remedy all improper trade practices [and to]
promote, through effective enforcement, fair business practices
throughout the community. . . .'" <u>Williams v. Central Money Co.</u>,
974 F. Supp. 22, 27 (D.D.C. 1997), (<u>citing</u> D.C. Code § 28-3901(b)).
As the statute itself states, it "shall be construed and applied
liberally to promote its purpose."  D.C. Code § 28-3901(c).[4]

    In a diversity case such as this,[5] "the law of the forum state
supplies the applicable choice-of-law standard." <u>Williams v. First
Gov't Mortgage & Investors Corp.</u>, 176 F.3d 497, 499 (D.C. Cir.

---

    [4] Arguing against any extraterritorial application of the
CPPA, Marriott cites to the New York courts' reading of the New
York Consumer Protection Act as "not intended to police the
out-of-state transactions of New York companies." <u>Goshen v. Mutual
Life Insurance Co. of New York</u>, 774 N.E.2d 1190, 1195-96 (N.Y.
2002).  By its terms, however, that Act is restricted to
transactions "in [New York] state." N.Y. Gen. Bus. Law. § 349(a)
(1980).  The CPPA contains no such limiting language.

    [5] Marriott removed to this court based on the Class Action
Fairness Act of 2005, which amended the diversity jurisdiction
statute to allow removal of class actions over $5,000,000, even
where the parties are not in complete diversity.  28 U.S.C. §§
1332(d).

1999) (<u>citing</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941)).  Under District of Columbia law, courts employ "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute."  <u>Washkoviak v. Student Loan Marketing Ass'n</u>, 900 A.2d 168, 180 (D.C. 2006) (internal quotations omitted).

Under this analysis, the Court must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review."  <u>Id.</u>  As part of this analysis, courts "also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered."  <u>Id.</u>

Plaintiffs, American citizens and a permanent American resident, seek to apply a District of Columbia statute to a dispute between plaintiffs from various local jurisdictions in the United States, including the District of Columbia, and a United States corporate defendant headquartered in the District of Columbia,[6]

---

[6] In its Reply, Marriott stated that "for purposes of the 12(b)(6) argument that the Plaintiffs' claims should be dismissed because the CPPA does not apply to this lawsuit, Marriott accepted as true Plaintiffs' factual allegations in the Amended Complaint, including their allegation that Marriott's headquarters are located

regarding policies and practices allegedly developed and adopted in the District of Columbia. The District of Columbia has a "strong interest in ensuring that its corporate citizens refrain from fraudulent activities." Washkoviak, at 181.[7] The District of Columbia, New York, and Michigan all have an interest in deterring and remedying improper business practices against their residents. The District of Columbia, with its interest in protecting consumers and promoting fair business practices by corporate entities headquartered within the city limits, has the most significant

---

in the District." Def.'s Reply at 9. At this stage in the proceedings, for the purposes of the 12(b)(6) motion, the Court must adopt the same approach and accept as true that Marriott is headquartered in the District of Columbia. Moreover, Plaintiffs point out that Marriott has held itself out as a District of Columbia corporation and has reaped the commercial advantages that go along with such representations. They argue that Marriott's current argument that it is headquartered in Maryland is a further misrepresentation, and that Marriott is equitably estopped from changing its position on the location of its headquarters. Pls.' Opp'n at 15-16. Although Plaintiffs do not plead a separate misrepresentation claim on this basis, the Court notes that Marriott's inconsistent positions further support the application of District of Columbia law in this case.

[7] According to D.C. Code § 28-3901, the purposes of the CPPA are to:

  (1) assure that a just mechanism exists to remedy all improper trade practices and deter the continuing use of such practices;

  (2) promote, through effective enforcement, fair business practices throughout the community; and

  (3) educate consumers to demand high standards and seek proper redress of grievances.

relationship to this case.[8]

Application of the Restatement factors also demonstrates the District of Columbia's greater interest in applying its law to this case. According to the Restatement, the relative importance of each factor varies depending on the nature of the tort involved. Restatement (Second) of Conflict of Laws § 145(2) cmt. f. In this vein, "the place of injury is less significant in the case of fraudulent misrepresentations." Id.; see also Washkoviak, 900 A.2d at 181-82. In this case, the injuries occurred where Plaintiffs "received the alleged misrepresentations." Washkoviak, 900 A.2d at 181. Even though this factor is accorded less weight in misrepresentation claims, it equally affects the District of Columbia, New York and Michigan.

