# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, *et al.*

    Plaintiffs,

    vs.

MARRIOTT INTERNATIONAL, INC.

    Defendant

_____

MARRIOTT INTERNATIONAL, INC.

    Defendant-Third Party Plaintiff,

    vs.

Civil Action No. 05-1138 (GK)

JOINT-STOCK COMPANY "GRAND HOTEL",
ZAO TVERSKAYA HOTEL,
OOO "AURORA-LUX",
INTERSTATE HOTELS CORPORATION
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203,
COLONY HOTELS AND RESORTS COMPANY
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203,
and
INTERSTATE HOTELS, LLC,
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203,

    Third-Party Defendants

**THE INTERSTATE PARTIES' PETITION TO DISMISS DEFENDANT MARRIOTT INTERNATIONAL'S THIRD-PARTY COMPLAINT PURSUANT TO THE CONVENTION ON THE RECOGNITION AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS AND THE FEDERAL ARBITRATION ACT**
**(ORAL ARGUMENT REQUESTED)**

Dated: June 25, 2007

Cecelia L. Fanelli (admission pending)
Victoria E. Brieant

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: (212) 806-5400
Facsimile: (212) 806-6006

Attorneys for Third-Party Defendants
Interstate Hotels Corporation,
Colony Hotels And Resorts Company, and
Interstate Hotels, LLC

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*, and Section 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. §201, *et seq.*, Third-Party Defendants Interstate Hotels Corporation, Colony Hotels and Resorts Company, and Interstate Hotels LLC (collectively, the "Interstate Parties") respectfully submit this Petition to Dismiss Defendant Marriott International's Third-Party Complaint Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act ("Petition"). The Interstate Parties seek an order: (1) dismissing Marriott International's Third-Party Complaint in its entirety with prejudice because of the existence of valid and enforceable arbitration agreements between Marriott International and the respective Interstate Parties to arbitrate all of the claims in Marriott International's Third-Party Complaint; and (2) awarding such other and further relief as this Court deems just and proper.

The Interstate Parties respectfully request oral argument in connection with this Petition.


Dated: June 25, 2007                    Respectfully submitted,

                                        /s/ Victoria E. Brieant
                                        _____
                                        Cecelia L. Fanelli (admission pending)
                                        Victoria E. Brieant (D.D.C. Bar No. NY0078)
                                        STROOCK & STROOCK & LAVAN LLP
                                        180 Maiden Lane
                                        New York, New York 10038
                                        Telephone: (212) 806-5400
                                        Facsimile: (212) 806-6006

                                        Attorneys for Third-Party Defendants
                                        Interstate Hotels Corporation; Colony Hotels
                                        and Resorts Company; and Interstate Hotels, LLC.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, *et al.*

      Plaintiffs,

      vs.

MARRIOTT INTERNATIONAL, INC.

      Defendant

_____

MARRIOTT INTERNATIONAL, INC.

      Defendant-Third Party Plaintiff,

      vs.

JOINT-STOCK COMPANY "GRAND HOTEL",
ZAO TVERSKAYA HOTEL,
OOO "AURORA-LUX",
INTERSTATE HOTELS CORPORATION
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203,
COLONY HOTELS AND RESORTS COMPANY
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203,
and
INTERSTATE HOTELS, LLC,
4501 N. Fairfax Dr., Ste. 500
Arlington VA 22203.

      Third-Party Defendants.

Civil Action No. 05-1138 (GK)

**MEMORANDUM OF LAW IN SUPPORT OF THE INTERSTATE PARTIES'
PETITION TO DISMISS DEFENDANT MARRIOTT INTERNATIONAL'S THIRD-
PARTY COMPLAINT PURSUANT TO THE CONVENTION ON THE RECOGNITION
AND ENFORCEMENT OF FOREIGN ARBITRAL AWARDS AND THE FEDERAL
ARBITRATION ACT**

Dated: June 25, 2007                     Cecelia L. Fanelli (admission pending)
                                         Victoria E. Brieant (D.D.C. Bar No. NY0078)

                                         STROOCK & STROOCK & LAVAN LLP
                                         180 Maiden Lane
                                         New York, New York 10038
                                         Telephone: (212) 806-5400
                                         Facsimile: (212) 806-6006

                                         Attorneys for Third-Party Defendants
                                         Interstate Hotels Corporation,
                                         Colony Hotels and Resorts Company, and
                                         Interstate Hotels, LLC

# TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ............................................................................................1

STATEMENT OF FACTS ..................................................................................3

I.     THE PARTIES TO THE THIRD-PARTY ACTION......................................3

II.    THE RELEVANT PROVISIONS OF THE LICENSE AGREEMENTS ..........................3

    A.     The Parties To The License Agreements ................................................3

    B.     Section 26.1 Of The License Agreements Is A Broad Arbitration Clause  That Encompasses "Any" Disputes Between Marriott International And  The Interstate Parties And Specifically Delegates Questions Regarding Arbitrability To The Arbitrators ...................................................................4

          1.     Section 26.1 Of The License Agreements Is The Broadest Possible Arbitration Provision And Requires "*Any* Dispute, Controversy, Or Claim" Between The Parties To Be Arbitrated in Stockholm, Sweden.........................................................4

          2.     The Parties Specifically Incorporated The UNCITRAL Arbitration Rules Into Their Arbitration Agreement, Thus Reserving The Question Of Arbitrability To The Arbitrators' Exclusive Power.........................................................5

III.    *SHAW V. MARRIOTT INTERNATIONAL* AND MARRIOTT INTERNATIONAL'S THIRD-PARTY COMPLAINT......................................6

    A.     *Shaw v. Marriott International:* Plaintiffs' Claims Against Marriott International Based Upon The Operation Of Its Website In The United States ................................................6

    B.     Marriott International's Third-Party Complaint Is Directly Premised Upon The License Agreements................................................7

SUMMARY OF ARGUMENT ..............................................................................9

ARGUMENT ..................................................................................................9

I.     STANDARD OF REVIEW ................................................................9

II.   MARRIOTT INTERNATIONAL'S CLAIMS ARE BARRED BY AN
      ARBITRATION AGREEMENT TO WHICH THE COURT MUST
      DEFER ...................................................................................................10

      A.    Controlling Standards:  There Is A Strong Presumption In
            Favor Of Arbitration, Especially In The Context Of
            International Arbitration ...............................................................10

      B.    The Convention On Recognition And Enforcement Of
            Foreign Arbitral Awards Mandates That The Court Compel
            Arbitration.....................................................................................12

            1.    The   Arbitration   Agreements   Are   "Written
                  Agreements Between The Parties To Arbitrate The
                  Dispute" ..............................................................................13

