UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRITT A. SHAW, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-1138 (GK) |
| v. | ) | |
| | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>PLAINTIFFS' MOTION FOR CLASS CERTIFICATION</u>

Plaintiffs Britt A. Shaw, Neal M. Charness, and Irina Paliashvili, on behalf of themselves

and all others similarly situated, pursuant to Rule 23(a) and 23(b)(3), respectfully move this

Court to enter an order determining that this action should be maintained as a class action.

Plaintiffs seek to certify a class defined as:

> All persons who booked a room reservation at a Marriott hotel
> property in Russia through the Marriott Reservation System, who
> received a room rate confirmation stated in U.S. Dollars, and
> whose final bill at checkout was stated in Russian Rubles.

As demonstrated in the supporting memorandum of law, exhibits and declarations filed

herewith, Plaintiffs have satisfied the requirements of Rule 23(a) and 23(b)(3).  Accordingly,

Plaintiffs request that this action be certified as a class action.

Respectfully submitted,

/s/ Randall S. Herrick-Stare

Of Counsel:                                 Paul D. Cullen, Sr.

Mark W. Borghesani, Esq.                    Joyce E. Mayers

c/o The Cullen Law Firm, PLLC               Randall Herrick-Stare

1101 30th Street NW, Suite 300              Amy M. Lloyd

Washington, DC 20007                        The Cullen Law Firm, PLLC

(202) 944-8600                              1101 30th Street NW, Suite 300

                                            Washington, DC 20007

                                            (202) 944-8600

                                            Counsel for Plaintiffs

Dated: October 5, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRITT A. SHAW, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-1138 (GK) |
| v. | ) | |
| | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

Plaintiffs Britt A. Shaw, Neal M. Charness, and Irina Paliashvili, on behalf of themselves

and all others similarly situated, pursuant to Rule 23(a) and 23(b)(3), submit this memorandum

of law in support of their Motion for Class Certification.

**I.      STATEMENT OF THE CASE**

**A.      Plaintiffs' Claims**

Plaintiffs allege that Defendant Marriott International, Inc. ("Marriott") has violated the

District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§28-3904 (a),

(e), (f), and (h) and (t).   Marriott *misrepresented* the room rates of its Russian hotel properties

through its centralized advertising and reservation systems.  Marriott *advertised* the room rates at

one price, confirmed the reservations at that same price, but charged a higher price at checkout.

Marriott displayed room rates on its website and quoted room rates on its central reservation

1

phone line, in U.S. Dollars. Written reservation confirmations were provided to all its Russian

hotel guests stating the room rate in U.S. Dollars. However, at checkout guests were presented

bills for rooms in rubles, that exceeded the confirmation room rate expressed in rubles at then

current exchange rates. Marriott failed to disclose to its Russian hotel guests in its advertising

and in its reservation confirmation practices, that the checkout rate for the hotel room in Rubles

would exceed the number of Rubles that could be acquired for the number of U.S. Dollars quoted

in its confirmation. Marriott advertised or offered hotel services in Russia to potential guests

without the intent to sell them as advertised or offered.

### B.    This Court Has Found That Plaintiffs Have Alleged a Good Cause of Action Under District of Columbia Law

This Court's Order denying Marriott's motion to dismiss made several rulings which

govern the issues related to class certification. This Court found that the District of Columbia

had a stronger interest in the resolution of the issues related to Marriott's conduct than do other

jurisdictions.[1] "The District of Columbia, with its interest in protecting consumers and

promoting fair business practices by corporate entities headquartered within the city limits has

the most significant relationship to this case."[2] Supporting that ruling, the Court noted that

Marriott had consistently represented itself to the public as headquartered in the District of

Columbia, but argued to the Court that it was, in fact, headquartered just outside the District, in

Bethesda, Maryland.[3] While stopping short of ruling on the actual location of its headquarters,

---

[1] *Shaw v. Marriott International, Inc.,* 474 F. Supp. 2d 141, 148 (D.D.C. 2007).

[2] *Id.*

[3] *Id.* at 148, n. 6.

2

the Court stated that "Marriott's inconsistent positions further support the application of District

of Columbia law in this case."[4]  This Court concluded, that the "District of Columbia clearly has

a greater interest in the application of its consumer protection laws to the dispute in this case as

compared with other states."[5]

Applying District of Columbia law, the Court found that the purposes of the Consumer

Protection Procedures Act are to "assure that a just mechanism exists to remedy all improper

trade practices and to promote, through effective enforcement, fair business practices throughout

the community."[6]  The Court rejected Marriott's argument that the CPPA does not have

extraterritorial reach involving non-District of Columbia consumers, holding that the District of

Columbia's interest "in ensuring that its corporate citizens refrain from fraudulent activities"

outweighs the interests of other jurisdictions in protecting their residents.[7]  Thus, it is the conduct

of the defendant, Marriott, which is the focus of this class certification proceeding.[8]


C.    Facts

Marriott has represented itself to the world as  headquartered in the District of Columbia.[9]

---

[4] *Id.*

[5] *Id.* at 149.

