IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC.<br>10400 Fernwood Road<br>Bethesda, Maryland 20817<br><br>Defendant. | Civil Action No. 05-1138 (GK) |

**MARRIOTT INTERNATIONAL INC.'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendant Marriott International, Inc. ("Marriott"), by its attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves for partial dismissal of Plaintiffs' Second Amended Class Action Complaint and Demand for Jury Trial ("Second Amended Complaint"). The bases for this motion are set forth more fully in the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

Dated: November 2, 2007

/s/ Joel A. Dewey
Joel A. Dewey (Bar No. 358175)
Holly Butler (Bar No. 459681)
Sonia Cho (Bar No. MD 26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant,*
*Marriott International, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

Plaintiff,

v.

MARRIOTT INTERNATIONAL, INC.,
10400 Fernwood Road
Bethesda, Maryland 20817

Defendant.

Civil Action No. 05-1138 (GK)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MARRIOTT INTERNATIONAL INC.'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Dated: November 2, 2007

/s/ Joel A. Dewey
Joel A. Dewey (Bar No. 358175)
Holly Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)
*Attorneys for Defendant*
*Marriott International, Inc.*

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................ 1

II. LEGAL STANDARD ........................................ 3

III. ARGUMENT ........................................ 4

A. CSIS IS NOT A "CONSUMER" WITHIN THE MEANING OF THE CPPA AND DOES NOT HAVE STANDING TO BRING A CLAIM UNDER THE CPPA ........................................ 4

B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MISREPRESENTATION OF SOURCE OR GEOGRAPHIC ORIGIN BY MARRIOTT IN CONNECTION WITH THE SALE OF ITS GOODS AND SERVICES ........................................ 5

1. PLAINTIFFS ARE JUDICIALLY ESTOPPED FROM CLAIMING THAT MARRIOTT IS IN FACT HEADQUARTERED IN MARYLAND ........................................ 5

2. NEITHER THE CPPA NOR THE CONSUMER PROTECTION ACTS OF OTHER JURISDICTIONS SUPPORT CLAIMS OF MISREPRESENTATION AS TO THE SOURCE OR GEOGRAPHIC ORIGIN OF GOODS AND SERVICES WHERE THAT CLAIM IS BASED ON THE LOCATION OF A DEFENDANT'S HEADQUARTERS ........... 7

IV. CONCLUSION ........................................ 9

## TABLE OF AUTHORITIES

**CASES** **Page**

Alexis v. District of Columbia,
44 F. Supp. 2d 331 (D.D.C. 1999)....3

Atkins v. United States,
283 A.2d 204 (D.C. App. 1971)....6

Barlow v. McLeod,
666 F.Supp. 222 (D.D.C. 1986)....4

Benson v. Kwikset Corp.,
152 Cal. App. 4th 1254 (2007)....7, 8

Clifton Terrace Associates, Ltd. v. United Technologies Corp.,
728 F.Supp. 24 (D.D.C. 1990), vacated in part on other grounds, 929 F.2d 714 (D.C. Cir. 1991)....4

G.G. Marck and Assoc. v. Peng,
2006 WL 3256654 (N.D. Oh. 2006)....8

Howard v. Riggs National Bank,
432 A.2d 701 (D.C. 1981)....4

Hudson v. Ashley,
411 A.2d 963 (1980)....6

Independent Communications Network v. MCI Telecommunications Corp.,
657 F.Supp. 785 (D.D.C. 1987)....4

Key v. Lewis Aquatech Pool Supply, Inc.,
2002 WL 920936 (Va. Cir. Ct.)....7

Kowal v. MCI Communications,
16 F.3d 1271 (D.C. Cir. 1994)....3

Kukui Nuts of Hawaii, Inc. v. Baird & Co.,
7 Haw. App. 598 (1990)....8

Mazanderan v. Independent Taxi Owners' Assoc., Inc.,
700 F.Supp. 588 (D.D.C. 1988)....4, 5

Rehab 2112, LLC v. Audio Images International, Inc.,
168 S.W.3d 308 (Tx. App. 2005)....8

**STATUTES**

DC Code § 28-3901(a)(2) .......... 4

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 3

## I. INTRODUCTION

On October 19, 2007, approximately two and a half years after filing their original Complaint, Plaintiffs modified their claims for a second time. Notwithstanding their contrived efforts both to broaden the scope of the lawsuit and to increase their perceived ties to the District of Columbia, their amendments are misplaced and the Second Amended Complaint should be dismissed in significant part.

