UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* )<br>)<br>)<br>  Plaintiffs, )<br>) Civil Action No. 05-1138 (GK)<br>  v. )<br>) Status Conf. Jan. 3, 2008<br>)<br>MARRIOTT INTERNATIONAL, INC. )<br>)<br>  Defendant. )<br>_____ ) | |

**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO MARRIOTT'S MOTION FOR PARTIAL DISMISSAL
<u>OF SECOND AMENDED CLASS ACTION COMPLAINT</u>**

**I.     INTRODUCTION & SUMMARY**

Marriott's motion for partial dismissal of Plaintiffs' Second Amended Class Action Complaint lacks merit and should be denied.

1.     The addition of a claim under D.C. Code § 28-3904 (a) and (t) for misrepresentation as to geographic origin does nothing more than formalize a claim that did not become apparent until Marriott filed in a formal declaration with the Court that its longstanding representations that it was headquartered in the District of Columbia were false. All other allegations in their previous complaint on this subject remain unchanged. Marriott's assertion that Plaintiffs cannot demonstrate any "plausible nexus between Marriott's alleged representations . . . and the damages Plaintiffs claim to have suffered"[1] is demonstrably incorrect.

---

[1] Marriott's motion at 7.

In its answer to the previous complaint, Marriott admitted that its promotion of its corporate culture, including its ties to the District of Columbia, has had a "positive financial impact"[2] on it. That positive financial impact for Marriott came from the wallets of its customers, thus establishing a basis damages under the statute.

      2.      CSIS is a consumer within the meaning of the CPPA. The plain language of the statute itself defines "consumer" to include a "co-obligor or surety, or a person who does or would provide the economic demand for the trade practice. . ."[3] When CSIS requires its employees or contractors to attend to its business in Russia, and pays for or reimburses them for the associated expense, it provides the economic demand for the trade practice at issue thus qualifyng as a consumer under the statute. Further, CSIS is not in the business of providing hotel accommodations to anyone and thus does not join Marriott on the supply side of the distribution chain, the test used in prior court decisions to determine whether a particular plaintiff is or is not a consumer within the meaning of the CPPA.

      The introduction to Marriott's memorandum of points and authorities contains a number of gratuitous comments not tied to or relevant to its pending motion for parital dismissal. Most appear to be distantly related to the question of class certification – a question not presently before the Court. We will respond to those comments at an appropriate time when there is a matter before the Court to which they are relevant.

---

[2] Answer, ¶ 22.

[3] D.C. Code 28-3901(a)(2).

**II.    FACTUAL ALLEGATIONS**

Plaintiff CSIS is non-profit corporation which has been headquartered in Washington, DC since its formation in 1986. CSIS experts conduct research and analysis, and develop policy initiatives under more than 25 programs involved in defense and security policy, global issues and international regional transformation issues. Approximately 15 times per year, its employees and representatives reserved rooms and stayed at Marriott branded hotels in Russia. CSIS either paid for directly, or reimbursed the persons paying for those rooms.

Defendant Marriott is a worldwide provider of hospitality services. Marriott has engaged in a longstanding, widely circulated and unambiguous promotion of its historic roots in the District of Columbia. Marriott's ties to the Nation's Capitol form an important part of its brand identification and consumer franchise.[4] Marriott represents in its publications that the perpetuation of a company's culture has a proven positive financial impact. Marriott's origins in and its continuing ties to the District of Columbia form an integral part of Marriott's corporate culture and persona.[5] Marriott represents that it is headquartered in Washington, D.C., and provides an address located in Washington, D.C. pervasively throughout on its website;[6] Marriott's required regulatory filings with the Securities and Exchange Commission report its corporate headquarters as located in Washington, D.C;[7] Marriott's general counsel states his

---

[4] Second Amended Complaint ¶ 19.

[5] *Id.* ¶ 24.

[6] *Id.* ¶¶ 25-28.

