**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC.
10400 Fernwood Road
Bethesda, Maryland 20817

Defendant.

Civil Action No. 05-1138 (GK)

**MARRIOTT INTERNATIONAL INC.'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Dated: November 29, 2007

/s/ Joel A. Dewey
Joel A. Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD 26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant,*
*Marriott International, Inc.*

TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. THE COURT SHOULD DISMISS CSIS FROM THE CASE BECAUSE IT IS NOT A "CONSUMER" WITHIN THE MEANING OF THE CPPA ..... 1

1. THE CPPA APPLIES TO CONSUMER-PLAINTIFFS ONLY, AND NOT TO CORPORATIONS, SUCH AS CSIS ..... 2

2. INDEPENDENT OF CSIS'S CORPORATE STATUS, IT MUST BE DISMISSED AS A PLAINTIFF BECAUSE THE TRANSACTIONS AT ISSUE WERE FOR BUSINESS PURPOSES ..... 4

B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MISREPRESENTATION OF SOURCE OR GEOGRAPHIC ORIGIN BY MARRIOTT IN CONNECTION WITH THE SALE OF ITS GOODS AND SERVICES ..... 8

1. THE CPPA DOES NOT EXTEND TO ALLEGED MISREPRESENTATIONS AS TO THE LOCATION OF A DEFENDANT'S CORPORATE HEADQUARTERS ..... 8

2. EVEN ASSUMING THE CPPA APPLIES, PLAINTIFFS HAVE NO STANDING TO RAISE THEIR PURPORTED MISREPRESENTATION CLAIM AND HAVE NOT SUFFICIENTLY PLEADED A VIOLATION OF THE STATUTE ..... 10

III. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

Page

## CASES

Benson v. Kwikset Corp., 152 Cal. App. 4th 1254 (2007) ..... 12

Clifton Terrace Associates, Ltd. v. United Technologies Corp., 728 F.Supp. 24 (D.D.C. 1990), vacated in part on other grounds, 929 F.2d 714 (D.C. Cir. 1991) ..... 2, 7

Ford v. ChartOne, Inc., 908 A.2d 72 (D.C. 2006) ..... 4, 5, 6, 7

Friends of Tilden Park, Inc. v. District of Columbia, 806 A.2d 1201, 1206 (D.C. 2002), ..... 10

Howard v. Riggs National Bank, 432 A.2d 701 (D.C. 1981) ..... 1, 2, 7

Hoyte v. Yum Brands, 489 F.Supp.2d 24 (D.DC. 2007) ..... 10

Independent Communications Network v. MCI Telecommunications Corp., 657 F.Supp. 785 (D.D.C. 1987) ..... 2, 3, 7

International Association of Machinists And Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr., 103 F.3d 196 (1st Cir. 1996) ..... 9, 10

Mazanderan v. Independent Taxi Owners' Assoc., Inc., 700 F.Supp. 588 (D.D.C. 1988) ..... 4, 5, 6, 7

Pearson v. Soo Chung, D.C. Superior Court, No. 05 CA 4302 B, June 25, 2007 ..... 12

Star Financial Services, Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996) ..... 9, 10

Weschler & Son, Inc. v. Klank, 561 A.2d 1003 (D.C. 1989) ..... 5, 6

Williams, et al. v. The Purdue Pharma Co., 297 F.Supp.2d 171, 178 (D.D.C. 2003) ..... 10, 11

**STATUTES**

15 U.S.C. § 1125 .......... 9

DC Code § 28-3901 .......... 2, 3, 4

DC Code § 28-3904 .......... 1, 8, 9, 10

DC Code § 28-3905 .......... 3

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 12

## I. INTRODUCTION

In their Opposition to Marriott International, Inc.'s ("Marriott's") Motion for Partial Dismissal of Plaintiffs' Second Amended Class Action Complaint and Demand for Jury Trial ("Opposition"), Plaintiffs seek to preserve The Center for Strategic and International Studies ("CSIS") as a named Plaintiff in this action by impermissibly broadening the definition of "consumer" under the District of Columbia Consumer Protection Act ("CPPA") to include corporations and business transactions not contemplated for coverage by the CPPA. Plaintiffs also attempt to save their new "headquarters" misrepresentation claim from dismissal by inserting prohibitions that do not exist into the statute and ignoring their burden to plead some plausible injury and to plead that a reasonable consumer would have been misled and harmed by Marriott's alleged misrepresentation. Accordingly, this Court should dismiss CSIS from this action and dismiss Plaintiffs' misrepresentation claim brought pursuant to CPPA 28-3904(a) and (t).

