# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.                                        Civil Action No. 05-1138 (GK)

MARRIOTT INTERNATIONAL, INC.

        Defendant.

## AFFIDAVIT OF WILLIAM ELLIOTT BUTLER

1.     I am submitting this affidavit in connection with a case pending in the United States District Court for the District of Columbia, known as *Shaw, et al. v. Marriott International, Inc.*, Civil Action No. 05-1138 (GK).

2.     I have been asked to review the relevant pleadings in this litigation and provide an analysis of Russian law relevant to the plaintiffs' claims. In particular, I have been asked to analyze Russian law applicable to currency transactions and exchange rates used by businesses operating in Russia, including consumer protection aspects thereof.

3.     I am admitted to the Bar of the District of Columbia and the Bar of the Supreme Court of the United States. I have been licensed by the respective Ministry of Justice in Uzbekistan and the Russian Federation. I am fluent in the Russian language and have authored the leading Russian-English Legal Dictionary. Since 1988, I have personally spent up to thirty to forty percent of my time in the former Soviet Union and the Russian Federation. A copy of my curriculum vitae is attached as Exhibit A.

4. I have reviewed and am familiar with Russian legislation regulating currency transactions by businesses operating in Russia, including hotels such as those operated and franchised by Marriott, and relevant consumer protection requirements.

5. It has been and remains a common commercial practice in Russia, at least from the early 1990's onward, for both Russian and foreign companies to set their prices in either United States dollars, or euros, or pre-arranged monetary units rather than in Russian or Soviet rubles. This practice originated during severe inflationary periods and enabled businesses to avoid reprinting their menus or price lists every day in order to reflect adjustments in exchange rates. As described below, the issue of settlements for hotel services in the Russian Federation between resident hotels and non-resident guests is subject to complex regulation by various provisions of currency control, banking, civil, and consumer protection legislation.

6. Until June 2004, all settlements in foreign currencies between juridical persons[1] and natural persons (residents and non-residents) for goods, services and work being realized on the territory of the Russian Federation were expressly prohibited in accordance with the Statute on the Termination of Settlements in Foreign Currency on the Territory of Russian Federation for Goods, Services and Work Being Realized to Natural Persons, No. 503, of August 15, 1997, issued by the Central Bank of Russia. In response to the 1997 statute, many Russian businesses continued to advertise the prices of their goods and services in foreign currency equivalents or so-called "currency units" converted into Russian rubles at special "internal" rates or at the Central Bank rate, it always being understood that the actual payment would have to be in rubles.

7. Although Statute No. 503 was repealed by the Directive of the Central Bank of the Russian Federation No. 1450-U of June 15, 2004, the practice of quoting in "currency units"

---

[1] The term "juridical person" is defined, in relevant part, in Article 48 of the Civil Code of the Russian Federation as follows: "A juridical person shall be deemed to be an organization which has solitary property in ownership, economic jurisdiction, or operative management and is liable for its obligations with such property and may in its own name acquire and effectuate property and personal non-property rights, bear duties, and be a plaintiff or defendant in court. Juridical persons must have an autonomous balance sheet or estimate."

converted into rubles at special rates continues due to certain remaining limitations on use of foreign currencies as referred to below.

8. Article 6a of the Federal Law "On Currency Control and Currency Regulation" No. 173-FZ of December 10, 2003, which, for the most part, became effective on June 17, 2004 (hereinafter – the "Currency Control Law"), provides that currency operations (including settlements between residents and non-residents) are made free of any restrictions, except for instances provided for by Articles 7, 8 and 11 of the Currency Control Law. On the face of it, this provision means that there is no limitation on the payment by a non-resident natural person to a resident juridical person in foreign currency for services rendered to the natural person within the territory of the Russian Federation. When this provision is read together with other provisions of the Currency Control Law, however, it becomes clear that such payments may be made exclusively by bank transfers by reason of the limitations imposed by Article 14(2) of the Currency Control Law which provides that any and all settlements qualified as currency operations,[2] including receipt of payments, are made by resident juridical persons through bank accounts opened in empowered Russian banks, unless specific exceptions are provided by Russian legislation. It follows from this provision that foreign currency settlements in cash between residents and non-residents in the Russian territory are generally prohibited.

9. Moreover, payments by bank transfers in foreign currency to Russian residents involve substantial administrative burdens imposed by Articles 21 and 23(4) of the Currency Control Law and further elaborated by the Instruction of the Central Bank of the Russian Federation No. 117-I of June 15, 2004, On the Procedure of Filing by Residents and Non-Residents of Documents and Information on Currency Operations. It is my understanding that such administrative burdens make it impractical for Russian juridical persons to receive numerous relatively small amounts of foreign currency by bank transfers on a regular basis.

---

[2] Pursuant to Article 1, paragraphs 1, 2 and 9 (subparagraphs (a) and (b)), of the Currency Control Law the term "currency operation" includes, *inter alia*, settlements between residents and non-residents of the Russian Federation with the use of both Russian and foreign currencies.

Further, payment by bank transfer in Russia requires a pre-arranged personal filing by the originator of the payment instruction with his bank, which is impractical for the immediate settlement for a hotel room account upon departure from the hotel, the precise amount of which may not be known until the moment of departure.

10. The most common way for non-resident natural persons to pay for hotel rooms in Russia is by credit card. Pursuant to Article 2.3 of the Russian Central Bank Statute on the Emission of Banking Cards and Transactions Made With the Use of Payment Cards, No. 266-P, of December 24, 2004, holders (including non-resident natural persons) of banking cards are empowered to pay for goods and services within the territory of the Russian Federation only in the currency of the Russian Federation.

11. Article 317 of the Civil Code of the Russian Federation contains a general authorization to use foreign currency equivalents or prearranged monetary or "currency" units (so-called "CUs") in transactions for the purpose of determining the amount of payment obligations. The ruble amount of the actual payment, when stated in foreign currency equivalents or CUs, is calculated on the basis of the official rate of the respective currency set by the Central Bank of the Russian Federation, unless otherwise provided by Russian legislation or by agreement of the parties. In instances when the CU is not tied to any particular currency, the rate is determined by agreement of the parties. For example, an agreement of the parties with respect to a conversion rate would be reached as a result of the hotel's public offer of the lodging services in the form of relevant signs quoting a conversion rate placed in the reception area and the guest's acceptance of such offer in the form of signing for a room at the hotel. It is my understanding that at the relevant times for this litigation, the forms that customers signed when checking into the hotels quoted a daily room rate. The forms expressly stated that the daily room rate was in "units" and that it excluded taxes. It is also my understanding that at all relevant times for this litigation the hotel posted a placard daily at its front desk, publishing the internal CU to ruble exchange rate in effect.

12.  When a guest pays for his room, the hotel applies its internal exchange rate to the foreign currency unit to convert the room charge into Russian rubles. This is a common commercial practice that is permitted under Russian legislation as described above in paragraph 11 above.

13.  Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: 20 December 2007

_W E Butler_
William Elliott Butler