UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRITT A. SHAW, et al.**        )<br>                                                       )<br>                                                       )<br>**Plaintiffs,**                            )<br>                                                       )   Civil Action No. 05-1138(GK)<br>**v.**                                               )   (Status Conference: July 7, 2008)<br>                                                       )<br>**MARRIOTT INTERNATIONAL, INC.**  )<br>                                                       )<br>**Defendant.**                         )<br>_____)  | |

**PLAINTIFFS' OPPOSITION TO MARRIOTT'S MOTION
FOR LEAVE TO FILE SUR-REPLY ON CLASS CERTIFICATION**

**I.    STANDARD FOR LEAVE TO FILE SUR-REPLY**

A sur-reply may be filed only by leave of Court to address new matters raised in a reply, to which a party would otherwise be unable to respond.[1] The matter must be truly new.[2] The standard for granting leave to file a sur-reply is "whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply."[3]

---

[1] *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F.Supp.2d 270, 276-277 (D.D.C.,2002); citing *Robinson v. The Detroit News, Inc.,* 211 F.Supp.2d. 101, 112 (D.D.C.2002) (Urbina, J.) ("The standard for granting leave to file a surreply is whether the party making the motion would be unable to contest matters presented to the court for the first time in the opposing party's reply." (citing *Lewis v. Rumsfeld,* 154 F.Supp.2d 56, 61 (D.D.C.2001); *Alexander v. FBI,* 186 F.R.D. 71, 74 (D.D.C.1998))).

[2] *Id.* citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56, 61 (D.D.C.2001) (Urbina, J.) ("Because this contention does not involve a new matter but rather an alleged mischaracterization, the court denies the plaintiff's motion.")

[3] *Groobert v. President and Directors of Georgetown College***,** 219 F.Supp.2d 1, 13 (D.D.C. 2002)**,** citing *Lewis v. Rumsfeld*, 154 F.Supp.2d 56 at 61 (D.D.C.2001).

Courts will typically deny a motion for leave to file a sur-reply that consists of a reiteration of arguments, and fails to add anything new.[4] The Court in *Robinson v. Detroit News, Inc.* explained that the purpose of a sur-reply is to address new issues that could not have been addressed before, the Court will not consider a proposed sur-reply consisting of a reiteration of arguments made in a prior filing.[5]

## II.    ON STANDING MARRIOTT REARGUES THE SAME POINTS MADE IN ITS OPPOSITION

While standing, an issue of subject matter jurisdiction, is always relevant, it is not a Rule 23 criterion for class certification. Plaintiffs adequately pled facts supporting the standing of its proposed class representatives in the Second Amended Complaint. Indeed, Marriott twice had the opportunity to challenge standing in its various motions to dismiss, but did not seek dismissal of any Named Plaintiff at that time. Marriott cites no rule requiring that Plaintiffs establish standing as an element of class certification.

Because Marriott did raise standing issues in its Opposition, Plaintiffs appropriately responded to the challenge in the Reply Memo. Plaintiffs did not introduce any fact or new material unknown to Marriott at the time its Opposition was submitted. Plaintiffs made no argument in the Reply beyond the facts offered by Marriott in it Opposition. Indeed, Marriott does nothing more than repeat in the Sur-reply the exact arguments made in its Opposition, and relies the same cases cited in the Opposition. Marriott has not presented anything "new" related to the Named Plaintiffs' standing which would support leave to file a sur-reply.

---

[4] *Robinson v. Detroit News, Inc.*, 211 F.Supp.2d 101, 113 (D.D.C.,2002).

[5] *Id.*

### III.  PLAINTIFFS' PROPOSED CLASS DEFINITION HAS REMAINED CONSISTENT FROM ITS OPENING MEMORANDUM

Marriott argues that the Plaintiffs' Reply changes the class definition by now qualifying the definition to include only those guests who received a written confirmation through the Marriott reservation system. But this has consistently remained the definition throughout the class certification briefing.

