UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, *et al.*            )
                                    )
                                    )
    Plaintiffs,                     )
                                    )  Civil Action No. 05-1138 (GK)
v.                                  )
                                    )
MARRIOTT INTERNATIONAL, INC.       )
                                    )
    Defendant.                      )
                                    )

**SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE DECLARATIONS OF TIMOTHY BRICKELL OR, IN THE ALTERNATIVE, TO COMPEL DISCOVERY**

Pursuant to this Court's June 2, 2008 Order, Marriott International, Inc. ("Marriott"), by its attorneys, submits this Supplemental Memorandum in further support of its Motion to Strike Declarations of Timothy Brickell or, in the Alternative, to Compel Discovery ("Motion to Strike"). On May 9, 2008, the Court granted, in part, Marriott's Motion and ordered Plaintiffs to make Mr. Brickell available for deposition on his three Declarations ("Declarations") filed in support of Plaintiffs' pending Motion for Class Certification. The Court stayed its ruling on whether Mr. Brickell "has offered an expert opinion" and whether to strike his Declarations, pending completion of that deposition. Counsel for Marriott deposed Mr. Brickell on May 22, 2008.

Mr. Brickell's latest deposition testimony confirms that he is attempting to proffer expert opinions. Although Marriott does not concede that Mr. Brickell ultimately would qualify as an expert, his deposition testimony demonstrates that, to generate the opinions in his Declarations, Mr. Brickell relied on his specialized, technical knowledge and applied independent judgment to

BALT2\4372925.3

cull from, manipulate, and analyze the considerable technical data and documents produced by Marriott in the course of this litigation. *See* Fed. R. Evid. 702 (defining expert testimony). Because Mr. Brickell was not timely designated, in accordance with this Court's Scheduling Order and pursuant to Federal Rule of Civil Procedure 26(a), the Court should strike the Declarations as inappropriate expert opinions and prohibit Mr. Brickell from testifying or providing opinions in this case. Even if the Court finds that Mr. Brickell is not offering expert testimony, the Court should strike his Declarations as impermissible and speculative lay opinion testimony. Moreover, whether Mr. Brickell's conclusions are deemed to be those of an expert or a lay person, both Mr. Brickell and Plaintiffs' counsel now state that those conclusions do not relate, in any way, to the defined putative class. While this position is contrary to Plaintiffs' use of that testimony in support of Plaintiffs' Motion for Class Certification, it is also a clear indicator that Mr. Brickell's testimony should be stricken as irrelevant to this litigation. Absent this Court's striking of Mr. Brickell's Declarations and his underlying opinions, Marriott requests an opportunity to counter-designate an expert to respond to his opinions.

## ARGUMENT

I.  **Because Mr. Brickell Used Specialized, Technical Knowledge and Independent Analysis in Formulating His Opinions, They Should be Excluded Because Plaintiffs Failed to Comply with Expert Disclosure and Discovery Requirements.**

Marriott's Motion to Strike and supporting memoranda discussed at length Mr. Brickell's purported credentials as "an economic and litigation support consultant," his expert witness experience, his three Declarations, and his prior deposition testimony. That evidence demonstrates that Mr. Brickell relied on his specialized and technical knowledge as a data analyst, *see, e.g.,* Brickell C.V., attached as Ex. 12 to Reply in Support of Motion to Strike, and used independent analysis and subjective determinations to craft his opinions in the Declarations.

*See* Marriott's Reply in Support of Motion to Strike at 2-3. Accordingly, Mr. Brickell has presented expert testimony within the meaning of the Federal Rules of Evidence. *See* Fed. R. Evid. 702 (expert testimony is based on "scientific, technical, or other specialized knowledge").

