UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BRITT A. SHAW, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-1138 (GK) |
| v. | ) | (Status Conference July 7, 2008) |
| | ) | |
| | ) | |
| MARRIOTT INTERNATIONAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO MOTION TO STRIKE DECLARATIONS OF TIMOTHY P. BRICKELL**

The Plaintiffs hereby supplement their brief in opposition to Marriott's MOTION TO STRIKE DECLARATIONS OF TIMOTHY BRICKELL OR, IN THE ALTERNATIVE, TO COMPEL DISCOVERY (Doc. # 89), and respond to arguments in Marriott's SUPPLEMENTAL MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE DECLARATIONS OF TIMOTHY BRICKELL OR, IN THE ALTERNATIVE, TO COMPEL DISCOVERY (Doc. # 112), hereinafter "Marriott's supplemental brief."

PROCEDURAL STATUS OF DISPUTE

In its April 4, 2008 motion to strike (Doc. # 89) Marriott sought, in the alternative, two things: a) an order striking Tim Brickell's three declarations, or b) full disclosure and discovery, and thereafter a right to "counter-designate."

Pursuant to this Court's order of May 9, 2008 (Doc. # 193) the Plaintiffs disclosed Mr. Brickell's files and made him available for deposition. Mr. Brickell was deposed on May 22,

1

2008.  A copy of the transcript of his deposition was filed under seal as an exhibit to Marriott's supplemental brief to its motion to strike Mr. Brickell's declaration (Doc. # 112).

Marriott now has complete disclosure and discovery, including two depositions, regarding all of the declarations of Mr. Brickell.  The second of its alternative requests has been satisfied.  There therefore is no need to address the first alternative request, striking the declarations.

With complete knowledge of Mr. Brickell's declarations, and without either alleging or providing evidence of prejudice, Marriott repeats its request for permission to "counter-designate an expert."  Because the Plaintiffs believe Mr. Brickell's work did not require judgement, inference or otherwise implicate "specialized knowledge," i.e. was not "expert" opinion, they have no objection to Marriott presenting Fed. R. Evid. 1006 summaries of data or other evidence it has heretofore disclosed, including tallies of the same records using the same or similar search criteria as did Mr. Brickell.  The Plaintiffs do not believe Marriott's request implicates the past deadline for Fed. R. Civ. P. 26(a)(2) disclosures of expert opinions, and thus believe it does not need the permission it seeks.  If Marriott is seeking to base some future expert disclosure on heretofore undisclosed documents, the Plaintiffs object.  If the Court allows for "counter-expert designations" premised upon previously undisclosed information, the Plaintiffs respectfully demand complete disclosure and discovery regarding them.

SUMMARY OF PROPOSED RESOLUTION

The resolution proposed by the Plaintiffs in PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION TO STRIKE DECLARATIONS OF TIMOTHY P. BRICKELL (Doc. # 94-1) has now been fully accomplished.  At his May 22, 2008 deposition, Marriott was given unrestricted

license to inquire about any aspect of his declarations.[1]  The Plaintiffs believe no further remedy is either necessary or appropriate.

SUMMARY OF ARGUMENT

Marriott's motion is premised upon a confusion between "calculations" in support of a Fed. R. Evid. 1006 summaries of voluminous evidence, and "inferences" which are the sine qua non of "expert" testimony.

Knowledge gained by counting is not expert testimony.  The gravamen of "expert knowledge" is its source.  Expert testimony is premised upon inference (or a perception by means not available to the "lay" public, e.g. electron microscopy).  Like measuring a length with a tape measure, counting is not inferential, and the premise of any critique of one person's counting is nothing more than a re-count.  Marriott has not disputed Mr. Brickell's counts of records meeting the disclosed search criteria.

Marriott has not identified any "field of study" necessary to searching, sorting and counting the data it produced.  Understanding the mundane contents of Marriott's "guest name records" ("GNRs") does not require expertise.  None of the classic tests for screening "expert" opinions apply to searching, sorting and counting the records in a database; that inapplicability demonstrates the non-opinion nature of counting, even with a software assist.  In the absence of a field of specialized knowledge applied by Mr. Brickell, his work is not that of an expert.

A report of searching, sorting and counting is not the statement of an "opinion."  It is a report of a perception, even if accomplished with the use of a tool.

---

[1]See Brickell Dep. II (attached as Ex. 1 to Marriott's supplemental brief, Doc. No. 112), at pages 187 - 191.

Marriott undercuts its argument, premised upon the exercise of independent specialized knowledge, by pointing out Mr. Brickell's collaboration with Plaintiffs' counsel regarding the task they asked him to accomplish.

It takes no specialized knowledge to rely upon Marriott's representation that the records it produced were records of guest stays. A "trial and error" process requires no "specialized knowledge."

Because the database program utilized by Mr. Brickell had a built-in finding function to identify duplicate records, triggered by the typing of a single character, no expertise was required to identify duplicate records in the database. The process for identifying duplicate records is a "red-herring," of minimal import to the resolution of class certification issues before the court, and about which Marriott is fully informed.

Searching, sorting and tallying records in a database is akin to following a "calculation" contemplated by Fed. R. Evid. 1006, or following a recipe from a cook book. It only requires the ability to read.

