UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* ) | |
| ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Civil Action No. 05-1138 (GK) |
| v. ) | |
| ) | |
| MARRIOTT INTERNATIONAL, INC. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## SUPPLEMENTAL REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO STRIKE DECLARATIONS OF TIMOTHY BRICKELL OR, IN THE ALTERNATIVE, TO COMPEL DISCOVERY

Pursuant to the Court's June 2, 2008 Order, Marriott International, Inc. ("Marriott"), by its attorneys, submits this Supplemental Reply Memorandum in further support of its Motion to Strike Declarations of Timothy Brickell, or, in the Alternative, to Compel Discovery.

In their Supplemental Brief in Opposition to Motion to Strike Declarations of Timothy P. Brickell ("Plaintiffs' Supplemental Opposition"), Plaintiffs exhaust 25 pages of briefing in an attempt to diminish Mr. Brickell's role from that of a database analyst who conducted a sophisticated analysis of Marriott's electronic data to that of a paralegal who merely counted entries. Plaintiffs contend that the Declarations should not be stricken on two grounds: (1) because they are not expert testimony, but rather lay testimony formulated without specialized knowledge or independent and subjective analysis; and (2) because they are simple summaries pursuant to Federal Rule of Evidence 1006. Plaintiffs are wrong on both points.

First, despite Plaintiffs' attempt to minimize and explain away his proffered expertise, Mr. Brickell has sixteen years of experience as a data analyst and economic and litigation

support consultant. Mr. Brickell relied on this experience and training to make independent determinations in conducting his analysis and devising the opinions described in his Declarations. Accordingly, those Declarations are expert testimony within the meaning of Federal Rule of Evidence 702 and the Federal Rules of Civil Procedure. Second, Mr. Brickell's Declarations do not qualify as summaries pursuant to Federal Rule of Evidence 1006 because they are not mere abstracts of data as the Rule contemplates. Rather, Mr. Brickell analyzed the data and documents that Marriott produced by crafting complex formulas and drawing inferential, subjective conclusions.

Although Plaintiffs may prefer to foreclose further discussion of Mr. Brickell's role and analysis, Pls.' Supp. Opp. at 2 ("There therefore is no need to address the first alternative request, striking the declarations."), these issues are still open. Marriott has not yet received the complete relief requested. The Court's May 9, 2008 Order reserved ruling on whether Mr. Brickell "has offered an expert opinion" and whether the Declarations should be stricken for Plaintiffs' failure to file expert disclosures. The latest Court-ordered deposition of Mr. Brickell confirmed his attempt to proffer expert opinions. Because Mr. Brickell was not timely designated as an expert, in accordance with this Court's Scheduling Order and pursuant to Federal Rule of Civil Procedure 26(a), the Court should strike the Declarations as inappropriate expert opinions and prohibit Mr. Brickell from testifying or providing opinions in this case. Alternatively, the Court should require Plaintiffs to comply with their disclosure obligations for expert witnesses and provide Marriott with the opportunity to counter-designate an expert.

## ARGUMENT

I.  **Mr. Brickell Used Specialized, Technical Knowledge and Independent, Subjective Analysis to Formulate His Opinions, and, thus, His Declarations Should be Excluded for Plaintiffs' Failure to Comply with Expert Disclosure and Discovery Requirements.**

Plaintiffs expend ten pages of their Supplemental Opposition attempting to mask Mr. Brickell's Declarations as an exercise in elementary counting, requiring no expertise or independent analysis. In this extended discussion, Plaintiffs never specifically cite to or quote the Declarations or Mr. Brickell's two depositions. *See* Pls.' Supp Opp. at 5-14. Rather, Plaintiffs make broad generalizations about the nature of Mr. Brickell's analysis that grossly mischaracterize his actual work, ignoring Mr. Brickell's deposition testimony and dismissing his affirmation that he used a "trial and error process." Plaintiffs go as far as to claim that Mr. Brickell "exercised no judgment regarding this matter" and used a "process" that is "formulaic in the most prosaic sense of the word." *Id.* at 13-14. However, Mr. Brickell did not merely follow a "recipe" for counting data entries. *Id.* at 8. As the Declarations and deposition testimony make clear, his testimony is that of a purported expert. *See, e.g.,* Brickell Dep. II, attached as Ex. 1 to Marriott's Supp. Mem. in Support of Mot. to Strike Decls, at 43-44 (testifying that it was his "idea to get a unique value that could only represent one unique record" so he "concatenated three fields together" and "combined the values of those three fields . . . to determine a unique record for each . . . within the database"); *id.* at 47-49 (testifying that he "buil[t] a formula" to reach his conclusions). If anything, Plaintiffs' disregard for Mr. Brickell's actual testimony and their protracted attempts to recharacterize his analysis in lay terms demonstrate the expert nature of his testimony.

