UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, *et al.*          )
                                 )
                                 )
                                 )
     Plaintiffs,                 )
                                 )  Civil Action No. 05-1138 (GK)
v.                               )  (Status Conference July 7, 2008)
                                 )
MARRIOTT INTERNATIONAL, INC.     )
                                 )
     Defendant.                  )
                                 )

## MOTION TO STRIKE PORTIONS OF PLAINTIFFS' CLASS CERTIFICATION BRIEFING THAT RELY ON THE THREE BRICKELL DECLARATIONS

Pursuant to Federal Rules of Civil Procedure 23 and 12(f), Marriott International, Inc. ("Marriott"), by its attorneys, hereby moves to strike those portions of Plaintiffs' Memorandum and Reply Memorandum in Support of Class Certification that rely solely on the three declarations of Timothy Brickell.

Plaintiffs' class certification briefing cites Mr. Brickell's declarations as the exclusive evidentiary support for two essential prerequisites to class certification: 1) that the class is readily ascertainable; and 2) that the class is sufficiently numerous so that joinder is impracticable. For several months, however, Plaintiffs refused to permit Marriott to question Mr. Brickell as to his methodology and analysis of Marriott guest data, as described in his declarations. After this Court granted Marriott's Motion to Compel Discovery and Marriott was able to depose Mr. Brickell, the faulty nature of his analysis became even more clear. Among other things, Mr. Brickell admitted that: 1) he made no attempt to ascertain who was in the proposed class; 2) his conclusions regarding the number of D.C. residents who were guests at

Marriott Russia Hotels were inaccurate and overstated; and 3) his work was not informed by the proposed class definition, which he did not consult.

Accordingly, Mr. Brickell's declarations provide no support for Plaintiffs' claims that they meet the "ascertainability" and "numerosity" requirements for class certification. Because Plaintiffs have offered these declarations as the sole evidentiary support for these prerequisites to class certification, the Court should disregard the portions of Plaintiff's class certification briefing that rely on these declarations and strike those portions of the briefing from the record, as specified in the accompanying Proposed Order.

Respectfully submitted,

Dated: July 2, 2008

/s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant,*
*Marriott International, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* )<br>)<br>)<br>Plaintiffs, )<br>) Civil Action No. 05-1138 (GK)<br>v. ) (Status Conference July 7, 2008)<br>)<br>MARRIOTT INTERNATIONAL, INC. )<br>)<br>Defendant. )<br>_____) | |

### MEMORANDUM IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFFS' CLASS CERTIFICATION BRIEFING THAT RELY ON THE BRICKELL DECLARATIONS

Pursuant to Federal Rules of Civil Procedure 23 and 12(f),[1] Marriott International, Inc. ("Marriott"), by its attorneys, hereby submits its Memorandum in support of its Motion to Strike Portions of Plaintiffs' Class Certification Briefing That Rely on the Brickell Declarations.

### SUMMARY OF ARGUMENT

Timothy Brickell is a litigation support consultant for The Cullen Law Firm who purportedly analyzed the guest data produced by Marriott in this case. *See* Brickell C.V., attached hereto as Exhibit 1. Mr. Brickell submitted a total of three declarations in connection with the Plaintiffs' Memorandum in Support of their Motion for Class Certification and Reply Memorandum. First Decl., attached as Ex. 21 to Plaintiffs' Memorandum in Support of Motion

---

[1] Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant immaterial, impertinent, or scandalous matter," including "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with a pleading." Marriott's Motion to Strike is timely. Mr. Brickell's Declarations were attached to Plaintiffs' class certification and reply memoranda, which were filed on October 5, 2007 and March 31, 2008, respectively. However, Marriott was not permitted a full

