IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

                Plaintiffs,

    v.

MARRIOTT INTERNATIONAL, INC.

                Defendant.

Civil Action No. 05-1138 (GK)

Status Conference – July 7, 2008

**MARRIOTT INTERNATIONAL, INC.'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.     PLAINTIFFS LACK STANDING OR ARE OTHERWISE NOT
           QUALIFIED TO BRING CLAIMS UNDER THE D.C. CPPA ............................. 3

          A.     Shaw and Mendelson Lack Injury-In-Fact And Thus Standing ................. 3

          B.     Shaw, Mendelson And CSIS Employees May Not Bring D.C.
                 CPPA Claims Because Their Stays Were For Business Purposes .............. 7

          C.     CSIS May Not Sue Under The D.C. CPPA Because It Is A
                 Corporation ........................................................................................ 8

          D.     The D.C. CPPA Does Not Apply, And Cannot Apply
                 Constitutionally, To The Claims Of Shaw And Charness ........................ 11

          E.     Mendelson And CSIS Lack Standing To Make A Claim Against
                 Marriott Because All Of Their Representations Came From
                 Interstate, An Independent Entity .......................................................... 18

    II.    PLAINTIFFS IGNORE THE HIGHLY RELEVANT *SHAW V. HYATT*
           AND *BYKOV V. RADISSON* DECISIONS, IN WHICH THE SEVENTH
           AND EIGHTH CIRCUITS REJECTED PLAINTIFFS' CLAIMS HERE ........... 20

    III.   ASSUMING A LIABILITY INQUIRY, MARRIOTT IS ENTITLED TO
           SUMMARY JUDGMENT ON NEARLY ALL OF PLAINTIFFS'
           CLAIMS ............................................................................................... 21

          A.     Marriott Is Entitled To Summary Judgment Based On Claims
                 Postdating Marriott's Provision Of Additional Information In 2005 ........ 21

          B.     No Plaintiff May Recover For More Than One Stay ................................ 22

          C.     Marriott Is Entitled To Summary Judgment On Plaintiffs'
                 "Headquarters Misrepresentation" Claims ............................................. 23

    IV.   PLAINTIFFS' LATEST ATTEMPT TO REDEFINE THE CLASS
           SHOULD BE REJECTED ....................................................................... 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

### CASES

*Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989) ...................................... 9, 10

*Alicke v. MCI Commc'ns Corp.*, 111 F.3d 909 (D.C. Cir. 1997) ................................................. 22

*Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) ........................................................................ 12

*Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476 (Mass. 2004) ................................................... 6, 7

*Bykov v. Radisson Hotels Int'l, Inc.*, No. 05-1280, 2006 U.S. Dist. LEXIS
    12279 (D. Minn. Mar. 22, 2006) ....................................................................................... 20

*Bykov v. Radisson Hotels Int'l, Inc.*, No. 06-2102, 2007 U.S. App. LEXIS
    3276 (8th Cir. Feb. 12, 2007) ....................................................................................... 4, 20

*Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018 (D.C. 2007) ......................................... 11

*Clifton Terrace Assoc., Ltd. v. United Techs. Corp.*, 728 F. Supp. 24 (D.D.C. 1990),
    *vacated in part on other grounds*, 929 F.2d 714 (D.C. Cir. 1991) ........................... 8, 9, 10

*Ctr. for Sci. in the Pub. Interest v. Burger King Corp.*, 534 F. Supp. 2d 141
    (D.D.C. 2008) ................................................................................................................ 3, 6

*Ford v. ChartOne, Inc.*, 908 A.2d 72 (D.C. 2006) .................................................................. 8, 10

*Friends of Tilden Park, Inc. v. District of Columbia*, 806 A.2d 1201 (D.C. 2002) ........................ 5

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ............................................................... 5

*Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24 (D.D.C. 2007) ............................................ 3, 4, 5

*Hundred East Credit Corp. v. Schuster Corp.*, 515 A.2d 246 (N.J. Super. 1986) ........................ 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................................. 18

*Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588 (D.D.C. 1988) .................. 8, 10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ...................................................... 12, 16, 17

*Shaw v. Hyatt Int'l Corp.*, No. 05-5022, 2005 U.S. Dist. LEXIS 28250 (N.D. Ill. Nov. 15,
    2005) ............................................................................................................................ 20

*Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006)..........................................16, 20

*Shaw v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 141 (D.D.C. 2007) ...................................11, 12, 15

*Snowder v. District of* Columbia, No. 06-cv-959, 2008 D.C. App. LEXIS 261 (D.C. June 5, 2008).............................................................................................................................6

*State v. Cottman Transmissions Sys., Inc.*, 587 A.2d 1190 (Md. App. 1991) ...............................20

*In re St. Jude Med., Inc.*, MDL No. 01-1396, 2006 U.S. Dist. LEXIS 74797 (D. Minn. Oct. 13, 2006) ...................................................................................................................16

*In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005)..........................................................15, 16

*In re St. Jude Med., Inc.*, 522 F.3d 836 (8th Cir. 2008)................................................................16

*Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168 (D.C. 2006) ...........................12, 16

*Wells v. Allstate Ins. Co.*, 210 F.R.D. 1 (D.D.C. 2002)............................................................5, 6

*Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) ...........................................................................................................................3, 4, 5

## STATUTES

D.C. Code § 28-3901(a)(2)....................................................................................................7, 9, 11

D.C. Code § 28-3901(a)(3)..........................................................................................................20

D.C. Code § 28-3901(a)(6)............................................................................................................9

D.C. Code § 28-3904(e) ..............................................................................................................22

D.C. Code § 28-3904(f)................................................................................................................22

D.C. Code § 28-3904(h)...............................................................................................................22

N.J. Stat. § 56:8-1 ........................................................................................................................11

Marriott International, Inc. ("Marriott"), by its attorneys, hereby submits this Reply

Memorandum in Support of Marriott's Motion for Summary Judgment.[1]

## INTRODUCTION

Plaintiffs' opposition to Marriott's motion for summary judgment does not dispute on the

merits key facts entitling Marriott to summary judgment, including:

- That Marriott Russia Hotels no longer quote room prices in U.S. dollars or apply hotel exchange rates, but quote all prices in rubles.

- That, as of mid-2005, Marriott provided information to all prospective guests reserving through Marriott-controlled reservation channels that prices quoted in U.S. dollars were subject to payment in rubles at a hotel exchange rate.

- That, as of mid-2005, Marriott placed information into its MARSHA system to inform third-party reservation channels, not controlled by Marriott, that prices quoted in U.S. dollars were subject to payment in rubles at a hotel exchange rate.

- That some prospective guests received such information as early as 2002 in written confirmations from Marriott Franchised Hotels.

- That, throughout the relevant time period, all Marriott Russia Hotels displayed information regarding payment in rubles at a hotel exchange rate at their front desks, elsewhere on the hotel properties, and on guests' bills.

- That all Plaintiffs were informed, prior to payment at check-out, that they would be charged in rubles, subject to application of a hotel exchange rate.

- That, as Plaintiffs Shaw and Charness have expressly admitted, Marriott is headquartered in Bethesda, Maryland, not Washington, D.C.

- That Plaintiffs Shaw and Charness have no connection to D.C. other than this lawsuit.

- That Plaintiffs Shaw and Mendelson (as well as employees of Plaintiff CSIS) did not pay for their rooms at Marriott Russia Hotels, which were paid for by their employers and which were used in connection with business travel.

---

[1] Marriott hereby incorporates its opposition to Plaintiffs' summary judgment motion ("Marriott SJ Opp.") and its Statement of Genuine Issues ("Marriott Counterstatement"). Marriott refers to its initial summary judgment brief as "Marriott SJ Mem.," to its initial statement of facts as "Marriott Facts," to Plaintiffs' opening summary judgment brief as "Plaintiffs' SJ Mem.," to Plaintiffs' opposition to Marriott's summary judgment motion as "Plaintiffs' SJ Opp.," and to Plaintiffs' response to Marriott's statement of undisputed facts as "Plaintiffs' Counterstatement."