The second Restatement factor, the place of the conduct causing the injury, weighs in favor of applying District of Columbia law. Plaintiffs have alleged that Marriott's pricing practices and policies, which caused the conduct that occurred in Russia, are developed at its headquarters in the District of Columbia. As the Court "'must construe the complaint in the light

---

[8] Marriott advocates for application of Russian law under its theory that the "essence" of Plaintiffs' claim is that "something nefarious occurred in Russia." Def.'s Reply at 2. As discussed above, the essence of Plaintiffs' claim is instead that something nefarious occurred at Marriott's headquarters in the District of Columbia. Construing Plaintiffs' claims as they have alleged them, the Court fails to perceive any Russian interest in application of its law to this case.

-16-

most favorable to [Plaintiffs]' and take 'the facts alleged in the
Complaint as true,'" the Court "must assume, for the purposes of
this [motion], that the conduct causing the injury occurred in the
District of Columbia." Id. (internal quotation omitted).

The third Restatement factor – domicile, residence,
nationality, place of incorporation and place of business of the
parties – also weighs in favor of applying District of Columbia
law.  The Court assumes, as it must at this stage, that Marriott is
headquartered in the District of Columbia.  Ms. Paliashvili is a
District of Columbia resident.  Although the other two named
Plaintiffs are not similarly connected to this jurisdiction, this
factor weighs in favor of applying the law of the District of
Columbia over any other jurisdiction.

As to the fourth Restatement factor, Plaintiffs allege they
purchased their tickets over the Internet, which does not point to
one jurisdiction having more interest than another.  See Medina v.
Am. Airlines, Inc., No. 02-22133, 2005 U.S. Dist. LEXIS 18916, at
*19 (S.D. Fla. July 5, 2005).

While this analysis is not merely a matter of "counting
contacts," Washkoviak, 900 A.2d at 181, the District of Columbia
clearly has a greater interest in the application of its consumer
protection laws to the dispute in this case as compared with the

other states.[9]  Even if the Court were to find that the District of Columbia has an equal interest in applying its laws, e.g. in the case of the two named Plaintiffs residing outside of this jurisdiction, District of Columbia law should still apply.  "[W]hen both jurisdictions have an interest in applying their own laws to the facts of the case, the forum law will be applied unless the foreign jurisdiction has a greater interest in the controversy."  Id. at 182 (citing Logan v. Providence Hosp. Inc., 778 A.2d 275, 278 (D.C. 2001)).

Marriott contends that the CPPA is not intended to have extraterritorial reach except in exceptional circumstances.[10]  However, courts in the District of Columbia have already concluded that its policies are advanced by application of the CPPA to cases involving non-District of Columbia consumers, merchants, and transactions.

In Williams v. First Gov't, 176 F.3d at 499, our Court of

---

[9]  Marriott does not indicate in its CPPA argument which jurisdiction's law should apply to Plaintiffs' claims.

[10]  In support of this proposition, Marriott cites to Nelson v. Nationwide Mortgage Co., 659 F. Supp. 611 (D.D.C. 1987), in which a District of Columbia plaintiff sued a Virginia corporation on the basis of a transaction that occurred in Virginia.  It is questionable whether that case is still good law in light of later decisions discussed, infra.  Marriott also relies on Jackson v. Culinary School of Washington, 788 F. Supp. 1233 (1992), rev'd, 27 F.3d 573 (D.C. Cir. 1994), vacated on other grounds, 515 U.S. 1139 (1995).  As Plaintiffs point out, however, the Court of Appeals in Jackson expressly declined to engage in choice of law analysis.  27 F.3d at 575 ("[W]e find it inadvisable to make pronouncements on the scope or application of D.C. law.").

Appeals upheld application of the CPPA to a claim by a District of
Columbia resident against a Maryland mortgage company arising out
of a transaction that occurred in Maryland.  It concluded that
Maryland had a policy interest in ensuring that lenders behave
fairly, and the District of Columbia had an interest in protecting
its citizens from predatory loan practices.  Id.  Because both the
District of Columbia and Maryland had an interest in the claims,
the court was required to apply District of Columbia law.  Id.
(citing Bledsoe v. Crowley, 849 F.2d 639, 641 n.1 (D.C. Cir. 1988)
("If the interests of the two jurisdictions in the application of
their law are equally weighty, the law of the forum will be
applied.").  Our Court of Appeals agreed with the district court
that defendants should not be allowed to evade District of Columbia
consumer protection laws simply by locating themselves across the
District line from the citizens they seek as customers.  Id.