            2.    Sweden Is A Signatory Of The Convention ...........................13

            3.    The  Dispute  Here  Arises  Out  Of  Commercial
                  Relationships.......................................................................13

            4.    The Russian Parties Are Not United States Citizens
                  And The Agreements Involve Performance Outside
                  The United States ................................................................14

IV.   THE COURT MAY NOT ADDRESS THE QUESTION OF THE
      ARBITRABILITY OF MARRIOTT INTERNATIONAL'S THIRD-
      PARTY CLAIMS, BUT EVEN IF IT ADDRESSES THE QUESTION,
      IT MUST FIND THAT THESE CLAIMS ARE ARBITRABLE ....................15

      A.    The Court May Not Address The Question Of The
            Arbitrability Of Marriott International's Third-Party Claims
            Because The Terms Of Section 26.1 Unequivocally
            Establish That The Parties Delegated That Determination
            To The Exclusive Domain Of The Arbitration Panel ...........................15

      B.    Even If The Court Addresses The Issue Of Arbitrability, It
            Must Find That Marriott International's Claims Are
            Arbitrable Because They Indisputably Arise Out Of And
            Relate To The Agreements .................................................................17

            1.    A Valid Agreement To Arbitrate Exists Between
                  The Parties ..........................................................................17

            2.    Applicable Precedent And The Facts Here Establish
                  That Section   26.1 Is A Broad Arbitration Clause
                  And Marriott International's Claims "Touch Upon"
                  The License Agreements.........................................................18

ii

a)    Section 26.1 Contains The "Paradigm" Of A Broad Arbitration Provision............................................................18

b)    Because Section 26.1 Is A Broad Arbitration Clause, This Court Need Only Find That The Allegations Of The Third-Party Complaint "Touch" Matters Contained In The Agreement To Hold These Claims To Be Arbitrable...................................................................18

V.    CONCLUSION...........................................................................................22

# TABLE OF AUTHORITIES

## CASES

*Aliron International, Inc. v. Cherokee Nation Industries, Inc.,*
 Civ. A. No. 05-151 (GK), 2006 WL 1793295 (D.D.C. June 28, 2006)............................11

*Avue Technols. Corp. v. DCI Grp. LLC,*
 Civ. A. No. 06-327 (JDB), 2006 WL 1147662 (D.D.C. Apr. 28, 2006) ..........................16

*Bautista v. Star Cruises,*
 396 F.3d 1289 (11th Cir. 2005) ...................................................................................10, 11

*Beiser v. Weyler,*
 284 F.3d 665 (5th Cir. 2002) ...............................................................................................12

*Bergesen v. Joseph Muller Corp.,*
 710 F.2d 928 (2d Cir. 1983)..................................................................................................12

*Bykov v. Radisson Hotels International, Inc.,*
 No. 06-2102, 2007 WL 444956 (8th Cir., Feb. 12, 2007) .................................................21

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London),*
 923 F.2d 245 (2d Cir. 1991)...........................................................................................13, 18

*Dean Witter Reynolds Inc. v. Byrd,*
 470 U.S. 213 (1985)...............................................................................................................11

*Dowley v. Dewey Ballantine, LLP,*
 Civ. A. No. 05-622 (EGS), 2006 WL 1102768 (D.D.C. Apr. 26, 2006)....................17, 19

*Filanto v. Chilewich International Corp.,*
 789 F. Supp. 1229 (S.D.N.Y. 1992)...............................................................................11, 12

*First Options of Chicago, Inc. v. Kaplan,*
 514 U.S. 938 (1995)...............................................................................................................16

*Gutierrez v. American International Insurance Co. of P.R.,*
 247 F. Supp. 2d 87 (D.P.R. 2003)...................................................................................12, 13

*\*In re NBR Antitrust Litig.*, 207 Fed. Appx. 166 (3d Cir. 2006) ......................................17, 19, 20

*\*Khan v. Parsons Global Services, Ltd.,*
 __ F. Supp. 2d __, 2007 WL 960115 (D.D.C. Mar. 30, 2007) ......10, 12, 13, 14, 18, 20, 21

*Lander Co. v. MMP Investments, Inc.,*
    107 F.3d 476 (7th Cir. 1997) ...................................................................14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
    473 U.S. 614 (1985)..................................................................11, 18, 19

*Moses H. Cone Mem'l Hospital v. Mercury Construction Corp.,*
    460 U.S. 1 (1983)..........................................................................10, 11

*Shaw v. Delta Airlines, Inc.,*
    463 U.S. 85 (1983)...............................................................................12

*Shaw v. Hyatt International Corp.,*
    461 F.3d 899 (7th Cir. 2006) ...............................................................21

*Shaw v. Marriott International, Inc.,*
    474 F. Supp. 2d 141 (D.D.C. 2007) ....................................................6, 7

*Shearson/American Express, Inc. v. McMahon,*
    482 U.S. 220 (1987)..............................................................................10

*\*Wal-Mart Stores Inc. v. PT Multipolar Corp.,*
    202 F.3d 280 (9th Cir. 1999) .........................................................15, 16

## STATUTES

9 U.S.C. § 1, *et seq.*...................................................................................1

9 U.S.C. § 201, *et seq.*.................................................................1, 9, 11, 13

9 U.S.C. § 202.................................................................................10, 12

9 U.S.C. § 206..................................................................................1, 22

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, and Section 206 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention"), 9 U.S.C. § 201, *et seq.*, Third-Party Defendants Interstate Hotels Corporation ("IHC"), Colony Hotels and Resorts Company ("Colony"), and Interstate Hotels LLC ("IHL") (collectively, the "Interstate Parties") submit this Memorandum of Law in Support of their Petition to Dismiss Defendant Marriott International's Third-Party Complaint Pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the Federal Arbitration Act ("Petition").    The Interstate Parties seek an order dismissing Marriott International's Third-Party Complaint in its entirety with prejudice because the purely contractual claims raised therein are governed by valid and enforceable arbitration clauses in the hotel License Agreements among the parties ("License Agreements" or "Agreements").

## INTRODUCTION

Marriott International filed its Third-Party Complaint against the Interstate Parties in flagrant breach of a valid and enforceable agreement to arbitrate "any dispute, controversy or claim arising out of or relating to" the very contracts that it expressly relies upon in asserting its purported claims.    The Third-Party Complaint alleges a single claim for express contractual indemnity against each of the three Interstate Parties, which claims allegedly arise under Section 25.3 of the License Agreements ("Section 25.3").    Suffice it to say that Section 25.3 provides no basis whatsoever for any alleged indemnity.    However, this Court may not adjudicate the merits of these frivolous claims because "any dispute, controversy or claim" that Marriott International believes exists between it and the Interstate Parties must be arbitrated.    Simply stated, the entire Third-Party Complaint is improper and Marriott International is barred from litigating its alleged claims before this Court.