[6] *Id.* at 147, *citing* D.C. Code §28-3901(b) and *Williams v. Central Money Co.,*974 F. Supp. 22, 27 (D.D.C. 1997).

[7] *Id.* at 149-50, *citing Washkoviak v. Student Loan Marketing Association,* 900 A. 2d 168, 181 (D.C. 2006).

[8]  *See, In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 262 (D.D.C. 2002).

[9] Marriott's Answer to First Amended Complaint, ¶¶ 23-27, 29, 32-33, Docket No. 26.

Marriott controls a system of hotel properties throughout the world which operate under various Marriott owned trademarks, trade names, symbols and the like, the Marriott Propriety Marks.[10] This case involves seven Marriott branded properties located in Russia, three owned and operated directly by Marriott and four owned and operated by Marriott licensees under agreement with Marriott.[11]

All Marriott Russian hotel properties, whether they are Marriott owned or Marriott licensed, are operated in strict conformity with all aspects of the Marriott System specifying standards of operation.[12]   The System includes a Reservation System and a Standard Operating Procedure ("SOP")[13] Manual which detail the procedures, standards and specifications for its guest services.[14]   System procedures are applied uniformly in all Marriott branded hotels.[15]

All of the Russian Marriott hotel properties, whether owned directly or licensed, are

---

[10] *Id.*, ¶¶ 3, 16; Third Party Complaint ¶ 18, 20, Docket No. 30.

[11]  The seven Marriott Russian hotels properties are: Moscow Marriott Grand Hotel; Moscow Marriott Royal Aurora Hotel; Moscow Marriott Tverskaya Hotel; Renaissance Moscow Hotel; Courtyard Moscow City Center; Renaissance St. Petersburg Baltic Hotel; Renaissance Samara; See Exhibit 1, Bartlett Deposition, p. 23, line 13 to 18 and p. 24, line 7 to19; Marriott's Answer to First Amended Complaint, ¶ 6; Third Party Complaint ¶ 19, 20, Docket No. 30.

[12]  See e.g Exhibit 2, the Moscow Marriott Hotel Tverskaya License Agreement (Bates No: 1M-00273 - 361.) and particularly therein § 1.1 Definitions, § 6.1 Operation in Accordance with the System, § 6.2 Other Activities, and § 7.1 Reservation System.

[13]  See Exhibit 3, LoGiudice Deposition, p. 36, lines 12 - 14.

[14]  Exhibit 1, Bartlett Deposition, p. 17, line 16 to p. 19, line 18; See Exhibit 4 , McGrath Deposition, p. 176, lines 10-22.

[15]  See Exhibit 2, the Moscow Marriott Hotel Tverskaya License Agreement (Bates No: 1M-00273 - 361) and particularly therein § 1.1 Definitions, § 6.1 Operation in Accordance with the System, § 6.2 Other Activities, and § 7.1 Reservation System.

required to participate in the Marriott Reservation System, and all of the Marriott hotels at issue

in this lawsuit do participate in the Marriott Reservation System.[16]  Consumers may access the

reservation system several ways, including using Marriott's toll-free reservation phone number;

online at www.marriott.com; or through a travel agency.  Regardless of the manner in which a

consumer accesses the Marriott Reservation System, they are accessing a centralized database

known by the acronym "MARSHA."[17]  All information relating to the guest reservation process

is collected and recorded in the MARSHA database.  This includes room rates, reservation of

rooms, confirmation of the reservation, and the currency governing the transaction.[18]  The

Marriott Reservation System is controlled by Marriott.[19]  The management of each Marriott

branded hotel is required to notify the Marriott Reservation System of the most recent room rates

applicable in that hotel property, and of any changes in the room rates.[20]  The Marriott System

expressly prohibits a room charge to any hotel guest higher than the rate specified to the guest by

---

[16] Exhibit 1, Bartlett Deposition, p. 143, line 21 to p. 144, line 2.

[17] See Exhibit 5, Humberto Chacon Deposition, p. 41, line 9 to 13; McGrath Deposition, p. 75, lines 13-18.  Exhibit 6, MARSHA stands for "Marriott Automated Reservation System for Hotel Accommodations." LoGiudice Depo. p. 97, lines 14 - 19.  According to a "Glossary of Terms" produced by Marriott (Bates No: 10M-00007 - 00017), MARSHA is "the central reservation system that is used by Marriott for transient, group and contract bookings and also serves as an inventory management system from property guest rooms."  (Bates No: 10M-00012).

[18] Exhibit 4, McGrath Deposition, p. 97, lines 15-19.

[19] Exhibit 4, McGrath Deposition, p. 118, line 4 to p. 119, line 3; p. 162, line 12 to 163 line 8; p. 157, line 14 to p. 158, line 14. Exhibit 1, Bartlett Deposition, p. 143, line 21 to p. 144, line 2.