Specifically, Plaintiffs amended their Complaint as follows:

(1) Irina Paliashvili—the only previously named Plaintiff with ties to the District of Columbia—has been dismissed as a named Plaintiff. In her place, Plaintiffs have substituted two new parties: Dr. Sarah Mendelson and The Center for Strategic and International Studies ("CSIS"), both of whom are purportedly District of Columbia residents. Plaintiffs' late addition of these named plaintiffs in the wake of Ms. Paliashvili's departure is in apparent recognition that the class must have Plaintiffs with ties to the District of Columbia for the CPPA to govern their claims.

(2) Plaintiffs allege a new claim: that because Marriott International, Inc. ("Marriott") is, in fact, headquartered in Maryland, its alleged representations regarding its connections with the District of Columbia form the basis of a misrepresentation as to the source or geographic origin of Marriott's goods and services.

(3) Plaintiffs purport to expand the class of putative plaintiffs to include not only U.S. residents and citizens who accessed Marriott's website to make hotel reservations in Russia *but also individuals worldwide who reserved rooms at Marriott's Russian hotels through any means*, such as Marriott.com, travel agents and 1-800 reservation numbers. See Second Amended Complaint, ¶ 47; PRAYER FOR RELIEF at 1 (requesting that this Court "[c]ertify a class of

persons who have been improperly charged excess amounts for rooms and other hotel charges at the hotels owned, operated, managed, or franchised by Marriott during the timeframe between May 2002 and the present").[1] Notably, Plaintiffs neglected to highlight this material change to the Court in its Motion to Amend.[2] The broad, ill-defined nature of the proposed class demonstrates that this case is not about protecting the District of Columbia's consumers.[3]

Plaintiffs' claims, as amended, are deficient and must be dismissed. First, at least one of the proposed new plaintiffs—CSIS—is not a proper party to this lawsuit.[4] CSIS is not a

---

[1] Plaintiffs' putative class is unlimited by geographic location or by method of reservation. Thus, for example, under Plaintiffs' proposition, a person in Hong Kong who made a reservation through a German travel agent to stay at one of the Marriott Russian hotels apparently would be a member of Plaintiffs' class. Similarly, under Plaintiffs' proposition, a person in South Africa who made a reservation through a 1-800 number call center in London to stay at one of the Marriott Russian hotels would be a member of Plaintiffs' class, as would a U.S. citizen in Illinois who made a reservation through Marriott.com. The broad, ill-defined nature of the proposed class, as well as the attendant issue of the proper scope of the CPPA, will not be addressed at the Motion to Dismiss stage but will be addressed in Marriott's Opposition Brief to Class Certification.

[2] Additionally, Plaintiffs neglected to point out that the Second Amended Complaint no longer suggests that Marriott consistently charges a hotel exchange rate of 18% at the time of a guest's check-out. Rather, the Second Amended Complaint now alleges that Marriott's hotel exchange rate constitutes an amount "materially higher" than the dollar equivalent at the official exchange rate. Second Amended Complaint ¶ 4. This modification undermines Plaintiffs' prior allegation that Marriott imposed a standing 18% overcharge as a matter of practice.

[3] To the contrary, this case is a classic example of attorney-driven litigation. Plaintiffs' counsel have filed identical claims against Hyatt and Radisson in other jurisdictions, attacking the widespread and accepted business practice of employing an in-house exchange rate to satisfy the Russian requirement that guests' bills be stated in Rubles while simultaneously protecting the hotels from fluctuating currency. This practice is not limited to the hotel industry. The unit conversion method was a common currency fluctuation protection utilized in instances ranging from employee pay scales at large corporations to taxi cab fares.