[7] *Id.* ¶¶ 29-30.

business address to be in Washington, D.C.;[8] Marriott repeats in all its recent press releases that it is headquartered in Washington, D.C.[9]

Marriott has admitted these identical allegations in its Answer to Plaintiffs' First Amended Complaint.[10] Further, Marriott affirmatively states:

> Marriott admits that it has made, and continues to make, representations that its headquarters are located in Washington D.C. Marriott further states that its historic roots to the District of Columbia date back to 1927 when the Company's founders began their business operations in the District of Columbia. Until 1979, when the Company moved its headquarters to Bethesda, Maryland, Marriott was in fact headquartered in Washington D.C. Thus, to honor Marriott's historical roots and connections to Washington, D.C., the company at times represents that it is headquartered there.[11]

Marriott represents to the world in its public statements and regulatory filings that it is headquartered in the District of Columbia; but swears in this lawsuit that it is in fact located in Bethesda, Maryland.

### III.   ARGUMENT

####   A.   Standard of Review

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted."[12]  "For the purposes of such a motion, the

---

[8]  *Id.* ¶ 31.

[9]  *Id.* ¶ 33.

[10]  Defendant Marriott International, Inc.'s Answer to Plaintiffs' First Amended Class Action Complaint ("Marriott Answer") ¶¶ 18, 22, 23-26, 27-28, 29, 31.

[11]  *Id.* ¶¶ 32, 33.

[12]  *F.T.C. v. Capital City Mortgage Corp.*, 321 F. Supp. 2d 16, 18, 20 (D.D.C. 2004)(Kessler, J.)(denying motion to dismiss and refusing to consider "issues of proof and fact that do not weigh in a court's decision regarding a motion to dismiss")(citing *Doe v. U.S. Dep't*

factual allegations of the complaint must be taken as true, and any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader."[13]  A complaint should only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[14] "Accordingly, the factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff."[15]

Dismissal must be evaluated in the context of the "notice pleading system" contemplated by the federal rules.[16]  Rule 8(a)(2) requires "only a short and plain statement of the claim."[17] "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"[18]  A motion to dismiss under Rule 12(b)(6) is a test of the sufficiency of the pleading, it "is not a procedure for resolving a contest between the parties about the facts or the substantive merit of the plaintiff's case."[19]

---

*of Justice*, 753 F.2d 1092, 1102 (D.C. Cir.1985)).

[13]  *Id.*

[14]  *Id., citing Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

[15]  *Id., citing Shear v. Nat'l Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C. Cir.1979)).

[16]  *Swierkiewicz v. Sorema,* 534 U.S. 506, 511 (2002).

[17]  *Id.* at 512.

[18]  *Id., citing Conley v. Gibson,* 355 U.S. at 45-46.

[19]  *Conley v. Gibson,* 355 U.S. at 45-46.

B.     **Plaintiffs State a Claim for Misrepresentation of Geographic Origin**

The Second Amended Complaint adds a claim against Marriott for misrepresentation as to source, sponsorship and geographic origin in connection with its Marriott branded hotel rooms in violation of the CPPA, D.C. Code §28-3901 (a) and (t). In adding these provisions to the list of alleged violations of the CPPA, Plaintiffs have done nothing more than close a loop left open after this Court's denial of Marriott's motion to dismiss the First Amended Complaint.[20] Not one allegation has changed between the time that this Court entered its Order on February 22, 2007, and the time that Plaintiffs' filed the Second Amended Complaint. Indeed, the factual allegations regarding the location of Marriott's headquarters are identical in the First and Second Amended Complaints.[21]

Plaintiffs' allege, and Marriott has admitted, that Marriott represents to the world that it is headquartered in the District of Columbia on its website, in its press releases, in its SEC filings, in its reports to its stockholders, and in all aspects of its description of its "Marriott" brand.[22] Yet, in this lawsuit, Marriott has sworn that its headquarters are, in truth, located in Bethesda, Maryland.[23] The Second Amended Complaint does nothing more than make explicit what has been implicit in this action this since this Court's February 22, 2007 Order – *if* Marriott is not headquartered in the District of Columbia, Marriott has been untruthful, consistently and pervasively, in all of its public statements and regulatory filings.