## II. ARGUMENT

### A. THE COURT SHOULD DISMISS CSIS FROM THIS CASE BECAUSE IT IS NOT A "CONSUMER" WITHIN THE MEANING OF THE CPPA

The Court should reject Plaintiffs' argument that CSIS is a "consumer" under the plain language of the statute. Plaintiffs' reading excludes relevant language of the Act and contravenes the recognized limit on the Act's coverage to "consumer-merchant" relationships. See, e.g., Howard v. Riggs National Bank, 432 A.2d 701, 709 (D.C. 1981). Under the statute and controlling precedents: (1) corporations are not "consumers"; and (2) purchases of goods or services for business purposes by any person or entity are not "consumer" purchases.

## 1. THE CPPA APPLIES TO CONSUMER-PLAINTIFFS ONLY, AND NOT TO CORPORATIONS, SUCH AS CSIS

CSIS is a corporation[1] and is not a "consumer" subject to the protections of the CPPA. Clifton Terrace Associates, Ltd. v. United Technologies Corp., 728 F.Supp. 24, 34 (D.D.C. 1990), vacated in part on other grounds, 929 F.2d 714 (D.C. Cir. 1991). The CPPA defines a "consumer" to mean:

> a person who does or would purchase, lease (from), or receive *consumer goods or services*, including a co-obligor or surety, or a person who does or would provide the economic demand for a trade practice; as an adjective, "consumer" describes anything, without exception, which is primarily for *personal, household, or family use*.

D.C. Code § 28-3901(a)(2) (emphasis added)

This Court repeatedly has dismissed CPPA claims filed by corporations because they are not "consumers" under that statute. In Clifton Terrace, this Court stated:

> *This Court has held that the legislative history of the CPPA, along with a consistent reading of its provisions, unequivocally indicates that the CPPA was intended to protect consumer-plaintiffs only, and not corporations.* Independent Communications Network, Inc. v. MCI Telecommunications Corp., 657 F.Supp. 785, 787 (D.D.C. 1987) (emphasis added); see also Howard v. Riggs National Bank, 432 A.2d 701, 709 (D.C. 1981) (CPPA designed to police trade practices arising only out of consumer-merchant relationships).

728 F.Supp. at 34 (emphasis added). The Court went on to conclude that "[s]ince plaintiff is not a consumer within the meaning of the CPPA, its claims thereunder are properly dismissed." Id.

---

[1] Plaintiffs' Second Amended Complaint states that CSIS "is [a] non-profit Delaware corporation, incorporated in 1986. It has been headquartered in Washington, D.C. since its formation." Second Amended Complaint ¶ 15. The corporation conducts research and analysis and develops policy initiatives in the areas of defense and security, global challenges, and regional transformation. Id. Furthermore, CSIS's own website represents that its operating revenue for fiscal year 2006 was $28.53 million, and its expenditures were $28.57 million. See http://www.csis.org/about/financial/, last visited November 28, 2007.

Likewise, in Independent Communications Network, the fact that the plaintiff was a corporation was dispositive in the court's determination that the transaction between the parties was outside the CPPA. Independent Communications Network's *status as a corporation* was what removed its transactions from the confines of the CPPA: "In the case at hand, ICN describes itself as a corporation engaged 'in the interstate sale of long distance telephone services.' Complaint at ¶ 1. By its very admission, therefore, ICN is not a 'consumer.'" 657 F.Supp. at 788. The court concluded, therefore, that ICN was "not entitled to a cause of action under the provisions of" the CPPA.[2] Id.

Plaintiffs attempt to avoid the necessary implications of CSIS's corporate status by asserting a purported "plain language" argument that CSIS is a consumer because it is a "person who does or would provide the economic demand for a *trade practice*." Opposition at 10 (emphasis added). Plaintiffs' argument, however, is based on an incomplete reporting of the plain language of the Act: it excerpts a portion of the statutory definition out of context and to the exclusion of other relevant definitional language. Plaintiffs fail to account for a critical and necessary term in this definition—specifically, a "trade practice." A "trade practice" is any act that:

> does or would create, alter, repair furnish, make available, provide information about, or, directly or indirectly, solicit or offer for or effectuate, a sale, lease or transfer, of *consumer goods or services.*

D.C. Code § 28-3901(a)(6) (emphasis added). "Consumer," as an adjective, describes:

> anything, without exception, which is primarily for *personal, household, or family use*.