The class definition proposed in the Opening Memorandum in Support of Class Certification ("Pltfs. Opening Memo"), was as follows:

> All persons who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, **who received a room rate confirmation stated in U.S. dollars**, and whose final bill at check-out was stated in Russian Rubles.  (Emphasis added.)

Based on its misstatement regarding a purported change in the class definition, Marriott proceeds to argue that Plaintiffs have failed to take into consideration all those guests who may be in its reservation system but fall outside the qualifying definition. Sur-reply at 4-6. In support of this argument, Marriott cites to extensive portions of its Opposition Memorandum. This alone is sufficient reason to deny Marriott's request for leave to file the sur-reply. But further, Rule 23 does not require Plaintiffs to explain the entire landscape of those who are not within the class; only to define a class that is reasonably ascertainable.[6] Plaintiffs have adequately defined a class readily ascertainable from Marriott's records. Marriott has not identified any "new" material it did not have access to when it prepared its Opposition.

---

[6] *Fainbrun v. Southwest Credit Systems, L.P.*, 246 F.R.D. 128 (E.D.N.Y. 2007); see also *Hnot v. Willis Group Holdings Ltd.*, 228 F.R.D. 476, (S.D.N.Y.2005); *Bynum v. District of Columbia*, 214 F.R.D. 27 (D.D.C. 2003).

### IV. MARRIOTT HAS MISCHARACTERIZED THE RECORD IN ORDER TO CREATE THE ILLUSION OF CHANGED FACTUAL ASSERTIONS BY PLAINTIFFS

Marriott argues that the record in this case contradicts Plaintiffs' assertion that "all reservations in MARSHA resulted in a reservation confirmation from Marriott."[7] Yet Marriott fails to cite any evidence for this argument. Moreover, Marriott distorts the record and misstates the evidence Plaintiffs have provided on this point. Again Marriott cites to extensive portions of its Opposition to support its contentions. Sur-reply at 4-6. Contrary to Marriott's arguments, the record is replete with evidence that written confirmations are issued to guests by MARSHA.[8] Plaintiffs' have soundly established that regardless of the method used to make a reservation, the information provided to the prospective guest in the form of a written confirmation is generated by the MARSHA database[9] which is controlled by Marriott.[10]

Marriott for the first time raises the issue of cancellation rates and argues that Plaintiffs' reliance on reservations in MARSHA overstates the number of individuals who actually stay at

---

[7] Marriott International Inc.'s Surreply in Opposition to Plaintiffs' Motion for Class Certification, (Doc. No. 96-2, "Surreply") at 6.

[8] Plaintiffs' Memorandum of Points and Authorities In Reply to Marriott's Opposition to Plaintiffs' Motion for Class Certification, ("Doc. No. 86) at 3-4.

[9] Exhibit 5 to Doc. No. 62, Humberto Chacon Deposition, p. 41, line 9 to 13; Exhibit 4 to Doc. No. 62, McGrath Deposition, p. 75, lines 13-18; Exhibit 29, 11M-01211; Exhibit 31, MARSHA Reference Guide (Portions), Bates No. 7M-00030 to 7M-00050 and Exhibit 32, 7M-00340 to 7M-00350.

[10] Exhibit 4 to Doc. No. 62, McGrath Deposition, p. 118, line 4 to p. 119, line 3; p. 162, line 12 to 163 line 8; p. 157, line 14 to p. 158, line 14. Exhibit 1 to Doc. No. 62, Bartlett Deposition, p. 143, line 21 to p. 144, line 2.

the Marriott Russia hotels because of the significant cancellations rate.[11]  Marriott has failed to provide a single citation to the record for this statement; nor can it.  Marriott has not produced documents reflecting cancellations or cancellation rates.