Mr. Brickell's second deposition only served to reinforce these conclusions. As Mr. Brickell's latest deposition made clear, from the outset of his analysis, he collaborated with Plaintiffs' counsel in their selection of which of the distinct Marriott guest reservation databases to use for his calculations. Brickell Dep. dated May 22, 2008 ("Brickell Dep. II"), attached as Ex. 1, at 177. Specifically, Mr. Brickell formulated opinions based only on his analysis of the guest data from Marriott's Reservation Data Warehouse ("MRDW"). Second Decl., attached as Ex. 9 to Motion to Strike, ¶ 2; Third Decl., attached as Ex. 10 to Motion to Strike, ¶ 2. As Mr. Brickell revealed in his deposition, in conjunction with Plaintiffs' counsel, he opted to rely on the MRDW *reservation* data to the exclusion of the more complete *guest stay* data produced by Marriott from the individual Marriott managed hotels' property management systems ("PMS"). Brickell Dep. II at 30, 31, 85, 176-187; Affidavit of Deborah McGrath dated March 3, 2008, attached as Ex. 5 to Class Cert. Opp. Mem. at ¶ 6 (discussing differences between MRDW and PMS data). Mr. Brickell's determination of which data to analyze was premised, in part, on his review of a number of sources, including manuals and handbooks on MRDW and Marriott's Automated Reservation System for Hotel Accommodation ("MARSHA"). *See* Brickell Dep. II at 31-34. Such study and analysis required Mr. Brickell to rely on his specialized knowledge of systems gained from his "sixteen years of experience as a Litigation Support Specialist, Data Analyst and Network Administrator in the legal profession," which enabled him to select, opine on and manipulate the data. Brickell C.V.; *see* First Decl., attached as Ex. 21 to Class Cert Mem., ¶ 1; Second Decl. ¶ 1; Third Decl. ¶ 1.

Mr. Brickell's latest deposition testimony concerning his analysis and permutations of the reservation data in the MRDW records illustrates his attempt to present expert testimony. For example, he based his analysis upon a review of each of the more than 400,000 MRDW records and a determination that some of these records were duplicative – not a simple task. *See* Second Decl. ¶ 18; *see also* Brickell Dep. II at 69-70. To opine as to which records were sufficiently similar to be deemed duplicative, Mr. Brickell made a number of subjective determinations, requiring multiple steps of analysis and the creation of a formula. Specifically, Mr. Brickell testified in his recent deposition that it was his "idea to get a unique value that could only represent one unique record" so he "concatenated three fields together"—the guest key field, the current confirmation number field, and the check-out date field—and "combined the values of those three fields . . . to determine a unique record for each . . . within the database." *Id.* at 43-44. To "concatenate" the three fields together, Mr. Brickell "buil[t] a formula." *Id.* at 47-49. He chose these three fields because, following a "trial and error process," they "appeared" to him to "best represent a unique identifier." *Id.* at 57-58, 123; *see id.* at 57 ("For instance, an address field or a name field would be entered in too many different ways that it would not have been a sound approach to determining unique record identification.").

As Mr. Brickell's latest deposition further revealed, after his first query of the documents, Mr. Brickell identified 30,000-plus possibly duplicative records, which he reviewed manually. *See id.* at 50-51. Mr. Brickell then ran a second query and narrowed the duplicative records to 15,956 records, which he again reviewed manually. *See id.* at 44-45, 50-54, 74-75. Mr. Brickell applied the same de-duping analysis after isolating, through a series of queries and reviews, the 11,696 records with purported Washington, D.C. addresses. Second Decl. ¶¶ 12-13; Brickell Dep. II at 84-89. Such a multi-tiered analysis requiring Mr. Brickell to make subjective

determinations about which records and fields to include goes well beyond that of a lay witness tallying or summarizing spreadsheet figures. *See Cooper v. Southern Co.*, 213 F.R.D. 683, 687 (N.D. Ga. 2003) (granting motion to strike declaration for failure to comply with Fed. R. Civ. P. 26(a) and rejecting plaintiff's argument that the declaration was a mere data summary and not expert testimony because the declaration included "at least three paragraphs purport[ing] to provide the results of the declarant's analysis of various facts").