Mr. Brickell's work was not "independent"; it was dictated by litigation counsel.

Mr. Brickell's work was not "subjective." The criteria he used to search, sort and count were "objective" and fully disclosed.

Though "relevance" is not a proper consideration for this Court in the context of Marriott's motion to strike, it is appropriate for the court considering the motion for class certification. But because "numerosity" is a criteria for class certification, Mr. Brickell's tallies of records of stays are relevant.

Upon the authority of Fed. R. Evid. 1006 Marriott does not now need permission to

present "calculations" upon records from its previously disclosed data. It is free now to undertake them. Thus, Marriott has no need to "counter designate" an expert.

To the extent Marriott intends to have a "counter-designated" expert rely upon previously undisclosed data or records, its request is foreclosed by the prohibition of Fed. R. Civ. P. 37(c)(1).

## FED. R. EVID. 1006 SUMMARIES PREMISED UPON CALCULATIONS ARE ADMISSIBLE

Calculations that fairly summarize voluminous documents are admissible under Fed. R. Evid. 1006, even if the foundation for them is laid by a non-expert witness. In *U.S. v. Hemphill*[2] the D.C. appellate court affirmed the trial court's admitting into evidence summary charts of financial transactions, including calculations, prepared by a non-expert witness, a government auditor, even though the underlying documents were not admitted into evidence. The critical criteria for admission of a such a chart, otherwise satisfying Fed. R. Evid. 1006 criteria, is that it be "accurate and non-prejudicial." Marriott has not alleged nor shown either inaccuracy or prejudice. Its focus has been on the messenger, and not the message.

## MR. BRICKELL'S DECLARATIONS WERE NOT PREMISED UPON INFERENCES, AND THEREFORE ARE NOT "EXPERT" TESTIMONY

"Lay" testimony "results from a process of reasoning familiar in everyday life."[3]
"Expert" testimony "results from a process of reasoning which can be mastered only by

---

[2]*U.S. v. Hemphill*, 514 F.3d 1350, 1358-1359 (C.A.D.C. 2008).

[3]*State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992), cited with approval in comments to the 2000 amendments to Fed. R. Evid. 701.

specialists in the field."[4]  Marriott has not identified a "field of study" which Mr. Brickell

undertook to master.  In its arguments Marriott comments on Mr. Brickell's understanding (or

misunderstanding) of the data produced by Marriott, but Marriott does not suggest that special

study or expertise is necessary to an understanding of the contents of the fields in its Guest Name

Records ("GNRs"), e.g. name, address, dates of hotel stays, room rate.   Nor does Marriott

suggest that it takes expertise to use the built-in search, sort and count functions in a database

software package.  Such functions are more analogous to "calculations" in a spreadsheet than

"inferences" premised upon specialized knowledge.  Having failed to identify a "field of study,"

Marriott's argument that Mr. Brickell is an "expert" fails.

　　　That Mr. Brickell's declarations are not statements of an expert's opinions is apparent

from the non-applicability of the standard tests for the admissibility of expert testimony.  The

*Daubert* case[5] listed five non-exclusive tests for the admission of an "expert" opinion: 1) whether

theory underlying the testimony can be tested, 2) whether the theory has been the subject of peer

review, 3) the potential rate of error, 4) the existence of standards and controls, and 5) general

acceptance in the scientific community.  On their face, these tests do not apply to searching,

sorting and counting the records in a database matching a search criteria.  There is no "underlying

theory" of sorting and counting.  There is no "peer review" of built-in sort and count functions.

Factors developed through court decisions since the Supreme Court decided *Daubert*, and cited

in the comments to the 2000 amendments to Fed. R. Evid. 702, are similarly not applicable to

---

[4]Id.

[5]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

counting.  For example: a) whether the witness undertook research in the context of litigation,[6] b) unjustified extrapolation between an accepted premise and an unfounded conclusion,[7] c) whether the witness has accounted for alternative explanations,[8] d) whether the witness is being as careful in developing his testimony as he is in his professional life outside of litigation,[9] and e) whether the field of expertise is known to reach reliable results for the type of opinion the witness would give.[10]  As the commentators to the 1972 amendments to Fed. R. Evid. 702 noted, "An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge."  But Mr. Brickell did no "research"; he applied built-in functions in an off-the-shelf database program.  He undertook no "extrapolation."  Because counting does not involve an analysis of causal mechanisms, there are no "alternative explanations" to "account" for.  It is the inability of Marriott to identify an area of "scientific, technical, or other specialized knowledge" involved in counting records in a database that forces the conclusion that Mr. Brickell's declarations are not "expert testimony."

Exhibit 1 hereto is the File Maker Pro 9, User's Guide ("User's Guide").  Exhibit 2 is a capture of the relevant "Help" screen for the "text operators" referenced on page 81 of the User's Guide.  These screens set forth the steps followed by Mr. Brickell in finding, sorting and

---

[6]*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995).

[7]*General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[8]*Claar v. Burlington N.R.R.*, 29 F.3d 499 (9th Cir. 1994).

[9]*Sheenan v. Daily Reading Form, Inc.*, 1006.104 F.3d 940, 942 (7th Cir. 1997).