Plaintiffs also gloss over Mr. Brickell's experience as an economic and data analyst by claiming that Marriott has not identified a "field of study" or "expertise" necessary to provide the

opinions in the Declarations. *See* Pls.' Supp Opp. at 6-10, 14. To the contrary, Marriott has repeatedly and clearly identified Mr. Brickell's purported expertise in economic and data analysis, based on his self-professed background as an economic and litigation support consultant. *See* Marriott's Mem. in Support of Mot. to Strike Decls. at 12; Marriott's Reply Mem. in Support of Mot. to Strike Decls. at 2-3; Marriott's Supp. Mem. in Further Support of Mot. to Strike Decls. at 2. As Marriott has explained, Mr. Brickell relied on this purported specialized and technical knowledge to perform the analyses described in his Declarations and depositions. *See id.* In fact, Mr. Brickell has admitted that he considers himself to be an expert with regard to data analysis, stating that such a field of study requires a "unique set of skills that while may be common among some people, most don't have." Brickell Dep. I at 90, attached as Ex. 6 to Marriott's Mem. in Support of Mot. to Strike Decls.

In addition, as explained in Marriott's briefing, Mr. Brickell previously served as an expert witness and has claimed that his expertise includes "computer database management and analysis." *See* Brickell C.V., attached as Ex. 12 to Marriott's Mem. in Support of Mot. to Strike Decls. ("Highlights include serving as an expert witness in two class action cases; providing testimony as an expert witness during trial"); *id.* (explaining his technical skills as including "[d]atabase management, manipulation, editing and analysis" and "[d]ata queries and searches"). Mr. Brickell's Declarations also tout his purported areas of expertise, stating that Mr. Brickell has a Bachelors of Science in Economics and has "participated as an economic and litigation support consultant in class action litigation on behalf of members of the transportation industry for sixteen (16) years." First Decl. ¶ 1; Second Decl. ¶ 1, Third Decl. ¶ 1. It is precisely this purported expertise and experience that Mr. Brickell relied upon for his analysis in this case.

Plaintiffs acknowledge that an expert is one whose "testimony 'results from a process of reasoning which can be mastered only by specialists in the field,'" whereas a lay witness is one whose "testimony 'results from a process of reasoning familiar in everyday life.'" Pls.' Supp Opp. at 5 (citing *State v. Bowen*, 836 S.W.2d 530, 549 (Tenn. 1992)). Notwithstanding their recognition of this fundamental distinction, Plaintiffs attach a 206-page technical manual—the FileMaker Pro 9 User's Guide—in support of their argument that no expertise was required to use the program Mr. Brickell employed in crafting his Declarations. *See* Pls.' Supp. Opp. at 7-8, Ex. 1. Even a cursory review of the manual demonstrates that the data analysis employed was not remotely something "familiar in everyday life." More importantly, the manual reveals that Mr. Brickell's use of this software required both his data analysis expertise and his subjective determinations in order to reach his conclusions here.

For instance, in trying to describe how Mr. Brickell identified duplicate records and created a calculation (again, without citing to his Declarations or deposition testimony), Plaintiffs cite to pages 80 through 83 of the manual. *Id.* at 11. These pages provide multiple steps required to create a calculation, requiring the data analyst to make subjective determinations and judgments as to what to include. *See* Ex. 1 to Pls.' Supp. Opp. at 80-83. For example, although page 81 of the manual explains how to "[b]uild a formula for your calculation," that explanation makes clear that building a formula requires the data analyst to make key independent and subjective choices. If the data analyst wants to add a "[m]athematical or text operator," then, "[i]n the keypad in the dialog box, click an operator." *Id.* However, the data analyst must decide which operator to add. If the data analyst wants to add a "[c]onstant value," then he is to "[t]ype the value." *Id.* However, the data analyst must decide which constant value to add. If the data analyst wants to add a "[f]unction," then "[i]n the functions list, double-click a function . . . . In

the formula box, replace the placeholder parameter with a value or expression." *Id.* However, the data analyst must determine <u>which</u> function to add. Thus, although FileMaker Pro is a tool that Mr. Brickell used in the course of his analysis, FileMaker Pro did not dictate the formulas, the mathematical and text operators, the constant values and the functions that Mr. Brickell used to perform the analyses at issue. To the contrary, it was Mr. Brickell who developed and conceived of all of those key analytical devices.