*(Footnote continued to next page)*

for Class Certification ("Class Cert. Mem."); Second Decl., attached as Ex. 36 to Plaintiffs' Reply Memorandum in Support of Class Certification ("Class Cert. Reply"); Third Decl., attached as Ex. 40 to Class Cert. Reply. Mr. Brickell's first declaration served as Plaintiffs' exclusive factual support for two essential prerequisites to class certification: 1) that the class is readily ascertainable; and 2) that the class is sufficiently numerous so that joinder is impracticable. *See* Class Cert. Mem. at 10-11; *see also* Fed. R. Civ. P. 23(a)(1). His latter two declarations were cited by Plaintiffs to bolster these positions. *See, e.g.*, Class Cert. Reply at 7 (describing a "class with over 288,000 members," a figure from Mr. Brickell's Second Declaration); *id.* at 21 (claiming "an additional 8,198 absent class members with addresses in the District of Columbia" and 11,324 related guest stays, based on figures from Mr. Brickell's Second Declaration).

Despite their reliance on Mr. Brickell's analysis in their class certification briefing, for several months, Plaintiffs refused to permit Marriott to explore and test Mr. Brickell's analysis of Marriott's guest data and his underlying methodology as described in his declarations. Only after this Court granted Marriott's Motion to Compel Discovery was Marriott permitted to do so. In his recent, Court-ordered deposition, Mr. Brickell admitted that: 1) he made no attempt to ascertain who was in the proposed class; 2) his conclusions regarding the number of Marriott Russia Hotel guests with Washington, D.C. addresses was inaccurate and overstated; and 3) his work was not informed by the proposed class definition, which he did not even consult. Additionally, based on information learned from Mr. Brickell's latest deposition testimony,

---

*(Footnote continued from previous page)*
opportunity to explore Mr. Brickell's opinions until his Court-ordered May 22, 2008 deposition, which resulted from Marriott's Motion to Compel.

2

Marriott can demonstrate that he made fatally flawed assumptions with respect to the purported number of D.C. residents in the proposed class.

"Where an 'expert report' amounts to 'written advocacy . . . akin to a supplemental brief,' a motion to strike is appropriate because the evidence is not useful in evaluating whether class certification requirements have been met." *See, e.g., McPhail v. First Command Fin. Planning*, 247 F.R.D. 598, 604-605 (S.D.Cal. 2007) (citing *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 281 (S.D.Ala. 2006)). Mr. Brickell's declarations provide no support for Plaintiffs' claims that they meet the "ascertainability" and "numerosity" requirements for class certification. Because these declarations are the sole evidentiary support cited by Plaintiffs for these propositions, the portions of Plaintiffs' class certification briefing that rely on these declarations should be stricken, and the Motion for Class Certification should be denied.

## PROCEDURAL HISTORY

On October 5, 2007, Plaintiffs filed their Motion for Class Certification. Attached to their supporting memorandum was a declaration by Timothy P. Brickell, in which he stated that he analyzed the guest data produced by Marriott and expressed several opinions as a purported result of that analysis, including his opinion as to the number of "guest stays which fit within the class definition." Class Cert. Mem. at 11. At his January 18, 2008 deposition, when Marriott asked Mr. Brickell questions regarding his analysis and conclusions upon which Plaintiffs were relying in support of class certification, Plaintiffs' counsel repeatedly instructed Mr. Brickell not to answer questions on grounds of work product privilege, *see* Transcript of January 18, 2008 Deposition of Timothy P. Brickell ("Brickell Dep. I"), at 31, 33-36, 48, 57-59, 68-70, 78, 80-81, 85-87, 135, 137-147, 150, and based on Plaintiffs' claim that Mr. Brickell was not an expert. *Id.* at 57 (all relevant portions of Brickell Dep. I attached hereto as Exhibit 2).

On March 31, 2008, Plaintiffs filed their Reply Memorandum in Support of Class Certification, which was accompanied by two additional declarations from Mr. Brickell. Both declarations contained additional opinions about the purported class size. Notwithstanding their submission of and reliance upon these additional opinions, Plaintiffs again refused to permit Marriott an opportunity to probe fully Mr. Brickell's analysis and methodology, again based on grounds of work product privilege and Plaintiffs' claim that Mr. Brickell was not an expert.