- That Plaintiff Mendelson and employees of Plaintiff CSIS stayed only at Marriott Franchised Hotels.

- That CSIS is a corporation.

These undisputed facts establish that none of the four named Plaintiffs is entitled to bring a claim against Marriott under the D.C. Consumer Protection Procedures Act ("D.C. CPPA"), or for unjust enrichment. These facts also establish that Plaintiffs' claims on the merits fail as a matter of law. Accordingly, summary judgment should be entered for Marriott.[2]

Rather than demonstrate material factual disputes, Plaintiffs' opposition presents distracting and erroneous legal arguments based on both immaterial and undisputed facts. Plaintiffs concede that each Plaintiff must show injury-in-fact to have standing, but mischaracterize the applicable law. With respect to Marriott's other threshold arguments, Plaintiffs not only ignore the statutory language and interpretative caselaw, but they also ignore their own admissions that Marriott is headquartered in Maryland. Moreover, Plaintiffs continue to claim, wrongly, that Marriott concocted a deceptive exchange rate scheme, when undisputed evidence shows that Marriott's practices were market standard and were no different than those used by virtually all hotels and businesses quoting prices in U.S. dollars in Russia during the relevant time period. Focused on this myth, Plaintiffs completely ignore the highly relevant *Shaw v. Hyatt and Bykov v. Radisson* decisions from the Seventh and Eighth Circuits.

Finally, the Court should reject Plaintiffs' latest attempt to revise their class definition. Plaintiffs should be held to their acknowledgment in class certification briefing that the "key factor" to class membership is the receipt of a written confirmation from Marriott. In any event,

---

[2] Should this Court conclude that some claim remains, as Marriott has explained in its opposition to Plaintiffs' summary judgment motion, material disputes of fact preclude the entry of summary judgment for Plaintiffs. These disputed issues include: (a) the definition of a reasonable consumer of Marriott Russia Hotels; (b) whether unknown, future exchange rates are material to a reasonable consumer; (c) whether a reasonable consumer would have been deceived and (d) whether Marriott intended to deceive. *See* Marriott's SJ Opp. at 34-42.

the Court should not certify any class, both because Marriott's summary judgment motion should

be granted and because Plaintiffs cannot meet the requirements for class certification.

## ARGUMENT

### I.    PLAINTIFFS LACK STANDING OR ARE OTHERWISE NOT QUALIFIED TO BRING CLAIMS UNDER THE D.C. CPPA.

Plaintiffs do not dispute that the threshold issues raised by Marriott in Section Two of its

opening brief <u>must</u> be resolved prior to assessing the merits of Plaintiffs' claims.  In fact,

Plaintiffs concede that each Plaintiff must show injury-in-fact to have standing to bring suit.

Plaintiffs' SJ Opp. at 1.  Undisputed facts establish that all Plaintiffs either "have failed to show

the injury-in-fact or causation required for standing, or have not established the prerequisites for

standing to sue under the D.C. CPPA, or both."  Marriott SJ Mem. at 15.

#### A.    Shaw and Mendelson Lack Injury-In-Fact And Thus Standing.

Plaintiffs mischaracterize Marriott's injury-in-fact argument.  Marriott does not "seek[] to

excuse its price misrepresentations because the money to pay the overcharge came from

someone other than Shaw or Mendelson."  Plaintiffs' SJ Opp. at 1.  Rather, Marriott asks this

Court to apply its settled precedent that where, as here, a plaintiff does not suffer economic

injury or other injury-in-fact under the D.C. CPPA, that plaintiff lacks standing.  Marriott SJ

Mem. at 16-17, 26; *see, e.g.*, *Ctr. for Sci. in the Pub. Interest v. Burger King Corp.*, 534 F. Supp.

2d 141, 143-44 (D.D.C. 2008) ("*CSTI*"); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 28-29

(D.D.C. 2007); *Williams v. The Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177-78 (D.D.C.

2003).[3]

---

[3] Marriott notes that it has not "admit[ted] that its pricing practices resulted in a charge to its guests of more in USD than it represented in its advertising and price confirmations," or that its activities "cause[d] injury to some person."  Plaintiffs' SJ Opp. at 1.  To the contrary, the undisputed facts show that Marriott did not issue price confirmations to all Plaintiffs (including

Critically, Plaintiffs concede that neither Shaw nor Mendelson suffered any economic harm. Plaintiffs' Counterstatement ¶¶ 53, 62. Instead, Plaintiffs argue that these individuals suffered injury-in-fact because Marriott supposedly violated Shaw's and Mendelson's alleged right "to be free from improper trade practices." Plaintiffs' SJ Opp. at 3.

This Court has repeatedly rejected this precise claim of injury-in-fact: "The invasion of a purely legal right without harm to the consumer," such as "freedom from alleged false and misleading advertising," does not confer standing and "can be addressed through the administrative process of the Government of the District of Columbia." *Williams*, 297 F. Supp. 2d at 178 (emphasis added); *accord, e.g.*, *CSTI*, 534 F. Supp. 2d at 143 (rejecting CPPA claims where plaintiff "does not allege any personal or economic injury suffered by itself or its members"); *Hoyte*, 489 F. Supp. 2d at 28-29; *see Bykov v. Radisson Hotels Int'l, Inc.*, No. 06-2102, 2007 U.S. App. LEXIS 3276, at *4-5 (8th Cir. Feb. 12, 2007).[4]

In prior briefing, Plaintiffs ignored this Court's clear precedent. Plaintiffs now mischaracterize that precedent and continue to cite non-standing, non-applicable cases:

***Williams.*** Contrary to Plaintiffs' suggestion, *Williams* squarely decided the post-2000 amendment D.C. CPPA claims of consumers who – like Plaintiffs here – actually purchased the product at issue, and thus to whom the defendant conceivably owed a duty, assuming some actual injury. *See Williams*, 297 F. Supp. 2d at 177-78. The Court in *Williams* held that where, as there, plaintiffs suffer no personal or economic harm beyond the alleged right "to freedom from alleged false and misleading advertising," they lack standing under the D.C. CPPA. *Id.* at

---

Mendelson), and that some Plaintiffs (such as Mendelson) regularly received the Central Bank exchange rate. *See* Marriott Facts ¶¶ 58-59, 61, 68-69; *see generally* Marriott Counterstatement.

[4] Notably, this alleged harm is <u>not</u> the basis for Plaintiffs' Complaint. *See, e.g.*, Second Amended Complaint ¶ 87 ("As a direct and proximate result of the Defendant's violations of the CPPA, named Plaintiffs and class members <u>have suffered losses</u> . . . .").

178. Similarly here, because neither paid for their hotel stay, Plaintiffs Shaw and Mendelson

lack actual personal or economic injury and rely on their alleged right "to be free from improper

trade practices" under the D.C. CPPA, Plaintiffs' SJ Opp. at 3. That alleged injury is not enough

to maintain a claim under the D.C. CPPA. *E.g.*, *Williams*, 297 F. Supp. 2d at 177-78.[5]

> **_Hoyte._** *Hoyte*'s dismissal for lack of injury-in-fact and reaffirmation of *Williams* did not

turn on whether the plaintiff's allegations were strong or weak, as Plaintiffs incorrectly suggest.

*See* Plaintiffs' SJ Opp. at 7. Rather, *Hoyte*'s rejection of the plaintiff's D.C. CPPA claims

hinged on the fact that, as here, although the plaintiff purchased the product, he lacked any

alleged injury other than his asserted right to be free from improper trade practices: he claimed

no personal injury, no emotional harm, pain or suffering, and no economic injury. 489 F. Supp.