    In Washkoviak, the District of Columbia Court of Appeals
applied the CPPA to a putative class action by two named Wisconsin
plaintiffs against Sallie Mae, a banking corporation with its
principal office in the District of Columbia.  900 A.2d at 177.
The loans out of which the plaintiffs' claims arose were entered
into and serviced outside of the District of Columbia.  Id.  As in
this case, the plaintiffs in Washkoviak claimed that "the deceptive
and unfair policies and practices at issue in this case were
formulated and conceived by Sallie Mae in the District of Columbia,

-19-

were directed by Sallie [sic] from the District of Columbia, and
emanated from Sallie Mae in the District of Columbia." Id. at 175.

The lower court, declining to apply the CPPA, had relied upon
the fact that "[a]ll of the activity related to [the plaintiffs']
loans occurred in Defendant's offices outside the District." Id.
at 177.  In reversing, the District of Columbia Court of Appeals
concluded that the governmental policies of Wisconsin and the
District of Columbia were in equipoise: Wisconsin had an interest
in protecting its residents, and the District of Columbia had an
interest in ensuring that its corporate citizens refrain from
fraudulent activities. Id. at 181.  Accordingly, the court applied
the law of the District of Columbia, the forum state. Id. at 182.

The District of Columbia has an even greater interest in
applying its law to this case than it did in Washkoviak, where no
plaintiffs had connections with this jurisdiction.  For all these
reasons, the Court concludes that at this stage in the proceedings
Plaintiff has alleged a claim under the CPPA.  Accordingly,
Marriott's motion to dismiss the CPPA claim (Count II) is denied.[11]

### C. Marriott's Motion to Dismiss the Unjust Enrichment Claim (Count II) Is Denied Because the Voluntariness of Plaintiffs' Payment Is a Disputed Question of Fact

Marriott argues that Plaintiffs' unjust enrichment claim is

---

[11] As in Washkoviak, the Court leaves open the possibility that
discovery may uncover evidence indicating that another jurisdiction
has a greater interest than the District of Columbia in the
resolution of this controversy.  900 A.2d at 183.

barred by the voluntary payment doctrine.  The voluntary payment doctrine is an old common law doctrine that bars a claim for restitution by a plaintiff "who volunteer[ed] payment under a claim of right with full knowledge of all relevant facts." <u>Avianca, Inc. v. Corriea</u>, No. 85-3277, 1992 U.S. Dist. LEXIS 4709, at *20 (D.D.C. Apr. 13, 1992).  Marriott argues that because Plaintiffs knew the exact amount in rubles that they were paying for their hotel stays, and they paid those amounts voluntarily, the voluntary payment doctrine precludes their claim.

A plaintiff may defeat the doctrine by showing that the payment was "not truly voluntary." <u>Id.</u> at *24.  This exception includes payments made under circumstances amounting to duress or business necessity.  <u>Id.</u>  Whether the duress exception applies in a given situation "is generally [a question] of fact, to be judged in light of all the circumstances surrounding a given transaction." <u>Randazzo v. Harris Bank Palatine, N.A.</u>, 262 F.3d 663, 669 n.1 (7th Cir. 2001).

Plaintiffs argue that the payments in this case were not truly voluntary.[12]  They argue that "[a]ny reasonable person trying to

---

[12] Marriott points out that Plaintiffs do not allege that Plaintiff Shaw, or any other Plaintiffs, paid under duress, coercion or any kind of circumstances making payment involuntary. The voluntary payment doctrine is a defense to be introduced by Defendant, however; Plaintiffs are not required to anticipate such defenses and disprove them in the complaint. See <u>Flying Food Group, Inc. v. NLRB</u>, No. 05-1395, 2006 U.S. App. LEXIS 30821, at *10 (D.C. Cir. Dec. 15, 2006) ("A plaintiff is not required to negate an affirmative defense in his complaint.") (internal citation

check out of a hotel in a foreign country would find it difficult if not impossible, under the circumstances, to refuse to pay their bill with no knowledge of what consequences such an action would engender." Pls.' Opp'n at 26.   Whatever the merits of this argument, Plaintiffs are certainly correct that it raises factual issues that cannot be resolved in the context of a motion to dismiss.  See Bova v. Cox Communications, Inc., 2002 U.S. Dist. LEXIS 4084, at *10-11 (W.D. Va. March 12, 2002) (finding application of the voluntary payment doctrine premature on a motion to dismiss as voluntariness of payment not apparent on the face of the complaint).

        Accordingly, Marriott's Motion to Dismiss the unjust enrichment claim (Count II) is denied.

**IV.  CONCLUSION**

        For the foregoing reasons, Marriott's Motion to Dismiss [Dkt. No. 7] is **denied**.

        An Order will issue with this Memorandum Opinion.

February 22, 2007                    /s/_____
                                     Gladys Kessler
                                     United States District Judge

omitted).

-22-