The Convention mandates the arbitration of Marriott International's claims because all four requirements for its application are present here: (1) there are explicit, detailed written arbitration agreements contained in Section 26.1 of each Agreement; (2) they provide for arbitration in Sweden, a signatory to the Convention; (3) the parties' relationship is a commercial one; and (4) several parties to the Agreement are not United States citizens and the Agreements contemplate performance abroad. To dismiss Marriott International's claims, the Court thus need only decide that valid, enforceable agreements to arbitrate exist here, which fact is not contestable. Indeed, the Court may not even address the threshold question of the arbitrability of Marriott International's Third-Party Complaint: the parties specifically assigned that inquiry to the exclusive province of the arbitration panel by agreeing to follow the arbitration rules of the United Nations Commission on International Trade Law ("UNCITRAL"), which empower the arbitration panel to decide its own jurisdiction.

Yet, even if the Court addresses the issue of arbitrability, which it may not, it must dismiss Marriott International's Third-Party Complaint in its entirety because the Agreements contain broad arbitration clauses expressly requiring the parties to arbitrate **"any dispute, controversy, or claim arising out of or relating to"** those Agreements. To find that this broad clause applies to Marriott International's third-party claims, the Court need merely find that those claims "touch matters" contained in the Agreements. Marriott International cannot credibly dispute that its express contractual indemnity claims, which are irrevocably grounded on Sections 7.1(A) and 25.3 of the Agreements, "touch matters" in those Agreements. If Marriott International wishes to test these untenable claims against the Interstate Parties, then the Convention and the FAA require it to do so before an arbitration panel in Stockholm, Sweden.

## STATEMENT OF FACTS

### I.    THE PARTIES TO THE THIRD-PARTY ACTION

Marriott International is an international hotel chain. Six hotels in Russia are Marriott-branded hotels. Third-Party Complaint ("TPC") ¶¶ 1, 20. Three of these Marriott-branded hotels in Russia are franchised hotels ("Franchised Hotels") located in Moscow: (1) the Moscow Marriott Grand Hotel, owned by unserved third-party defendant Joint-Stock Company "Grand Hotel," a Russian company; (2) the Moscow Marriott Tverskaya Hotel, leased by unserved third-party-defendant ZAO Tverskaya Hotel, a Russian company; and (3) Moscow Marriott Royal Aurora Hotel, leased by unserved third-party defendant OOO "Aurora Lux," also a Russian company.[1] *Id.* ¶¶ 20-26. Pursuant to management agreements with each of the respective Russian Parties, the Interstate Parties manage the three Franchised Hotels as follows: (1) IHC manages the Grand Hotel; (2) Colony manages the Tverskaya Hotel; and (3) IHL manages the Royal Aurora Hotel. *Id*.

### II.    THE RELEVANT PROVISIONS OF THE LICENSE AGREEMENTS

#### A.    The Parties To The License Agreements

Marriott International's so-called indemnity claims allegedly arise under three nearly identical hotel License Agreements, by which the hotels gained the right to use the Marriott name, marks, and reservation system. On or about June 5, 1997, Joint-Stock Company Grand Hotel entered into an Agreement with Marriott Hotels of Amsterdam, B.V. ("MHA"), Marriott Worldwide Corporation ("Guarantor") as guarantor, and IHC as operator of the Hotel.

---

[1]    Hereafter, we refer to Joint-Stock Company "Grand Hotel," ZAO Tverskaya Hotel, and OOO "Aurora Lux" as the "Russian Parties."

Declaration of Cecelia L. Fanelli ("Fanelli Dec.") Ex. A.  On or about August 10, 1998, ZAO

Tverskaya Hotel entered into an Agreement with MHA, Guarantor, and Colony as operator.  *Id.*,

Ex. B.  Additionally, on or about August 10, 1998, OOO Aurora Lux entered into an Agreement

with MHA, Guarantor, and IHL as operator.  *Id.*, Ex. C.

**B.**    **Section 26.1 Of The License Agreements Is A Broad Arbitration Clause
That Encompasses "Any" Disputes Between Marriott International And
The Interstate Parties And Specifically Delegates Questions Regarding
Arbitrability To The Arbitrators**

Section 26.1 of each Agreement contains the broadest possible arbitration clause, which

unequivocally requires the parties to submit "any dispute, controversy, or claim arising out of or

relating to this Agreement" to arbitration in Stockholm, Sweden.  Moreover, the parties

specifically incorporated the UNCITRAL Arbitration Rules in their arbitration agreement, thus

reserving to the arbitration panel the power to decide on the arbitrability of any dispute arising

under the License Agreements.  In spite of Marriott International's explicit agreement to arbitrate

any claim relating to the Agreements, it has violated that agreement by filing a complaint whose

allegations are based solely upon the terms of these Agreements.

**1.**    **Section 26.1 Of The License Agreements Is The Broadest Possible
Arbitration Provision And Requires "*Any* Dispute, Controversy,
Or Claim" Between The Parties To Be Arbitrated in Stockholm,
Sweden**

The express language of Section 26.1 demonstrates that it is a broad arbitration provision.

Indeed, it contains terms making it the broadest possible arbitration provision to which parties

may agree.  Section 26.1, in relevant part, provides:

26.1    Arbitration.

A.    Except as otherwise specified in this Agreement, ***any
dispute, controversy, or claim arising out of or relating to this
Agreement***, or the breach, termination, or invalidity thereof, shall be
settled by arbitration ***in accordance with the UNCITRAL Arbitration***

*Rules* (or any similar successor rules thereto) as are in force on the date when a notice of arbitration is received. [. . .]

      B.      The appointing authority shall be the International Court of Arbitration of the International Chamber of Commerce.  The number of arbitrators shall be one unless any party to the arbitration requests otherwise in which case there shall be three. [. . .]

            *     *     *

The languages to be used in the proceedings shall be English and Russian. The place of arbitration shall be Stockholm, Sweden.

Fanelli Dec. Exs. A, B, and C § 26.1 (emphasis added).  Section 24.1 also states that the

Agreements are to be "governed exclusively by the substantive laws of the Russian Federation."