[20] See e.g, Exhibit 2 , the Moscow Marriott Hotel Tverskaya License Agreement (Bates No: 1M-00273 - 361.) § 7.1 Reservation System; Third Party Complaint ¶ 36.

the Reservation System at the time the guest reservation was made.[21]

When potential hotel guests access www.marriott.com[22] for a Marriott Russian hotel property, the guest may view detailed information describing the different hotels such as the most recent room rates applicable to that hotel.  Guests booking a reservation through the Marriott toll–free number are verbally given the same information that is available on the website.[23] Guests may book a reservation through the website or through the 1-888 number at the room rate advertised.  Upon booking the reservation, the Marriott Reservation System generates a reservation confirmation that includes the advertised and confirmed room rate.  Each hotel guest receives such a confirmation.  The reservation confirmation for the Marriott Russian hotels during the recovery period was always stated in U.S. Dollars.[24]

A guest may also book a reservation through a travel agent.  The travel agent accesses the same information available directly to potential Marriott hotel guests.[25]  A room reservation

---

[21] See e.g, Exhibit 2, the Moscow Marriott Hotel Tverskaya License Agreement (Bates No: 1M-00273 - 361.) § 7.1 Reservation System; Third Party Complaint ¶ 36.

[22] Exhibit 7, Marriott International, Inc.'s Response to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents (9/26/05), at Response to Interrogatory 3, regarding the various means of making room reservations.
Exhibit 8, "Reservation Process," a set of exemplar computer screens captured and produced by Marriott in 2007, but noting changes in 2005 and 2006 (Bates No: 4M-000543 to 551).

[23] See Exhibit 5, Deposition of Humberto Chacon, p. 39, lines 1-20; p. 41, lines 9-13.

[24] See Exhibit 9,  e.g. Email reservation confirmation received by Britt Shaw (Bates No: PLF 00059 - 60); See Exhibit 10 e.g. Deposition of Neal Charness at p. 12, line 12 to p. 13, line 9; p. 69, line 13 to p. 71, line 12; and p. 74, lines 20 to p. 75, lines 17, and Exhibit 11, email reservation confirmation received by Neal Charness (Bates No: PLF 00042 - 45).

[25] McGrath Deposition, p. 79, line 19 to p. 83, line 4.

booked through a travel agent is processed through the same Marriott Reservation System. When the reservation is booked, the hotel guest receives an itinerary incorporating the confirmation rate quoted to the travel agent stated in U.S. Dollars.[26]

At the time of check-out from a Marriott branded Russian hotel, guests are provided with a hotel bill showing an amount identified as "UNT" that is numerically identical to the U.S. Dollar value of its hotel charges. The bill also shows an amount in Russian Rubles.[27] The amount shown in Russian Rubles is considerably higher than the amount of rubles that could be acquired for the number of U.S. Dollars specified in the confirmation.[28] Stated differently, a hotel guest wishing to pay in cash could not buy enough rubles at a Russian bank to pay for his hotel room by exchanging only the amount in U.S. Dollars stated on his reservation confirmation.

Throughout all steps in the reservation process, Marriott represented that the confirmation rate would be one price and failed to disclose that the checkout rate would be higher than the rate stated on the room confirmation.[29] Marriott advertised or offered its hotel services without the intent to sell its services as advertised or offered. Marriott intentionally and consistently marked-

---

[26] See e.g. Exhibit 12, Deposition of Irina Paliashvili at p. 64, line 18 to p. 65, line 2; accompanied by Exhibit 13, her itinerary (Bates No: PLF 000073).

[27] See e.g. Exhibit 14, Britt Shaw's hotel bill (Bates No: PLF 000061 to 62); and Exhibit 15, a copy of the hotel bill (Bates No: 1M-00667) produced by Marriott in response to plaintiffs' request for production.

[28] See Exhibit 16, the comparison of the hotel translation rates (erroneously denoted as an "hotel exchange rate"), and the Central Bank exchange rates prepared and produced by Marriott (Bates No: 4M-001968 - 1973).

[29] See Exhibit 4, McGrath Deposition at p. 102, line 12 to p. 103 line 2; together with the comparison of the hotel translation rates (erroneously denoted as an "hotel exchange rate"), and Exhibit 16, the Central Bank exchange rates prepared and produced by Marriott (Bates No: 4M-001968 - 1973).

up the check out rate over the confirmation rate by 2.5% to 15.5% during the entire recovery

period.[30]

The experience of each Named Plaintiff[31] typifies the consistent deceptive practices

engaged in by Marriott.  Each Named Plaintiff booked a reservation with a Marriott branded

Russian hotel through the Marriott Reservation System.  Plaintiff Shaw viewed the room rate of

$425 U.S. Dollars per night at the Marriott Renaissance Moscow hotel on the Marriott website,

and was issued a confirmation at this same confirmation rate in U.S. Dollars.[32]  Plaintiff Charness

was quoted a room rate of $205 U.S. Dollars per night at the Marriott Moscow Grand Hotel on

the Marriott reservation phone line, and was issued a confirmation at this same confirmation rate

in U.S. Dollars.[33]  Plaintiff Paliashvili made a reservation at the Marriott Hotel Tverskaya

through a travel agent and was issued a confirmation showing a confirmation rate of $260 in U.S.