Both the Hyatt and Radisson cases were properly dismissed, as this one should be. Shaw v. Hyatt Intern. Corp., 2005 WL 3088438 at *2 (N.D. 111), *aff'd* Shaw v. Hyatt Intern. Corp., 461 F.3d 899 (7th Cir. 2006) (dismissing a nearly identical putative class action brought by Mr. Shaw, the same named plaintiff as in this case) ("Plaintiff, a London resident, (and former New York resident), reserved a hotel room in Russia through Hyatt's website, and was charged more than originally quoted on the website due to the hotel's inflated currency exchange rates. These allegations do not establish the requisite nexus with Illinois, and thus, there is no basis for the application of the ICFA to the transaction at issue."); Bykov v. Radisson Hotels Intern., Inc., 221 Fed. Appx. 490, 491-92 (8th Cir. 2007), *aff'g* Bykov v. Radisson Hotels Intern., 2006 WL 752942 (D. Minn. 2006) (affirming summary judgment and dismissing putative plaintiffs' misrepresentative claims against the hotel in part because no causal connection had been established between the alleged representatives and the injury and because Bykov's company, and not Bykov himself, paid for the hotel bill).

[4] Marriott has not yet had an opportunity to conduct discovery of Dr. Mendelson to determine whether she is a proper party to this lawsuit.

"consumer" within the meaning of the CPPA, and, as such, it has no standing to bring a claim under that statute.

Second, Plaintiffs' new claim of misrepresentation as to the "geographic origin of Marriott's goods and services" should be dismissed for two reasons: (1) Plaintiffs are judicially estopped from making this argument based on their prior successful, contradictory contention that Marriott's headquarters are located in the District of Columbia; and (2) even if Plaintiffs are permitted to reverse their earlier assertions, Plaintiffs nevertheless have failed to state a claim for misrepresentation of source or geographic origin in connection with the sale of Marriott's goods and services. Neither this Court under the CPPA nor any courts of other jurisdictions under similar consumer protection statutes have ever adjudicated a claim in which the location of a defendant's corporate headquarters served as the basis for a claim of misrepresentation of geographic origin.

## II. LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations. Alexis v. District of Columbia, 44 F. Supp. 2d 331, 336-37 (D.D.C. 1999). The court, however, need not accept inferences unsupported by the facts alleged in the complaint, Kowal v. MCI Communications, 16 F.3d 1271, 1276 (D.C. Cir. 1994), and need not accept the plaintiff's legal conclusions as true. Alexis, 44 F. Supp.2d at 337. In accordance with these standards, Marriott's Rule 12(b)(6) motion should be granted.

## III. ARGUMENT

### A. CSIS IS NOT A "CONSUMER" WITHIN THE MEANING OF THE CPPA AND DOES NOT HAVE STANDING TO BRING A CLAIM UNDER THE ACT

CSIS is not a "consumer" within the meaning of the CPPA. A "consumer" under the CPPA is limited to "a person who does or would purchase, lease (from), or receive consumer goods and services . . . ; as an adjective, 'consumer' describes anything, without exception, which is *primarily for personal, household, or family use*." DC Code § 28-3901(a)(2) (emphasis added); Mazanderan v. Independent Taxi Owners' Assoc., Inc., 700 F.Supp. 588, 591 (D.D.C. 1988) (emphasis added); Independent Communications Network, 657 F.Supp. at 788. The CPPA "was designed to police trade practices arising *only* out of the consumer-merchant relationship." Barlow v. McLeod, 666 F.Supp. 222, 228 (D.D.C. 1986) (emphasis in original); Howard v. Riggs National Bank, 432 A.2d 701, 709 (D.C. 1981). It does not supply merchants with a cause of action against other merchants. Independent Communications Network, Inc. v. MCI Telecommunications Corp., 657 F.Supp. 785, 787-88 (D.D.C. 1987).

This Court repeatedly has dismissed CPPA claims filed by corporations because they are not "consumers" under that statute. See Mazanderan, 700 F.Supp. at 591 (dismissing taxicab operator's CPPA claims against taxicab owners' association because the operator's contested purchases of gasoline and supplies from the association were made "in connection with his role as an independent businessman" and could not be "categorized as being for 'personal, household, or family use'"); Clifton Terrace Associates, Ltd. v. United Technologies Corp., 728 F.Supp. 24, 34 (D.D.C. 1990) (dismissing CPPA claims filed by owner of an apartment complex against elevator manufacturer because owner of the apartment complex was not a "consumer within the meaning of the CPPA"), vacated in part on other grounds, 929 F.2d 714 (D.C. Cir. 1991).