---

[20]   *Shaw v. Marriott International, Inc.,* 474 F.Supp.2d 141 (D.D.C. 2007).

[21]   Second Amended Complaint ¶¶ 19, 24 - 31, 33.

[22]   *Id.*; Marriott Answer ¶¶ 18, 22 - 29, 31 - 33.

[23]   Stant Declaration, Second Amended Complaint ¶ 36; Marriott Answer ¶ 2.

As a factual matter, Marriot promotes the identification of its Marriott brand with the District of Columbia, the Nation's Capital, for its own commercial advantage. Marriott's Answer to paragraph 22 of plaintiffs' First Amended Class Action Complaint is noteworthy:

> Marriott admits that it has stated on its website that "the perpetuation of a company's culture has proven a positive financial impact." Marriott states that its historic roots to the District of Columbia date back to 1927 when the Company's founders began their business operations in the District of Columbia. [24]

The well settled standard for dismissal under Rule 12 (b)(6) is that Plaintiffs can prove ***no set of facts*** which would allow relief on the claim.[25] But Marriott's own self promotion of its association with the District of Columbia defeats this assertion.[26] Marriott admits that it has profited from its promotion of its corporate culture and its roots in the District of Columbia. That profit has come from the very people to whom its misrepresentation of corporate headquarters has been directed.

Taking the allegations of the Second Amended Complaint as true, as this Court must on a motion under Rule 12(b)(6), it cannot be held at this time that Marriott's identification of its brand with D.C., the Nation's Capital, was not a factor in the decision of a reasonable consumer in booking a Marriott branded hotel room in Russia. For customers traveling to places like Russia where the environment may not be particularly stable, an association with the capital of

---

[24] Marriott Answer ¶ 22.

[25] *F.T.C. v. Capital City Mortgage Corp.*, 321 F. Supp. 2d 16, 18, 20 (D.D.C. 2004); *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

[26] Answer ¶¶17, 22, 32, 33.

the only remaining world superpower might convey a sense of security not otherwise available.[27] Further, Marriott admits that the perpetuation of its own corporate culture, including its historic roots in the District of Columbia, has had a "positive financial impact."[28] That positive financial impact came from its customers who learned of its corporate culture at least in part from the representations, or misrepresentations, at issue.

Marriott argues that no case has ever held that misrepresenting the location of a corporation's headquarters is actionable as a misrepresentation of geographic origin. So what. Just because neither §28-3904 (a) and (t), nor any similar statute, has yet been applied to misrepresentations as to the location of a company, does not mean that such provisions are not applicable. Marriott's misrepresentations are unusual and it is no surprise that this issue has not been addressed in reported cases. Marriott cites no case, and Plaintiffs have found none, that holds that such provisions are inapplicable to the facts as alleged in the Second Amended Complaint.

In the instant Motion, Marriott seeks to turn upside down this Court's findings in its Order denying Marriott's first motion to dismiss. Contrary to Marriott's arguments, it is Marriott, not Plaintiffs, that is stuck with its representations regarding the location of its headquarters operation. The actual location of Marriott's headquarters, whether in the District of Columbia or in Bethesda, Maryland remains unchanged. In denying Marriott's first motion to dismiss Plaintiffs' claims, this Court found that "the District of Columbia, with its interest in

---

[27] See, Declaration of Dr. Chekitan S. Dev, attached as Exhibit 2 to Plaintiffs' Opposition to Marriott's Motion to Dismiss First Amended Complaint (Doc.11).