[2] See D.C. Code 28-3905(k)(1) (providing a cause of action only for use of a "trade practice" in violation of District of Columbia law) and D.C. Code 28-3901(a)(6) (defining "trade practice" as acts involving "consumer goods and services) and D.C. Code 28-3901(a)(2) (defining "consumer", when used as an adjective, to describe things "primarily for personal, household, or family use").

Id. § 28-3901(a)(2). CSIS does not provide the economic demand for a "trade practice" because it does not solicit or purchase "consumer goods or services," i.e., services for "personal, household or family use." Although CSIS may "provide the economic demand for hotel stays in Russia by its employees and contractors," Opposition at 10, CSIS's economic demand arises out of its role as a business and its need to attend to its business in Russia. Opposition at 2 ("CSIS requires its employees or contractors to attend to its business in Russia, and pays for or reimburses them for the associated expense[.]"). As such, CSIS does not meet the "plain language" definition of "consumer," as that term is *fully* defined under the CPPA. CSIS is undeniably a corporation, is not a consumer within the CPPA, and thus must be dismissed from this action.

**2. INDEPENDENT OF CSIS'S CORPORATE STATUS, IT MUST BE DISMISSED AS A PLAINTIFF BECAUSE THE TRANSACTIONS AT ISSUE WERE FOR BUSINESS PURPOSES**

In addition to construing the CPPA to categorically exclude corporations like CSIS from coverage by the Act, courts also have rejected claims by individuals because the complained-of transactions were for a business use. As interpreted by the courts, the CPPA does not extend to any purchases that are for business or commercial use, as opposed to "personal, household or family use." D.C. Code § 28-3901(a)(2); see, e.g., Ford v. ChartOne, 908 A.2d 72, 81, 82 n.10, 84 n.12 (D.C. 2006) (explaining that the CPPA "does not apply to commercial dealings outside the consumer sphere," and thus that "[a] purchase of supplies or equipment for a business operation," such as "an attorney's purchase of, say, office supplies on his own behalf" would fall outside of the CPPA's coverage); Mazanderan v. Indep. Taxi Owners' Ass'n, 700 F. Supp. 588, 591 (D.D.C. 1998) (holding that a taxi operator's purchase of gasoline and supplies did not fall within the CPPA's coverage because it was made "in connection with his role as an independent businessman").

CSIS's payments or reimbursements for its employees' stays in Marriott hotels in Russia on their business trips, Opposition at 10, are not for "personal, household or family use." Plaintiffs admit that CSIS employees used the Marriott hotel rooms in Russia in furtherance of CSIS's business activities, not for personal use: "CSIS requires its employees or contractors **to attend to its business in Russia**, and pays for or reimburses them for the associated expense[.]" Opposition at 2 (emphasis added). Furthermore, the fact that CSIS's employees are able to submit their hotel bills to CSIS for reimbursement **as a business expense** is dispositive that CSIS employees are using Marriott's hotels in Russia for business—and not personal—use, as contemplated under the CPPA. Purchases of goods or services by corporations or other entities to make their business run are excluded from CPPA protection. See ChartOne, 908 A.2d at 81, 82 n.10, 84 n.12; Mazanderan, 700 F. Supp. at 591.

In an attempt to salvage their corporate plaintiff, Plaintiffs mischaracterize the holding of Weschler & Son, Inc. v. Klank, 561 A.2d 1003 (D.C. 1989), incorrectly claiming that this case settled the question at hand. Notably, Weschler involved an individual, not a corporate, plaintiff. In Weschler, the District of Columbia Court of Appeals stated that where a purchaser of goods or services is "not engaged in the regular business of purchasing this type of goods or services and then reselling them, then the transaction **will usually fall** within the CPPA." 561 A.2d at 1005 (emphasis added).[3] However, the District of Columbia Court of Appeals clarified this holding in Ford v. ChartOne, Inc., 908 A.2d 72 (D.C. 2006):

> Weschler did not announce an ironclad rule; it said only that if the purchaser is not engaged in the regular business of buying and reselling the goods in question, the transaction will 'usually' be

[3] In Weschler, there were no facts in the record establishing the business use of an antique chest, which had been purchased at an auction. The Court noted that "it is entirely conceivable that Klank intended to make personal use of this antique chest in his home or office." Id. at 1004. That is not the case here; CSIS has admitted that its employees used Marriott's hotel rooms in Russia to "attend to [CSIS's] business in Russia." Opposition at 2.