Discovery in this matter closed on April 1, 2008.  Plaintiffs have repeatedly pressed Marriott to make certain it had provided complete guest stay data.  Marriott responded to those requests:

> Marriott will produce documents sufficient to identify those hotel guests who stayed at the Marriott Managed Russian Hotels within the relevant time period. . . .[12]

Throughout discovery, Marriott failed to provide evidence that the data it produced *included* reservations for guests that did *not* stay at the Marriott hotel indicated.  All indications were to the contrary.  Now discovery is closed.  Any other data dealing with cancellation rates should be precluded for Marriott's failure to meet its disclosure and discovery obligations.[13]  Moreover, evidence adduced in discovery proves that guests who made a reservation at a Marriott hotel yet failed to cancel on-time were charged for one night's room and tax:

> There is also a very normal transaction that is called a guaranteed no show.  That means if a person makes a reservation and forgets to cancel the reservation we automatically charge them for one night room and tax.[14]

---

[11] Footnote 6 at p. 5 of Marriott's Surreply.

[12] Exhibit 7 to Motion for Class Certification ("Doc. No. 62"), Marriott's Answer to Document Request No. 5 of Plaintiffs' First Set of Discovery Requests; see also Marriott's Response to Document Request No. 2 of Plaintiffs' Second Set of Discovery Requests.

[13]  FRCP Rule 37(c)(1).

[14] Deposition of Jesus Humberto Chacon, p. 8, line 10-15 and page 22, line 21 - page 25, line 7, attached as Exhibit 1 to this document.

These guests would still have been subjected to Marriott's practice of overcharging.

Regardless of the precise numbers of class members based upon Marriott's records – whether each record represents a guest receiving a written confirmation or each record represents a guest who actually occupied a room – the records demonstrate that Plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1). Marriott does not provide any argument that the numbers as calculated by Plaintiff are not accurate; nor does Marriott provide its own calculation. It does not matter if there are 400,000 as Plaintiffs now estimate, or half that number or a third that number. Plaintiffs have provided a reasonable estimate of the size of the putative class based on the records produced by Marriott. A more precise number can be determined on consideration of the merits of Plaintiffs' claims.

## V.  MARRIOTT REHASHES ITS CONFUSED CONSTITUTIONAL DUE PROCESS AND CHOICE OF LAW ARGUMENTS

In the opening Memorandum in Support of the Motion for Class Certification, Plaintiffs argued that the choice of law analysis applicable under DC law was briefed and decided on Marriott's Motion to Dismiss the First Amended Complaint. Plts. Opening Memo at 2-3, 21. This Court weighed the interests of the jurisdictions related to the resolution of the claims presented in the Complaint under the modified governmental interests standard, the choice of law standard applicable under DC law, and decided that the District of Columbia had a greater interest than other jurisdictions, and that DC law governed the claims. Plaintiffs correctly argued in the Opening Memo that common issues predominate in satisfaction of Rule 23(b)(3) because under the choice of law standard properly applied by this Court, the analysis focuses on the conduct of Marriott. In its Opposition to Class Certification, Marriott raised constitutional and

prudential issues in response to Plaintiffs' arguments. In the Reply, Plaintiffs properly responded to Marriott's opposing arguments. **No new issues have been inserted.**

Marriott's proposed Sur-reply repeats the precise arguments included in its Opposition to Class Certification, compounding the same errors which pervaded the Opposition. Marriott seeks to impose on Plaintiffs the burden of reconciling the consumer protection laws of the 50 states as a means of defeating class certification under the Rule 23(b)(3) predominance requirement. But, over-riding Marriott's effort is the controlling factor which Marriott again ignores – this Court already performed the choice of law analysis which supports the application of DC law to the claims asserted in this action.

Marriot's Opposition and Sur-reply repeat the same arguments:

1. Marriott argues that Plaintiffs must show that DC "has the most significant relationship" to each class member's claim. Opposition at 33, 38-44; Sur-reply at 13-14. Plaintiffs have demonstrated that Marriott's misrepresentations and failure to disclose material facts relating to its room rates are common to the class and arise from Marriott's conduct associated with the District of Columbia. Plaintiffs' Reply at 2-3, 21.

2. Marriott argues that the case law supports that Plaintiffs must evaluate the contacts with DC in the context of the variations in the law of all 50 states. Opposition at 34-38; Sur-reply at 14-15. Plaintiffs have demonstrated that no case holds that Plaintiffs must perform that analysis, and have distinguished each of the cases cited by Marriott in its Sur-reply. Reply at 15-16.