Similarly, the opinions in Mr. Brickell's Third Declaration result from the application of his specialized, technical knowledge to review documents manipulate a large amount of data produced by Marriott through a series of analytical steps and calculations "to determine the number of records or observations that have an estimated accumulated markup that exceeds $1,500." Third Decl. ¶¶ 4-16; *see* Brickell Dep. II at 134-37; 142. Specifically, Mr. Brickell testified in his latest deposition that to determine the number of records that he has opined exceed his threshold "markup," he created a separate data field based on analysis of Marriott documents and his calculation of the hotel's exchange rate, the Central Bank's exchange rate, and "the markup above." Brickell Dep. II at 134-37. Mr. Brickell then applied a formula, which he created, requiring the multiplication of four factors: the room rate, the length of stay, the exchange rate markup, and an 18% tax. *See id.* at 135; Third Decl. ¶ 5. The end result of this formula is what Mr. Brickell refers to as the "accumulated markup" value. *See* Brickell Dep. II at 135. Finally, Mr. Brickell "tested" the accumulated markup value to determine which, if any, records exceeded $1,500. *Id.* Opinions based on such analysis, involving a number of different diagnostic steps, formulas, and calculations, and an amalgamation of data from different sources cannot be, and are not, the equivalent of a paralegal summarizing the data (as Plaintiffs have claimed). *See Olindo Enters., Inc. v. City of Rochester*, 2008 WL 686259, at *6 (W.D. N.Y.

Mar. 7, 2008) (excluding fact witness testimony as to inferences or opinions regarding database records); *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1244 (11th Cir. 2006) (discussing trial court's exclusion of a Rule 1006 report as an improper attempt to introduce expert opinion).

In sum, Mr. Brickell's recent deposition has confirmed that he has relied on his specialized and technical knowledge and has made independent assessments and subjective determinations to formulate the analysis and opinions in his Declarations. However, Plaintiffs have not designated Mr. Brickell as an expert, and the deadline to do so has long since passed. Accordingly, the Declarations should be stricken, and Mr. Brickell should not be permitted to provide any opinions or testimony in this case. *See* Fed. R. Civ. P. 37(a)–(c); *United States v. Brittian*, __ F.3d __, 2008 WL 1988789, *7-8 (D.C. Cir. May 9, 2008) (excluding expert, in part, for failing to make timely disclosure); *Stock v. Integrated Health Plan, Inc.*, 2007 WL 2304055 (S.D. Ill. Aug. 10, 2007) (striking expert report attached to opposition to motion for class certification, which had not been disclosed as required by Federal Rule of Civil Procedure 26(a)).

## II. Alternatively, Mr. Brickell's Declarations Should be Stricken as Impermissible and Speculative Lay Opinion Testimony.

Even assuming that Mr. Brickell's analysis and conclusions do not amount to expert testimony, his Declarations should be stricken because they constitute impermissible lay opinion testimony. As the Federal Rules of Evidence make clear, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c). Because Mr. Brickell's Declarations and testimony are based on his technical and specialized knowledge and experience, they are beyond the ken of a lay person and are inadmissible pursuant to Federal Rule of Evidence 701.

As this Court has recognized, subsection (c) of Rule 701 is intended to prohibit precisely what Plaintiffs are attempting to do here – proffer expert testimony in the guise of lay testimony under Rule 701. *See Bell v. Gonzales*, 2005 WL 3555490, at *12 (D.D.C. Dec. 23, 2005) ("The addition of subsection (c) in the 200[0] amendments was made to prevent lay testimony from crossing over into the realm of experts." (citing *United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005), and *Brandon v. Village of Maywood*, 179 F. Supp. 2d 847, 859 (N.D. Ill. 2001))). As this Court observed, *see Bell*, 2005 WL 3555490, *12, the Advisory Committee Notes to the 2000 Amendments state:

> Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing. . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . .

Amendments to Federal Rules of Civil Procedure, Federal Rules of Evidence, Federal Rules of Criminal Procedure and Federal Rules of Bankruptcy Procedure, 2000, 192 F.R.D. 340, 416 (Committee Notes to Amendment of Federal Rule of Evidence 701).