[10]*Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1175 (1999); *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998); and *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir. 1988).

counting Marriott GNR records.[11]  Following those steps is akin to following a recipe.  To follow

a recipe is not to render expert testimony.

At page two of its supplemental brief, Marriott requests the same relief, but upon

inconsistent premises.  It requests an order striking the declarations if they are expert opinions,

and if they are lay opinions.  This inconsistency is evidence that Marriott is itself unsure that how

to categorize the declarations.  As set forth below, when one looks at the alternative underlying

arguments they are internally inconsistent.  Here, as elsewhere, Marriott  fails to address the

obvious other alternative, that the declarations are not "opinions" at all.  "Calculations" in

support of summarization are not inferences.  "Calculations" are just observations expressed in

the language of arithmetic.  Even more so, counting is a most primitive form of "calculation"

(multiple additions of one unit to a sum) even if made through the use of a widely used, well

understood, and reliable instrument, e.g. database software.

At page three of Marriott's supplemental brief it states that Mr. Brickell "collaborated

with Plaintiffs' counsel in their selection of which of the distinct Marriott guest reservation

databases to use for his calculations."  This argument only points out the lack of "subjective"

judgment, and absence of "independence" exercised by Mr. Brickell.  Marriott fails to articulate

how this selection of data implicated "specialized knowledge" either in Mr. Brickell or Plaintiffs'

counsel (or in Marriott).  The evidence is that Mr. Brickell assumed the MRDW data to be what

Marriott represented it to be, i.e. records of guest stays at Marriott Russian hotels.  Understanding

Marriott's representations does not require "specialized knowledge."

---

[11]See DECLARATION OF TIM BRICKELL REGARDING FILE MAKER PRO 9
LITERATURE attached as Exhibit 3.

No "scientific, technical, or other specialized knowledge" is implicated in deciding which set of Marriott's records to count. If the data being tallied was data from a survey, then survey design questions would be implicated, e.g. random sampling procedures. But here the data is Marriott's operational data accumulated in the ordinary course of business; no survey design questions are implicated in its collection, and thus it is not necessary to address them in tabulating the data, or undertaking "calculation" upon it. Regardless of whether Marriott's data contains errors, its production by Marriott in response to Fed. R. Civ. P. 34 requests renders the data "admissions" under Fed. R. Evid. 801(d)(2). Marriott is thus estopped to assert it is not what Marriott represented it to be, and estopped to argue that it is not appropriate for the Plaintiffs (and Marriott) to rely upon.

Marriott goes on at page three to point out, as if a new revelation, what was transparent in Mr. Brickell's initial declaration, that he relied upon the data produced by Marriott from its MRDW (Marriott's Reservation Data Warehouse). Marriott suggests but does not demonstrate that this was an exercise in judgment. It wasn't, and no "scientific, technical, or other specialized knowledge" is implicated in making the decision to rely upon it. Marriott represented the MRDW data to be the records of guest stays.[12]

> Plaintiffs' propounded several discovery requests seeking information related to **guests stays** at Marriott Russia Hotels. Marriott consistently represented that the data it was providing (MARSHA/ MRDW) covered guest **stays** during the

---

[12]That Marriott represented MRDW records to be records of guest stays at Marriott Russian hotels was briefed, with citations to the record, in the Plaintiffs' response (filed under seal; see Doc. # 113 at ¶ 22) to Marriott's statement of undisputed facts (Doc. # 110-2 at ¶ 22) filed by it in support of its motion for summary judgment (Doc. # 106). The text of the Plaintiffs' dispute of Marriott's "statement of facts" is quoted herein with citation to the exhibits as numbered in Doc. # 113. To avoid duplicate submission of those same exhibits here, they are available for review in the court file, associated with Doc. # 113.

relevant period.  For example, Interrogatory No. 1 of Plaintiffs' first discovery requests sought information related to "all **guests** of the Marriott Russia hotels during the relevant time period," including "dates of their **stays** at Marriott Russia Hotels."  Document Request No. 5 requested, in part, documents identifying hotel **guests.**  And finally, request No. 1 of Plaintiffs' second set of discovery requests sought electronic data relating to **guest stays,** including the date of arrival and check-out.  Marriott consistently represented that the MARSHA/MRDW [data] it produced related to guests who ***stayed*** at the Marriott hotels.[13]  For example, the transmittal letter accompanying the production of electronic MRDW data produced in August 2007 identified the fields of data, including the guests' arrival date and check-out date.[14]

That Plaintiffs' counsel examined Marriott manuals about Marriott's MRDW and reservation system to corroborate the propriety of relying on Marriott's representations, and provided them to Mr. Brickell, does not amount to Mr. Brickell providing expert analysis.  "Analysis" is "**1a**. The separation of an intellectual or material whole into its constituent parts for individual study. **b**. The study of such constituent parts and their interrelationships in making up a whole. **c**. A spoken or written presentation of such study: *published an analysis of poetic meter*."[15]  Just as it does not require "expertise" to review and comprehend Marriott's representations that MRDW records are records of guest stays, it does not take expertise to read Marriott's manuals to glean from them that same general information.  In its argument Marriott appears to be implying two things: a) it misrepresented the nature of the data it produced, and b) it requires "expert" judgment to avoid being taken in by its misrepresentations?   Neither of these implications

---

[13] **Exhibit 7** (Marriott's Response to Plaintiffs' First Set of Interrogatories and Requests for Production of Documents); **Exhibit 89** (Marriott's Response to Plaintiffs' Second Set of Discovery Requests).