In sum, Mr. Brickell analyzed complex data in support of this class action litigation. This analysis required him to make subjective and independent determinations, specific to this case. Those determinations are not found in any manual; there is no "recipe." Although Plaintiffs try to diminish the complexity of what Mr. Brickell has done and to categorize it as something other than independent analysis, Plaintiffs cannot, and do not, refute that, as the basis for his Declarations, Mr. Brickell amassed information from a number of sources, made determinations as to what data to include in his analysis, and used a sophisticated data management application to aid in conducting that analysis. *See* Pls.' Supp. Opp. at 10 (discussing Mr. Brickell's review of Marriott's manual and discovery responses); *id.* at 11 (discussing Mr. Brickell's use of FileMaker Pro 9); *id.* at 12 (discussing Mr. Brickell's "trial and error process" used to determine which data fields to "concatenate"). Accordingly, Mr. Brickell's data analysis "results from a process of reasoning which can be mastered only by specialists in the field," Pls.' Supp. Opp. at 5-6, and should be considered proffered expert testimony.

Lastly, Plaintiffs incorrectly attempt to use *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, to support their argument that the Declarations do not contain expert opinions. *See* Pls.' Supp. Opp. at 6-7, 19. Any *Daubert* discussion is premature. Marriott does not concede that Mr. Brickell would survive a *Daubert*

challenge. At this time, however, Marriott is not required to enumerate all of the bases for excluding Mr. Brickell's Declarations, including for lack of reliability pursuant to Rule 702.[1] If the Court determines that Plaintiffs may designate Mr. Brickell as an expert, then Marriott will have the opportunity to challenge Mr. Brickell's analysis under *Daubert*. Plaintiffs' *Daubert* discussion—a challenge that can come only after Plaintiffs fully comply with their disclosure obligations for expert witnesses and Marriott has had the opportunity to counter-designate an expert—should not distract from the present motion. As noted from the outset, the pending motion to strike addresses a threshold issue: Plaintiffs' improper attempt to use the Declarations as expert testimony masked as lay person testimony.

## II. Mr. Brickell's Declarations Do Not Qualify as a Summary Pursuant to Federal Rule of Evidence 1006.

Plaintiffs argue that Mr. Brickell's declarations are nothing more than tallies, "counting," and "'calculations' in support of Fed. R. Evid. 1006 summaries of voluminous evidence." Pls.' Supp. Opp. at 3; *see id.* at 3-5, 8. Plaintiffs' mischaracterize Mr. Brickell's Declarations and their own reliance on those Declarations in their class certification briefing.[2]

Federal Rule of Evidence 1006 provides a method by which voluminous data can be easily summarized using simple methods, such as counting entries, for the convenience of the Court. For example, if a witness had taken all of the named plaintiffs' hotel bills and added the

---

[1] Indeed, Marriott and even Mr. Brickell have already identified flaws in his guest data analysis which may provide an alternative ground to exclude this witness. *See* Marriott's Supp. Mem. in Further Support of Mot. to Strike Decls. at 6-9; *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

[2] In their Motion for Class Certification, Plaintiffs relied solely on Mr. Brickell's "analysis of data" to identify the number of guest stays "which fit within the class definition." Pls. Class Cert. Mem., attached as Exhibit 3 to Marriott's Mem. in Support of Mot. to Strike Decls. at 11. In their class certification reply brief, Plaintiffs again repeatedly relied on Mr. Brickell's analysis for the number of guests purportedly within the class and the purported subset of Washington, D.C. residents. *See, e.g.*, Class Cert Reply Mem. at 7 (describing a "class with over 288,000

charges in order to present the Court with a chart showing the cumulative amounts spent, such a presentation—though irrelevant—would have been the type of summary contemplated by Rule 1006. Marriott would not object to a Rule 1006 summary, on evidentiary grounds, if it were truly a counting of entries in the database, as the Rule contemplates.