Marriott filed its Motion to Strike Declarations of Timothy Brickell or, In the Alternative, To Compel Discovery, on April 4, 2008. On May 9, 2008, the Court granted Marriott's alternative Motion to Compel Discovery, ordering Plaintiffs to make Mr. Brickell available for deposition with respect to his three declarations submitted in support of class certification. *See* Doc. #103.

Mr. Brickell was made available for his second deposition on May 22, 2008. In that deposition, Marriott questioned Mr. Brickell about the contents of his three declarations, including the type of analysis he conducted of the guest data, the methodology he used to carry out the analysis, as well as any conclusions he reached and the bases therefor. Mr. Brickell revealed that he performed an analysis of the guest records that were contained in one of the databases produced by Marriott but that he conducted no analysis to exclude any guest records that did not fall within the class definition. Indeed, he stated that ***his work was not informed by the class definition, which he had not consulted***. *See* Transcript of May 22, 2008 Deposition of Timothy P. Brickell ("Brickell Dep. II"), at 83 (all relevant portions of Brickell Dep. II attached hereto as Exhibit 3). Mr. Brickell's admissions in his second deposition demonstrate that Plaintiffs have no basis for relying on his declarations for the propositions that the proposed class is either readily ascertainable or numerous.

4

## ARGUMENT

### I. Plaintiffs Offer No Valid Support For Their Contention That The Putative Class Is Readily Ascertainable.

The existence of an ascertainable class is a prerequisite to Rule 23 class certification. *See John v. National Sec. Fire and Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *In re Copper Antitrust Litig.*, 196 F.R.D. 348, 359 (W.D. Wis. 2000) (ascertainability "goes to the heart of the question of class certification, which requires a class definition that is precise, objective and presently ascertainable… Otherwise, it is not possible to give adequate notice to class members or to determine after the litigation has concluded who is barred from relitigating."). As Plaintiffs concede, the proposed class must be "sufficiently discrete and identifiable so as to make management of the class administratively feasible." Class Cert. Mem. at 10. Plaintiffs bear the burden of establishing the prerequisites to class certification, including ascertainability. *See* Fed. R. Civ. P. 23.

In their Motion for Class Certification, Plaintiffs proposed a class of:

> All persons who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, who received a room rate confirmation stated in U.S. Dollars, and whose final bill at checkout was stated in Russian Rubles.

Motion for Class Certification at 1; Class Cert. Mem. at 10. In their Reply, Plaintiffs confirmed that the "confirmation" referred to in their proposed class must be a written confirmation from Marriott: "The key factor is whether the guest received a written price confirmation from Marriott." Class Cert. Reply at 9; *see id.* at 6 ("That written confirmation is the basis for Marriott's liability[.]"). Consequently, a witness opining as to who qualifies as a putative class member must determine, *at a minimum*, whether (1) the guest booked a room reservation at a Marriott hotel property in Russia during the relevant period of time **and** (2) whether the guest

5

received a written confirmation **and** (3) whether that written confirmation was issued by Marriott.

In their class certification briefing, Plaintiffs' sole argument for ascertainability is their claims that "[t]he members of the class as described above [referring to the class definition] may be readily ascertained using the electronic records produced by Marriott." Class Cert. Mem. at 10. Plaintiffs' support for this statement is a single footnote: "Exhibit 21, Brickell declaration." However, as is now clear, Mr. Brickell did not—and made no effort to—determine whether any guest in Marriott's electronic records received a written confirmation from Marriott. Therefore, Plaintiffs' assertion of ascertainability should be stricken as erroneous and unsupported by the record.