2d at 28-29. Contrary to Plaintiffs' description, *see* Plaintiffs' SJ Opp. at 7, the plaintiff in *Hoyte*

<u>did</u> allege injury from the defendant's alleged failure to disclose the type of oils used in the food

products purchased by the plaintiff and others. 489 F. Supp. 2d at 29. That is precisely the

injury asserted here, and it should be rejected here as it was in *Williams, Hoyte,* and *CSTI*.

> **_Wells._** Plaintiffs cite *Wells v. Allstate Ins. Co.*, 210 F.R.D. 1 (D.D.C. 2002), as supposed

support for the point that "[a]ctual economic loss is not an element necessary to proof of a

redressable claim." Plaintiffs' SJ Mem. at 3-4. However, *Wells* pertains to the interpretation of

the D.C. CPPA and does not address the threshold standing issue raised by Marriott. Moreover,

*Wells* makes clear that statutory damages are available only to those who can establish <u>some</u>

---

[5] Plaintiffs also cite *Williams*, along with *Friends of Tilden Park, Inc. v. District of Columbia*,
806 A.2d 1201 (D.C. 2002), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), as
supposedly supporting the point that Plaintiffs need not establish economic injury for standing.
*See* Plaintiffs' SJ Opp. at 1 n.2, 3 n.12. The point of these cases, however, is that some plaintiffs
– such as environmental or other non-profit associations – may establish injury-in-fact based on
concrete, actual injuries, such as the impairment of their organizational mission or activities.
These cases do not support standing where, as here, Plaintiffs have no such organizational
interests and assert economic harm. *See* Second Amended Complaint ¶ 87.

economic injury and causation, even if they "cannot prove the <u>amount</u> of pecuniary damage suffered." *Wells*, 210 F.R.D. at 9 (emphasis added). In other words, *Wells* sets forth the same standard as *Williams*, *Hoyte*, and *CSTI*: some actual injury is required.

***Snowder.*** Plaintiffs cite a recent D.C. Court of Appeals case, *Snowder v. District of Columbia*, No. 06-cv-959, 2008 D.C. App. LEXIS 261 (D.C. June 5, 2008), as support for their claim that a plaintiff can have standing under the D.C. CPPA absent any injury. Plaintiffs' SJ Opp. at 3. In *Snowder*, the Court rejected the plaintiff's claim of injury-in-fact for her common law claims based on the lack of any personal economic harm,[6] but noted in a footnote that the plaintiff could "bring a CPPA claim on behalf of the general public." 2008 D.C. App. LEXIS 261, at *28 n.10. *Snowder* does not address this Court's conclusive precedent holding that a plaintiff must establish Article III standing regardless of the D.C. CPPA's language. Moreover, *Snowder*'s footnote does not hold that being subject to a D.C. CPPA violation, without more, creates injury-in-fact and thus should not be misinterpreted as controlling on that question.[7]

***Aspinall.*** Faced with conclusive authority from this Court requiring, for standing, an injury beyond having been subject to a practice that allegedly violates the D.C. CPPA, Plaintiffs cite one Massachusetts case that (a) does not address federal court standing, and (b) directly contradicts this Court's precedent. *See* Plaintiffs' SJ Opp. at 4-5 (citing *Aspinall v. Philip Morris Cos., Inc.*, 813 N.E.2d 476, 490-92 (Mass. 2004)). *Aspinall's* discussion of injury under the Massachusetts statute is contrary to this Court's D.C. CPPA precedent. Were it true that standing could be established merely by "purchas[ing] . . . a product that was [allegedly]

---

[6] *Snowder*'s holding that a lack of economic harm eliminated the plaintiff's injury-in-fact demonstrates that Plaintiffs Shaw and Mendelson likewise lack injury-in-fact.

[7] A state statute such as the D.C. CPPA could not expand the Article III jurisdiction of a federal court. *See, e.g.*, *CSTI*, 534 F. Supp. 2d at 143 (holding that CSTI did not satisfy constitutional requirements to "pursue its DCCPPA claims in federal court").

deceptively advertised," 813 N.E.2d at 492, then the plaintiffs in *Williams*, *Hoyte*, and *CSTI* all would have had standing. This Court held that they did not, and nor do Shaw and Mendelson.[8]

**B.      Shaw, Mendelson And CSIS Employees May Not Bring D.C. CPPA Claims Because Their Stays Were For Business Purposes.**

Plaintiffs caricature Marriott's "business purposes" argument against Plaintiffs Shaw, Mendelson, and CSIS because they have no response to Marriott's actual argument: that, based on the language of the D.C. CPPA and cases interpreting that language, D.C. CPPA claims must pertain to transactions "primarily for personal, household, or family use." D.C. Code § 28-3901(a)(2). *See* Marriott SJ Mem. at 18-19. Plaintiffs cannot dispute that the language of the D.C. CPPA contains precisely this "business purposes" limitation. Instead, Plaintiffs rely on "intuit[ion]" and hypothetical examples not at issue here. Plaintiffs' SJ Mem. at 12-13.

Plaintiffs' examples are irrelevant, given the D.C. CPPA's express limitation to transactions "primarily for personal, household, or family use," D.C. Code § 28-3901(a)(2). Moreover, whether or not a plaintiff could bring suit under the D.C. CPPA for the allergic reaction or the destroyed suit described by Plaintiffs, *see* Plaintiffs' SJ Mem. at 12-3, such a plaintiff would have other common law causes of action for personal injuries or other harm suffered. Thus, Plaintiffs have not established, as a matter of policy, that the D.C. CPPA's failure to cover business-related purchases leaves consumers without relief.[9]

---

[8] Plaintiffs' standing argument concerning Shaw and Mendelson also ignores Marriott's separate argument that these Plaintiffs, plus CSIS, lack standing for the absence of injury-in-fact and/or causation, because they knew that their price quotes were subject to payment in rubles at a hotel exchange rate and thus they were not deceived. *See* Marriott SJ Mem. at 17-18 n.7, 28, 30 n.12.

[9] Plaintiffs also rely upon the circular (and inaccurate) claim that because a corporation can be a plaintiff under the D.C. CPPA, so must business transactions be covered under the D.C. CPPA. *See* Plaintiffs' SJ Opp. at 13. A corporation may not bring the D.C. CPPA claims at issue here, *see infra* Section I.C, but in any event, that separate question is not dispositive, in light of the D.C. CPPA's express exclusion of transactions that are for business purposes.

Plaintiffs do not dispute that the hotel stays of Shaw, Mendelson and CSIS employees were paid for by their respective employers. Plaintiffs' Counterstatement ¶¶ 53, 62. Nor do they dispute that these Plaintiffs' trips to Russia were for "business purposes." *Id.* Plaintiff Shaw claims, however, that his Marriott stays "were for his personal use and comfort." *Id.* ¶ 53. Contrary to Plaintiffs' claims that their rooms were "primarily for personal use of the employee, rather than for the direct use of the employer in its business," Plaintiffs' SJ Opp. at 13, the undisputed evidence demonstrates that these Plaintiffs stayed at Marriott Russia Hotels to forward their companies' business objectives. Marriott Facts ¶¶ 47, 53, 62, 66. But for the business trip, there would be no hotel stay. Indeed, Shaw testified that he frequently stayed at a particular Marriott Russia Hotel because "that is where my boss always stays." Shaw's First Interrogatory Responses, No. 15 (attached as Ex. 2 to Marriott's Mot. for Summary Judgment).