On its face, Section 26.1 relates to "any" dispute.  Moreover, the dispute need only "arise

out of" or "relate to" the Agreements.  In addition, the provision also encompasses questions of

breach, termination, and validity.  Pursuant to Section 26.1, Marriott International agreed that the

**only** tribunal authorized to adjudicate claims relating to the Agreements would be an arbitration

panel sitting in Stockholm, Sweden, appointed under the authority of the International Chamber

of Commerce, operating under the UNCITRAL Arbitration Rules, and applying Russian law.  It

is impossible to imagine claims that fall more squarely within the broad agreement to arbitrate in

Section 26.1 of the Agreements than ones alleged to arise under Sections 7.1(A) and 25.3 of

those very same Agreements.

      **2.**      **The Parties Specifically Incorporated The UNCITRAL Arbitration Rules Into Their Arbitration Agreement, Thus Reserving The Question Of Arbitrability To The Arbitrators' Exclusive Power**

The parties specifically incorporated the UNCITRAL Arbitration Rules into their

arbitration agreement.  Fanelli Dec. Exs. A, B, and C § 26.1.  Article 21(1) of the UNCITRAL

rules empowers the arbitrator "to rule on objections that it has no jurisdiction, including any

objections with respect to the existence or validity of the arbitration clause or the separate

5

arbitration agreement."  Fanelli Dec. Ex. D Art 21(1).  The parties thus agreed to remove any threshold questions regarding arbitrability from the province of the Court and agreed that the arbitrators exclusively would adjudicate such issues.  *See id.*  Yet, Marriott International now purports to ask this Court to adjudicate third-party claims allegedly arising under express provisions of the Agreements, even though it previously agreed to remove even the threshold question of the arbitrability of those asserted claims from the power of this or any other Court.

### III.    *SHAW V. MARRIOTT INTERNATIONAL* AND MARRIOTT INTERNATIONAL'S THIRD-PARTY COMPLAINT

#### A.    *Shaw v. Marriott International:*  Plaintiffs' Claims Against Marriott International Based Upon The Operation Of Its Website In The United States

Plaintiffs in the first-party litigation against Marriott International purport to represent a class composed of persons who stayed at four Marriott-branded hotels in Moscow after making reservations on Marriott International's website.  Plaintiffs claim that the website misrepresented the hotel rooms to be approximately 18 percent less expensive than they actually were.  Shaw Complaint ¶¶ 37-61.  Based on this conduct, Plaintiffs asserted two causes of action against Marriott International:  (1) violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code, § 28-3901, *et seq.*; and (2) unjust enrichment.  *Id.* ¶¶ 71-86.[2]

---

[2]    The Interstate Parties note that the Court, in its February 22, 2007 decision denying Marriott International's motion to dismiss Plaintiffs' complaint on the ground of *forum non conveniens*, affirmed the view that Plaintiffs' claims are based solely on alleged misrepresentations on Marriott International's Internet website.   The Court emphatically rejected Marriott International's assertion that the case hinged on whether the hotels' conduct comported with Russian law, ruling that "[w]hether Marriott's business practices in Russia satisfy Russian legal requirements is irrelevant.  The ultimate location of Plaintiffs' hotel stays is irrelevant."  *Shaw v. Marriott International, Inc.*, 474 F. Supp.2d 141, 145 (D.D.C. 2007).  Instead, the Court ruled, "[t]he crux of Plaintiffs' claims is that Marriott, acting as [a] D.C.-based company, told prospective guests that they would pay certain rates for accommodations at its Moscow hotels,

**B.    Marriott International's Third-Party Complaint Is Directly Premised Upon The License Agreements**

As the description of the Third-Party Complaint below makes clear, Marriott International fashions its indemnity claims against the Interstate Parties wholly from the terms of the Agreements, namely sections 7.1(A) and 25.3.

For example, in Paragraph 36, Marriott International sets forth and relies upon a selectively quoted version of Section 7.1(A) (Reservation System) of the Agreements in an attempt to manufacture some alleged obligation on the part of the Interstate Parties with regard to what Marriott International terms "rates." TPC ¶ 36. After alleging this "obligation" on the part of the Interstate Parties under Section 7.1(A), Marriott International claims an indemnity from the Interstate Parties under Section 25.3, a provision regarding "representations and warranties" made at the time of contracting. *Id.* ¶¶ 37, 38, 39. In paragraph 40 of the Third-Party Complaint, Marriott International sums up its contract claims against the Interstate Parties and expressly acknowledges that its claims are based upon and connected to the License Agreements:

> ***Under all of the above provisions***, [*i.e.*, Sections 7.1(A) and 25.3], . . . the Interstate Entities have the obligation to indemnify Marriott to the full amount expended by Marriott in connection with defending against claims based on or arising from a ***breach of their representations, warranties and covenants in connection with the performance of their obligations under the license agreements***.

*Id.* ¶ 40 (emphasis added).[3]

_____

intending that these guests would rely on that information." *Id.*

[3]    Marriott International relies on the License Agreements throughout the Third-Party Complaint in formulating its claims. *See* TPC ¶ 34 ("***Under all three license agreements***, the Interstate Entities are, as Operators of the Marriott Franchised Hotels, solely responsible for establishing all prices, rates and charges in connection with the operation of the Marriott Franchised Hotels." (referring to alleged obligations under Section 7.1(A)); ¶ 48 ("***In each of the***

As the above facts demonstrate, the issues of whether Section 7.1(A) creates any rights for Marriott International and whether Section 25.3 actually provides an indemnity to Marriott International – both of which the Interstate Parties strenuously deny – are not properly before this Court.  It suffices for the Interstate Parties to note that Marriott International premises its express contractual indemnity claims on rights and duties it alleges to exist under the License Agreements, thereby automatically triggering the application of Section 26.1 and barring Marriott International from litigating these claims in this Court.[4]

---

*three license agreements for the Marriott Franchised Hotels*, the Lessees and the Interstate Entities agreed to indemnify Marriott to the full amount expended by Marriott in connection with defending against claims based on or arising from a breach of their representations, warranties and covenants in connection with the performance of their obligations *under the license agreements*."); ¶ 49 ("If the Plaintiffs prove the allegations and claims they have asserted against Marriott in the Amended Complaint as set forth above, the Lessees and Interstate Parties will be liable to Marriott *under their indemnification obligations* for the full amount of any recovery Plaintiffs obtain from Marriott."); ¶ 53 ("*Under Section 25.3*, Interstate Hotel Corporation, as Operator *under the Marriott Grand License*, agreed to indemnify Marriott against claims based on or arising from a breach of any of the representations, warranties and covenants *contained in Section 25.3*."); ¶ 54 ("The Plaintiffs' Amended Complaint is based on claims and allegations that, if true, would constitute *a breach of the Marriott Grand License* by . . . Interstate Hotel Corporation."); ¶ 59 ("*Under Section 25.3*, Colony Hotel and Resorts Company, as Operator *under the Tverskaya License*, agreed to indemnify Marriott against claims based on or arising from a breach of any of the representations, warranties and covenants *contained in Section 25.3*."); ¶ 60 ("The Plaintiffs' Amended Complaint is based on claims and allegations that, if true, would constitute *a breach of the Tverskaya License* by . . . Colony Hotels and Resorts Company."); ¶ 65 ("*Under Section 25.3*, Interstate Hotels LLC, as Operator *under the Aurora License*, agreed to indemnify Marriott against claims based on or arising from a breach of any of the representations, warranties and covenants *contained in Section 25.3*."); and ¶ 66 ("The Plaintiffs' Amended Complaint is based on claims and allegations that, if true, would constitute *a breach of the Aurora License* by . . . Interstate Hotels LLC.") (emphasis added in all cases).