Dollars.[34]

Each Named Plaintiff had to pay more at the time of checkout than was quoted on the

reservation confirmation by the Marriott Reservation System in order to acquire enough Russian

Rubles to pay the bill.  Plaintiff Shaw's confirmation rate was $425 per night in U.S. Dollars, but

---

[30] Exhibit 16, Comparison of hotel translation rates and Central Bank rates (Bates No: 4M 001968 - 1973); Exhibit 7, Marriott International, Inc.'s Response to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, Interrogatory 2.

[31] Plaintiffs have moved for leave to amend the complaint to add Dr. Sarah Mendelson and the Center for Strategic and International Studies ("CSIS").  The experience of the additional plaintiffs is identical to that of the original named plaintiffs.

[32] Exhibit 17, Britt Shaw's reservation confirmation (Bates No: PLF 00059 - 60).

[33] Exhibit 18, Neal Charness' reservation confirmation (Bates No: PLF 00039 - 41).

[34] Exhibit 19, Irina Paliashvili's reservation confirmation (Bates No: PLF 00073).

his checkout rate was $488.09 per night in U.S. Dollars.[35]  Plaintiff Charness's confirmation rate

was $205 per night in U.S. Dollars, but his checkout rate was $236.90 per night in U.S. Dollars.[36]

Plaintiff Paliashvili's confirmation rate was $260 per night in U.S. Dollars, but her checkout rate

was $286.68 per night in U.S. Dollars.[37]

## II.    PLAINTIFFS MEET THE STANDARD FOR CERTIFICATION OF A CLASS

Congress designed class action proceedings to promote the efficient and economical

conduct of litigation.[38]   A class action enables the court "'to treat common claims together,

obviating the need for repeated adjudications of the same issues.'"[39]  In ruling on a motion for

class certification the court does not resolve the merits of plaintiff's claims, but assumes the

allegations of the Complaint are true.[40]  However, the court may look past the pleadings to

understand the claims, defenses, relevant facts, and applicable substantive law in order to make a

meaningful determination of the certification requirements under Rule 23, Fed. R. Civ.P.[41]

### A.    Class Definition

Although not a requirement under Rule 23, courts in this district have recognized a

---

[35] See Exhibit 20 for the detailed explanation of how the check-out rate was determined.

[36] *Id.*

[37] *Id.*

[38] *Aliotta v. Gruenberg,* 237 F.R.D. 4, 10 (D.D.C. 2006), *citing, Am. Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553 (1974).

[39] *Aliotta,* 237 FR.D. at 10, *citing, In rer Gen. Motors Corp. Pick-up Truck Fuel Tank Prod. Lia. Litig.,* 55 F.3d 768, 783 (3d Cir. 1995).

[40] *Wells v. Allstate Insurance Company,* 210 F.R.D. 1, 3 (D.D.C. 2002).

[41] *Id.*

"common sense" necessity to establish the existence of a class.[42]  In this respect, Plaintiffs need only establish that "the general outlines of the membership of the class are determinable at the outset of the litigation."[43]

Here, Plaintiffs seek to certify a class defined as:

> All persons who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, who received a room rate confirmation stated in U.S. Dollars, and whose final bill at checkout was stated in Russian Rubles.

The members of the class as described may be readily ascertained using the electronic records produced by Marriott.[44]  The criteria defining class membership "render the proposed class sufficiently discrete and identifiable so as to make management of the class administratively feasible."[45]

## B.    Rule 23(a) Prerequisites

### (1)    Numerosity

Rule 23(a)(1) requires that the putative class be so large that joinder of all class members would be impracticable.  The rule does not set a required minimum number of potential class

---

[42] *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority,* 239 F.R.D. 9, 25 (D.D.C. 2006); *Pigford v. Glickman,* 182 F.R.D. 341, 346 (D.D.C. 1998).

[43] *Id.*

[44] Exhibit 21, Brickell Declaration.

[45] *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority,* 239 F.R.D. at 25.

members; each case must be determined upon the circumstances involved.[46]  Courts in this

district have observed that a class of as few as forty members is sufficiently numerous to meet

the requirements of this rule.[47]  Plaintiffs need not provide a precise number of class members so

long as there is a reasonable basis for an estimate of the size of the class.[48]

Based upon an analysis of data produced to date by Marriott for the seven Marriott

Russian hotel properties,[49] there are no less than 110,522 guest stays which fit within the class

definition.[50]  The records produced by Marriott are currently incomplete.[51]  The number of guest

stays is likely to be considerably larger.  Each guest stay is based upon a separate reservation

confirmation.[52]  Certain class members may have multiple guest stays, but each guest stay

represents a separate violation of the CPPA.  A class of more than 110,000 is clearly too large to

join all class members in a single action.  Class members are readily identifiable through the

---

[46] *Disability Rights Council,* 239 F.R.D. at 25; *Johns v. Rozet,* 141 F.R.D. 211, 216
(D.D.C. 1992).