According to Plaintiffs' Second Amended Complaint, CSIS is a non-profit Delaware corporation formed in 1986 and headquartered in Washington, D.C. Second Amended Complaint ¶ 15. Plaintiffs contend that "approximately 15 times per year" CSIS's "employees and representatives reserved rooms and stayed at Marriott brand hotels in Russia." Id. Even assuming that CSIS paid for or reimbursed its employees and representatives for business travel stays at Marriott managed or franchised hotels in Russia, id., CSIS did not purchased goods or services for "personal, family, or household use." See, e.g., Mazanderan, 700 F.Supp. at 591. On the face of the Second Amended Complaint, CSIS is not a "consumer" and has no standing to bring a suit under the CPPA. Therefore, this Court should dismiss CSIS as an improper party to this suit.

## B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MISREPRESENTATION OF SOURCE OR GEOGRAPHIC ORIGIN BY MARRIOTT IN CONNECTION WITH THE SALE OF ITS GOODS AND SERVICES

### 1. PLAINTIFFS ARE JUDICIALLY ESTOPPED FROM CLAIMING THAT MARRIOTT IS IN FACT HEADQUARTERED IN MARYLAND

Since the filing of their original complaint, Plaintiffs consistently have asserted that Marriott is headquartered in Washington, D.C. and that Marriott's purported representations of that fact make this Court the proper forum for adjudicating Plaintiffs' CPPA claims.[5] Now, in the Second Amended Complaint, Plaintiffs seek to add a claim that is directly contradictory to that earlier assertion—that because Marriott is, in fact, headquartered in Bethesda, Maryland, any

[5] Plaintiffs alleged that the underlying practices at issue in the litigation "originat[ed]" as a matter of corporate policy from Marriott's "headquarters," Amended Complaint ¶¶ 5, 8, 15, which Plaintiffs allege that Marriott represents "to the press, the general public, [and] the traveling public seeking to book worldwide reservations on its website . . ." as being Washington, D.C. Id. ¶ 32. On those grounds, therefore, Plaintiffs argued that "Marriott is accountable to Plaintiffs and the class they seek to represent under the laws of the District of Columbia." Id. ¶ 15.

alleged representation that it is headquartered in Washington, D.C. is a violation of CPPA § 3904(a) and (t). Plaintiffs cannot have it both ways.

In denying Marriott's Motion to Dismiss the original Complaint, this Court accepted Plaintiffs' allegation in the Complaint that Marriott should be deemed headquartered in the District of Columbia for purposes of ruling on the motion to dismiss, and accordingly held that the CPPA applied to Plaintiffs' claims. Having relied on their assertion that Marriott was headquartered in the District of Columbia earlier on in the litigation, Plaintiffs now seek to reverse course and assert the opposite in an attempt to prove an alleged violation the CPPA. Plaintiffs should not be permitted to manipulate the facts and take contrary positions regarding the location of Marriott's corporate headquarters to suit their litigation strategy.

Simply stated, Plaintiffs cannot now allege a new misrepresentation claim for which the underlying premise, if true, would leave this Court without jurisdiction to apply the very statute under which Plaintiffs' claim is brought. Because Plaintiffs previously asserted, successfully, a contrary position (that Marriott is headquartered in Washington, D.C.), they are judicially estopped from switching their position (that Marriott is headquartered in Maryland) and from claiming that Marriott has violated DC Code § 29-3904(a) and (t). Hudson v. Ashley, 411 A.2d 963, 970 n.13 (1980) (quoting Atkins v. United States, 283 A.2d 204, 206 n.4 (D.C. App. 1971)). Therefore, Plaintiffs' claim that Marriott misrepresented its corporate headquarters should be dismissed.