[28] Marriott Answer ¶ 22.

protecting consumers and promoting fair business practices by corporate entities headquartered within the city limits has the most significant relationship to this case."[29] Supporting that ruling, the Court noted that Marriott had consistently represented itself to the public as headquartered in the District of Columbia, but argued to the Court that it was, in fact, headquartered just outside the District, in Bethesda, Maryland.[30] Far from finding Marriott's *actual* location to be determinative, the Court found that Marriott's *inconsistency* amplified the District's interest in this action. The Court stated that **"Marriott's inconsistent positions further support the application of District of Columbia law in this case."**[31] Thus, well aware of Marriott's likely misrepresentations regarding the location of its headquarters, this Court concluded that the District of Columbia's interest "in ensuring that its corporate citizens refrain from fraudulent activities" outweighs the interests of other jurisdictions in protecting their residents.[32]

In adding the allegations relating to Marriott's misrepresentation of its geographic origin, Plaintiffs simply put Marriott on notice that these provisions may provide an additional basis for a finding of liability, as contemplated under the federal rules governing pleading. Marriott has not met the standard for dismissal of Plaintiffs' claims related to the misrepresentation of the geographic origin of Marriott branded hotel rooms. The motion to dismiss these claims should be denied.

---

[29] *Shaw v. Marriott International, Inc.,* 474 F. Supp. 2d at 148.

[30] *Id.* at 148, n. 6.

[31] *Id.*

[32] *Id.* at 149-50, *citing Washkoviak v. Student Loan Marketing Association,* 900 A. 2d 168, 181 (D.C. 2006).

**C.     CSIS Is A Consumer Under the CPPA and Is Properly Named as a Plaintiff**

Marriott seeks the dismissal of CSIS, arguing that it is not a "consumer" within the meaning of the CPPA because it is a corporation. On that basis alone, Marriott concludes that CSIS did not purchase goods or services for personal, family or household use, and therefore does not come within the definition of a "consumer" under the CPPA, §28-3901 (a)(2).

Marriott totally ignores the plain language of the statute itself which defines "consumer" as "a person who does or would provide the economic demand for a trade practice." CSIS provided the economic demand for hotel stays in Russia by its employees and contractors. CSIS booked the rooms for the personal use of its experts while they were in Russia because its employees needed a place to sleep. CSIS participated in a retail transaction with Marriott as the end user of the product offered by Marriott. It clearly provided the economic demand for the trade practice and thus qualifies as a consumer as that term is defined in the statute.

Marriott further ignores the factors found controlling by the District of Columbia Court of Appeals in determining who is a consumer and what constitutes a consumer transaction under the CPPA. The District of Columbia Court of Appeals settled these questions in *Adam Wechsler & Son, Inc. v. Klank*.[33] The CPPA is intended to address transactions between merchants and consumers, not to provide a cause of action by one merchant against another merchant.[34] Under the CPPA, a "merchant" includes those "connected with the 'supply side' of a consumer

---

[33] *Ford v. Chartone, Inc.*, 908 A.2d 72, 83 (D.C. 2006), citing *Adam Wechsler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989).

[34] *Wechsler & Son, Inc. v. Klank*, 561 A.2d at 1005.

transaction."[35]  In *Weschler,* an individual bought an antique chest as an investment and possibly for later resale.  The DC Court of Appeals held that the determining factor in the application of the CPPA was where the transaction fell along the distribution chain.  "It is the ultimate retail transaction between the final distributor and the individual member of the consuming public that the Act covers."[36]  In that circumstance, even if a person did make the purchase to seek a financial gain, the transaction is subject to the CPPA because the purchaser "was not in the regular business of buying and selling such goods."[37]  The Court of Appeals explained:

> [I]t is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction. If the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public, then a transaction in the course of that business is not within the Act. If, on the other hand, the purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will usually fall within the Act. Since Klank is not in the regular business of the retail sale of antiques, it follows that the transaction is one within the Act and its protections.[38]

CSIS is in the business of research, analysis and policy development in certain international programs; it is not in the travel, hotel or hospitality business.[39]  CSIS' did not purchase guest stays at the Marriott Russian hotels for resale in a travel related distribution chain; but booked the rooms for the personal use of its experts while they were in Russia.  CSIS

---

[35] *Id., citing Howard v. Riggs National Bank,* 432 A.2d 701, 709 (D.C. 1981).