> subject to the CPPA, not that it always will be. *A purchase of supplies or equipment for a business operation, for example, might be exempt even though such goods would not be resold.* See Mazanderan, 700 F.Supp. at 591.

908 A.2d at 84 (emphasis supplied). As CSIS must concede, its purchases of Marriott's hotel rooms in Russia were in furtherance of the business operations of CSIS, just as the taxi driver's purchase of supplies in Mazanderan furthered his business operations. Thus, under controlling precedent, simply because CSIS is not in the "travel, hotel, or hospitality business," Opposition at 11, does not transform its purchase or reimbursement for its employees' business stays at the Marriott Russia hotels into consumer transactions. If it did, then any company whose employees stayed in Marriott's hotels as part of their business travel, except companies in the travel, hotel, or hospitality business, would be a consumer under the CPPA as to its transactions with Marriott. Such a result would be contrary to the CPPA's aims, as interpreted by the courts.

In addition to incorrectly claiming that Weschler superseded Mazanderan, Plaintiffs also unsuccessfully attempt to distinguish the facts of that case to avoid CSIS's dismissal. Plaintiffs argue that Mazanderan involved transactions outside the CPPA because the parties were both on the "supply side" of a particular transaction, and the purported "consumer" did not "create the economic demand for a trade practice," as Plaintiffs allege that CSIS does here. Contrary to Plaintiffs' characterizations, however, Mazanderan is on point and supports CSIS's dismissal. In Mazanderan, the Court's ruling did not depend on a "supply side" analysis; rather, it refused to apply the CPPA to the plaintiff taxi cab owner because the complained-of transaction—the purchase of fuel for his taxi, i.e. his business—did not qualify as a "consumer" purchase. 700 F.Supp. at 591 (holding that taxi driver's purchases of gasoline and supplies were "made in connection with his role as an independent businessman and . . . cannot be categorized as being for 'personal, household, or family use.'") 700 F.Supp. at 591. This logic applies squarely here:

because CSIS purchased rooms in Russia in order to operate and further its business interests, such as research in Russia on foreign policy, Opposition at 2, the hotel rooms are not "consumer" purchases. To the extent that the taxi driver in Mazanderan was on the "supply side" of a transaction, the same was true of CSIS: neither resold the defendants' goods or services, but instead both used those goods or services to make their own businesses run.

Plaintiffs erroneously argue that any corporate purchaser of goods or services that creates an "economic demand" is a "consumer," so long as it is not on the supply-side. This argument disregards the D.C. Court of Appeals' recent ruling in ChartOne, as well as Mazanderan and other precedent. Plaintiffs' position would swallow the rule that the CPPA is designed to protect only consumer-merchant transactions. Under Plaintiffs' argument, it would be actionable under the CPPA for General Motors to sue Microsoft for selling allegedly problematic software used by General Motors to conduct its business, or for ExxonMobil to sue 3M for providing allegedly defective copy paper used by ExxonMobil to conduct its business. Yet those disputes are not the type intended for CPPA coverage. See Clifton Terrace, supra, 728 F.Supp. at 34; Indep. Commc'ns Network, supra, 657 F.Supp. at 787; Howard, supra, 432 A.2d at 709.

In sum, although CSIS's corporate status is dispositive, CSIS's transactions with Marriott also do not fall under the CPPA because CSIS's employees did not use Marriott's hotel rooms for personal or household use, but instead used those rooms to further CSIS's business purpose. Therefore, for these two independent reasons, CSIS must be dismissed from this case.

## B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR MISREPRESENTATION OF SOURCE OR GEOGRAPHIC ORIGIN BY MARRIOTT IN CONNECTION WITH THE SALE OF ITS GOODS AND SERVICES

### 1. THE CPPA DOES NOT EXTEND TO ALLEGED MISREPRESENTATIONS AS TO THE LOCATION OF A DEFENDANT'S CORPORATE HEADQUARTERS

Plaintiffs fail to state a geographic origin claim under the CPPA, because their claim does not fall within the prohibitions of D.C. Code §§ 28-3904(a) and (t). Sections 28-3904(a) and (t) provide as follows:

> It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:
>
> (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
>
> ****
>
> (t) use deceptive representations or designations of geographic origin in connection with goods or services.

Marriott's alleged misrepresentation of its headquarters' location simply does not fit within the statutory language of either of these pleaded provisions.