3. Marriott argues that the D.C. Circuit in *Walsh v. Ford Motor Co.,* 807 F.2d 1000

held that Plaintiffs must conduct a survey of the laws of all fifty states to properly conduct the choice of law analysis required for class certification. Opposition at 34-38; Sur-reply at 13-14. *Walsh* states nothing remotely close. The case was not decided under the DC choice of law standard. In fact, the district court was reversed for failing to perform any choice of law analysis whatsoever. *Walsh* at 1012. In remanding, the D.C. Circuit left open the possibility that the district court might properly determine that the law of a single jurisdiction could be applied to "all members of the nationwide class." *Id.* n. 90.

4. Marriott argues that Plaintiffs' failure to reconcile the variations in the consumer protection laws of competing jurisdictions is fatal to their proof of predominance of common legal issues. Opposition at 34-45; Sur-reply at 13-15. Even Marriott concedes that its demonstration of the variations in state law leads only to the necessity of a conflicts of law analysis. Opposition at 41. The conflicts analysis demanded by Marriott is precisely the analysis briefed by the parties on the first motion to dismiss, and resolved by this Court in its Opinion finding that DC law applies. Reply at 20.

5. Marriott argues that this Court's Opinion on the Motion to Dismiss was premised on the "erroneous" assumption that Marriott's headquarters are located within the borders of the District of Columbia. Opposition at 42-43 ; Sur-reply at 12. This Court found that the misrepresentations regarding Marriott's headquarters location, were an additional factor supporting the application of DC law. Further, Plaintiffs have demonstrated that the qualitative factors relating to Marriott's

8

contacts with the District of Columbia far outweigh the single fact of Marriott's actual physical location just over the District line. Reply at 17-20.

6. Marriott repeats and repeats, rather desperately, that it is Plaintiffs' burden to perform the 50 state choice of law analysis. Opposition at 35; Sur-reply at 13-15. Plaintiffs have satisfied their burden to show that under the choice of law standard applicable under DC law, "governmental interests," DC law applies to the claims in this action. The burden now shifts to Marriott to show that, under that standard, the interests of a competing jurisdiction outweighs that of the District of Columbia. Marriott has made no argument that any other jurisdiction has any interest superior to that of the District of Columbia. Reply at 27-28 .

7. Marriott argues that under *Phillips Petroleum v. Shutts,* 472 U.S. 797 (1985), Plaintiffs confuse "minimum contacts" necessary for personal jurisdiction with the "aggregation of contacts" necessary to demonstrate state interests sufficient to satisfy constitutional due process. Opposition at 43-44; Sur-reply at 9-12. But it is Marriott which has confused the two standards. Marriott's argument that individual class members lack the nexus to DC to satisfy the *Shutts* standard is the "minimum contacts" standard rejected by *Shutts* as relevant to the choice of law determination. Plaintiffs properly analyze Marriott's contacts with DC as related to the ***claims*** in this action which Marriott emphatically does not. It is ***Marriott's conduct*** which this Court identified as the controlling factor in its choice of law analysis under the governmental interests standard, and it is ***Marriott's conduct*** which Plaintiffs properly discuss in the Reply. Reply at 17-31.

9

Marriott's requested Sur-reply offers nothing new relating to the issues of constitutional due process and choice of law.

VI.    CONCLUSION

Marriott's Motion for Leave to File a Sur-reply should be denied.

Respectfully submitted.

| | |
|---|---|
| | /s/ Paul D. Cullen, Sr. |
| Of Counsel: | Paul D. Cullen, Sr. |
| Mark W. Borghesani, Esq. | Joyce E. Mayers |
| c/o The Cullen Law Firm PLLC | Randall Herrick-Stare |
| 1101 30th Street NW, Suite 300 | Amy M. Lloyd |
| Washington, D.C. 20007 | The Cullen Law Firm, PLLC |
| (202) 944-8600 | 1101 30th Street NW, Suite 300 |
| | Washington, D.C. 20007 |
| | (202) 944-8600 |
| | |
| | Counsel for Plaintiffs |

**Certificate of Service**