Moreover, even assuming that Mr. Brickell's analysis and inferences are those of a lay witness, his Declarations are speculative and should be excluded pursuant to Federal Rule of Evidence 402. *See, e.g., Fritzcshe v. Albuquerque Mun. School Dist.*, 194 F. Supp.2d 1194, 1203 (D.N.M. 2002) (finding lay witness affidavit inadmissible pursuant to Federal Rule of Evidence 402, in part, because it was speculative). Indeed, at his latest deposition, even Mr. Brickell conceded the speculative and faulty nature of his conclusions. For example, in his Second Declaration, Mr. Brickell stated that of the more than 400,000 MRDW guest records, 11,696 "contained a Washington, D.C. address." *See* Second Decl. ¶ 12. Yet, during his deposition, Mr. Brickell testified that his determination of D.C. addresses was likely incorrect.

Brickell Dep. II at 89-92 ("Q. So your determination that 11,696 records contain a, quote-unquote, Washington, DC, address is over-inclusive? A. Well. Technically it's – it's correct in that – it's accurate in that the query I ran testing for DC does meet that criteria. All 11,696 does meet that criteria. But upon further inspection one could make a case that it may been erroneously entered that way.").

During his most recent deposition, and in conjunction with a review of a few sample data entries, Mr. Brickell admitted that some of the entries included in the 11,696 may be only *potentially* located in Washington, D.C.—either because a striking percentage of the putative D.C. addresses contained only a reference to "DC" with no other location indicator, *see* Ex. 2 (sample records from Mr. Brickell's Washington D.C. Address Analysis with references to "DC" only), or because the address identified "D.C." as the state with other location identifiers that were clearly from another state or country, *see* Ex. 3 (sample records from Mr. Brickell's Washington D.C. Address Analysis with references to other non-"DC" identifiers). Brickell Dep. II at 101-112. Despite having signed an affidavit attesting to the number of guests with a "Washington, D.C. address," Mr. Brickell now acknowledges that he "never made that count" as to how many were in fact Washington, D.C. addresses. *Id.* at 109. Rather, his total included "many" addresses that were "indeterminate" with just "Xs throughout" or even "those that were apparent to [Mr. Brickell] that was not a DC address." *Id.* at 101, 103; *see* Exs. 2 & 3. Mr. Brickell's analysis should be excluded as speculative and unreliable because he has conceded that he could not be reasonably certain that the guests claimed by his Declaration to have D.C. addresses or to be D.C. residents actually had such connections to Washington, D.C. *Id.* at 91, 109-111.

Mr. Brickell's analysis is further flawed because of a number of speculative and erroneous assumptions regarding the data that he analyzed, including:

- that each guest key number represented a different guest, *see id.* at 124-27 ("As I mentioned previously, the guest key was a unique identifier for each guest which was created I believe when the GNR was created for a guest the first time. I assume that's the way it's done.");

- that each guest record referred to an actual stay, as opposed to a reservation for a potential stay, *id.* at 27-29 ("Q. What is your understanding with regard to cancellation data in MRDW? A. I have no understanding at this time of what that is or any indication of what that is."); and

- that all MRDW records were relevant without regard for the date parameters previously identified in Mr. Brickell's First Declaration, *id.* at 42-43.

Mr. Brickell's speculative conclusions should be excluded.

### III. Mr. Brickell's Declarations Should be Stricken as Irrelevant Because Plaintiffs Now Claim That His Analysis is Unrelated to Membership in the Proposed Class.

Based upon Plaintiffs' newfound insistence that Mr. Brickell's testimony does not relate to the proposed class or its membership, Mr. Brickell's testimony should be stricken as irrelevant to class certification and this litigation, regardless of whether it is deemed that of an expert or lay person. On October 5, 2007, Plaintiffs filed their Motion for Class Certification. In their supporting memorandum, Plaintiffs asserted: "Based upon *an analysis of data* produced to date by Marriott for the seven Marriott Russian hotel properties, there are no less than 110,522 guest stays *which fit within the class definition.*" Pls. Class Cert. Mem., attached as Exhibit 3 to the Motion to Strike, at 11 (emphasis supplied). The only support referenced for this assertion about class membership was the First Declaration of Mr. Timothy Brickell, dated October 5, 2007,

attached as Ex. 21 to Plaintiffs' Memorandum. In their class certification reply brief, Plaintiffs again repeatedly relied on Mr. Brickell's analysis as support for the number of guest stays and guests purportedly within the class. *See, e.g.*, Class Cert Reply Mem. at 7 (describing a "class with over 288,000 members," a figure from Mr. Brickell's Second Declaration); *id.* at 21 (claiming "an additional 8,198 absent class members with addresses in the District of Columbia" and 11,324 related guest stays, based on figures from Mr. Brickell's Second Declaration).