[14] **Exhibit 90** (August 1, 2007 letter from Marriott).

[15] The American Heritage® Dictionary of the English Language: Fourth Edition.  2000, at http://www.bartleby.com/61/94/A0279400.html.

support either the proposition that Mr. Brickell is an expert, or that he exercised expertise in counting records of guest stays in a data set represented by Marriott to be records of guest stays.

At page four Marriott suggests it requires "expertise" to find duplicate records. It is a simple though tedious task to sort a database (or spreadsheet) by any field and then discern whether the contents of that field in any given record are the same as those in the adjacent records. Using a built-in linking, or "concatenate,"[16] operator of File Maker Pro 9,[17] all Mr. Brickell did was link together three fields in the Marriott MRDW records into what File Maker Pro 9 calls a "calculation field"[18] for that record. Using the "concatenate" operator simply avoids the tedium of cutting and pasting the contents of three fields into a single field for the purpose of making a comparison. Cutting and pasting the contents of three text fields into a new field does not require "expertise." Linking is thus not an "expert" activity. After linking text together, Mr. Brickell applied a built-in finding function (by typing "!" in the calculation field [19]) to identify records with duplicate "calculation fields." A review of the User's Manual demonstrates the non-specialized step by step instructions for the undertaking. While Mr. Brickell used the terms "concatenate" and "formula" in his deposition, the reality is that the process is formulaic in the most prosaic sense of the word. It is thus not so "specialized" as to cause the results to be

---

[16]"Concatenate" TRANSITIVE VERB: ...1. To connect or link in a series or chain. 2. *Computer Science* To arrange (strings of characters) into a chained list. ADJECTIVE: ...Connected or linked in a series. (The American Heritage® Dictionary of the English Language: Fourth Edition. 2000.). See also Exhibit 2, describing the "concatenate" text operator in File Maker Pro 9.

[17]Exhibit 2.

[18]Exhibit 1 at 80 to 83.

[19]Exhibit 1 at 49.

statements of an "expert."

Mr. Brickell testified that his choice of which fields to concatenate was a "trial and error process." It goes without saying that trial and error takes no "scientific, technical, or other specialized knowledge," and is the antithesis of "expertise" or "analysis." The follow-up cutting and pasting did not require analysis either.

Marriott suggests that Mr. Brickell made a "multi-tiered analysis" to find duplicate records. That is not substantively true. As noted above Mr. Brickell linked (i.e. cut and pasted) the contents of three text fields into a separate field (a "calculation field") for purposes of comparison, and then identified records duplicating the contents of that field, and then discarded one of the two duplicate records. There was no "analysis," multi-tiered or otherwise. He cut and paste text from the records, compared the resulting strings of text for duplication, and discarded one of the duplicates. Comparison of two records for duplication is not analysis; it can be successfully accomplished while completely ignorant of the contents or their meaning. The so-called second tier was superfluous. All Mr. Brickell did was identify and discard those duplicates that did not have email addresses. Whether or not the records had email addresses was of no consequence to counting the number of guest stays.

But why is this argument about the identification of duplicate records presented at all? Marriott has not disputed numerosity. Nor has it suggested the culling of duplicates was inaccurate. And the number of perceived duplicate records was both fully disclosed, and a small percent of the total records. Therefore, any effect of the exclusion of duplicate records was transparent and small. And Marriott is not arguing that it could not replicate Mr. Brickell's actions, nor that it required an "expert" to do so. If the portion of Mr. Brickell's declaration

12

dealing with duplicate records was stricken, it would have no effect on any issues before the court. And now, Marriott has full disclosure and discovery regarding the process of identifying duplicate records in its MRDW data.

As noted above, there was nothing "subjective" about which fields to include in the comparison field. It was a transparent, fully disclosed, "trial and error process" that established a criteria, a string of text in a given record, that was then "objectively" applied (in a fully replicable way) to identify the records meeting the criteria, other records having the same text string. It involved no inferences requiring judgment informed by mastery of some body of knowledge. Marriott has not suggested the result was either under or over-inclusive. Where then is its complaint? Is it suggesting that admittedly accurate statements be withheld from consideration on a preliminary issue[20] because those accurate statements were obtained by a process, about which it now has complete discovery, that does not meet its questionable concept of "expertise"? This is the elevation of form over substance. If the tallies are incorrect, Marriott should say so. If not, what issue merits the Court's involvement?