Mr. Brickell's analysis is not a summary under Rule 1006. It goes well beyond a tally of spreadsheet figures and relies on a skill set beyond that of a lay witness. For example, to identify "the number of D.C. residents," *see* Pls' Supp. Opp. at 19, Mr. Brickell did not, and could not, merely sort the MRDW guest data and count the guest entries designated as Washington, D.C. residents. Indeed, such a task would have been impossible because there is no category or column of data in the MRDW records that identifies a guest's place of residence. *See, e.g.,* Exs. 2 and 3 to Marriott's Supp. Mem. in Further Support of Mot. to Strike Decls. Similarly, Mr. Brickell did not, and could not, simply tally the number of data entries for guests who provided a Washington, D.C. address because the MRDW address data is not uniform—for example, some guest entries only reference the letters "DC" with no other location indicators, whereas other records identified "D.C." as the state but with additional location identifiers for another state or country. *Id.* Accordingly, Mr. Brickell had to make subjective and inferential determinations as to which addresses should be included and which should not in reaching his conclusions about the number of D.C. residents allegedly at issue in this case. *See* Marriott's Supp. Mem. in Further Support of Mot. to Strike Decls. at 4-5; *Cooper v. Southern Co.*, 213 F.R.D. 683, 687 (N.D. Ga. 2003) (granting motion to strike declaration for failure to comply with Fed. R. Civ. P 26(a) and rejecting plaintiff's argument that the declaration was a mere data summary of data

---

members," a figure from Mr. Brickell's Second Declaration); *id.* at 21 (claiming "an additional 8,198 absent class members with addresses in the District of Columbia," based on figures from Mr. Brickell's Second Declaration).

extracted from a database and not expert testimony because the declaration included "at least three paragraphs purport[ing] to provide the results of the declarant's analysis of various facts").

In support of their argument that the Declarations fall under Rule 1006, Plaintiffs rely on *U.S. v. Hemphill*, 514 F.3d 1350, 1358-59 (D.C. Cir. 2008), a criminal case, in which the appellate court upheld the district court's admission of a summary chart pursuant to Federal Rule of Evidence 1006. *See* Pls.' Supp. Opp. at 5; *Hemphill*, 514 F.3d at 1358-59. *Hemphill* is inapposite. *Hemphill* involved a *chart* summarizing voluminous data involving "some calculations." *Hemphill*, 514 F.3d at 1359. In contrast, here, Plaintiffs submitted *three declarations* of opinion testimony describing Mr. Brickell's analysis of the documents, which required Mr. Brickell not just to tally numbers in a database but also to review discovery responses and manuals and to create calculations and formulas. *See, e.g.*, Brickell Dep. II at 31-34; First Decl. ¶ 3 ("In order to provide Plaintiffs' counsel with the total number of guest stays throughout the relevant period, I had to determine the time period for each of the seven (7) Russian hotels. To obtain this information, I referred to Defendants' Responses to Plaintiffs' Fourth Set of Discovery Requests, specifically, the Defendant's Answer to Interrogatory No. 1."); Second Decl. ¶¶ 4-22 (outlining the numerous steps Mr. Brickell took to opine on the number of "records and/or individual guests with a Washington, DC address"); Third Decl. ¶¶ 4-16 (outlining the numerous steps Mr. Brickell took "to determine the number of records or observations that have an estimated accumulated markup that exceeds $1,500").

Plaintiffs also attempt to distinguish *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233 (11th Cir. 2006), which discussed a trial court's exclusion of a Rule 1006 summary as an improper attempt to introduce expert opinion. Pls.' Supp. Opp. at 17. *Bayshore* supports Marriott's position. There, the Eleventh Circuit accepted a trial court's finding that the report at

issue did not qualify as a summary of databases under Rule 1006 because the report "involve[d] the systematic computation of damages via models . . . based on certain speculative calculations . . . made at the behest of plaintiffs' counsel." *Bayshore*, 471 F.3d at 1245. Citing this language from *Bayshore*, Plaintiffs attempt to distinguish Mr. Brickell's analysis, claiming that it is not based on "speculation." Pls.' Supp. Opp. at 17. But, Plaintiffs ignore (1) that Mr. Brickell admits formulating his calculations at the "behest" of Plaintiffs' counsel; and (2) that Mr. Brickell made several speculative assumptions in running his calculations and formulating his conclusions. *See* Marriott's Supp. Mem. in Further Support of Mot. to Strike Decls. at 7-9. Thus, for the same reasons recognized by the Eleventh Circuit in *Bayshore*, Mr. Brickell's conclusions go well beyond a proper Federal Rule 1006 summary and are not admissible as such.

## CONCLUSION

For the reasons discussed herein and in Marriott's Motion to Strike and supporting memoranda, Marriott requests that the Court strike the Declarations and testimony of Mr. Brickell. Alternatively, Marriott requests that the Court require Plaintiffs to comply with their disclosure obligations for expert witnesses, including those of Federal Rule of Civil Procedure 26(a), and provide Marriott with the opportunity to counter-designate an expert.

                                                    Respectfully submitted,

Dated: June 30, 2008

                                                    /s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant*
*Marriott International, Inc.*