Not only did Mr. Brickell neglect the "key factor" of whether guests received a written confirmation from Marriott, Class Cert. Reply at 9, but he provides no other support for Plaintiffs' assertion that the class is ascertainable. Mr. Brickell admitted in his deposition that his work did not include determining the ascertainability of the class. In fact, he stated that ***he did not even consult the class definition.*** Brickell Dep. II at 83. According to Mr. Brickell, rather than attempt to determine who was part of the class, he merely provided the purported total number of guest records. First Decl. at ¶ 4; Second Decl. at ¶ 18; Third Decl. at ¶ 7. As Mr. Brickell testified:

> Q. Mr. Brickell, with regard to your declaration number one, two or three, did you at any time conduct your analysis to identify who was in the class proposed by plaintiffs?
>
> A. No, I didn't do that. No.

6

> Q. Are your determinations impacted in any way by the scope of the class definition proposed by plaintiffs?
>
> A. No. Merely just what I was asked – the records I was asked to count. The criteria defined those records.
>
> \*\*\*
>
> Q. But you did not look at any definition of what the class was proposed by plaintiffs?
>
> A. No, I did not.
>
> Q. Did you make a determination for the guest stays as to whether they received a reservation confirmation?
>
> A. No.

Brickell Dep. II at 82, 83.

When questioned by Plaintiffs' counsel, Mr. Brickell similarly acknowledged that he performed no analysis and holds no opinion with regard to which guests are included in Plaintiffs' proposed class.

> Q. Have you ever been asked to offer an opinion with respect to which guests or what guests are included in any class that the plaintiffs have asked the court to certify?
>
> A. No, sir.
>
> Q. Do you hold an opinion with respect to that question?
>
> A. No, sir.

Id. at 193-194.

Thus, there is no basis for Plaintiffs' assertion that Mr. Brickell's declarations establish that the class is "readily ascertainable." Cf. Class Cert. Mem. at 10-11. Mr. Brickell himself

7

admitted that he never tried to ascertain who was in the class and never even reviewed Plaintiffs' proposed class definition. Brickell Dep. II at 82, 83, 193-194. Plaintiffs provide no support, apart from Mr. Brickell's declarations, for their contention of ascertainability. Plaintiffs' argument that the proposed class is ascertainable therefore should be stricken from their briefing.

Not only have Plaintiffs provided no support for their claim of ascertainability, but the class proposed by Plaintiffs is not, in fact, readily ascertainable. Rather, determining class membership would involve an individualized inquiry for each Plaintiff and proposed class member. Marriott does not track which guests receive a written confirmation, from Marriott or otherwise. Third Affidavit of Deborah McGrath ("Third McGrath Aff."), attached hereto as Exhibit 4, at ¶ 11. There is no field in the Marriott Reservation Data Warehouse ("MRDW") electronic guest database which verifies that a written confirmation was sent to a particular guest or which preserves the contents of the confirmation. *Id.* at ¶ 12. Marriott provides written reservation confirmations (the "key factor" to class membership, according to Plaintiffs, Class Cert. Reply at 9) to prospective guests only where three conditions are met: 1) the guest books through an official Marriott reservation channel (*i.e.*, through Marriott.com, through the Marriott toll-free number, or by directly contacting a Marriott Managed Hotel; 2) that guest provides the reservation channel with an e-mail address or a facsimile number; **and** 3) the rate type booked was not a negotiated group rate. *See* Second Affidavit of Deborah McGrath ("Second McGrath Aff."), attached as Ex. 1 to Marriott's Motion for Summary Judgment, at ¶ 11. As a result, only a small percentage of guests who stayed at the Marriott Russia Hotels during the relevant time period received written confirmations from Marriott. *Id.* at ¶ 12. In any event, an individualized inquiry of each Plaintiff and potential class member would be required to determine whether each individual received an e-mail or a fax confirmation from Marriott.