Plaintiffs' position also contradicts the statute and caselaw, which provide that purchases "made in connection" with a business do not fall under the D.C. CPPA. *Mazanderan v. Indep. Taxi Owners' Ass'n, Inc.*, 700 F. Supp. 588, 591 (D.D.C. 1988); *see, e.g., Ford v. ChartOne, Inc.*, 908 A.2d 72, 81, 82 n.10, 84 n.12 (D.C. 2006). Like the attorney's office supplies in *ChartOne* and the taxi driver's gasoline in *Mazanderan*, hotel rooms in Russia were used by Plaintiffs' employers to forward business objectives. These cases reinforce that the express statutory limitations exclude the claims of Shaw, Mendelson and CSIS.

### C.    CSIS May Not Sue Under The D.C. CPPA Because It Is A Corporation.

Plaintiffs concede CSIS is a corporation. Plaintiffs' SJ Opp. at 8. This admission is dispositive of CSIS's D.C. CPPA claims, because this Court has repeatedly held "that the CPPA was intended to protect consumer-plaintiffs only, and not corporations." *Clifton Terrace Assoc.,*

*Ltd. v. United Techs. Corp.*, 728 F. Supp. 2d 24, 34 (D.D.C. 1990), *vacated in part on other grounds*, 929 F.2d 714 (D.C. Cir. 1991); *see* Marriott SJ Mem. at 28-30.

The D.C. CPPA defines consumer to mean (1) "a person who does or would purchase, lease (from), or receive consumer goods or services" or (2) "a person who does or would provide the economic demand for a trade practice." D.C. Code § 28-3901(a)(2). Plaintiffs ignore the first half of this definition, perhaps to avoid the plain language defining "consumer goods or services" as limited to those "primarily for personal, household, or family use." *Id.* As just explained, *see supra* Section I.B, CSIS cannot satisfy the first definition of "consumer."

Instead, Plaintiffs rely completely on the second half of the statutory definition, claiming that CSIS is a consumer because it allegedly "provide[s] the economic demand for [the] trade practice" at issue. D.C. Code § 28-3901(a)(2); *see* Plaintiffs' SJ Opp. at 8-9. This argument does not help Plaintiffs, because any economic demand created by CSIS is not for a "trade practice" as defined by the CPPA. Under the D.C. CPPA, "trade practices" are limited to those involving "consumer goods or services," which, as noted, must be "primarily for personal, household, or family use" – not business use. *See* D.C. Code §§ 28-3901(a)(2), 28-3901(a)(6); *see supra* Section I.B. It is undisputed that CSIS's economic demand arises out of its corporate business in Russia, not personal, household or family matters. *See* Marriott Facts ¶¶ 65-66. Thus, by definition, CSIS can not provide demand for a "trade practice."

Ignoring these clear statutory limitations and the undisputed facts, Plaintiffs incorrectly argue that the D.C. Court of Appeals has provided a different rule that permits CSIS and other corporations to sue under the D.C. CPPA – so long as they do not resell the goods or services at issue. *See* Plaintiffs' SJ Opp. at 9-12. It is true that in *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989), the plaintiff, an individual antique purchaser, was not in the regular

business of selling antiques, and this was one of the factors that led the Court to conclude that the

D.C. CPPA applied. *Id.* at 1005. However, *Weschler* did not, as Plaintiffs suggest, create a

bright-line "resale" rule for determining which plaintiffs and transactions fall outside of the D.C.

CPPA's coverage. As the D.C. Court of Appeals subsequently clarified, "*Weschler* did not set

forth an ironclad rule" that so long as goods are not resold the purchaser is a "consumer."

*ChartOne*, 908 A.2d at 84 n.12 (citing *Mazanderan*, 700 F. Supp. at 591). Thus, "[a] purchase of

supplies or equipment for a business operation, for example, might be exempt even though such

goods would not be resold." *Id.*

Just as the D.C. CPPA did not apply to the taxi driver in *Mazanderan*, who purchased gas

(without reselling it) to advance his business; and just as the D.C. CPPA did not apply to the

plaintiff in *Clifton Terrace*, which purchased elevator services (without reselling them) to

advance its business operations; so the D.C. CPPA does not apply to CSIS, which purchased

hotel rooms in Russia (without reselling them) to advance its business operations.[10]

Finally, Plaintiffs incorrectly claim that "[t]he New Jersey consumer protection statute

with similar definitions has been interpreted as conferring consumer status on corporations."

Plaintiffs' SJ Mem. at 8 & n.37 (emphasis added). Plaintiffs seriously misrepresent the New

Jersey statute and corresponding caselaw. The New Jersey statute does not have "similar

definitions" to the D.C. CPPA. Unlike the D.C. CPPA, the New Jersey statute does <u>not</u> define

"consumer" or limit that term's meaning to "primarily for personal, household, or family use."

---

[10] Plaintiffs incorrectly describe the cases cited by Marriott. *See* Plaintiffs' SJ Opp. at 10-12. Contrary to Plaintiffs' claim, none of those cases incorporated Plaintiffs' proposed "resale" or "supply side" analysis. For instance, without citation, Plaintiffs claim that *Clifton Terrace* hinged on the plaintiff's alleged "supply side" status, *id.* at 11, but the Court never discussed whether plaintiff was on the "supply side" and could not have been more clear that it found the plaintiff's corporate status to be controlling. *See* 728 F. Supp. at 34 ("the legislative history of the CPPA, along with a consistent reading of its provisions, unequivocally indicates that the CPPA was intended to protect consumer-plaintiffs only, and not corporations").

*Compare* D.C. Code § 29-3901(a)(2), *with*, N.J. Stat. § 56:8-1. In fact, it was the absence of such express limitations on the meaning of "consumer" in the New Jersey statute that led the New Jersey courts, in the cases cited by Plaintiffs, to refuse to read into the statute a "'personal, family or household use'" limitation, which "would fly in the face of the statutory definitions of 'merchandise' and 'person.'" *Hundred East Credit Corp. v. Schuster Corp.*, 515 A.2d 246, 248-49 (N.J. Super. 1986). Because the D.C. CPPA contains the express limitation that the New Jersey courts found lacking, the D.C. CPPA does <u>not</u> apply to corporate plaintiffs or to transactions that are for business purposes, rather than for personal, household or family use.

### D. The D.C. CPPA Does Not Apply, And Cannot Apply Constitutionally, To The Claims Of Shaw And Charness.

Marriott's argument that D.C. law does not apply to the claims of Shaw and Charness is not "a thinly disguised effort to revisit its choice of law argument." Plaintiffs' SJ Opp. at 13. It is a purposeful choice of law argument based on the undisputed evidence, as the Court itself contemplated would take place after discovery. *See Shaw v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 141, 150 n.11 (D.D.C. 2007) ("discovery may uncover evidence indicating that another jurisdiction has a greater interest than the District of Columbia"). It is undisputed that Marriott is headquartered in Maryland, but has a historic connection to D.C. as well as a D.C. mailing address. Marriott Facts ¶¶ 3, 5; Plaintiffs' Counterstatement ¶¶ 3, 5. It is also undisputed that neither Shaw nor Charness has any connection to D.C. other than this lawsuit. Thus, based on the required choice of law analysis, as well as Marriott's statutory construction and constitutional arguments, neither Shaw nor Charness may bring claims under D.C. law.[11]

---

[11] Marriott has explained why D.C. law does not apply as a matter of statutory interpretation, *see* Marriott SJ Mem. at 19-21, thereby obviating the need for a choice of law or constitutional inquiry. *See Chamberlain v. Am. Honda Fin. Corp*, 931 A.2d 1018, 1024 (D.C. 2007).