[4]    Marriott International also brings purported indemnity claims against the three unserved Russian Parties based on the License Agreements.  Marriott International asserts an alleged right to an indemnity against the Russian Parties under Section 20.2(A) (Indemnification).  Marriott also alleges a right to an indemnity against the Russian Parties under Section 25.1(E) (Owner/Lessee Acknowledgments, Representations, Warranties and Covenants), which is an analogous provision to Section 25.3 regarding the Owner and Lessees.  TPC ¶¶ 38-39, 51-52, 57-58, 62-63.

## SUMMARY OF ARGUMENT

The Court should dismiss the Third-Party Complaint in its entirety with prejudice because each of the four elements for dismissal under the Convention is met here: (1) there are explicit, detailed written arbitration agreements in Section 26.1 of the Agreements; (2) the arbitration will take place in Sweden, a country that has signed the Convention; (3) the Agreements concern commercial relationships involving the franchising and management of hotels; and (4) the Russian Parties are parties to the Agreements, which involve performance in Russia. Moreover, the Court may not address the question of the arbitrability of Marriott International's claims because the parties contractually agreed to delegate the adjudication of that question exclusively to the arbitrators by adopting the UNCITRAL Arbitration Rules in Section 26.1 of the Agreements. Yet, even if the Court does address arbitrability, it must dismiss the third-party claims with prejudice because Section 26.1 is the broadest possible arbitration provision, and the indemnity claims alleged under Section 25.3 unequivocally "arise out of" and "relate to" those Agreements. Indeed, Marriott International's entire Third-Party Complaint is premised on the allegation that the Interstate Parties are somehow liable to it for "claims based on or arising from a breach of their representations, warranties and covenants [*i.e.*, in Section 25.3] in connection with the performance of their obligations under the license agreements [*i.e.*, under Section 7.1(A)]." TPC ¶ 40.

## ARGUMENT

### I.    STANDARD OF REVIEW

The Interstate Parties' Petition is governed by the particularly deferential standard under the Convention, 9 U.S.C. § 201, *et seq.* The Convention mandates that a court defer to international arbitration if: (1) there is a written agreement between the parties to arbitrate the

dispute; (2) the arbitration will take place in a country that has signed the Convention; (3) the

dispute arises out of a commercial relationship; and (4) at least one party to the arbitration

agreement is not an American citizen or the parties' contract involves performance abroad.

9 U.S.C. § 202; *see also Khan v. Parsons Global Servs., Ltd.*, __ F. Supp.2d __, 2007 WL

960115, at *7 (D.D.C. Mar. 30, 2007).  Under the Convention, "a court conducts 'a very limited

inquiry'" – *i.e.*, it "must order arbitration unless . . . the four jurisdictional prerequisites are not

met."  *Bautista v. Star Cruises,* 396 F.3d 1289, 1294 (11th Cir. 2005) (affirming an order

compelling arbitration).

   Under the "very limited inquiry" that this Court may undertake, it is clear that all four

prerequisites are met here.

## II.    MARRIOTT INTERNATIONAL'S CLAIMS ARE BARRED BY AN ARBITRATION AGREEMENT TO WHICH THE COURT MUST DEFER

   As the discussion below demonstrates, there could not be a more compelling case than

this one for dismissal because of the presence of a valid and binding agreement to arbitrate.

### A.    Controlling Standards:  There Is A Strong Presumption In Favor Of Arbitration, Especially In The Context Of International Arbitration

   The Federal Arbitration Act ("FAA") embodies "a congressional declaration of a liberal

federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury

Constr. Corp.*, 460 U.S. 1, 24 (1983).  This clear "policy favoring arbitration[] requir[es] that the

[courts] rigorously enforce agreements to arbitrate."  *Shearson/American Express, Inc. v.

McMahon*, 482 U.S. 220, 226 (1987) (citation omitted).  Federal law "requires a liberal reading

of arbitration agreements," such that "any doubts concerning the scope of arbitrable issues

should be resolved in favor of arbitration, whether the problem at hand is construction of the

contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22 n.27, 24-25. In commenting upon the FAA's presumption of arbitrability, this Court declared that, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted disputes." *Aliron Int'l., Inc. v. Cherokee Nation Industries, Inc.*, Civ. A. No. 05-151 (GK), 2006 WL 1793295, at *2 (D.D.C. June 28, 2006) (Kessler, J.) (citations omitted; emphasis added). The FAA "leaves no place for the exercise of discretion . . . but instead mandates that . . . courts ***shall*** direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The presumption in favor of arbitration is "even stronger in the context of international commercial transactions." *Filanto v. Chilewich Int'l Corp.*, 789 F. Supp. 1229, 1241 (S.D.N.Y. 1992) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), *appeal dismissed*, 984 F.2d 58 (2d Cir. 1993)). The liberal federal arbitration policy "applies with special force in the field of international commerce." *Mitsubishi,* 473 U.S. at 631. Indeed, adherence to arbitration agreements is of such importance to international commerce that the United States has signed a treaty intended to ensure that courts enforce international arbitration agreements – the Convention. *See Bautista*, 396 F.3d at 1295 (Convention "generally establishes a strong presumption in favor of arbitration of international commercial disputes"). The United States' adherence to the treaty is codified at Chapter Two of the FAA. *See* 9 U.S.C. §201, *et seq*.

Courts have consistently stated that the Convention "should be interpreted broadly to effectuate its recognition and enforcement purposes." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 933 (2d Cir. 1983). Thus, for the Convention to apply, the dispute need merely relate

11

to an arbitration agreement covered by the Convention. To "'relate[] to' means simply to have a 'connection with' or 'reference to.'" *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (quoting *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 97 (1983)). "[W]henever an arbitration agreement falling under the Convention could ***conceivably*** affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Id.* (emphasis added). Finally, the broad language of the Convention mandates that courts not lose "sight of the narrow scope of inquiry required by the Arbitration Convention." *Filanto*, 789 F. Supp. at 1238-39.