[47] *Disability Rights Council,* 239 F.R.D. at 25; *Wells v. Allstate Insurance Co.,* 210
F.R.D. 1. 5 (D.D.C. 2002); *Aliotta,* 237 F.R.D. at 10 (Class estimated at 100-130 members
sufficiently numerous to satisfy requirements of Rule 23(a)(1)).

[48] *Aliotta,* 237 F.R.D. at 10; *In re Lorazepam and Clorazepate Antitrust Litigation*, 202
F.R.D. 12, 26 (D.D.C. 2001).

[49] Marriott has not yet produced records as follows: Renaissance Samara: Date Gap –
9/12/03 thru 1/5/04; Renaissance Moscow: Date Gap – 5/13/02 thru 1/1/04; Moscow Marriott
Royal Aurora: Date Gap – 5/13/02 thru 1/2/04; Moscow Marriott Grand Hotel: Date Gap –
5/13/02 thru 1/2/04; Moscow Marriott Tverskaya: Date Gap – 5/13/02 thru 1/4/04. Exhibit 21,
Declaration of Timothy Brickell.

[50] Exhibit 21, Brickell Declaration.

[51] *Id.*

[52] *Id.*

11

records produced by Marriott.

**(2)    Commonality**

Rule 23(a)(2) requires that there be questions of law or fact common to the class.  The commonality requirement is satisfied "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."[53]  Rule 23(a)(2) "does not require commonality on each fact or every issue of law."[54]  Courts in this jurisdiction have consistently characterized this requirement as "easily met," finding that the "commonality threshold is not high."[55]  All that must be presented is even a single common issue "the resolution of which will advance the litigation."[56]

In this case, Plaintiffs allege that Marriott violated the CPPA by express misrepresentations and omissions of facts relating to room rates at its Russian hotel properties.  The factual issues relate to Marriott's centralized advertising and reservations systems.  Throughout the recovery period in this case, for its Russian hotels, Marriott advertised room rates on its website and quoted room rates on its central reservation phone line, in U.S. Dollars.[57]  For all its Russian hotel guests, Marriott issued a written confirmation which stated the room rate in

---

[53]  *Wells v. Allstate,* 210 F.R.D. at 6; *Aliotta,* 237 F.R.D. at 11.

[54]  *Disability Rights Council,* 239 F.R.D. at 25;

[55]  *In re Vitamins Antitrust Litigation,* 209 F.R.D. 251, 259 (D.D.C. 2002); *Disability Rights Council,* 239 F.R.D. at 26.

[56]  *Disability Rights Council,* 239 F.R.D. at 26, *citing, Sprague v. General motors Corp.,* 133 F.3d 388, 397 (6th Cir. 1998).

[57]  Exhibit 22, screen captures of Marriott Russian hotel reservations confirmations and reminders (Bates No: 9M-0095-310).

U.S. Dollars.  For all its Russian hotel guests, the reservation was entered in Marriott's central reservation system at the confirmation rate stated in U.S. Dollars.[58]  Each guest at a Marriott Russian hotel, at the time of checkout, was issued a final bill stated in Russian Rubles in an amount that exceeded the amount in U.S. Dollars that was stated in the guest's Marriott confirmation.  Marriott advertised the room rates at one price, confirmed the guest reservations at that same price, yet charged the guest a higher price at checkout.  Marriott failed to disclose to its Russian hotel guests in its advertising and in its reservation confirmation practices, that the checkout rate for the hotel room would be stated in Russian Rubles, in an amount that the guest could not acquire from any bank in Russia at the official exchange rate for the amount in U.S. Dollars stated in Marriott's confirmation.[59]

Based on these consistent facts, Marriott's liability to all class members may be resolved on any one of the following common legal issues:

(1)      Did Marriott violate D.C. Code §28-3904(e) by *misrepresenting* the room rate to be a specific amount in U.S. Dollars, when in fact the final charge for the room would be stated in Russian Rubles the acquisition of which would require an expenditure in U.S. Dollars that was materially higher than the amount stated in Marriott's confirmation?

(2)      Did Marriott violate D.C. Code §28-3904(f) by *failing to disclose* that the checkout rate for the hotel room would be stated in an amount in Russian Rubles which would result in a final charge in U.S. Dollars higher than the confirmation rate?

(3)      Did Marriott violate D.C. Code §28-3904(h) by *advertising* room rates to be a specific amount in U.S. Dollars when in fact, the final charge in Russian Rubles required an expenditure in U.S. Dollars that was materially higher than the

---

[58] Exhibit 23, entry for Britt Shaw in Marriott's cental reservation system (Bates No: 1M-00673).