**2. NEITHER THE CPPA NOR THE CONSUMER PROTECTION ACTS OF OTHER JURISDICTIONS SUPPORT CLAIMS OF MISREPRESENTATION AS TO THE SOURCE OR GEOGRAPHIC ORIGIN OF GOODS AND SERVICES WHERE THAT CLAIM IS BASED ON THE LOCATION OF A DEFENDANT'S HEADQUARTERS**

Aside from Plaintiffs' inability to decide whether, for purposes of this lawsuit, Marriott should be headquartered in Washington, D.C. or Maryland, the Second Amended Complaint fails to state a claim for misrepresentation as to the source or geographic origin of Marriott's goods or services under CPPA § 28-3904(a) and (t). See Second Amended Complaint ¶ 37. This claim fails for the simple reason that Plaintiffs have not—and cannot—demonstrate any plausible causal nexus between Marriott's alleged representations that it is headquartered in Washington, D.C. and the damages Plaintiffs claim to have suffered.

To state a claim for misrepresentation as to source or geographic origin in connection with the sale of goods and services, Plaintiffs must show some causal nexus between the alleged misrepresentation and the damages suffered. See Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1275 (2007) (finding sufficient evidence in the record to support claim of misrepresentation of geographic origin because "here, plaintiff presented testimony, and the trial court found, that for some people, country of origin labeling *is a critical factor when making a purchasing decision*") (emphasis added); Key v. Lewis Aquatech Pool Supply, Inc., 2002 WL 920936, at *3 (Va. Cir. Ct.) (finding no claim of misrepresentation as to source of materials used to construct pool because homeowner failed to establish that alleged representations were fraudulent and because homeowner failed to prove he relied on company's comments in deciding to enter pool construction contract).

Plaintiffs have not alleged and cannot show any nexus whatsoever between Marriott's representations as to the location of its headquarters and Plaintiffs' decision to reserve hotel

rooms at the Marriott Russia hotels. The only way such a nexus could be created would be if, absurdly, Plaintiffs alleged that in deciding to make room reservations at the Marriott Russia hotels, they relied on representations by Marriott that its corporate headquarters were located in the District of Columbia. As Plaintiffs have not done so, this Court must dismiss the source and geographic origin misrepresentation claims contained in Plaintiffs' Second Amended Complaint.

Even if Plaintiffs could demonstrate some nexus between Marriott's representations as to the location of its headquarters and Plaintiffs' alleged damages, these claims in Plaintiffs' Second Amended Complaint must be dismissed in any event. No court has considered, much less held, that a representation as to the location of a company's headquarters may form the basis of a claim for misrepresentation as to the source or geographic origin in connection with the sale of that company's goods. Even further, no court has even suggested that this geographic distinction is relevant with regard to a company's services. To the contrary, the few cases that do address such geographic origin misrepresentation claims focus on where a product is manufactured, e.g. the legitimacy of a "Made in the USA" claim to induce a patriotic purchase. See, e.g., Benson, supra, 152 Cal. App. 4th at 1274 ("Made in U.S.A." label inappropriately applied to goods, certain parts of which were not actually made in the United States); Kukui Nuts of Hawaii, Inc. v. Baird & Co., 7 Haw. App. 598, 617 (1990) (claim for misrepresentation of geographic origin was adequately stated when manufacturer misrepresented or failed to represent the geographic origin of some of their ingredients); Rehab 2112, LLC v. Audio Images International, Inc., 168 S.W.3d 308, 313 (Tx. App. 2005) (finding a genuine dispute of fact as to whether audio company engaged in deceptive acts by passing off its services as the services of another); G.G. Marck and Assoc. v. Peng, 2006 WL 3256654, at *2 (N.D. Oh. 2006) (shipping products with an absence of the country of origin of the products held to be a deceptive

representation or designation of geographic origin in connection with sale of goods). There is simply no basis whatsoever for the claim of source and geographic misrepresentation in this case, and the claim must be dismissed.

## IV. CONCLUSION

Based on the foregoing, Marriott requests that this Court grant Marriott's motion for partial dismissal of Plaintiffs' Second Amended Complaint.

Dated: November 2, 2007

_/s/ Joel A. Dewey__________

Joel A. Dewey (Bar No. 358175)
Holly Butler (Bar No. 459681)
Sonia Cho (Bar No. MD 26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)
*Attorneys for Defendant, Marriott International, Inc.*