[36] *Id.* at 1005.

[37] *Ford v. Chartone, Inc.*, 908 A.2d at 83-84.

[38] *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d at 1005. *Ford v. Chartone, Inc.*, 908 A.2d at 84.

[39] Second Amended Complaint ¶ 15.

provided the economic demand for the hotel stay in Russia because its employees needed a place to sleep. CSIS was in no way connected to the "supply side" of any transaction related to its booking of rooms at the Marriott Russian hotels. The purchase of the hotel stay was the ultimate retail transaction by CSIS acting as a member of the consuming public.

The cases cited by Marriott do not support a contrary finding as to CSIS. First, the cases cited by Marriott all pre-date the District of Columbia Court of Appeals' controlling rulings as to who is a consumer and what constitutes a consumer transaction in the *Wechsler* and *Chartone* cases discussed above. Second, the facts and conclusions in the cited cases are simply not apposite. In *Mazanderan v. Independent Taxi Owners' Assoc., Inc.,* the gasoline purchased enabled the very service provided by the taxi driver in his business.[40] Additionally, the plaintiff taxi driver and the defendant trade association were both on the supply side of the distribution chain.[41] In *Independent Communications Network, Inc. v. MCI Telecommunications Corp.,* both plaintiff and defendant were merchants competing in the sale of long distance telephone services.[42] Both plaintiff and defendant were on the supply side, the merchant side, of the consumer-merchant transaction.[43] Finally, none of the cases cited deal with the role of CSIS in creating the economic demand for the trade practice.

CSIS is not on the supply side of the distribution chain. It is in no sense a "merchant" of hospitality services. CSIS booked the rooms in Marriott's Russian hotels for the personal use of

---

[40] 700 F. Supp. 588, 591 (D.D.C. 1988).

[41] *Id.*

[42] 657 F. Supp. 785, 787-88 (D.D.C. 1987).

[43] *Id.* at 788.

its employees. CSIS is a "consumer" within the meaning of the CPPA, DC Code §28-3901 (a)(2). Marriott's motion to dismiss CSIS as a Plaintiff in this action should be denied.

## IV. CONCLUSION

Plaintiffs have stated a claim for relief against Marriott for misrepresentation of geographic origin in violation of §28-3901(a) and (t). Plaintiffs have demonstrated that CSIS is a consumer under the CPPA. For all the reasons stated above, Marriott's Motion for Partial Dismissal of the Second Amended Complaint should be denied.

Respectfully submitted,

/s/ Paul D. Cullen, Sr.

Of Counsel:
Mark W. Borghesani, Esq., D.C. Bar # 426734
c/o The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, DC 20007
(202) 944-8600

Paul D. Cullen, Sr., D.C. Bar #100230
Joyce E. Mayers, D.C. Bar # 268227
Randall Herrick-Stare, D.C. Bar # 482752
Amy M. Lloyd, D.C. Bar # 975887
The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, DC 20007
(202) 944-8600

Counsel for Plaintiffs

Dated: November 16, 2007

CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiffs' Memorandum of Points and Authorities in Opposition to Marriott's Motion for Partial Dismissal of Second Amended Class Action Complaint and Proposed Order has been served upon the persons below by electronic means on this 16th day of November, 2007:

Benjamin S. Boyd
DLA Piper
1200 19th Street, N.W.
7th Floor
Washington, D.C. 20036-2412
Benjamin.boyd@dlapiper.com


Joel Dewey
Holly Drumheller Butler
Sonia Cho
Jeffrey E. Gordon
Jennifer Skaggs
DLA Piper
6225 Smith Avenue
Baltimore, MD. 21209
Joel.dewey@dlapiper.com
Holly.butler@dlapiper.com
Sonia.cho@dlapiper.com
Jeffrey.gordon@dlapiper.com
Jennifer.skaggs@dlapiper.com


/s/ Paul D. Cullen, Sr.
Paul D. Cullen, Sr., D.C. Bar #100230