With respect to Section 28-3904(a), the "services" received by Plaintiffs were accommodations at Marriott hotels in Russia. Therefore:

- the "source" of the services Plaintiffs received could plausibly refer either to the geographic location of the services (Russia, where the hotel rooms and services are located), or the identity of the service provider (Marriott), but not the corporate headquarters of the service provider;
- the "sponsorship," "approval," or "certification" of the services, if any, is by Marriott, and there is no allegation that Marriott has misrepresented the services as having been "sponsor[ed]," "approv[ed]," or "certifi[ed]" by another company; and
- the "accessories, characteristics, ingredients, uses, benefits, or quantities" of the services plainly refer to the qualitative and quantitative aspects of the

services provided by Marriott's hotels in Russia, not to the location of its headquarters, and there is no allegation of any misrepresentation concerning any of these factors.

With respect to Section 28-3904(t), the "geographic origin" of the Marriott hotel rooms and the services provided in connection with those rooms is plainly Russia, not Bethesda or Washington, D.C. Accordingly, because Marriott's purported misrepresentation about the location of its headquarters is not covered under the plain terms of the CPPA provisions cited by Plaintiffs, their "headquarters misrepresentation" claim should be dismissed.

The point is not simply, as Plaintiffs concede, that no court has recognized a claim concerning misrepresentations as to the location of a company's headquarters. Opposition at 8. The point is that no court has recognized the novel claim made by Plaintiffs here because the D.C. statute, like the Lanham Act and similar state statutes around the country,[4] does not cover misrepresentations concerning a business's corporate headquarters. See Marriott Opening Mem. at 8-9. Like Section 28-3094(a) and (t), Section 43(a) of the Lanham Act prohibits false designations of "origin, sponsorship, or approval," 15 U.S.C. § 1125(a)(1)(A), but "typical claims under [Section 43(a)] would involve a new trademark that was confusingly similar to an already established one, or an attempt by a defendant to 'palm-off' its goods as those of a competitor by use of the competitor's mark," Int'l Ass'n of Machinists And Aerospace Workers, AFL-CIO, v. Winship Green Nursing Ctr., 103 F.3d 196, 208 (1st Cir. 1996) (Saris, J., concurring), not purported misrepresentations about the location of a company's headquarters.[5]

---

[4] Rather, these statutes, like the CPPA, are intended to cover either false claims about where goods or services literally come from (e.g., "Made in the USA"), or concerning who made or sponsored them (e.g., a fake "Rolex"). Marriott Opening Mem. at 8-9.

[5] Likewise, "[i]n the typical commercial setting, confusion as to the *source* of goods or services occurs when there is an unacceptably high risk that a buyer may purchase one product or service in the mistaken belief that she is buying a different product or service." *Id.* at 202 (emphasis added) (citing Star Fin. Svcs., Inc. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996) ("[c]onfusion about *source* exists when a buyer is likely to purchase one product in the belief she was buying another and is thus potentially

None of the prohibitions of D.C. Code §§ 28-3904(a) and (t) plausibly can be read to include a purported misrepresentation regarding a company's headquarters location.

**2. EVEN ASSUMING THE STATUTE APPLIES, PLAINTIFFS HAVE NO STANDING TO RAISE THEIR PURPORTED MISREPRESENTATION CLAIM AND HAVE NOT SUFFICIENTLY PLEADED A VIOLATION OF THE STATUTE**

Plaintiffs' new misrepresentation claim also must fail because they have not pleaded, and cannot show, that Marriott's representations as to the location of its headquarters caused the named Plaintiffs any harm or would cause a reasonable person any harm. Indeed, Plaintiffs' Second Amended Complaint is silent on these points.

First, Plaintiffs fail to establish an actual or threatened injury-in-fact, as they must in order to have standing to raise their CPPA claims. Even after the 2000 amendments to the CPPA, courts have firmly held that fundamental principles of standing preclude a plaintiff from pursuing a CPPA claim without actual or threatened injury. As succinctly held by this Court, "**Absent a claim of injury, [Plaintiff] has no standing to present his DCCPPA claim**." Hoyte v. Yum Brands, 489 F.Supp.2d 24, 29 (D.DC. 2007) (emphasis added); see Williams, et al. v. The Purdue Pharma Co., 297 F.Supp.2d 171, 178 (D.D.C. 2003) ("the CPPA [does] not change the requirements for standing under D.C. law, despite its broad language," citing Friends of Tilden Park, Inc. v. District of Columbia, 806 A.2d 1201, 1206 (D.C. 2002) (the D.C. courts, though not established under Article III of the Constitution, nevertheless recognize constitutional and prudential standing requirements)).