As Marriott has explained previously, any analysis relevant to a determination of class membership necessarily includes independent assessments and subjective determinations about which guest stays to include in the class. Plaintiffs' class definition includes "person[s] who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, who received a room rate confirmation stated in U.S. Dollars, and whose final bill at checkout was stated in Russian Rubles." Pls. Motion for Class Cert. at 1. As Plaintiffs subsequently have made clear, their proposed class is now limited to those individuals who "received a written confirmation from Marriott." Class Cert. Reply Mem. at 7. As Plaintiffs now put it, "the key factor is whether the guest received a written price confirmation from Marriott." *Id.* at 9; *see, e.g., id.* at 1, 3, 6 ("That written confirmation is the basis for Marriott's liability."). Consequently, a witness opining as to who qualifies as a putative class member must determine whether to include repeat guests, whether to include guests who received the Central Bank rate or other special rates at check-out; whether to include guests who received credits or reimbursements for their stays; whether to include guests who settled any exchange rate complaints with Marriott; and whether the guest received a written confirmation. Such a witness is proffering an expert opinion.

In an effort to avoid the necessary implications of this indisputable conclusion that Mr. Brickell is acting as an expert, and in an obvious contrast to assertions in their Motion for Class Certification, Plaintiffs now attempt to claim that they "do not rely upon Mr. Brickell's declaration to identify which guests are members of the class." Opp. to Motion to Strike at 5. To emphasize this point, Mr. Brickell testified in his second deposition that none of his analysis identified who was in the class proposed by Plaintiffs. Brickell Dep. II at 82. According to Mr. Brickell, he did not review the class definition proposed by Plaintiffs and did not make any determination of which guests, if any, satisfied that criteria. *Id.* at 82-83. Thus, Mr. Brickell now states that he holds no opinion with regard to which guests are included in the putative class. *Id.* at 193-194.

If—as Plaintiffs now contend—Mr. Brickell's opinions do not relate to the class or its membership, then his analysis is a complex exercise in futility with no relevance to this litigation and no usefulness to the Court. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). Accordingly, his Declarations should be stricken as irrelevant.

IV.  **If Mr. Brickell's Declarations are Not Stricken, Marriott Should be Permitted to Counter-Designate an Expert.**

If the Court does not strike Mr. Brickell's Declarations, Marriott should be provided with the opportunity to counter-designate an expert. The Court also should require Plaintiffs to comply with the expert testimony requirements of Federal Rule of Civil Procedure 26(a). Specifically, despite the Court's Order that Mr. Brickell's claims of privilege do not apply, counsel for Plaintiffs continue to claim privilege with respect to all portions of Mr. Brickell's analysis that Plaintiffs' counsel opted not to include in the Declarations. *See* Brickell Dep. II at 7-11, 79. Plaintiffs should not be permitted to draw this artificial line between the portion of Mr.

Brickell's analysis allegedly proffered as a testifying expert and the portion allegedly provided as a consulting expert. Rather, Plaintiffs must be required to produce any information, work, or analysis that Mr. Brickell conducted for this case.

## CONCLUSION

For the reasons discussed herein and in Marriott's Motion to Strike and supporting memoranda, Marriott requests that the Court strike the Declarations and testimony of Mr. Brickell. Alternatively, Marriott requests that the Court require Plaintiffs to comply with their disclosure obligations for expert witnesses, including those of Federal Rule of Civil Procedure Rule 26(a), and provide Marriott with the opportunity to counter-designate an expert.

Respectfully submitted,

Dated: June 13, 2008

/s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant*
*Marriott International, Inc.*