At page five of Marriott's supplemental brief it argues about what it describes as the "analytical steps and calculations 'to determine the number of records or observations that have an estimated accumulated markup that exceeds $1,500.'" What Marriott ignores is that Tim Brickell exercised no judgement regarding this matter. Attached as Exhibit 3 is the previously disclosed memo from the undersigned to Tim Brickell dictating the steps he was to undertake to accomplish the task. The steps involved the multiplication of four numbers for each record (the product being the accumulated markup for that guest's stay), followed by a tally of how many of

---

[20]See Fed. R. Evid. 104.

the resulting "products" exceeded $1,500, and the expression of that tally of "products" (records) as a percent of the total number of "products" (records).  If "accumulated markup" is not an estimate of each guests "damages" caused by Marriott's failure to disclose until check-out its markup of the reservation price, a legal question for which Tim Brickell is not qualified, then Marriott is free to argue the legal definition of "damages."  It also is free to undertake its own calculation of the number of guests whose accumulated markups exceeded $1,500, but it has declined to do so.  Marriott apparently does not dispute the substance of the calculation in Mr. Brickell's declaration.  The point here is that Mr. Brickell's task was a clerical one involving a simple calculation from data either produced by Marriott or available from public sources.  It involved repetitive arithmetic, no inference, no analysis, and no application of "scientific, technical, or other specialized knowledge" by Mr. Brickell.  It is the type of "calculation" contemplated by Fed. R. Evid. 1006.  If there was any "expertise" it was the "legal expertise" of the undersigned attempting to craft a readily calculated measure of a guest's potential economic damages.

At page six of Marriott's supplemental brief it states that Mr. Brickell "relied on his specialized and technical knowledge and made independent assessments and subjective determinations to formulate the analysis and his opinions in his declarations."  Marriott has failed to identify the "scientific, technical, or other specialized knowledge" referred to.  It has failed to demonstrate "independence."  And it has mis-characterized a "trial and error process" resulting in an objectively applied criteria as "subjective."  It has mis-characterized searching, sorting and counting of records as "analytic" processes, when they are more akin to "calculations."  Most importantly, given that it has now received complete disclosure and

14

unqualified discovery about the declarations,  it has failed to demonstrate any prejudice justifying the extreme remedy it seeks.

<u>CASE LAW CITED BY MARRIOTT REGARDING "EXPERT" TESTIMONY DOES NOT SUPPORT ITS POSITION</u>

Marriott cites to the *Cooper v. Southern Co.* case.[21]  In the *Cooper* case a declaration was stricken because the "analysis" contained therein was deemed to be "expert" in nature and was not disclosed in time to allow discovery.[22]  As pointed out elsewhere, searching, sorting and counting is not "analysis," and the case fails to address the distinction between permissible "calculation" under Fed. R. Evid. 1006 and analysis implied by Fed. R. Evid. 701 and 702. Further, in the case at bar, Mr. Brickell's first declaration was disclosed October 5, 2007. Marriott then had until October 19, 2007 to designate responsive experts.[23]  By operation of the Court's order of October 30, 2007, the deadline for discovery and for Marriott's responsive expert disclosures was extended several months.[24]  Marriott did not seek discovery regarding Mr. Brickell's declaration until December 2007, and never designated responsive evidence, whether in the form of expert opinion or otherwise.  Discovery closed on April 1, 2008.  Marriott had almost six months to conduct discovery, and took Mr. Brickell's deposition in December 2007 and again in May 2008.  Thus, the premise of the ruling in the *Cooper* case is not present here;

---

[21]*Cooper v. Southern Co.*, 213 F.R.D. 683 (N.D. Ga. 2003).

[22]Id. at 686 - 687.

[23]Doc. No. 50.  Marriott's expert disclosure deadline was extended by the order of October 30, 2007 (Doc. No. 64) for several months, until 40 days after service of plaintiffs' discovery responses.  Ultimately, the discovery cut-off was April 1, 2008.

[24]Doc. No. 64.

Marriott has had disclosure, discovery and an opportunity to tender responsive evidence regarding Mr. Brickell's first declaration. With regard to the second and third declarations served on March 31, 2008, Marriott has now received disclosures and conducted discovery, and Marriott is, as always, entitled to submit Fed. R. Evid. 1006 summaries. With regard to the second and third declarations as well, the premise of the *Cooper* case is absent.

Marriott cites to the *Olindo Enters., Inc. v. City of Rochester* case.[25]  In part, the case involved the application of *Daubert* criteria; Marriott's motion to strike does not. Nevertheless, at 4 the *Olindo* court states, "where an expert's underlying methodology is reliable, defects in the conclusion drawn should be explored on cross-examination and go to the weight of the evidence, not its admissibility." The same can be about a methodology or "calculation" in support of a record summarization. Marriott has not challenged as unreliable the "underlying methodology" of Mr. Brickell's search, sort and counting which was accomplished by selecting built-in functions in database software.

Turning to witnesses offering summaries of the contents of the City's database, the *Olindo* court stated at 6, "Gregor, as the Manager of the Division of Environment Quality for the City of Rochester, may testify with respect to his knowledge concerning documents from the Department of Environment Quality's database [dating back to 1930] and what those records reveal. However, he cannot offer his opinion and interpretation as to the meaning of those records." In accord presentation of what "records reveal" may be derived from "calculations." The distinction between "content" and "meaning" is relevant to the matter at hand. Mr. Brickell undertook to report contents of Marriott's records, e.g. those having "DC" in the state field,

---

[25]*Olindo Enters., Inc. V. City of Rochester*, 2008 WL 686259 (W.D. N.Y. March 7, 2008).

without undertaking to interpret them.  Marriott remains free to critique any inconsistencies in its own data, and remains free to assert they are ambiguous and unreliable.  But none of that makes a report of their contents "expert" testimony, nor inadmissible.