8

## II.     Plaintiffs Offer No Valid Support For Their Claim of "Numerosity."

Federal Rule of Civil Procedure 23(a)(1) requires Plaintiffs to establish that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) (Plaintiffs bear the burden of establishing all the requirements for certification under Rule 23). In an effort to satisfy their burden of establishing numerosity, Plaintiffs relied solely upon Mr. Brickell's declarations. Plaintiffs stated in their Motion for Class Certification (citing Mr. Brickell's first declaration): "[T]here are no less than 110,522 guest stays which fit the class definition." Class Cert. Mem. at 11. In their Reply Memorandum, Plaintiffs revised the claimed number of unique guests who stayed at Marriott Russia Hotels to 288,413 (encompassing over 402,000 guest stays), again based solely on Mr. Brickell's work. Class Cert. Reply at 7; Second Brickell Decl. at ¶ 18; Third Brickell Decl. at ¶ 7; Brickell Dep. II, at 40-42.

As noted above, Mr. Brickell admitted that he never attempted to identify the members of the class and never even consulted the class definition. Moreover, Plaintiffs have formulated a class definition that includes only Marriott Russia Hotel guests who received written confirmations from Marriott—not all guests. Thus, the raw number of guest records or individual guests at Marriott Russia Hotels is irrelevant to establishing numerosity. What matters is how many guests received "written confirmations" from Marriott – a number that Mr. Brickell made no attempt to compute. As Plaintiffs have made no estimate of the number of Marriott Russia Hotel guests who received written confirmations from Marriott, they cannot meet their burden of establishing numerosity. *See Alliotta v. Gruenberg*, 237 F.R.D. 4, 10 (D.D.C. 2006) (there must be a reasonable basis for an estimate of the size of the class).

As set forth in Marriott's Opposition to Class Certification, any class in this case must be limited to residents of Washington, D.C. *See* Marriott's Memorandum in Opposition to

9

Plaintiffs' Motion for Class Certification ("Class Cert. Opp.") at 18-19, 34-44. If the scope of any class is limited to D.C. residents, as it should be, the data that Mr. Brickell analyzed strongly suggests that numerosity cannot be established.

Through analysis of the MRDW database, Mr. Brickell initially estimated that there were 8,199 Marriott Russia Hotel guests with Washington, D.C. addresses.[2] Second Brickell Decl. at ¶ 17. By the time of his deposition, Mr. Brickell realized that he had erroneously overestimated that figure, resulting in a revised estimate of 7,412 guests with Washington, D.C. addresses. Brickell Dep. II at 105. His modified computation still vastly overestimates the number of Marriott Russia Hotel guests with Washington, D.C. addresses, however, as it includes a significant percentage of guests whose addresses were designated with the notation "XX DC 00000" or a similar notation in the address field. *Id.* at 106-108. Mr. Brickell included these indeterminate entries as valid Washington, D.C. addresses, even though he admitted that he could not determine to any reasonable degree of certainty whether a "XX DC 00000" entry indicated that a guest actually had a Washington, D.C. address. *Id.* at 110. In actuality, "XX DC 00000" and similar notations are default entries used by Marriott for U.S. guests whose addresses are unknown because their hotel stays were part of group reservations; such notations do *not* indicate that the guests had any connection to D.C. *See* Declaration of Olga Nikitina ("Nikitina Decl."), attached hereto as Exhibit 5, at ¶¶ 4-6. For example, "XX DC 00000" would be entered in the address field for all Delta Airlines crew members whose reservations were part of a group

---

[2] Notably, Mr. Brickell did not attempt to determine the number of Washington, D.C. residents who stayed at the Marriott Russia Hotels. Brickell Dep. II at 91. Rather, he attempted to determine the number of guest records with Washington, D.C. addresses. Second Dec. at ¶¶ 8-10.

booking, regardless whether those crew members had any connection to Washington, D.C. *See id.* at ¶ 4.

A search of the MRDW database for all records containing "Washington, D.C." in the address field shows that, at most, there are only 1,274 guest records that appear to contain a valid Washington D.C. address. Third McGrath Aff. at ¶ 6. The proposed class as defined by Plaintiffs, however, consists not of all guests, but only those who received written confirmations from Marriott prior to their stay. *See, e.g.,* Class Cert. Reply at 6, 9. As noted in Section I, Marriott only sends a written confirmation to those guests who: 1) supply an e-mail address or fax number; 2) book through an official Marriott reservation channel; and 3) do not receive a group rate. Second McGrath Aff. at ¶ 11.