**Choice of Law.** By first arguing constitutionality and then addressing choice of law, Plaintiffs conflate the two issues and incorrectly suggest that choice of law analysis merely requires that application of D.C. law be neither arbitrary nor fundamentally unfair. *See, e.g.,* Plaintiffs' SJ Mem. at 13-21, 40. However, the Constitution sets only a due process <u>floor</u> – a "'significant aggregation of contacts'" to "ensure that the choice of [D.C.] law is not arbitrary or unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). The choice of law requirements for applying D.C. law are far more stringent and require "'<u>the most significant relationship</u>'" between the claims of each Plaintiff and Washington, D.C., as opposed to some other jurisdiction. *Shaw*, 474 F. Supp. 2d at 147-48 (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)) (emphasis added). Thus, if D.C. does not have the most significant relationship to the claims of both Shaw and Charness, then the constitutional analysis is beside the point.

Plaintiffs have no response to the undisputed evidence that neither Shaw nor Charness (nor the facts underlying their claims) have any connection to the District. *See, e.g.,* Plaintiffs' Counterstatement ¶¶ 2-3, 7, 9, 27, 44, 71. Rather, Plaintiffs incorrectly suggest that all Plaintiffs' claims may be lumped together as one "controversy," and thus so long as <u>some</u> Plaintiffs have a connection to the District, D.C. law applies to <u>all</u> Plaintiffs. *See, e.g.,* Plaintiffs' SJ Opp. at 18 (claiming that the alleged "7,000 D.C. victims is more than ample to create an important state interest for the District in <u>this controversy</u>" (emphasis added)).[12] Plaintiffs' approach is not the

---

[12] This Court should not rely upon Plaintiffs' representations regarding the number of reservations traceable to D.C. residents. In class certification briefing, relying on the analysis of Timothy Brickell, Plaintiffs claimed that 8,199 unique individuals reserving at Marriott Russia Hotels had Washington, D.C. addresses. *See* Plaintiffs' Class Cert. Reply at 19 & Second Brickell Decl. (Plaintiffs' Ex. 36). In the recent Court-ordered deposition of Mr. Brickell, he conceded that his analysis significantly overstated individuals with D.C. addresses and that he never considered Plaintiffs' proposed class definition when analyzing reservations. *See*

law. As *Washkoviak* and other cases cited by Marriott (and ignored by Plaintiffs) make clear, *see*
Marriott SJ Mem. at 22 & n.9, each Plaintiff's claim must be separately assessed for choice-of-
law purposes and must have the most significant relationship to D.C. for D.C. law to apply.

Plaintiffs attempt to distract from the undisputed facts and the law by wrongly stating that
"Marriott never addresses nor does it attempt to evaluate the relative interest of the District of
Columbia in this controversy compared with that of other jurisdictions." Plaintiffs' SJ Opp. at
22. Marriott's opening summary judgment brief conducted precisely that analysis: it set forth
the potentially applicable jurisdictions, and it addressed each of the four Restatement factors
based on the undisputed facts. *See* Marriott SJ Mem. at 21-24, 30-31. As that analysis indicated,
D.C. does not have the most significant relationship to the disputes of Shaw and Charness, which
instead lies with Michigan, the United Kingdom, New York, Florida, Maryland or Delaware.
*See id.* In contrast, Plaintiffs refuse to conduct a post-discovery choice of law analysis, relying
instead (as in class certification briefing) upon the Court's choice of law analysis in its ruling on
Marriott's first motion to dismiss, *see* Plaintiffs' SJ Opp. at 22, presumably because a renewed
analysis makes clear that D.C. does not have the most significant relationship.

Ultimately, Plaintiffs' choice of law argument falls back upon their erroneous allegation
that Marriott is headquartered in Washington, D.C. Plaintiffs claim that Marriott has "produced
no such evidence" to the contrary and that there remains some doubt about whether Marriott is,
in fact, headquartered in Maryland. *Id.* Plaintiffs are wrong. First, Plaintiffs ignore that both

---

Marriott's Supplemental Brief and Reply in Support of Motion to Strike (filed June 13, 2008 and
June 30, 2008, respectively). Plaintiffs now assert – without explanation or analysis – that
"[u]pon closer examination," approximately 7,000 unique individuals have D.C. addresses and
would be part of the proposed class. Plaintiffs' SJ Opp. at 18 & n.61. This new number also
fails to consider whether the individuals have standing or fit within Plaintiffs' proposed class
definition. Nonetheless, Plaintiffs do not dispute that, by their estimate, only about 2% of the
proposed class would be traceable to a D.C. address. *See* Plaintiffs' SJ Opp. at 18; Plaintiffs'
Counterstatement ¶ 43.

Shaw and Charness have admitted that Marriott "in fact . . . is headquartered in Bethesda, Maryland." Marriott Facts ¶ 3. Plaintiffs also ignore that discovery has confirmed that Marriott is in fact headquartered in Maryland, which is its principal place of business, the location of its corporate offices, and the location of its principal web servers. *Id.* ¶¶ 3-6.[13] No Marriott corporate offices, call centers or web servers are located in D.C. *Id.* ¶¶ 6, 7, 27. Marriott does have a historical connection to D.C. and (in addition to its Maryland address) a D.C. mailing address that forwards mail directly to its Maryland headquarters. *Id.* ¶¶ 5-6. However, that is not enough for D.C. to have the "most significant relationship" to the disputes of Shaw and Charness. *See* Marriott SJ Mem. at 23-24.

Plaintiffs incorrectly claim that Marriott behaves as an ostrich and "tacitly admits" thousands of false representations concerning its location. *See* Plaintiffs' SJ Opp. at 15-16. Marriott understands that representations concerning its connection to the District are part of the factual context of this dispute, but those representations are not false and do not create the <u>most</u> significant relationship with D.C. First, although Marriott does have a D.C. mailing address – which Marriott has accurately reported on its website and in other public documents – the undisputed evidence shows that Marriott is headquartered in Maryland. *See supra.* Second, Plaintiffs continue to misrepresent Marriott's Answer to the First Amended Complaint. Marriott does not "concede[]" a "positive financial impact" from misrepresenting its corporate headquarters or "admit[]" a deception "for its own commercial advantage." Plaintiffs' SJ Opp. at 17. What Marriott said in its Answer is that perpetuating a company's culture – not the location of its headquarters – has a "positive financial impact." Marriott Answer ¶ 22. Marriott certainly

---

[13] As Marriott's Statement of Undisputed Facts demonstrates, Marriott does not rely solely on a Maryland "personal property tax bill" for these points, although Marriott did produce evidence of this publicly available fact prior to the close of discovery, *see* Marriott Facts ¶ 4 (citing Ross Aff.). *Cf.* Plaintiffs' SJ Opp. at 22; Plaintiffs' Counterstatement ¶ 4.

has not admitted and does not admit – expressly, tacitly, or otherwise – that it has made false representations or profited from making any such representations.[14]

Plaintiffs also cite this Court's earlier observation, made in the context of a motion to dismiss, that "Marriott's inconsistent positions further support the application of District of Columbia law in this case." *Shaw*, 474 F. Supp. 2d at 148 n.6. Discovery has since clarified that Marriott is not headquartered in D.C. Discovery also has clarified that Marriott has not taken inconsistent positions with respect to the location of its headquarters, but has accurately reported both the actual location of its headquarters (Maryland) and its D.C. mailing address and historical connection to D.C. *See* Marriott Facts ¶¶ 5-6. These undisputed facts show that D.C. does not have the most significant relationship to the claims of Shaw and Charness.

Finally, the two *St. Jude* decisions, *see* Plaintiffs' SJ Opp. at 18-21, do not support Plaintiffs' choice of law argument. Rather, they show why Plaintiffs' proposed class may not proceed. First, despite Plaintiffs' selective description of the first *St. Jude* decision, *see id.* at 18-19,[15] that case firmly establishes that "an individualized choice-of-law analysis must be applied to each plaintiff's claim" – both for choice of law and constitutional purposes. *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005). Second, in discussing *St. Jude*, Plaintiffs concede that Marriott – like the defendant in *St. Jude* – has identified material differences in the

---

[14] Faced with the clear evidence that Marriott is not headquartered in D.C., Plaintiffs revive their baseless claim that Marriott has failed to produce documents related to its headquarters. *See, e.g.*, Plaintiffs' SJ Mem. at 16; Plaintiffs' Counterstatement ¶¶ 4-6. As Marriott has explained, this argument is inaccurate and misleading. *See* Marriott Class Cert. Surreply at 12-13 n.13.