These precedents, as applied to the facts of this case, leave no room for doubt that Marriott International's claims must be arbitrated.

**B.    The Convention On Recognition And Enforcement Of Foreign Arbitral Awards Mandates That The Court Compel Arbitration**

The Convention mandates the enforcement of an agreement to arbitrate where: (1) there is a written agreement between the parties to arbitrate the dispute; (2) the arbitration will take place in a country that has signed the Convention; (3) the dispute arises out of a commercial relationship; and (4) at least one party to the arbitration agreement is not an American citizen or the parties' contract involves performance abroad. *See Khan*, 2007 WL 960115, at *7; 9 U.S.C. § 202. Because all four elements of this test are indisputably met here, the FAA and the Convention mandate that the Court grant this Petition and dismiss Marriott International's Third-Party Complaint in its entirety with prejudice. *See, e.g., Gutierrez v. American Int'l Ins. Co. of P.R.*, 247 F. Supp.2d 87, 89-90 (D.P.R. 2003) ("[i]t is well-established that once there is a binding agreement to arbitrate, courts lack discretion and must enforce the agreed-upon arbitration proceeding"; enforcing arbitration under the Convention).

### 1.    The Arbitration Agreements Are "Written Agreements Between The Parties To Arbitrate The Dispute"

Under controlling precedent and the facts here, it is indisputable that Section 26.1 constitutes a "written agreement between the parties to arbitrate the dispute."  Article II.2 of the Convention states that "the term 'agreement in writing' shall include an arbitral clause in a contract or an arbitration agreement. . . ."  Convention Art. II.2.  Section 26.1(A) of the Agreements provides, in pertinent part, that "*any dispute, controversy, or claim arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof, shall be settled by arbitration*. . . ."  Fanelli Dec., Exs. A, B, and C ¶ 26.1(A) (emphasis added).  Section 26.1 is clearly "an arbitral clause in a contract."  Convention Art. II.2.  As a result, the threshold question of the existence of a written agreement to arbitrate the dispute is satisfied beyond dispute here.  *See Gutierrez*, 247 F. Supp.2d at 90 (inclusion of arbitration provision in joint venture agreement satisfied requirement of written agreement for application of the Convention).

### 2.    Sweden Is A Signatory Of The Convention

Section 26.1(B) of the Agreements provides that "[t]he place of the arbitration shall be Stockholm, Sweden.  Fanelli Dec. Exs. A, B, and C § 26.1(B).  Sweden has signed the Convention.  9 U.S.C.A. § 201, Historical and Statutory Notes (listing signatories).  Thus, "the locus of the arbitration is in a country that is a signatory to the N.Y. Convention," and the second requirement for dismissal is satisfied.  *Khan*, 2007 WL 960115, at *7.

### 3.    The Dispute Here Arises Out Of Commercial Relationships

The Agreements clearly establish international "commercial relationships" between the parties.  The Agreements involve, *inter alia*, the right to use the Marriott name on hotels in Russia in exchange for royalty payments.  TPC ¶¶ 21, 23, 25.  In other words, the Agreements involve a United States company licensing its marks for use in Russia.  *Cf. David L. Threlkeld &*

13

*Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 251 (2d Cir. 1991) (contracts for the purchase and sale of commodities futures in London, England, by a Vermont-based corporation constituted a contract involving international commerce for purpose of compelling arbitration under the Convention and the FAA); *see also Khan*, 2007 WL 960115, at *8 (contract "where services are provided . . . in exchange for monetary payments" contract arises "out of a commercial relationship" for purposes of the Convention).  It cannot be credibly doubted that the License Agreements constitute "international commerce."  The third element for dismissal under the Convention is met here.

### 4.    The Russian Parties Are Not United States Citizens And The Agreements Involve Performance Outside The United States

The fourth and final prong of the Convention's test mandating arbitration is clearly satisfied because the Russian Parties are not United States citizens.  According to Marriott International's Third-Party Complaint, each of the Russian Parties "is a company organized and existing under the laws of the Russian Federation, with its principle [sic] place of business in Russia."  TPC ¶¶ 2-4.  Thus, the final requirement, that "at least one party to the arbitration agreement is not an American citizen," is met here as well.  *Khan*, 2007 WL 960115, at *7.

Moreover, because the hotels are located in Russia, this requirement is satisfied for the additional reason that the Agreements are "contract[s] involving performance in a foreign country."  *Lander Co. v. MMP Investments, Inc.*, 107 F.3d 476, 482 (7th Cir. 1997) (Posner, J.) (where contract entirely between two U.S. companies contemplated sale of goods in Poland, contract had "reasonable relation with a foreign country" and Convention applied).

*        *        *

Because the Convention's standards are indisputably met, the Court's "limited inquiry" is at an end, and Marriott International's Third-Party Complaint should be dismissed in its entirety.

14

IV.   **THE COURT MAY NOT ADDRESS THE QUESTION OF THE
      ARBITRABILITY OF MARRIOTT INTERNATIONAL'S THIRD-
      PARTY CLAIMS, BUT EVEN IF IT ADDRESSES THE QUESTION,
      IT MUST FIND THAT THESE CLAIMS ARE ARBITRABLE**

Because all four elements of the Convention are satisfied, the Court need not address the

question of arbitrability to dismiss Marriott International's Third-Party Complaint.  Moreover,

because the parties specifically agreed to follow the UNCITRAL Arbitration Rules, which

empower the arbitration panel to determine its own jurisdiction, the Court may not address the

question of the arbitrability of the third-party claims.  However, even if the Court somehow

reaches this question, it must still find that the claims in the Third-Party Complaint are arbitrable

because they "arise out of" and "relate to" the Agreements.  In sum, whether or not the Court

addresses the issue of arbitrability, which it need not because the elements of the Convention are

satisfied, it must dismiss Marriott International's Third-Party Complaint.

A.   **The Court May Not Address The Question Of The Arbitrability Of Marriott
     International's Third-Party Claims Because The Terms Of Section 26.1
     Unequivocally Establish That The Parties Delegated That Determination
     To The Exclusive Domain Of The Arbitration Panel**

By incorporating the UNCITRAL Arbitration Rules into their arbitration agreements by

reference, the parties assigned the exclusive jurisdiction to determine the arbitrability of Marriott

International's claims to the arbitrators.  Thus, the Court may not address the question of the

arbitrability of Marriott International's claims against the Interstate Parties and must dismiss

those claims simply because a valid arbitration agreement exists here.