[59] *See* Exhibit 7, Marriott's Answers to First Interrogatories, No. 2, p. 5-6.

advertised rates?

(4)    Did Marriott violate D.C. Code § 28-3904(h) by offering hotel services without the intent to sell them as advertised or offered?

A material representation is one that "involves information that is important to consumers, and hence, likely to affect their choice of, or conduct regarding, a product."[60] Express statements are material, and when false, are inherently likely to mislead.[61] Representations concerning the cost of a product or service are presumed to be material.[62]  On claims involving misrepresentation through a failure to disclose, the proof "necessary is that the facts withheld be material in the sense that a reasonable [person] might have considered them important in making this decision."[63] "Where members of a class are subject to the same misrepresentations and omissions, and where alleged misrepresentations fit within a common course of conduct, common questions exist and a class action is appropriate."[64]  Causation or proof that class members would have acted differently had they known the true facts is based upon a reasonable person standard, not individualized  proof.[65]

---

[60]  *Novartis v. Federal Trade Commission,* 223 F.3d 783, 786 (D.C. Cir. 2000), *citing In re Cliffdale Assoc., Inc.,* 103 F.T.C. 110, 165 (1984).

[61]  *In re Thompson Medical Co.,* 104 F.T.C. 648, 788, 818-19 (1984), *aff'd, Thompson Medical Co. V. FTC,* 791 F.2d 189 (D.C. Cir. 1986).

[62]  *Novartis,* 223 F.3d at 786, *citing 1983 FTC Policy Statement on Deception,* 103 FTC 110, 182.

[63]  *Id.*

[64]  *Wells v. Allstate,* 210 F.R.D. at 12; *In re Newbridge Networks Securities Litigation,* 926 F. Supp. 1163, 1176 (D.D.C. 1996).

[65]  *Wells v. Allstate,* 210 F.R.D. at 9.

14

Proof of the common legal issues for Marriott's violation of 28-3904(e), (f) and (h) is based on common facts relating to the operation of its centralized reservation system and Marriott's exclusive control over dissemination of the information contained in the reservations system. Marriott's central reservations system contained false representations for room rates at Marriott Russian hotels. That false information was uniformly disseminated, through Marriott's website, Marriott's telephone reservation number, and travel agents, to guests who made reservations at Marriott Russian hotels. Marriott failed to disclose to its hotel guests that the checkout rates for its Russian hotels would be calculated in a way that would result in a final charge higher than the confirmation rate. Proof of Marriott's liability is common for the class as a whole.

### (3) Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. The typicality requirement is satisfied "if each class member's claim arises from the same course of events that led to the claims of the representative parties."[66] The Supreme Court has explained that "the commonality and typicality requirements of Rule 23(a) tend to merge."[67] This is so because the class representatives, and each class member, make similar legal arguments to prove the common issues of defendant's liability.[68]

Each of the class representatives has a claim typical of the class as a whole.

---

[66] *Wells v. Allstate,* 210 F.R.D. at 6.

[67] *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 157 n.13 (1982); *Aliotta,* 237 F.R.D. at 11.

[68] *Wells v. Allstate,* 210 F.R.D. at 6; *Aliotta,* 237 F.R.D. at 11; *In re Lorazepam,* 202 F.R.D. at 27.

(1)     Plaintiff Shaw viewed the room rate of $425 U.S. Dollars per night at the Marriott Renaissance Moscow hotel on the Marriott website, and was issued a confirmation at this same confirmation rate in U.S. Dollars.  Shaw was issued a final bill in Russian Rubles which resulted in a checkout rate of $488.05 per night in U.S. Dollars.

(2)     Plaintiff Charness was quoted a room rate of $205 U.S. Dollars per night at the Marriott Grand hotel on the Marriott reservation phone line, and was issued a confirmation at this same confirmation rate in U.S. Dollars.  Charness was issued a final bill in Russian Rubles which resulted in a checkout rate of $236.90 per night in U.S. Dollars.

(3)     Plaintiff Paliashvili made a reservation through a travel agent at the Marriott Tverskaya hotel and was issued a confirmation at this same confirmation rate in U.S. Dollars.  Paliashvili  was issued a final bill in Russian Rubles which resulted in a checkout rate of $286.68 per night in U.S. Dollars.

Based on these facts, the Named Plaintiffs will prove Marriott's liability under the CPPA for the class as a whole.  The claims of the Class arise from the same wrongful course of conduct as alleged for the Named Plaintiffs.  The class representative's claims are typical of the claims of absent class members.