---

prevented from obtaining the product she actually wants." (emphasis added)). The Lanham Act also similarly prohibits misrepresentations about geographic origin and the "nature, characteristics, [or] qualities" of goods or services, which prohibits "misrepresentations about the quality of a defendant's own goods . . . as well as affirmative misrepresentations about another's products." Winship Green Nursing Center, 103 F.3d at 208.

Thus, absent an alleged injury to the named Plaintiffs from the supposed misrepresentation of Marriott's corporate headquarters, Plaintiffs do not have the required injury or standing to pursue their claims. E.g., Purdue Pharma, 297 F.Supp.2d at 172 ("The question raised by this lawsuit is whether patients who were prescribed a drug for pain, and who personally suffered no ill effects or lack of efficacy, can sue for money damages under D.C. law as consumers injured by the drug manufacturers' allegedly-fraudulent advertising claims. Finding that the answer is no, the Court will grant the defendants' motion to dismiss."). Here, Plaintiffs claim no actual injury-in-fact concerning their CPPA claims: they do not allege that they were aware of Marriott's representations concerning its headquarters, or that any such representations affected their decision to stay at a Marriott hotel, or that they suffered any harm whatsoever as a result of any alleged misrepresentation. Nor can Plaintiffs credibly assert that their decision to stay at a Marriott hotel hinged on the hotel's headquarters being in Washington, D.C. as opposed to Bethesda, Maryland.

Instead of articulating how they suffered any damage as a result of Marriott's representations concerning its headquarters, Plaintiffs argue that such damage is clear based solely on Marriott's statement that it has experienced a "positive financial impact." Opposition at 7-8. Notably, Marriott has not stated that it has experienced such an impact based upon its representations concerning its headquarters or its "roots in the District of Columbia," as Plaintiffs erroneously suggest. Id. at 7. All that Marriott has stated is that "the perpetuation of a company's culture has proven a positive financial impact." Answer to First Amended Complaint ¶ 22. In any event, regardless of Plaintiffs' mischaracterization of Marriott's assertion of "positive financial impact," that statement alone does not meet Plaintiffs' burden to establish injury-in-fact and thus standing to pursue their claim.

Second, Plaintiffs' new claim should be dismissed pursuant to Rule 12(b)(6) because it does not sufficiently plead the requirements of a misrepresentation claim under the CPPA. Plaintiffs' Opposition contains the bare speculation that "[f]or **some** customers traveling to Russia where the environment may not be particularly stable, an association with the capital of the only remaining world superpower **might** convey a sense of security not otherwise available." Opposition at 7-8 (emphasis added). However, for purposes of making out a claim under the CPPA, it is not sufficient that Marriott's alleged identification with the District of Columbia "might convey a sense of security" to some hypothetical customer booking a Marriott hotel in Russia. Rather, to survive a 12(b)(6) motion—assuming that Plaintiffs' novel claim is even actionable—Plaintiffs must sufficiently allege that a reasonable consumer reserving a room at a Marriott hotel in Russia would have been misled and harmed by Marriott's alleged representations that it is headquartered in the District of Columbia. See Pearson v. Soo Chung, D.C. Superior Court, No. 05 CA 4302 B, June 25, 2007, at 19-20 ("[A] claim of an unfair trade practice properly is considered in terms of how the practice would be viewed and understood by a reasonable consumer. A reasonable consumer would not interpret "Satisfaction Guaranteed" to mean that a merchant is required to satisfy a customer's unreasonable demands or to accede to demands that the merchant has reasonable grounds to dispute.") (citations omitted); Benson v. Kwikset Corp., 152 Cal. App. 4th 1254, 1275 (2007) (finding sufficient evidence in the record to support claim of misrepresentation of geographic origin because "here, plaintiff presented testimony, and the trial court found, that for some people, country of origin labeling *is a critical factor when making a purchasing decision*") (emphasis added). Because Plaintiffs have not pled that a reasonable person would have been misled and harmed by Marriott's purported

misrepresentation of its headquarters location their misrepresentation claim must be dismissed for failure to state a claim under the CPPA.

## III. CONCLUSION

For these reasons, and for the reasons stated in its Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint, Marriott respectfully requests that this Court dismiss Plaintiff CSIS from this action and dismiss Plaintiffs' claim of misrepresentation as to the source of geographic origin of Marriott's goods and services.

Dated: November 29, 2007

/s/ Joel A. Dewey

Joel A. Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD 26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant,*
*Marriott International, Inc.*