Marriott cites to the *Bayshore Ford Trucks* case.[26]  The *Bayshore* court ruled it did not have appellate jurisdiction to consider the trial court's ruling after a *Daubert* hearing that the author of a report was not an expert, and thus it ruling that his report was not admissible.[27]  It also declined to review the trial court decision that because the report "consisted of two models, both created by Kinder [,the non-expert,] and based on his assumptions, purporting to show how the Dealers' damages could or should have been calculated" it was not a Fed. R. Evid. 1006 summary.[28]  At 1245, the trial court is quoted as finding that the subject report, "involve[d] the systematic computation of damages via models created by Kinder, based on certain speculative calculations he made at the behest of the plaintiffs' counsel."  Searching, sorting and counting records is not a "computation... via models created" by the witness, "based on... speculative calculations...."  The only calculation in any of Mr. Brickell's declarations was that of accumulated markups, but Marriott, which admits the fact of a markup, does not, and can not, argue that it is "speculative" to apply its admitted markup to its quoted room prices.  There is nothing speculative about multiplying a quoted daily room (rate plus 18% tax), times the number of days, times the markup.  Notably, Marriott has not challenged the accuracy of this arithmetic to calculate accumulated markup.

---

[26]*In regarding Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1244 (11th Cir. 2006).

[27]Id. at 1259.

[28]Id. at 1260.

17

Marriott cites to the *U.S. v. Day* case.[29]   The *Day* court, in the context of the appeal of a

criminal conviction, ruled that a proffered report by one Dr. Spodak, apparently a neuro-scientist,

did not meet the substantive disclosure requirements of Fed. R. Crim. P. 16 because it contained

no statement of his opinion.[30]   Here, Marriott does not argue that Mr. Brickell's declarations fail

to inform it of the results of his search, sort and count activities, or of his calculations.  Further,

the *Day* court states that in applying *Daubert* standards, the focus should be on "principles and

methodology."[31] While Marriott's motion to strike is not a *"Daubert"* motion, if *Daubert*

principles are implicated, Marriott does not critique either the principles or methodology used by

Mr. Brickell.  The *Day* case is inapplicable here.

Marriott cites to the *Stock v. Integrated Health Plan, Inc.* case.[32]   The *Stock* case dealt

with what indisputably was an "expert" report, indisputably disclosed out of time.  It provides no

guidance regarding what is and what is not an "expert" report, and no guidance regarding the

distinction between Fed. R. Evid. 1006, 701 and 702.  The *Stock* case dealt with the question of

whether there was a requirement to make a Fed. R. Civ. P. 26(a)(2) disclosure when the expert

was hired in some other case.  The court held that disclosure obligations held regardless of the

case in which the expert was hired.   It provides no guidance here.

ARGUMENT REGARDING ALLEGED "NON-EXPERT" OPINIONS

---

[29]*United States v. Day*, ___ F.3d ___, 2008 WL 198789 (D.C. Cir. May 9, 2008).
Marriott erroneously referred to this in its brief as *"United States v. Brittian."*

[30]Id. at 1371 - 1372.

[31]Id. at 1368.

[32]*Stock v. Integrated health Plan, Inc.*, 2007 W.L. 2304055 (S.D. Ill. Aug. 10, 2007).

Marriott argues at page six of Marriott's supplemental brief that, assuming he is not an expert, Mr. Brickell's lay opinions should be stricken because they are expert opinions. Though it continues to fail to identify the body of knowledge in which Mr. Brickell is allegedly an "expert" and assumes his statements "do not amount to expert testimony," Marriott argues that his opinions can not be lay opinions because they are "based on his technical, and specialized knowledge and experience," i.e. they are expert opinions. If they are expert opinions, why does it first assume they are not? The structure of this argument is: Assuming A is not B, A is not C because it is B. Since on its face this argument makes no sense, it will not receive further comment here.

Marriott complains that the Plaintiffs have undertaken to avoid the "reliability" requirements of Fed. R. Evid. 702, but fails to identify which of those reliability requirements are implicated by Mr. Brickell's transparent, disclosed, objective, non-inferential and replicable searching, sorting, counting and arithmetic exercises.

At page seven of Marriott's supplemental brief, for the first time, it cites to Fed. R. Evid. 402 as providing a basis for rejecting that portion of Mr. Brickell's declaration dealing with the number of D.C. residents. But Marriott does not argue that such a tally is irrelevant, only that Mr. Brickell's tallying of MRDW records in which the state was identified as "D.C." was premised upon the "speculation" that D.C. stood for "District of Columbia." In its deposition of him Marriott explored the strength of Mr. Brickell's assumption. Contrary to its cited authority, its critique is not premised upon "relevance," and therefore not premised upon "admissibility." It is an attack on "weight" of evidence. Such a critique may or may not be reasonable, and it may justify a "counter-declaration" (which Marriott has declined to provide), but it does not provide

grounds for striking the declarations.  It is not for this Court in the context of a motion to strike to rule on what "weight" should be given to the declarations.