Of the 1,274 Marriott Russia Hotel guest records with facially valid D.C. addresses, only 557 records contain an e-mail address.[3] *See* Third McGrath Aff. at ¶¶ 6-7. Once the appropriate date restrictions are applied to each hotel[4] and duplicate guest data is removed, only 167 unique guests remain with both a Washington, D.C. address and an e-mail address. *Id.* at ¶ 8.

Of those 167 guests, a significant portion may not be included in any class, for lack of standing or other prerequisites to mounting a claim under the D.C. CPPA. *See, e.g.,* Class Cert. Opp. at 20-21; Marriott Memorandum in Support of Motion for Summary Judgment ("Marriott

---

[3] The MRDW database does not include a field for fax numbers. On average worldwide, however, Marriott sends out less than one fax confirmation for every 50 e-mail confirmations (based on 2006 data). Third McGrath Aff. at ¶ 4.

[4] *See* Third McGrath Aff. at ¶ 8. The date restrictions applied are generally from 5/13/2002 to 12/20/06 for all Marriott Russia Hotels, except for the Renaissance Moscow, whose restriction is from 5/13/2002 to 12/31/2007. *See id.* These restrictions cover the beginning of the proposed class period through the dates on which each of the hotels stopped quoting room rates in U.S. dollars and began to quote in rubles. *See* Marriott's Responses to Plaintiffs' Fourth Set of Interrogatories and Requests for Production of Documents, Answer to Interrogatory No. 1, at 5-6.

*(Footnote continued to next page)*

SJ Mem.") at 44-45. Although an individualized guest-by-guest analysis would be required to determine definitively which guests fall within the class definition proposed by the Plaintiffs, the MRDW guest records for 111 of the 167 guests contain indicators that would require the guest to be excluded from the putative class:

- Twenty-one guests provided e-mail addresses with domain names ending in ".gov," indicating their employment by the U.S. Government. *Id.* at ¶ 9. Marriott has specially negotiated rates for employees of the U.S. government. During the time that Marriott Russia Hotels quoted prices in U.S. dollars, U.S. government guests frequently received the Central Bank exchange rate when their hotel bills were converted to rubles at checkout, which is the rate that Plaintiffs claim should have applied. *See* Marriott's Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Nos. 61 and 68; Deposition of Sarah Mendelson at 102-106, 109, 114, 125, 129. Sarah Mendelson, one of the named Plaintiffs, testified that she received the U.S. Embassy Rate and was charged the Central Bank exchange rate for several of her Marriott Russia Hotel stays. *See* Deposition of Sarah Mendelson, at 117, 119, 126, 129-131.

- Eighty-six guests provided e-mail addresses with domain names clearly affiliated with corporations or other business entities. Third McGrath Aff. at ¶ 10. Putative class members whose stays at the Marriott Russia Hotels were for business purposes lack standing to pursue claims under the D.C. CPPA. *See* Marriott SJ Mem. at 18-19.

---

*(Footnote continued from previous page)*
Plaintiffs have conceded that they are not seeking to recover for any stays for which a guest was quoted a price in rubles.

The "trade practices" enforceable by private litigants under the D.C. CPPA, *see* D.C. Code §§ 28-3904, 28-3905(k)(1), are only those that pertain to "consumer goods or services," *id.* § 28-3901(a)(6) (defining "trade practices"). In turn, "consumer" goods or services are defined under the D.C. CPPA as goods or services that are "primarily for personal, household, or family use." *Id.* § 28-3901(a)(2). Thus, as courts have recognized, the protections of the D.C. CPPA do not extend to purchases that are for business or commercial use. *See, e.g., Ford v. ChartOne, Inc.*, 908 A.2d 72, 81, 82 n.10, 84 n.12 (D.C. 2006); *Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 591 (D.D.C. 1988). Further, this Court has repeatedly held "that the CPPA was intended to protect consumer-plaintiffs only, and not corporations." *Clifton Terrace Assoc., Ltd. v. United Techs. Corp.*, 728 F. Supp. 2d 24, 34 (D.D.C. 1990), *vacated in part on other grounds*, 929 F.2d 714 (D.C. Cir. 1991); *see* Marriott SJ Mem. at 28-30.