[15] For example, Plaintiffs claim that the Eighth Circuit "commented that the application of Minnesota law" to a proposed nationwide class "might indeed be appropriate," Plaintiffs' SJ Opp. at 18, but fail to mention that the court immediately thereafter stated that "we suspect Minnesota lacks sufficient contacts with all the parties' claims, and the different states have material variances between their consumer protection laws and Minnesota's." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005).

consumer protection laws of various jurisdictions. Plaintiffs' SJ Opp. at 20. Third, unlike the

corporation at issue in *St. Jude*, Marriott is not headquartered in D.C., D.C. is not its principal

place of business, and Marriott has no significant contacts to D.C.[16] Fourth, in its second *St.

Jude* decision, the Eighth Circuit rejected the District Court's grant of class certification. It did

not "le[ave] in tact [sic]" the district court's choice of law analysis. Plaintiffs' SJ Opp. at 21.

Rather, because "the certification order [could not] be sustained consistent with Rule 23" (based

on factual disparities among the putative class), the Eighth Circuit found "it unnecessary to

consider the merits of the district court's choice-of-law analysis or the constitutionality of

applying Minnesota law to a nationwide class in these circumstances." *In re St. Jude Med., Inc.*,

522 F.3d 836, 841 (8th Cir. 2008).[17] The Eighth Circuit's reasoning in both *St. Jude* decisions

makes clear that nationwide classes under one state's consumer protection law – such as that

proposed by Plaintiffs here – are untenable.

    **The Constitution.** The Supreme Court has held that, with respect to the claim of each

Plaintiff – including in a proposed class action – there must be significant contacts with a

jurisdiction for its law to apply constitutionally. *Shutts*, 472 U.S. at 821-22; *see, e.g.*, *St. Jude*,

425 F.3d at 1120; *Washkoviak*, 900 A.2d at 176 n.11.

    Plaintiffs mischaracterize Marriott's constitutional argument. Marriott does not argue

that the CPPA cannot apply to Shaw and Charness for lack of minimum contacts or personal

---

[16] *Cf. In re St. Jude Med., Inc.*, MDL No. 01-1396, 2006 U.S. Dist. LEXIS 74797, at *10 (D. Minn. Oct. 13, 2006) (Minnesota law could apply to the proposed nationwide class because "defendant is incorporated, headquartered, and has its principal place of business in Minnesota," "virtually all of the corporate acts implicated by each claim occurred in Minnesota," and "the Silzone heart valves were substantially created and manufactured in Minnesota").

[17] Like the Seventh Circuit in *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006), *see* Marriott SJ Mem. at 33 n.13, the Eighth Circuit in *St. Jude* did not affirm that a state's law could apply to a nationwide class, despite the existence of several factors, not present here, creating connections to the jurisdiction.

jurisdiction. *See* Plaintiffs' SJ Opp. at 13-14. *Shutts* addressed both personal jurisdiction, *see*

*Shutts*, 472 U.S. at 811-12, and choice of law, *see id.* at 821-22, and, in language ignored by

Plaintiffs, made clear that each Plaintiff's claim must have significant contacts to the jurisdiction

at issue, *see id.* (requiring a "'significant contact or significant aggregation of contacts' to the

claims asserted by each member of the plaintiff class" (emphasis added)). Marriott has shown

that the claims of neither Shaw nor Charness have that significant connection. Thus, the D.C.

CPPA cannot constitutionally apply to these claims. *See* Marriott SJ Mem. at 24-26, 30-31.

**Worldwide Class.** Plaintiffs incorrectly claim that Marriott's choice of law arguments

flout treaties by rejecting proposed class members based on their nationality. *See* Plaintiffs' SJ

Opp. at 23-25. That is not Marriott's position. Marriott has explained throughout its summary

judgment and class certification briefing that settled principles of standing, choice of law and

class certification do not permit the massive and disparate class proposed by Plaintiffs.

Plaintiffs' treaty arguments are simply beside the point. Marriott is not seeking to exclude

foreign parties on the basis of their foreign status. Rather, to the extent the claim of a putative

class member – from the U.S. or elsewhere – has an insignificant connection to D.C., that

individual cannot be part of any class, as a matter of statutory interpretation, choice-of-law and

the Constitution. *See, e.g.*, Marriott SJ Mem. at 19-26.[18] Plaintiffs' proposed worldwide class

would be unprecedented. A worldwide class has never been certified in a contested case or in a

case based upon an alleged violation of a state statute.[19]

---

[18] In addition, many members of Plaintiffs' proposed worldwide class – both U.S. and foreign –
lack standing to maintain a claim against Marriott for other reasons (*e.g.* the individual had no
contact with Marriott, knew about the hotel exchange rate or otherwise suffered no harm).

[19] The cases relied upon by Plaintiffs, *see* Plaintiffs' SJ Opp. at 25 n.84, all involved the
agreement of the parties or violations of federal securities laws.

E.    **Mendelson And CSIS Lack Standing To Make A Claim Against Marriott Because All Of Their Representations Came From Interstate, An Independent Entity.**

Mendelson and CSIS lack standing to make a claim against Marriott because their alleged harms are based on the independent actions of a third party – Interstate. *See* Marriott MSJ at 27-28, 30 n.12; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (to establish standing, the challenged action must not be "the result [of] the independent action of some third party not before the court"). Plaintiffs do not dispute that Mendelson and CSIS employees stayed only at Interstate's Marriott Franchised Hotels or that they interacted only with Interstate entities. *See* Plaintiffs' Counterstatement ¶¶ 58, 69.[20] Yet Plaintiffs incorrectly argue that Interstate is controlled in relevant respects by Marriott, and thus that Marriott is responsible for these Plaintiffs' alleged harms. Plaintiffs' argument is wrong both as a matter of fact and law.

Marriott does not "control[] the reservations made at its Franchised Hotels through its Reservation System," as Plaintiffs claim. Plaintiffs' SJ Opp. at 31. *See* Marriott SJ Mem. at 5-6, 27-28; Marriott Facts ¶¶ 10-15. Marriott's license agreements with the Marriott Franchised Hotels, *see* Plaintiffs' SJ Opp. at 28-30, do not give Marriott control over the representations of the Franchised Hotels that are at issue here: it is undisputed that the Marriott Franchised Hotels select their own room rates, select the currency in which to quote those rates, and select their own hotel exchange rates. Marriott Facts ¶¶ 13, 15, 20. Thus, by inputting this information into

---

[20] Although they do not dispute that CSIS employees stayed only at Interstate hotels during the relevant time period, Plaintiffs purport to dispute that CSIS employees always received written confirmations from Interstate informing the prospective guest that "[t]he above rate is quoted in units equal to US Dollars . . . Payment must be made at the hotel's current exchange rate in rubles only." Marriott Facts ¶ 59. Marriott has cited evidence that Mendelson received such confirmations for all of her relevant stays and since 2002, *see id.*, whereas Plaintiffs have produced no evidence indicating that other CSIS employees did not similarly receive such confirmations from Interstate. *See* Marriott Counterstatement at 32-33, 40-41.