When parties incorporate the UNCITRAL Arbitration Rules into their agreement by

reference, the Court lacks authority to determine the question of arbitrability.  *Wal-Mart Stores

Inc. v. PT Multipolar Corp.*, 202 F.3d 280, 1999 WL 1079625 (9th Cir. 1999) (unpublished table

opinion).  In that regard, Article 21(1) of the UNCITRAL rules empowers an arbitration panel to

decide its own jurisdiction, by affording it the power "to rule on objections that it has no

jurisdiction, including any objections with respect to the existence or validity of the arbitration clause or the separate arbitration agreement." Fanelli Dec. Ex. D Art 21(1). In *Wal-Mart Stores*, the parties incorporated the UNCITRAL Arbitration Rules into their arbitration agreement by reference, and the court found that the arbitrators were empowered to decide threshold arbitrability questions. 2006 WL 1079625, at *2. "[H]olding that the parties agreed to abide by a system in which the tribunal rules on objections to its jurisdiction and the arbitrator, rather than the district court, . . . decide[s] whether the parties' disputes are arbitrable," the district court enjoined litigation instituted by defendant in an Indonesian court and ordered it to arbitrate its claims against plaintiff. *Id.* at *1-*2. Citing Article 21(1), the Ninth Circuit affirmed the lower court's decision. *Id.* at *2. Because the parties here have also incorporated the UNCITRAL Arbitration Rules into their Agreements, this Court should similarly rule that the parties "agreed to arbitrate arbitrability." *Avue Technols. Corp. v. DCI Grp. LLC*, Civ. A. No. 06-327 (JDB), 2006 WL 1147662, at *3 (D.D.C. Apr. 28, 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)), at *3. Thus, any issues regarding the arbitrability of Marriott International's third-party claims must be adjudicated by the arbitrators. *See id.*[5]

---

[5]    The recent decision in *Avue Technols.* makes clear that this Court likewise follows the Ninth Circuit's approach regarding the "arbitrability of arbitrability" when confronted with the parties' incorporation of arbitration rules that empower arbitrators to decide their own jurisdiction. In *Avue Technols.*, this Court found that the parties had agreed to "arbitrate arbitrability" when they incorporated the Commercial Arbitration Rules of the American Arbitration Association ("AAA") into their arbitration agreement by reference, because AAA Rule R-7(a) gives the arbitrator "the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." 2006 WL 1147662, at *5-*7. The Court thus ruled that it lacked authority to address whether the parties' dispute fell within the scope of the arbitration clause and left that question for the arbitration panel. *Id.* at *7.

**B.     Even If The Court Addresses The Issue Of Arbitrability, It Must Find That Marriott International's Claims Are Arbitrable Because They Indisputably Arise Out Of And Relate To The Agreements**

Even though the Court may not address the question of arbitrability under the parties' agreement, even if it does, the FAA's heavy presumption in favor of arbitration mandates that it find Marriott International's third-party claims under Section 25.3 of the Agreements to be arbitrable because those claims unquestionably arise out of and relate to the Agreements, in that they "touch upon" the Agreements.

The relevant precedent is straightforward and involves the application of a two-part test. As this Court has stated, "First, the Court must decide whether a valid agreement to arbitrate exists between the parties.  Second, it must decide whether the specific disputes fall within the scope of the agreement to arbitrate." *Dowley v. Dewey Ballantine, LLP*, Civ. A. No. 05-622 (EGS), 2006 WL 1102768, at *3 (D.D.C. Apr. 26, 2006) (citations omitted).  "Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than on the legal causes of action asserted." *Id.*  To fall within the scope of the arbitration clause, claims merely need to "touch upon" matters in the Agreement for them to be arbitrable. *See, e.g., In re NBR Antitrust Litig.*, 207 Fed. Appx. 166, 171-172 (3d Cir. 2006) (unreported table opinion).  Where, as here, the claims are irrevocably grounded on specific provisions of the Agreements, they indisputably "touch upon" the Agreements and must be arbitrated.  (*See* Facts Section III.B, *supra*).

**1.     A Valid Agreement To Arbitrate Exists Between The Parties**

The Interstate Parties have already demonstrated the existence of a valid agreement between the parties to arbitrate their claims.  *See* Section II.B.1, *supra*.  Thus, the first element of the test is satisfied.  *See Dowley*, 2006 WL 1102768, at *3 (valid arbitration agreement existed).

17

2.     **Applicable Precedent And The Facts Here Establish That Section 26.1 Is A Broad Arbitration Clause And Marriott International's Claims "Touch Upon" The License Agreements**

The second element is also satisfied here. Section 26.1 is a "broad" arbitration clause, and the allegations in the Third-Party Complaint obviously "touch" matters contained in the License Agreements.

a)     **Section 26.1 Contains The "Paradigm" Of A Broad Arbitration Provision**

It is black letter law in this District that, because Section 26.1 covers "any dispute arising out of or relating to this Agreement," it is "the paradigm of a broad [arbitration] clause." *Khan*, 2007 WL 960115, at n.14 (holding that plaintiffs' "allegations are all governed by the N.Y. Convention") (citation omitted).

b)     **Because Section 26.1 Is A Broad Arbitration Clause, This Court Need Only Find That The Allegations Of The Third-Party Complaint "Touch" Matters Contained In The Agreement To Hold These Claims To Be Arbitrable**

The presence of a broad clause means that arbitration "should be compelled 'unless it may be said with positive assurance that that arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *David L. Threlkeld & Co.* 923 F.2d at 251 (compelling arbitration under the Convention because clause requiring arbitration "of all disputes arising out of or in relation to" the contract was broad enough to reach claims arising under a separate but related contract without an arbitration clause). The question of "arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Mitsubishi Motors*, 473 U.S. at 626. "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the

construction of the contract language itself, or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* Moreover, where an arbitration clause is broad, a court's inquiry is particularly narrow: to compel arbitration, the Court need only find that the factual allegations in the complaint "touch" matters concerning the agreement containing the arbitration clause. *Dowley*, 2006 WL 1102768, at *9.