### (4)     Adequacy of Representation

Rule 23(a)(4) requires that the representative plaintiffs will fairly and adequately protect the interests of the class.  This element is satisfied where the named plaintiffs present no interests antagonistic to absent class members, and appear able to vigorously prosecute the interests of the class through qualified counsel.[69]

As established above, the Named Plaintiffs clearly share common interests with all of the

---

[69]  *Wells v. Allstate,* 210 F.R.D. at *10;  Aliotta,* 237 F.R.D. at 11-12;

16

proposed class members.[70]  Further, each has demonstrated a willingness to cooperate to the fullest extent necessary to pursue the claims asserted.  Each has been available to respond to extensive written discovery – four sets each of interrogatories and requests for the production of documents.  Each took time from work to travel to the District of Columbia for depositions, each deposition lasting several hours.[71]  Each Class Representative has demonstrated a full understanding of the factual basis for their claims.[72]

Finally, as discussed in the Declaration of Paul D. Cullen, Sr., Plaintiffs are represented in this action by The Cullen Law Firm, PLLC  which has extensive experience in class action litigation.[73]  Notably, Mr. Cullen, Sr. has been appointed class counsel in approximately eighteen cases covering a wide range of issues in numerous jurisdictions throughout the United States. Other attorneys from The Cullen Law Firm, including those appearing in this case, have also served as class counsel in a number of cases identified in the Cullen Declaration.   Further, The Cullen Law Firm has prosecuted a number of cases under the False Claims Act, involving complex issues of fraud against the federal government.[74]  In light of the foregoing common interests and goals of the class representatives named in this action and the proposed class

---

[70] By diligently prosecuting this case to date, Plaintiffs have demonstrated their capability of pursuing the interests of the class through qualified counsel.  Further Plaintiffs have expended substantial resources.

[71] Depositions of Britt Shaw, Neal Charness and Irina Paliashvili.

[72] *Id.; Lewis v. National Football League,* 146 F.R.D. 5, 10 (D.D.C. 1992)(Rule 23(a)(4) does not require that the class representatives have extensive knowledge of the case).

[73] Exhibit 24, Declaration of Paul D. Cullen, Sr.

[74] Exhibit 24, Declaration of Paul D. Cullen, Sr.

members, and the broad experience of class counsel, the representative parties will adequately represent all of the members of the class in this action under Rule 23(a)(4).

### C.    Rule 23(b) Prerequisites

In addition to establishing each of the requirements of Rule 23(a), Plaintiffs must satisfy the elements of one of the bases for certification under Rule 23(b).  Plaintiffs have moved for certification under Rule 23(b)(3), which requires that plaintiffs demonstrate that class issues predominate over individual issues, and that a class action is superior to other methods of resolving the claims presented.[75]

### (1)    Class Issues Predominate

"Predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position."[76]  The Supreme Court has stated that "predominance is a test readily met in certain cases alleging consumer or securities fraud. . . ."[77]  "Fraud perpetrated on numerous persons by the use of similar representations may be an appealing situation for a class action."[78]

Unlike some common law fraud cases, individualized issues of reliance will not

---

[75] *Wells v. Allstate,* 210 F.R.D. at 12; *Lewis v. National Football League,* 146 F.R.D. at 12.

[76] *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003);  *Aliotta,* 237 F.R.D. at 12.

[77] *Amchem Products, Inc. V. Windsor,* 521 U.S. 591, 625 (1997; *Wells v. Allstate,* 210 F.R.D. at 12.

[78] *Wells v. Allstate,* 210 F.R.D. at 9, *citing* Fed. R. Civ. P. Rule 23(b)(3) Advisory committee Notes, 1966 amendment.

18

predominate here. Consumer protection statutes like the CPPA which provide for a violation "whether or not any consumer is in fact misled, deceived, or damaged thereby"[79] require proof only of a tendency to mislead, and do not require proof of actual reliance.[80]   Proof that class members would have acted differently had they known the true facts is based upon a reasonable person standard, not individualized proof.[81]   Further, courts in this jurisdiction have ruled that in consumer fraud cases such as this one "alleging a large number people were defrauded in an identical manner, challenges pursuant to Rule 23(b)(3) because of reliance have usually been rejected, because reliance goes to the issue of damages rather than to the underlying, predominant, common issue of liability."[82]   Once liability is established, the prospect that a varying amount in damages may be awarded to individual class members "is not a valid reason to deny class certification."[83]   It is well settled that damages issues are of limited relevance at the class certification stage.[84]   A court should direct its inquiry primarily toward the issue of liability, rather than damages, in determining whether common issues predominate:[85]

---

[79]   D.C. Code §28-3904.

[80]   *Alicke v. MCI Communications Corp.,* 111 F. 3d 909, 912 (D.C. Cir. 1997); *FTC v. Freecom Communications, Inc.,* 401 F.3d 1192, 1203 (10th Cir. 2005).

[81]   *Wells v. Allstate*, 210 F.R.D. at 9.

[82]   *Wells v. Allstate,* 210 F.R.D. at 12; J*ohns v. Rozet,* 141 F.R.D. at 218, *citing Newberg on Class Actions* §4.26 (2d ed. 1985).

[83]   *Wells v. Allstate,* 210 F.R.D. at 9.