Marriott's critique of Mr. Brickell's declaration regarding frequency of residency in D.C. is premised upon the concept of "speculation."  But Mr. Brickell did not have to speculate about whether the state listed in a Marriott record was identified by the letters "D.C.";  he only had to read and report that.  That is not speculation.  As is evident from the passage quoted at the top of page eight, the only thing that may have been less than certain was the quality of Marriott's data, i.e. whether Marriott personnel were consistent in their use of "DC" in the "state" field of GNRs. What was Marriott's practice and what is contained in Marriott's data is well within the ken of Marriott, and it remains free to point out via declaration the subtleties and ambiguities in the practices of its employees.  Mr. Brickell's tally remains a tally premised upon a reasonable assumption interpreting Marriott's data, and tallied using a disclosed objective search criteria; it required no inference, only an assumption that "DC" meant "District of Columbia."  His tally implicated no "scientific, technical, or other specialized knowledge," only the selection of built-in search and tally functions in File Maker Pro 9, and the report of the result.  He reported record content, not meaning.  And Marriott is not prevented from challenging Mr. Brickell's statement of content by making its own tally of Russian Marriott hotel guests that reside in D.C.  Its failure to do what is readily within its capacity is the best indicia that its argument is one of form, not substance.

Marriott, at page nine, goes on to state a number of "erroneous assumptions" by Mr. Brickell.  Marriott does not justify its assertion that the assumptions were "erroneous" except by statements of its counsel unsupported by citation to previously disclosed evidence.  Counsel is

free to argue the implications of evidence, but, unless he or she is prepared to be a witness, may not provide it. By way of example, Marriott has not pointed to any field in the MRDW data it produced that indicates the cancellation of a reservation; essentially Marriott argues that Mr. Brickell did not understand what he didn't have because Marriott did not produce it. In apparent violation of Fed. R. Civ. P. 37(c)(1), Marriott is relying upon undisclosed evidence. Until competent evidence is provided, the undersigned is unable to comment on these arguments. In the absence of any evidentiary support for them, they should be ignored.

## THE CASE LAW CITED BY MARRIOTT REGARDING "LAY" INFERENCES DOES NOT SUPPORT ITS POSITION

Marriott cites to the *Bell v. Gonzales* case.[33] But the case deals only with Fed. R. Evid. 701 and 702 testimony, not 1006 evidence. Before one looks to the distinction between 701 and 702 evidence, one must be dealing with "opinions or inferences." The case does not define them. Fed. R. Evid. 1006 contemplates summaries premised upon "chart, summary, or calculation." The reference to "calculation" in 1006 strongly implies that "calculations" are not "inferences," at least not categorically. One must look to whether the calculation is dependent upon "specialized" judgement, and whether the numbers used in the calculations are themselves derived by inference, assumption or estimate. Mere arithmetic is not an inference when premised upon data taken directly without alteration from Marriott's business documents and discovery responses.

Marriott cites to *Fritzcshe v. Albuquerque Mun. School Dist.,*[34] but the case deals with an

---

[33]*Bell v. Gonzales*, 2005 WL 3555490 (D.D.C. Dec. 23, 2005).

[34]*Fritzcshe v. Albuquerque Mun. School Dist.*, 194 F.Supp.2d 1194, 1203 (D.N.M. 2002).

affidavit that was double hearsay of a person's speculation regarding the mind set of others.  The case has nothing of value for the matters at issue hear.

ARGUMENT REGARDING RELEVANCE TO CLASS CERTIFICATION ISSUES

At page nine of Marriott's supplemental brief, it argues that Mr. Brickell's declarations are "irrelevant."  Relevance is not a proper basis for this court to resolve the issues framed by Marriott's motion to strike.  Whether the declarations are "relevant" to the motion for class certification, is for the Court addressing the motion for class certification.  With regard to the motion for class certification, the number of persons making reservations and staying at Marriott Russian hotels during the period in question is explicitly an issue presented by the "numerosity" criterion in Fed. R. Civ. P. 23 for certification of this case as appropriate for class treatment.  Mr. Brickell's declarations tallied those of Marriott's records that evidenced reservations at Marriott Russian hotels during the relevant period. His tallies are some evidence that the number of persons making reservations and staying at Marriott Russian Hotels is large; it therefore is "relevant."

Marriott has not suggested that a tally of its own records is not an estimate of the number of persons making reservations.  If Marriott is implying that its reservation records can not be relied upon to identify reservations, in responding to requests for production it should not have represented them to be records of reservations.  By producing them Marriott has admitted they are records of reservations, and thus now is estopped to say they are not.  By representing them to be records of guest stays, they are estopped from denying that also.

Marriott argues that Mr. Brickell's tallies are not tallies of persons who received reservation confirmations quoting a price in U.S. dollars.  True, there is no reference to tallies of

price quotes in Mr. Brickell's declarations.  Further, Mr. Brickell did not "opine as to who

qualifies as a putative class member."  Mr. Brickell tallied guest records.  He did not undertake to

apply the proposed class criteria.  He did not represent that he did.  His declarations are relevant

for what they purport to be, a count of reservations meeting date criteria.