- Finally, four guests were employees of Marriott or Marriott's counsel (as indicated by their e-mail addresses ending in either @marriott.com or @dlapiper.com). Third McGrath Aff., ¶ 9.

If all of the above records are excluded (as would be expected after an individualized analysis), only 56 Marriott Russia Hotel guests remain with both a Washington, D.C. address and an e-mail address. *Id.* These 56 guests are the only ones that fit within Plaintiffs' proposed class definition and who **may** be able to bring the claims at issue here. *See* Class Cert. Opp. at 17-18. However, even this figure likely overstates the number of written confirmations sent by Marriott because, without an individualized inquiry, it cannot be determined, for example, how many of these guests actually received or reviewed a written confirmation from Marriott. Third McGrath

Aff., ¶¶ 11, 12; *see Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. 2003) (declining to certify class, where plaintiffs alleged that the proposed class included at least 10,000 members, and defendants argued that the plaintiffs' estimate of the class was "based on several inaccuracies and is consequently overstated;" although there was no dispute that the class consisted of more than 40 individuals, plaintiffs failed to show that "it will be unnecessary to conduct highly individualized, fact-intensive inquiries into the circumstances surrounding" the transaction in question to determine whether each individual is entitled to relief, and thus "raising serious concerns about the manageability of the action").

Plaintiffs' claim of numerosity in their class certification briefing is based entirely upon the Brickell declarations. However, given that Mr. Brickell did not seek to identify the members of the class and did not even consult the class definition, Plaintiffs have no support for their assertion of numerosity. Moreover, as indicated by Marriott's analysis, described above, it is unlikely that Plaintiffs could establish numerosity. Because Plaintiffs lack a basis for their claims of numerosity and their attempts to quantify the class, these portions of their class certification briefing should be stricken, as specified in the accompanying Proposed Order. Absent any basis for estimating class size, Plaintiffs' numerosity argument necessarily fails. *See Alliotta*, 237 F.R.D. at 10.

## CONCLUSION

For all of the foregoing reasons and those discussed in Marriott's Motion to Strike Declarations of Timothy Brickell and Supplemental Memorandum in Further Support of Motion to Strike Declarations of Timothy Brickell or, In the Alternative, To Compel Discovery, Marriott respectfully requests that this Court strike all portions of the Plaintiffs' class certification briefing

14

that rely on or reference the Brickell declarations, as specified in the accompanying Proposed Order.

                                                    Respectfully submitted,

Dated: July 2, 2008

                                                    /s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)
*Attorneys for Defendant,*
*Marriott International, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>MARRIOTT INTERNATIONAL, INC. )<br>)<br>Defendant. )<br>) | Civil Action No. 05-1138 (GK) |

### CERTIFICATE OF SERVICE

I hereby certify that, on this 2nd day of July, 2008, a copy of this Motion to Strike Portions of Plaintiffs' Class Certification Briefing that Reply on the Three Brickell Declarations, the Memorandum in Support thereof, any exhibits thereto, and the proposed Order, were served electronically on:

Paul D. Cullen, Sr.        (PDC@cullenlaw.com)
Joyce E. Mayers           (JEM@cullenlaw.com)
Randall Herrick-Stare    (RHS@cullenlaw.com)
Amy M. Lloyd              (al@cullenlaw.com)
The Cullen Law Firm, PLLC
1001 30th Street NW Suite 300
Washington, D.C. 20007

BALT1\4436596.4