Marriott's MARSHA system, it was the Franchised Hotels – not Marriott – that made the relevant determinations and representations concerning price and exchange rate.[21]

Not only were the Marriott Franchised Hotels (not Marriott) responsible for setting those hotels' prices and exchange rates, but many Plaintiffs staying at Marriott Franchised Hotels – such as Mendelson and CSIS – interacted only with Interstate in the reservation process and received information from Interstate that was supplemental to or different from the information available in MARSHA. *See* Marriott Facts ¶¶ 14, 21, 25, 30, 58-60. Indeed, Plaintiffs' argument that Mendelson and CSIS employees should recover for their stays at Marriott Franchised Hotels ignores Plaintiffs' own class definition, under which "the key factor is whether the guest received a written price confirmation <u>from Marriott</u>." Plaintiffs' Class Cert. Reply at 9 (emphasis added). It is undisputed that Mendelson and CSIS employees only received such confirmations from Interstate, not Marriott. *See* Plaintiffs' Counterstatement ¶¶ 58, 69; *supra* n.20. Thus, the undisputed evidence makes clear that – contrary to Plaintiffs' claims – the Marriott Franchised Hotels and Interstate are independent actors in all relevant respects.

As a matter of law, Plaintiffs again conflate standing with liability, arguing that under the D.C. CPPA, Marriott can be liable whether it serves guests of Marriott Franchised Hotels either directly or indirectly. Plaintiffs' SJ Opp. at 30. However, Marriott's argument turns on *Lujan* and other standing cases and does not reach the merits of the D.C. CPPA. *See* Marriott SJ Mem. at 27. Even so, Plaintiffs' D.C. CPPA argument is wrong and the Maryland case cited by Plaintiffs does not support their position. The D.C. CPPA does not authorize vicarious liability

---

[21] Plaintiffs emphasize one license agreement's provision that the Franchised Hotel may not charge "'a rate higher than the rate specified to the guest by the Reservation System office at the time the guest's reservation was made,'" Plaintiffs' SJ Opp. at 29-30. This emphasis is misplaced. This provision does not give Marriott control over the prices or exchange rates quoted by Marriott Franchised Hotels, or those hotels' representations to prospective guests.

against a party absent a misrepresentation or other prohibited act committed by that party, *see, e.g.*, D.C. Code § 28-3901(a)(3). As explained above, it was the Franchised Hotels – not Marriott – that set the prices and exchange rates applicable to Mendelson and CSIS. *State v. Cottman Transmissions Sys., Inc.*, 587 A.2d 1190 (Md. App. 1991), addresses the materially different situation of a franchisor's liability for the actions of a franchisee, where – unlike here – the franchisor originated and controlled the allegedly deceptive practices. *See id.* at 1197-98 (explaining that a franchisor can be liable by exercising a "significant  level of control over the day-to-day performance of the work, the manner in which it was to be done, <u>and the way the deception was to be practiced upon the public</u>" (emphasis in original)). As explained, Marriott did not control the Marriott Franchised Hotels' price and exchange rate representations.

## II.    PLAINTIFFS IGNORE THE HIGHLY RELEVANT *SHAW V. HYATT* AND *BYKOV V. RADISSON* DECISIONS, IN WHICH THE SEVENTH AND EIGHTH CIRCUITS REJECTED PLAINTIFFS' CLAIMS HERE.

Plaintiffs completely ignore Marriott's arguments concerning two materially identical cases brought against other international hospitality companies by the same attorneys and one of the same Plaintiffs.[22] *See* Marriott SJ Mem. at 32-38. These cases confirm that Marriott did not concoct a "scam," as Plaintiffs have claimed in their affirmative summary judgment briefing, but rather that Marriott (and its independent franchisees) followed standard market practice in Russia, which was (during the time at issue in this case) to price in U.S. dollars and receive payment in rubles, subject to a hotel exchange rate. *See* Marriott Facts ¶¶ 17-19; *Shaw*, 461 F.3d at 900; *Bykov*, 2007 U.S. App. LEXIS 3276, at *2. Moreover, although these cases are not

---

[22] *Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899 (7th Cir. 2006) (affirming dismissal in *Shaw v. Hyatt Int'l Corp.*, No. 05-5022, 2005 U.S. Dist. LEXIS 28250 (N.D. Ill. Nov. 15, 2005)); *Bykov v. Radisson Hotels Int'l, Inc.*, No. 06-2102, 2007 U.S. App. LEXIS 3276 (8th Cir. Feb. 12, 2007) (affirming grant of summary judgment in *Bykov v. Radisson Hotels Int'l, Inc.*, No. 05-1280, 2006 U.S. Dist. LEXIS 12279 (D. Minn. Mar. 22, 2006)).

identical to the present case because they were brought under different states' laws, the Seventh

and Eighth Circuit decisions offer highly persuasive reasoning on several points at issue here:

- Because Plaintiffs' claim is, in substance, for breach of contract, it is not actionable either as unjust enrichment or under the D.C. CPPA. *See* Marriott SJ Mem. at 34-35, 38.

- Because some Plaintiffs (Shaw, Mendelson) were reimbursed for their stays by their employer, they suffered no injury and lack standing. *See id.* at 37-38.

- Because nearly all Plaintiffs (Shaw, Mendelson, CSIS) were aware of hotel exchange rates or did not interact with Marriott, they lack causation and thus standing. *See id.*

## III.    ASSUMING A LIABILITY INQUIRY, MARRIOTT IS ENTITLED TO SUMMARY JUDGMENT ON NEARLY ALL OF PLAINTIFFS' CLAIMS.

### A.    Marriott Is Entitled To Summary Judgment Based On Claims Postdating Marriott's Provision Of Additional Information In 2005.

Plaintiffs concede that as of mid-2005, all individuals reserving through Marriott-

controlled reservation channels were informed that the U.S. dollar price quote was subject to

payment in rubles at the hotels' exchange rates. *See* Marriott SJ Mem. at 39-40; Plaintiffs'

Counterstatement ¶¶ 34-39. Despite that Plaintiffs have claimed that this is the key information

lacking, *see* Second Amended Complaint ¶ 4, Plaintiffs now argue that Marriott should have

provided <u>more</u> information. *See* Plaintiffs' SJ Opp. at 25-28. Plaintiffs complain that Marriott's

2005 information did not offer a specific hotel exchange rate at the time of reservation, and thus

prospective guests "still could not determine from the information provided what the price to be

paid for the reserved room would be at the time of check-out." Plaintiffs' SJ Opp. at 26.[23]

Plaintiffs' critique is premised on an unrealistic expectation that Marriott predict the

future of worldwide currency values in order to assign an exchange rate to a written confirmation

for future guest stays, sometimes months away. *See, e.g.*, Marriott SJ Opp. at 31-33; Marriott

---

[23] Plaintiffs improperly minimize the critical undisputed fact that hotel daily exchange rates were conspicuously displayed at the Marriott Russia Hotels during the entire time period at issue, and that the hotels always relayed that rate to guests on property and guests receiving bills at the time of check-out. *Id.* ¶¶ 18, 33; Plaintiffs' Exs. 43, 44, 77, 56, 74-79, 81, 83, 85.

Counterstatement ¶¶ 45, 49-50. Moreover, Plaintiffs' critique overlooks the relevant standard

under the D.C. CPPA – whether material representations or omissions were deceptive or were

intended to deceive. *See* D.C. Code §§ 28-3904(e), (f), (h).[24] Even assuming that unknown,

future exchange rates are material to a consumer's hotel choice, there is no dispute that, as of

mid-2005, no Marriott guest could claim ignorance of Marriott's "actual billing practices,"

Plaintiffs' SJ Opp. at 26, because Marriott informed guests of those billing practices.[25]

Plaintiffs also complain that Marriott's 2005 information "makes no reference to

'currency units,'" *id.* at 26-27, but that information would have been immaterial. It is undisputed

that the number of currency units charged always equaled the number of U.S. dollars quoted, *see*

Marriott Facts ¶ 18; Plaintiffs' Counterstatement ¶ 18. If anything, Plaintiffs' "currency unit"

argument based on the statements of Marriott's expert, *see* Plaintiffs' SJ Opp. at 27, is helpful to

Marriott. Assuming the applicability of the cited provision of Russian law, after 2005, Marriott

and prospective guests clearly and lawfully set forth their own exchange rate arrangement.