Applicable precedent demonstrates that the claims here "arise out of" and "relate to" the Agreements because the claims are based squarely on the terms of those very Agreements. Indeed, as the caselaw shows, courts routinely hold that claims "touch" upon agreements in far less compelling circumstances than those here. For example, the decision in *In re NBR Antitrust Litig.* demonstrates why Marriott International's claims for express contractual indemnity "touch" upon matters in the Agreements. In that case, ParaTec filed a cross-claim against its codefendants Uniroyal and Compton alleging that they breached their representations and covenants in Section 7.5 of an LLC Agreement, entitling them to an indemnity under that Section. *Id.* at 169. The LLC Agreement did not contain an arbitration clause, though other agreements related to the LLC Agreement did contain arbitration clauses. *Id.* at 169-70. To prove an entitlement to recover under Section 7.5 of the LLC Agreement, it would be necessary to prove that Uniroyal and Compton had breached their duties under the related agreements. *Id.* at 171. Thus, the Third Circuit held, even though the indemnity claim arose under an agreement without an arbitration clause, the claim "'touch[ed] matters' covered by an arbitration clause." *Id.* "Given the impossibility of reaching the merits of ParaTec's claim without resolving arbitrable questions," the court held that the indemnity claim had to be arbitrated. *Id.* at 172.

The rationale for finding that the indemnity claims here "touch" matters covered by an arbitration agreement is even stronger than it was in *In re NBR Antitrust Litig.* Marriott

International irrevocably grounds its Third-Party Complaint directly on the License Agreements themselves and not on some "related" agreement that does not contain an arbitration clause. *See* Facts Section III.B, *supra*. For example, Marriott International expressly alleges that, "[u]nder Section 25.3, [the Interstate Parties], as Operator[s] under the [License Agreements], agreed to indemnify Marriott against claims based on or arising from a breach of any of the representations, warranties and covenants contained in Section 25.3." TPC ¶¶ 53, 59, 65. It then claims that "[t]he Plaintiffs' Amended Complaint is based on claims and allegations that, if true, would constitute a breach of [the License Agreements] by [the Interstate Parties]," specifically the Interstate Parties' alleged duties regarding the establishment of "prices, rates and charges in connection with the operation of the Marriott Franchised Hotels" that allegedly existed under Section 7.1(A). *Id.* ¶¶ 34-36, 54, 60, 66. "Therefore," Marriott International concludes, the Interstate Parties "have a duty to indemnify Marriott against any recovery Plaintiffs may obtain from Marriott" under Section 25.3. *Id.* ¶¶ 56, 61, 67. Under more attenuated facts than exist here, the Third Circuit in *In re NBR Antitrust Litig.* found that "[t]here can be no doubt . . . that a claim for indemnification which is ***premised*** on a breach of the Related Agreements 'touches matters' covered by the Related Agreements." 207 Fed. Appx. at 171-72. (emphasis in original). If the indemnity claims in that case "touch[ed] matters" covered by the separate arbitration agreements, then this Court has no alternative but to find that Marriott International's contract claims "touch" matters covered by the License Agreements, upon which Agreements Marriott International relies and which contain express arbitration provisions.

*Khan* also illustrates why this Court should find that Marriott International's claims are arbitrable. In *Khan*, this Court held that the presence of an arbitration clause in a husband's employment agreement with defendant required that his wife's claims for negligence and

infliction of emotional distress against the husband's employer be arbitrated under the Convention.  The court reasoned that whatever relationship and duties might have existed between the employer and the employee's wife necessarily derived from the employee's relationship with his employer, which was governed by his employment agreement and its arbitration clause.  *Khan*, 2007 WL 960115, at *9.  Here, in contrast, Marriott International's claims do not merely derive from another person's arbitration agreement.  Marriott International directly asserts contract claims based on Sections 7.1(A) and 25.3 of the Agreement in an attempt to state a claim for express contractual indemnity.  Because this Court has decided that claims that are derivative of an agreement containing an arbitration clause are arbitrable, it clearly follows that claims, like those here, which are based directly on specific provisions of an agreement containing an arbitration clause must be arbitrated.  *See id.*

The allegations in Marriott International's Third-Party Complaint obviously "touch" matters covered by the License Agreements.  If Marriott International intends to pursue its third-party claims, it must arbitrate them in Stockholm, Sweden.[6]

---

[6]    Apart from Marriott International's obvious breach of its agreement to arbitrate these claims, its attempt to seek an indemnity from the Interstate Parties is clearly premature and wasteful of the time and resources of both the Interstate Parties and this Court.  Given the history of Plaintiffs' claims in other federal courts, it is highly questionable whether Marriott International's indemnity claims against the Interstate Parties will ever accrue in the first place. Just last year, the Seventh Circuit Court of Appeals held that Plaintiff Britt Shaw failed to state a claim under Illinois' consumer protection statute in a complaint that alleged the same conduct against Hyatt hotels in Moscow as Shaw alleges here against Marriott International.  *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006).  Moreover, earlier this year, in *Bykov v. Radisson Hotels Int'l, Inc.*, No. 06-2102, 2007 WL 444956 (8th Cir., Feb. 12, 2007) (per curiam) the Eighth Circuit Court of Appeals affirmed a grant of summary judgment against the plaintiff in another identical suit filed by the same law firm involving Radisson hotels in Moscow, because he could not satisfy the causation requirement of Minnesota's consumer protection statutes.  *Id.* at *1.  It is not apparent from the record that Marriott International has ever brought these decisions to the attention of this Court.  At the very least, these decisions show that many defenses going directly to the heart of Plaintiffs claims are available to Marriott International to

V.    **CONCLUSION**

For the foregoing reasons, pursuant to Section 206 of the Convention and the FAA, the Court should dismiss Marriott International's Third-Party Complaint with prejudice. In this case, all of the Third-Party Plaintiff's claims are arbitrable because the arbitration clause applies to "any dispute, controversy, or claim arising out of or relating to [the] Agreement[s]" that may arise between the parties. There is no further action that can be taken by this Court, and it is appropriate to dismiss the case against the Interstate Parties in its entirety with prejudice. Finally, the Interstate Parties respectfully request such other and further relief as this Court deems necessary and proper.

Dated: June 25, 2007                    Respectfully submitted,

                                        /s/ Victoria E. Brieant
                                        _____
                                        Cecelia L. Fanelli (admission pending)
                                        Victoria E. Brieant (D.D.C. Bar No. NY0078)
                                        STROOCK & STROOCK & LAVAN LLP
                                        180 Maiden Lane
                                        New York, New York 10038
                                        Telephone: (212) 806-5400
                                        Facsimile: (212) 806-6006

                                        Attorneys for Third-Party Defendants
                                        Interstate Hotels Corporation, Colony Hotels
                                        and Resorts Company, and Interstate Hotels, LLC.

---

defeat Plaintiffs' claims. Because Marriott International has brought this lawsuit in contravention of its duty to arbitrate, and needlessly forced the Interstate Parties to draft this Petition and this Court to decide it, the Interstate Parties respectfully request that this Court consider awarding the Interstate Parties their attorney's fees, costs, and expenses in making this Petition, if the Court finds it just and proper to make such an award.