[84]   *Lewis v. National Football League,* 146 F.R.D. at 9,12, *citing Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188 (6th Cir. 1988).

[85]   *Sterling v. Velsicol Chemical Corp.,* 855 F.2d at 1196-97 (6th Cir. 1988); *Lorazepam,* 202 F.R.D. at 29-30.

> The factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issues of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.[86]

In this case, "the damages issue is simplified by the Consumer Protection Act, which provides for either treble damages or $1,500 per violation ...payable to the consumer. D.C. Code §28-3905."[87]   Plaintiffs here seek statutory damages of $1,500 for each guest stay, requiring no individualized proof of damages. The same analysis of Marriott's records as that required to identify class members will provide the number of violations supporting a $1,500 award.

As discussed above in demonstrating commonality under Rule 23(a)(2), Marriott's liability may be proved on facts and legal issues shared by the putative class as a whole. The predominance requirement is satisfied where there exists "generalized evidence which proves or disproves an element [of liability] on a class-wide basis."[88]   In that context, it is Marriott's conduct which is the focus of the inquiry.[89]   Marriott's advertising and reservation confirmation practices uniformly and consistently misrepresent the room rates its Russian hotel guests will be charged. Marriot's reservation and confirmation practices fail to disclose that the way in which the final room charge will be calculated in Russian Rubles will result in a checkout rate in U.S. Dollars higher than the confirmation rate in U.S. Dollars, misleading customers as to the actual room rate they will be charged for their stay at a Marriott Russian hotel property. Proof of

---

[86] *Id.*

[87] *Wells v. Allstate,* 210 F.R.D. at 9.

[88] *Lorazepam,* 202 F.R.D. at 29; *In re Vitamins,* 209 F.R.D. at 262.

[89] *In re Vitamins,* 209 F.R.D. at 262.

Marriott's liability will not vary from class member to class member.

### (2)    Class Resolution Is the Superior Method of Adjudication

A class action is preferred where, as here, "common questions of law or fact permit the court to 'consolidate otherwise identical actions into a single efficient unit.'"[90] This Court has already held that the District of Columbia has a stronger interest in the outcome of this litigation than other jurisdictions.[91]  "The District of Columbia, with its interest in protecting consumers and promoting fair business practices by corporate entities headquartered within the city limits has the most significant relationship to this case."[92]  The "District of Columbia clearly has a greater interest in the application of its consumer protection laws to the dispute in this case as compared with other states."[93]  Given the demonstrated commonality of the predominating factual and legal issues, class adjudication is unquestionably preferable to hundreds, if not thousands, of individual lawsuits brought in this court, or the Superior Court for the District of Columbia.

More likely, consumers injured by Marriott's unlawful conduct will receive no relief in the absence of certification of this matter as a class action.  Each class member's claim is too small to justify the cost of separate litigation.  "A class action is superior where, as here, plaintiff has alleged 'that a class action is the only viable way to bring this suit because the typical claims of class members are far too small for individual class members to maintain individual

---

[90] *Wells v. Allstate,* 210 F.R.D. at 12.

[91] *Shaw v. Marriott International, Inc.,* 474 F. Supp. 2d 141, 148 (D.D.C. 2007).

[92] *Id.*

[93] *Id.* at 149.

actions.'"[94]  As one court commented, "absent a class action, the individuals would likely be without a remedy and [defendant] would likely retain the benefits of its alleged wrongdoing."[95]

## V.    CONCLUSION

Marriott violated the CPPA by consistently misrepresenting room rates for its Russian hotel properties through its centralized advertising and reservations systems.  Marriott advertised and confirmed room rates at its Russian hotel properties at a specific rate in U.S. Dollars, but at checkout, charged for the room at an amount in Russian Rubles which could not be purchased at a Russian bank for the amount in U.S. Dollars stated on the reservation confirmation.  Marriott's liability can be established on common proof for the class as a whole.  Plaintiffs have satisfied the requirements for certification under Rule 23(a) and 23(b)(3).  The Motion for Class Certification should be granted.

Respectfully submitted.

| | |
|---|---|
| | /s/ Randall Herrick-Stare |
| Of Counsel: | Paul D. Cullen, Sr. |
| Mark W. Borghesani, Esq. | Joyce E. Mayers |
| c/o The Cullen Law Firm PLLC | Randall Herrick-Stare |
| 1101 30th Street NW, Suite 300 | Amy M. Lloyd |
| Washington, DC 20007 | The Cullen Law Firm, PLLC |
| (202) 944-8600 | 1101 30th Street NW, Suite 300 |
| | Washington, DC 20007 |
| | (202) 944-8600 |
| | |
| | Counsel for Plaintiffs |

---

[94]  *Wells v. Allstate,* 210 F.R.D. at 12, *citing In re Newbridge Networks Securities Litigation,* 926 F. Supp. at 1178.

[95]  OOIDA v. *Mayflower Transit*, 204 F.R.D. 138, 149 (S.D. Ind. 2001).