At page ten, Marriott criticizes Mr. Brickell for not counting "repeat guests," or "guests

who received the Central Bank rate," or "guests who settled any exchange rate complaints."  The

false premise of this critique is the false implication that the records Mr. Brickell tallied contain

that information; they do not.  This argument, going to the question of class definition, may be

appropriate for a brief on class certification, but is out of context for the issue at hand, Marriott's

motion to strike Mr. Brickell's declarations.  Here the only question is whether the trial court

should have the benefit of reviewing Mr. Brickell's declarations and assigning to them what

weight they merit.  What should be the definition of the class is an issue framed by other

pleadings, and an issue for the Court addressing the motion for class certification.

Mr. Brickell's declaration regarding the number of reservations at Marriott Russian hotels

during the period relevant to the Plaintiffs' claims, and through certain channels, was presented

to establish satisfaction of the "numerosity" criterion for class certification under Fed. R. Civ. P.

23.  This was the plaintiffs burden.  While Marriott has not affirmatively admitted that the

proposed class is "numerous," in its brief in opposition to class certification it has not contested

"numerosity."  If Marriott is prepared to formally admit satisfaction of the "numerosity" criteria,

there is diminished need for that portion of Mr. Brickell's tally of Marriott's records.  Marriott's

admission would discharge the Plaintiffs' burden of offering proof on the issue.  In the absence

of a formal admission by Marriott, to be used in lieu of Mr. Brickell's declaration, the burden

remains upon the Plaintiffs to assure the record contains evidence of "numerosity." His declaration is that evidence.

At page eleven of its supplemental brief, Marriott confuses the question of the number of persons making reservations and staying at its Russian hotels (during a specified period through specified channels), on the one hand, with the identification of those who meet the proposed additional criteria for inclusion in the class, receipt of a price quote in U.S. dollars and payment in rubles, on the other hand. The list of who made reservations may very well be the list of persons meeting the other criteria, but proof of that will require evidence in addition to that in Mr. Brickell's declarations. It will require evidence of the link between the fact of a reservation and receipt of a price quote in U.S. dollars. But the observation that a mere tally of reservations alone does not define the class does not make the tally irrelevant; it is the first step in the process of class definition.

MARRIOTT'S REQUEST FOR A COUNTER DESIGNATION

As pointed out above, Marriott is now, and always has been, entitled to present to the Court a Fed. R. Evid. 1006 summary of its previously disclosed data. It does not now, and never did, need permission to search, sort, or count its MRDW records, nor to undertake arithmetic calculations using data found therein. Similarly, it is not constrained from summarizing other data sets, e.g. PMS data. If different tallies were arrived at when Marriott undertook to replicate Mr. Brickell's work, so far it has opted to keep them to itself.

Marriott requests permission to designate an expert on the premise that Mr. Brickell is an expert. But the premise is false. Since Mr. Brickell is not an expert, there is no need for a "counter-designation" of an expert.

24

As pointed out in earlier argument, Marriott received Mr. Brickell's first declaration in October 2007 and had no need to address it until its brief in opposition to the motion for class certification in March 2008.  It has had no shortage of time to study his declaration, nor to arrange for rebutting declarations.

It appears from Marriott's arguments regarding matters not in the data it produced to the plaintiffs, e.g. cancelled reservations and guests settling complaints,  that it intends for its "counter-expert" to rely upon additional or different data.  That would run afoul of Fed. R. Civ. P. 37(c)(1).  Any order allowing Marriott to "counter-designate" should limit Marriott to reliance upon data it has produced to the Plaintiffs.  If the scheduling order is amended to allow for Marriott to "counter-designate," the Plaintiffs respectfully request that that order include provisions limiting the data upon which reliance is placed and for full disclosure and discovery.

<u>CONCLUSION</u>

The Court should deny Marriott's motion to strike, and either deny its request for "counter-designation" or qualify its permission by a) limiting the "counter-declarer" to reliance upon data previously disclosed, and b) providing to the Plaintiffs full disclosure and rights of discovery regarding the "counter-declarer."

Respectfully submitted,


                                        /s/ Randall S. Herrick-Stare
Of Counsel:                             Paul D. Cullen, Sr.
Mark W. Borghesani, Esq.                Joyce E. Mayers
c/o The Cullen Law Firm, PLLC           Randall Herrick-Stare
1101 30th Street NW, Suite 300          Amy M. Lloyd
Washington, DC 20007                    The Cullen Law Firm, PLLC
(202) 944-8600                          1101 30th Street NW, Suite 300

25

Washington, DC 20007
(202) 944-8600
Counsel for Plaintiffs


CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served electronically on this June 23, 2008 to the persons listed below:

Benjamin S. Boyd . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . benjamin.boyd@piperrudnick.com
DLA Piper Rudnick Gray Cary US LLP
1200 19th Street, N.W.
7th Floor
Washington, D.C.  20036-2412


Joel A. Dewey . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . joel.dewey@dlapiper.com
Holly D. Butler . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . holly.butler@dlapiper.com
Jennifer M. Skaggs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . jennifer.skaggs@dlapiper.com
Jeffrey E. Gordon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . jeffrey.gordon@dlapiper.com
Sonia Cho . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . sonia.cho@dlapiper.com
DLA Piper Rudnick Gray Cary US LLP
6225 Smith Avenue
Baltimore, MD.  21209


/s/Randall S. Herrick-Stare