**B.     No Plaintiff May Recover For More Than One Stay.**

Plaintiffs misunderstand Marriott's repeat stay argument. Marriott does not argue that

"each <u>type</u> of deceptive trade practice is a single violation no matter how many times it is

repeated <u>with different consumers</u>." Plaintiffs' SJ Opp. at 31 (second emphasis added). Marriott

argues that, under both standing and D.C. CPPA analyses, no reasonable repeat customer could

---

[24] Marriott relies not only on *Alicke v. MCI Communications Corp.*, 111 F.3d 909 (D.C. Cir. 1997), as Plaintiffs claim, but also on other substantial authorities. *See* Marriott SJ Opp. at 34-42.

[25] As Marriott has explained, there was no deception even absent this additional information. *See* Marriott SJ Opp. at 34-42. However, due to material disputes of fact, Marriott does not move for summary judgment on the pre-2005 claims, which present jury questions, including: (a) the definition of a reasonable consumer of Marriott Russia Hotels; (b) whether unknown, future exchange rates are material to a reasonable consumer; (c) whether a reasonable consumer would have been deceived and (d) whether Marriott intended to deceive. *See id.*

have been deceived after the first stay.  A repeat customer would have known that she would pay

in rubles, calculated using a hotel exchange rate.  *See* Marriott SJ Mem. at 41.  All of the cases

cited by Plaintiffs pertain to the inapposite context of repeat offenses toward different alleged

victims.  *See* Plaintiffs' SJ Opp. at 31-35.  They have no bearing on the question presented by

Marriott's repeat-stay argument:  whether one plaintiff can recover multiple times where there

was no alleged or arguable additional deception after the first transaction.[26]

### C.    Marriott Is Entitled To Summary Judgment On Plaintiffs' "Headquarters Misrepresentation" Claims.

Marriott has not misrepresented the location of its headquarters, has not profited from any

such misrepresentation, and has not "been untruthful, consistently and pervasively, in all of its

public statements and regulatory filings," Plaintiffs' SJ Opp. at 38.  *See supra* Section I.D.   To

the contrary, Marriott has a historic connection to D.C. and a D.C. mailing address, which it has

accurately reported, notwithstanding that its headquarters and principal place of business are

located in Bethesda, Maryland.  *See id.*

Plaintiffs' "headquarters misrepresentation" claims under D.C. Code Sections 28-3904(a)

and (t) fail as a matter of law, for at least two reasons.  First, no Plaintiff has standing to bring

these claims, not only for the reasons discussed above, *see supra* Section I, but also for the more

specific reason that no Plaintiff received any representations concerning Marriott's headquarters

when reserving rooms at the Marriott Russia Hotels.  Marriott SJ Mem. at 42; Facts ¶ 8.

Plaintiffs do not dispute this critical fact.  *See* Plaintiffs' Counterstatement ¶ 8.  Second, as a

matter of law, the location of Marriott's headquarters is immaterial to a reasonable consumer.

*See* Marriott SJ Mem. at 42; *see generally* Marriott SJ Opp. at 36-40.  Plaintiffs' undisputed

---

[26] Not only does the statute itself support this argument, but so do all of the other D.C. CPPA liability authorities cited by Marriott.  *See, e.g.*, Marriott SJ Opp. at 33-42.

actual experiences make this point clear: not only did no Plaintiff receive any representations concerning Marriott's headquarters when reserving a room, but no Plaintiff's decision to stay at a Marriott Russia Hotel would have been affected by the location of Marriott's headquarters. *See* Marriott Facts ¶ 8. For these reasons, and in light of Plaintiffs' concession that there is no statutory or common law precedent for their proposed "headquarters misrepresentation" claims, *see* Plaintiffs' SJ Opp. at 37, Marriott is entitled to summary judgment.

## IV.    PLAINTIFFS' LATEST ATTEMPT TO REDEFINE THE CLASS SHOULD BE REJECTED.

As Marriott has explained, the Court need not reach class certification issues if summary judgment is resolved in Marriott's favor. *See* Marriott SJ Mem. at 15, 44. Plaintiffs seize upon the fact that class certification issues need not be addressed at summary judgment to make the erroneous and transparent claim that Marriott's briefing provides Plaintiffs with a reason to revise their class definition on summary judgment. Plaintiffs' SJ Opp. at 38 (claiming that Marriott's briefing "seems to intrude upon issues related to both remedy and class certification," which, according to Plaintiffs, have "now been joined on Plaintiffs' merits claims"). Plaintiffs cite "emerg[ing]" issues as part of their strained explanation of the need to change their class definition (yet again). *Id.* There are no emerging issues. The only "issue" is Plaintiffs' recognition that Marriott's briefing identifies serious flaws with Plaintiffs' claims and proposed class. It is Plaintiffs – not Marriott – who seek to improperly insert class certification issues into the summary judgment briefing. Marriott was forced to respond to some of these issues on reply, but these attempts should be rejected.[27] Plaintiffs should be held to their previously stated class

---

[27] Plaintiffs urge moving the focus of this dispute away from misrepresentation and omission (D.C. Code Sections 28-3904(e) and (f)) and toward offering services without the intent to sell as offered (Section 28-3904(h)). *See* Plaintiffs' SJ Mem. at 38-39. Such a shift is unwarranted and Plaintiffs have cited no support for this suggestion. In any event, Section 28-3904(h) provides a

definition, in which "the key factor is whether the guest received a written price confirmation from Marriott." Plaintiffs' Class Cert. Reply at 9.[28]

## CONCLUSION

For the foregoing reasons, and all others apparent to the Court, Marriott respectfully requests that the Court grant summary judgment for Marriott in full.

Dated: July 2, 2008                                     Respectfully submitted,

                                                 /s/ Joel Dewey
                                                 Joel Dewey (Bar No. 358175)
                                                 Holly Drumheller Butler (Bar No. 459681)
                                                 Sonia Cho (Bar No. MD26995)
                                                 Jennifer Skaggs (Bar No. 500014)
                                                 DLA Piper US LLP
                                                 6225 Smith Avenue
                                                 Baltimore, Maryland 21209
                                                 410-580-3000
                                                 410-580-3001 (facsimile)

                                                 *Attorneys for Defendant*
                                                 *Marriott International, Inc.*

---

greater burden because Plaintiffs must establish Marriott's intent to deceive, as well as that a reasonable customer would be deceived and injured. *See* Marriott SJ Opp. at 40-42.

[28] To justify their latest attempt to redefine the class, Plaintiffs make inflammatory and unsupported remarks about Marriott's discovery efforts. *See* Plaintiffs' SJ Opp. at 39-40. Without basis, Plaintiffs claim they are "quite certain" and "confident" that Marriott has made an "incomplete" production and has not produced "good data." *Id.* These allegations are baseless. In addition, contrary to Plaintiffs' assertions, *see id.*, Marriott produced data from its Property Management System ("PMS") and Marriott Reservation Data Warehouse ("MRDW"), from which total cancellations could have been determined for the Marriott Managed Hotels. Marriott also informed Plaintiffs that Marriott does not have control over or access to the cancellation data for the non-party Marriott Franchised Hotels, and Marriott agreed to extend the discovery period to permit Plaintiffs to obtain discovery from the Franchised Hotels. *See* Marriott Reply in Support of Motion for Leave to File Surreply in Opposition to Class Certification, at n.1.