# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 05-1138 (GK) |
| v. | ) Status Conference July 7, 2008 |
| | ) |
| | ) |
| MARRIOTT INTERNATIONAL, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES
## IN REPLY TO MARRIOTT'S OPPOSITION TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Mark W. Borghesani, D.C. Bar # 426745
c/o THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W.
Washington, D.C., 20007
*Of Counsel*

Paul D. Cullen, Sr., D.C. Bar # 100230
Joyce E. Mayers, D.C. Bar # 268227
Randall S. Herrick-Stare, D.C. Bar # 482752
Amy M. Lloyd, D.C. Bar # 975887
THE CULLEN LAW FIRM, PLLC
1101 30th Street, N.W.
Suite 300
Washington, D.C., 20007
*Counsel for Plaintiffs*

### TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

   I.    There Are No Issues of Material Fact That Would Preclude Summary
       Judgment For Plaintiffs On The Issue Of Liability. . . . . . . . . . . . . . . . . . . . . 2

       A.    Marriott's Price Representations Are Objectively False . . . . . . . . . . 2

       B.    Marriott's Liability Is Determined By Its Conduct During The
            Reservation Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Marriott's Reservation System . . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.    Marriott Provides Confirmations Through Travel
                Agents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

            3.    Marriott's Reservation System Does Not Quote In Units. . . . . 8

   II.   There Are No Material Issues For Trial On Plaintiffs' Claims Under The
        CPPA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

   III.   Plaintiffs Have Standing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       A.    CSIS Is A Consumer Under D.C. CCPA § 28-3904(a)(1) and (2). . . 16

       B.    Plaintiffs Shaw and Mendelson Have Experienced
            Injury-in-Fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.    There Is No Statutory Basis To Exclude Shaw And Mendelson's
            Consumer Transactions Where They Are Reimbursed By Their
            Employers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       D.    Plaintiffs' Claims Should Be Adjudicated Under D.C. Law. . . . . . . 19

   IV.   Decisions Reached Under Illinois and Minnesota Law Have No Precedential
        Value In Interpreting Materially Different Provisions In D.C. Law. . . . . . . 21

   V.   Guests Who Do Not Satisfy The Class Definition . . . . . . . . . . . . . . . . . . . . 24

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

## TABLE OF AUTHORITIES

### CASES

*Alicke v. MCI Communications*,
111 F.3d 909 (D.C. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*\*Allstate Insurance Company v. Hague*,
472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*\*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Aspinall v. Phillip Morris Companies*,
813 N.E.2d 476 (Mass. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ass'n of Data Processing Serv. Orgs. v. Camp*,
397 U.S. 150 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Atwater v. District of Columbia Dept. Of Consumer and Reg. Affairs*,
566 A.2d 462 (D.C. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Bykov v. Radisson Hotels International*,
No. 06-2102, 2006 WL 752942, (8th Cir. Feb. 12, 2006) . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*\*Byrd v. Jackson*,
902 A.2d 778 (D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*\*Calvetti v. Antcliff*,
346 F.Supp.2d 92 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Cinderella Career and Finishing Schools, Inc. v. F.T.C.*,
425 F.2d 583 (D.C. Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*\*In re Cliffdale Assoc., Inc.*,
103 F.T.C. 110 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*\*Crescent Publishing Group*,
129 F.Supp.2d 311 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*\* The Table of Authorities contains asterisks identifying the cases upon which the
Plaintiffs primarily rely*

*Davis v. Powertel, Inc.,*
776 S.2d 971 (Fla. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*District Cablevision Limited Partnership v. Bassin,*
828 A.2d 714 (D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*The Dreier Co., Inc. v. Unitronix Corp.,*
527 A.2d 875 (N.J. Super A.D. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ford v. ChartOne, Inc.,*
908 A.2d 72  (D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Fort Lincoln Civic Association v. Fort Lincoln New Town Corporation,*
944 A.2d 1055 (D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Freeland v. Iridium World Communications,*
545 F.Supp.2d 59 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*F.T.C. v. Wilcox,*
926 F.Supp. 1091 (S.D. Fla. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Giant Food, Inc. v. F.T.C.,*
322 F.2d 977 (D.C. Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Green v. United States,*
312 A.2d 788 (D.C. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hoyte v. Yum Brands, Inc.,*
489 F.Supp.2d 24 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Hundred East Credit Corporation v. Eric Schuster Corporation,*
515 A.2d 246 (N.J. Super A.D. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*International Brotherhood of Teamsters v. TSA,*
429 F.3d 1130 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Kraft, Inc. v. FTC,*
970 F.2d 311 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Medina v. Am. Airlines, Inc.,*
No. 02-22133, 2005 U.S. Dist. LEXIS 18916 (S.D.Fla. July 5, 2005) . . . . . . . . . . . . . . . . . . . 21

*Miami Building and Construction Trades Council AFL/CIO v. Secretary of Defense,*
493 F.3d 201 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*In re Newbridge Networks Security Litigation,*
926 F.Supp. 1163 (D.D.C. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*\*Novartis v. Federal Trade Commission,*
223 F.3d 783 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Oconus DOD Employee Rotation Action Group v. Cohen,*
140 F.Supp.2d 37 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Oglala Sioux Tribe v. U.S. Army Corps of Engineers,*
537 F. Supp. 2d 161 (D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Osbourne v. Capital City Mortgage Co.,*
727 A.2d 322 (D.C. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Rainbow/Push Coal. v. FCC,*
396 F.3d 1235 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shaw v. Hyatt International,*
461 F.3d 899 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Shaw v. Marriott International,*
474 F. Supp.2d 141 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 20, 21

*\*Snowder v. District of Columbia,*
No. 06-cv-959, 2008 D.C. App. LEXIS 261  (D.C. June 5, 2008). . . . . . . . . . . . . . . . . . . . . . . 18

*\*In re Thompson Medical Co.,*
104 F.T.C. 648 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Thompson Medical Co. v. FTC,*
791 F.2d 189 (D.C. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*\*Warth v. Seldin,*
422 U.S. 490 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*\*Adam A. Wechsler & Son, Inc. v. Klank,*
561 A.2d 1003 (D.C. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wells v. Allstate Insurance,*
210 F.R.D. 1 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18, 23

*Williams v. Purdue Pharma*
297 F. Supp.2d 171 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**RULES**
Fed.R.Civ.P. 23(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**REGULATIONS**
D.C. CPPA § 28-3901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

D.C. CPPA § 28-3901(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3901(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3901(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3901(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3901(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.C. CPPA § 28-3901(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.C. CPPA § 28-3901(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

D.C. CPPA § 28-3904 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 23

D.C. CPPA § 28-3904(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3904(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

D.C. CPPA § 28-3904(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

D.C. CPPA § 28-3904(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

D.C. CPPA § 28-3904(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

D.C. CPPA § 28-3905(k)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## SUMMARY OF ARGUMENT

Plaintiffs' claims address Marriott's liability for its conduct in securing guest reservations for its affiliated hotel properties in Russia. Marriott's liability is established on the basis of its conduct in securing guest reservations. Activities that take place during and following check-in at Marriott's Russia Hotels are relevant only to show the gap between Marriott's representations during the reservation process and the calculation of the actual per night charge for the room.

The fact that Marriott's USD denominated room confirmations were objectively false may be demonstrated with mathematical certainty, presenting no issues for trial. Marriott failed to disclose to guests that its USD price quote was meaningless and that the hotel in Russia could charge any price it wanted to simply by unilaterally adjusting its internal Units to RUR exchange rate. Marriott never provided guests with enough information to determine what their actual room charges would be. The information it did provide - USD price quotes - was demonstrably false. See Plaintiffs' opening brief. Doc. 109 at 25-29 of 42. The materiality of these facts is beyond dispute as is Marriott's failure to disclose information necessary to calculate the actual charge through its Reservations System. No issues remain that require a trial.

There is no question that Marriott knew all along that guests would have to pay between 2.6 and 15.5 percent more than the confirmed USD denominated room rates to buy enough RUR to pay their bills at check-out. PSMF No. 172. Marriott received hundreds of guest complaints directed at this practice. PSMF No. 170-171. Its executives discussed the ethics of this practice (PSMF No. 170-171), the "exchange rate" profits being made (PSMF No. 174-175) as well as the potential problems if the scam were exposed. PSMF No. 175. The evidence here is one-sided – Marriott makes no claim of ignorance. There is no evidence that Marriott ever had an

intent to sell hotel rooms in Russia at the rate offered in USD.  Marriott raised its prices in USD just before shifting to price quotes to RUR so as not to lose revenue.  PSMF No. 178.  It now asks for a free get-out-of-jail pass because it claims everyone else was doing it and it did not make that much money on its scam.[1]  The Court should look with disfavor on this request.

Plaintiffs have replied to Marriott's Statement of Controverted Facts – a document obviously intended to obfuscate and confuse rather than aid in the narrowing of the issues.  Plaintiffs' Reply is incorporated herein by reference.  Our analysis shows that Marriott has provided no evidentiary basis for controverting any of Plaintiffs' material facts.

**ARGUMENT**

**I.    There Are No Issues of Material Fact That Would Preclude Summary Judgment For Plaintiffs On The Issue Of Liability.**

**A.    Marriott's Price Representations Are Objectively False**

Marriott admits that its practice during the period in dispute was to quote room rates in USD while guests could only pay for their *rooms* in RUR.[2]  It is uncontroverted that each of the named Plaintiffs paid their final hotel bills in RUR calculated using a Units to RUR conversion at the hotel's exchange rate.[3]  These hotel exchange rates provided a markup of 2.6 to 15.5 percent for the final bill in RUR over what would be paid in RUR at the Central Bank exchange

---

[1] Marriott's Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment on Liability ("Marriott Opp. Memo")(Doc. 116 at 41).

[2] Marriott's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. 75-2 at 17-18 of 60).  See also Garcia Affidavit, Ex. 4 to Marriott's Opposition to Plaintiffs' Motion for Class Certification at 10-12, and Marriott's Response to Plaintiffs' Interrogatory No. 2 (Plaintiffs' Exhibit 7).

[3] See Marriott's Responses to PSMF Nos. 60, 75, 84, 101, 104, 108, 115, 118, 122, 125, 129, 136, 143, 146, 150, 157, 160, and 163.

rate. Transactions by individual Plaintiffs demonstrate with mathematical certainty that

Marriott's USD denominated price quotes were objectively false. Mr. Shaw's experience is

typical. Marriott does not contest the fact that Shaw received a reservation confirmation of $425

USD per day for the Renaissance Moscow Hotel (PSMF No. 53), that no disclosure was made

that the final bill would be in RUR in an amount greater than the confirmed price (PSMF No.

54), that the confirmation made no reference to Units, UNT or Currency Units (PSMF No. 55)

and that Shaw's registration card showed a room rate of 425 Units (PSMF No. 56), but made no

reference to "exchange rate" or final payment in RUR. PSMF No. 57. Shaw's final bill at

check-out showed a room charge of 425.00 UNT as well as the statement: "Exchange Rate 1

UNIT = 32.00 RUR." PSMF No. 59, 60. Shaw's room charge was 13,600 RUR (425 Units x 32

RUR per unit). Marriott controverts this calculation in its response to PSMF No. 60:

> **Response:** Controverted as misleading, because there was no room charge in
> rubles. Rather, the final amount of the bill in Units was converted into a cost in
> rubles using the hotel exchange rate.

Marriott's suggestion that there was no room charge in RUR because the *total bill* was

converted from Units to RUR rather than the individual items that made up the bill is something

less than an artful dodge. Marriott cites no evidence to support the conclusion that individual

items in the final bill were converted into RUR at rates that differed from the hotel's exchange

rate - here 32 RUR per Unit. Further, Marriott has previously admitted that the *room charges*

themselves are converted from Units to RUR.[4]

---

[4] Marriott's Memorandum in Opposition to Plaintiffs' Motion for Class Certification
(Doc. 75-2 at 17-18 of 60). See also Garcia Affidavit, Exhibit 4 to Marriott's Opposition to
Plaintiffs' Motion for Class Certification at 11-12, and Marriott's Response to Plaintiffs'
Interrogatory No. 2 (Plaintiffs' Exhibit 7).

It is mathematically certain that it would take Mr. Shaw $490.00 to buy enough RUR at the prevailing Central Bank exchange rate to pay Marriott's final bill.  (PSMF No. 62).  $490.00 is $65.00 or 15 percent more than the original $425.00 price confirmed by Marriott.  (PSMF No. 62, 63).  Marriott's statement controverting this calculation is astounding:

> **Response:** Controverted.  Mr. Shaw's final bill was converted from U.S. dollars to rubles for purposes of payment, but he was not charged more U.S. dollars than quoted for his room.  In addition, the calculation yields a result of 15.29%, not 15.30%.

The proposition that Shaw was not charged more in USD than what he was quoted by Marriott ignores the reality of the transaction.  Shaw had to spend USD to buy RUR in order to pay the bill.  In this case, he had to spend about 15.29 percent more in USD than his confirmed USD rate in order to acquire enough RUR to pay for his room.

Marriott also challenges Plaintiffs' use of the official Central Bank exchange rate to determine the actual cost of the room in USD.  Marriott states merely that Plaintiffs' calculation "incorrectly suggests that Mr. Shaw could have acquired rubles in Russia at the Central Bank Rate by presenting U.S. dollars."  Marriott's Statement of Controverted Facts, No. 62.  Marriott offers no evidence as to why such a currency exchange transaction could not have taken place.  It is mathematically certain that Marriott's price quote of $425 misrepresented the cost to Shaw of his room charge at the Renaissance Moscow hotel.  The same situation is true for all those who reserved rooms in USD through Marriott's Reservation System and paid the hotel in RUR calculated at the hotel exchange rate.

**B.      Marriott's Liability Is Determined By Its Conduct During The Reservation Process**.

**1.      Marriott's Reservation System**

The term Reservation System is used by Marriott in its franchise agreements to identify its worldwide reservation system.  Plaintiffs' Resubmitted Exhibit 2 at No. 7.1.  Marriott admits that the centerpiece for Marriott's Reservation System is a database called MARSHA, which stands for "Marriott's Automated Reservation System for Hotel Accommodations."  Marriott Response to PSMF No. 11; Facts 20.  An interesting diagram showing MARSHA at the center of Marriott's Reservation System may be found in Plaintiffs' Exhibit 29 at Bates No. 11M-01211.  The Plaintiffs' use the term "Reservation System" precisely as Marriott does and their references to that system were not intended to, nor do they, incorporate the systems and actions of third parties not controlled by Marriott.  The record establishes that travel agents use Marriott's Reservation System, but are not part of the system itself.

All of Marriott's Russian Hotels (both managed and franchised) are required to participate in Marriott's Reservation System.  The MARSHA database included room rates in USD for all Marriott Russian Hotels during the recovery period at issue in this litigation.  PSMF No. 14.  Marriott's three franchised hotels established their own USD denominated room prices (PSMF No. 20) which are included in the MARSHA database along with the USD denominated room prices for Marriott's four managed hotels.  MARSHA data never referred to prices in units or currency units.  PSMF No. 17.

Room prices stored in MARSHA are accessible to the public and travel agents through Marriott's website (www.Marriott.com), to travel agents and others professionals in the

5

hospitality industry through a special internet connected network called GDS (Marriott's Response to PSMF No. 5), and to operators at Marriott's toll-free telephone system.  PSMF No. 21. Thus, during the recovery period at issue here, Marriott offered rooms at each of its Russian Hotels at prices quoted in USD.  Guests accepted those offers directly (or indirectly through travel agents) and provided their names and credit card information to Marriott.  Exhibit 31 at 7M-00035; Exhibit 32 at 7M-00346.  Confirmation numbers were issued by Marriott for each guest who booked a room and those confirmation numbers were recorded by Marriott in MARSHA and stored permanently in the MRDW database.  PSMF No. 18.  Marriott produced over 400,000 records from MARSHA/MRDW.  Plaintiffs' Exhibit 41.  Each record shows a room price in USD and each has its own confirmation number.  No records reference payment in RUR, nor are there any references to units or currency units.  PSMF No. 17.

Marriott argues that the exchange rate mechanism in Russia was "fully revealed to customers at check-in and prior to payment." Marriott's Opposition Brief (Doc. 116 at 42 of 52). But Plaintiffs' claims are based upon Marriott's misrepresentations and admissions of material facts during the reservation process, not on what occurs in Russia.  This court recognized this in its prior opinion denying Marriott's first motion to dismiss.[5]  There are no material issues of fact with respect to Marriott's Reservation System.  References to events that take place outside of its Reservation System are simply immaterial.

### 2. Marriott Provides Confirmations Through Travel Agents.

Marriott contends that it communicates confirmations only to a relatively few guests for

---

[5] *Shaw v. Marriott*, 474 F. Supp.2d 141, 146 (D.D.C. 2007)(Plaintiffs claims based upon the representations made during the reservation process not the checkout transaction).

whom it has an email address or fax number.[6]  Marriott states that it has made no

misrepresentations to guests who received confirmations through travel agents.  Marriott's

argument cannot stand serious analysis.  Marriott does not contest the fact that it issues

confirmation numbers to travel agents (See Marriott's Response to PSMF No. 29) or that travel

agents receive rate and price information from MARSHA.  See Marriott's Response to PSMF

No. 27.  Marriott records guest names, addresses and credit card numbers provided by travel

agents into the MARSHA database.[7]

     Travel agents merely facilitate communications between Marriott and its guests.

Marriott then issues, through MARSHA, a confirmation number identifying the guest,[8] room rate

and dates of the stay.  Marriott's Response to PSMF No. 29.  If the guest becomes a no-show

without canceling the reservation, Marriott's policy is to charge his credit card.  Plaintiffs's

Exhibit 95 at 7-8.  Thus, there is a direct relationship between Marriott and those who have

booked reservations.

     Marriott tries to obscure this simple issue by observing that travel agents look at different

computer screens (layouts) of the MARSHA database when they acquire price quotes over the

internet, or that they may have had different conversations with Marriott's toll-free operators

when they obtained price quotes.  Marriott's Response to PSMF No. 26.  The only real question,

of course, is whether travel agents obtained USD denominated price quotes through MARSHA,

---

[6] Marriott's Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Doc. 110-2 at ¶ 31.

[7] Exhibit 31 at 7M-00035; Exhibit 32 at 7M-00346.

[8] See Declaration of Karen Shimabukuro.

or from telephone operators accessing MARSHA, not what the computer display showing the price quote looked like.  Marriott tries to obscure the issue further by noting that it has no control over how travel agents communicate its price quotes to guests.  Marriott says that travel agents sometimes provide different or additional information to their clients than what was available to from Marriott.  But there is not a hint anywhere in the record that travel agents transmit *rates* to their clients that had not been approved by Marriott.  If that were allowed to happen, Marriott's Reservation System would be in a state of chaos.  There is no evidence of such chaos.  Even if there were no direct relationship between Marriott and guests reserving through travel agents, the D.C. CPPA would recognize an indirect relationship covered by its provisions.  Providing a guest confirmation to a travel agent may be viewed as part of an indirect sale to the agent's client (the guest) under D.C. CPPA § 28-3901(a)(3), which defines a "merchant" like Marriott as any person who would sell "directly or indirectly" consumer goods or services.  Such communications would also be considered indirect sales to guests under D.C. CPPA § 28-3901(a)(6) which defines "trade practice" as any act to offer for sale "directly or indirectly" consumer goods or services.  The fact that Marriott provides USD room rates and confirmation numbers to travel agents representing guests rather than directly to the guests is of no legal consequence.  Marriott communicates with guests through travel agents for its convenience and it cannot disavow those communications here.

### 3. Marriott's Reservation System Does Not Quote In Units.

Marriott's response to Interrogatory No. 2 states that room rates at its Russia hotels were quoted in "Units" as well as USD.  Plaintiffs's Exhibit 41.  There is no evidence to support a finding that Marriott's Reservation System provided quotations in Units.

8

- • The MARSHA database never referred to Units or Currency Units.  PSMF No. 17.

- • Prior to August 2005, Marriott Reservation System made no reference to payment in RUR, let alone Currency Units.  PSMF Nos. 17, 38.

- • Marriott's expanded disclosure statement that began in May or August 2005 in response to this litigation made no reference to Units or Currency Units.  PSMF No. 48.

Marriott describes signs posted at its Russia hotels informing the guest that charges will be in Units subject to conversion into RUR at the hotels exchange rate.  Marriott also points to references to Units or Currency Units on guest registration cards and final bills issued at the time of checkout.[9]  Such references are not part of Marriott's Reservation System.  Even if they were, they simply come too little and too late.

It is Marriott's sum-certain USD denominated price quote during the reservation process that constitutes the misrepresentation.  Guests receiving such misrepresentations travel thousands of miles before first hearing about "Units" at the check-in desk.  When the number of units is the same numeric value as the USD room confirmation, there is little to suggest what the real nature of the transaction will be.  Again, such a disclosure is simply too little too late.

## II.    There Are No Material Issues For Trial On Plaintiffs' Claims Under The CPPA.

Marriott has not disputed with admissible evidence the material facts established by Plaintiffs on their Motion for Summary Judgment on their claims brought under the CPPA.[10] Nor has Marriott challenged Plaintiffs discussion of the legal standard for proof of liability under

---

[9] Marriott's Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Doc. 110-2 at ¶¶ 18, 38.

[10] See discussion, *supra*.

the CPPA. Instead, with no evidentiary support, Marriott seeks to recast the issues, and excuse its admitted wrongful pricing practices by placing fault on market forces relating to currency fluctuations in Russia. With stunning indifference to the record, Marriott describes Plaintiffs' claims as pertaining to "the intersection between ***truthful*** price quotes in U.S. dollars with an exchange rate mechanism in Russia that converts the dollar price quote to rubles."[11]

As an initial matter, as this Court recognized, Plaintiffs claims are not based upon transactions which occurred in Russia.[12] The claims relate to Marriott's misrepresentations and omissions regarding the price of rooms at its Russian Hotels made during the reservation process. More significantly, Marriott's challenge to Plaintiffs CPPA claims fails because its arguments all flow from the unsupported assumption that its price quotes in USD are "truthful." By Marriott's own description of its pricing practices at its Russian Hotels, at the time the reservation was made, it quoted rooms at a sum certain in USD, translated the USD quote to an equal number of currency units which were valued in rubles at ***"an internal exchange rate above the Central Bank Rate."***[13] The facts established by Plaintiffs demonstrating the price quote to be false cannot be disputed. The facts are a matter of simple arithmetic.

Marriott agrees with Plaintiffs' analysis that proof of a claim under Sections 28-3904(e), (f) and (h) requires a showing of a representation or omission of a material fact which would tend to deceive a reasonable consumer; 28-3904(h) additionally requires a showing of no intent to sell

---

[11]  Marriott Opp. Memo at 35 (emphasis added).

[12]  *Shaw v. Marriott,* 474 F. Supp. 2d at 146.

[13]  Marriott Opposition to Class Certification (Doc. 75-2) at 5-6.

as offered.[14]   Marriott argues that these elements are questions of fact which require submission to a jury.  Marriott seems to suggest by its argument that regardless of the evidence submitted on the motion, since the issues are factual, a trial is required. While Plaintiffs acknowledge that these issues are factual, Marriott ignores the well settled standard for entry of summary judgment.  Quoting the language of Rule 56 itself, the Supreme Court stated:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.[15]

The inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law."[16]  Here, Marriott has not submitted evidence disputing the core material facts established by Plaintiffs, necessary to proof of Plaintiffs' claims, leaving no issue of fact for trial.[17]

The cases cited by Marriott stand for nothing more than that the elements necessary to proof of a claim under the CPPA are factual.  In *Calvetti v. Antcliff,* the plaintiff alleged that the defendant recommended a certain contractor, misrepresenting that he was properly licensed.  The Court did not rule based on a dispute over "materiality" of the fact.  The Court denied summary judgment finding that a jury could infer that the defendant had misrepresented that the contractor

---

[14] *Calvetti v. Antcliff*, 346 F.Supp.2d 92, 99 (D.D.C. 2004); *Byrd v. Jackson,* 902 A.2d 778 (D.C. 2006); *Green v. United States,* 312 A.2d 788, 791 (D.C. 1974).

[15] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)(emphasis in original).

[16] *Id.,* 251-52.

[17] See, discussion infra.

11

was licensed. "Conflicting testimony raises an issue of credibility for the jury, not this Court."[18] In *Fort Lincoln Civic Association v. Fort Lincoln New Town Corporation*, the Court refused to dismiss a claim for *punitive damages for intentional* failure to disclose that it was the condominium developer's responsibility to establish a homeowners' organization.[19] No evidence regarding the defendants' intent to misrepresent this information to purchasers was introduced, precluding entry of summary judgment for either party.[20] The D.C. Court also held in this case that to prove a "simple" violation of 28-3904 (e) and (f), a plaintiff need only establish the failure to disclose material information for liability to attach.[21] *Freeland v. Iridium World Communications,* involved allegations of securities fraud regarding optimistic statements to the market about the condition of the business and the quality and operation of the company's products.[22] The court held that based upon the record, it could not grant summary judgment against plaintiffs on materiality, because "it cannot be said that lack of importance of the statements or omissions is so plain that reasonable minds cannot differ."[23] None of the other cases cited by Marriott have any application to the degree of controversy necessary to require submission of a factual issue for trial.[24]

---

[18] *Calvetti*, 346 F.Supp.2d at 106.

[19] 944 A.2d 1055 (D.C. 2008).

[20] *Id.* at 1074-75.

[21] *Id.*

[22] 545 F.Supp.2d 59 (D.D.C. 2008).

[23] *Id.* at 78.

[24] *Cinderella Career and Finishing Schools, Inc. v. F.T.C.,* 425 F.2d 583 (D.C. Cir. 1970) (Commission violated due process in ignoring record developed in evidentiary hearing and

12

In this case, the misrepresentations and omissions established by plaintiffs by admissible evidence in their opening memorandum, all relate to the price of a room at a Marriott Russian Hotel.  Marriott has cited no case, and submitted no evidence, disputing the importance of **price** to a consumer's purchasing decision. To the contrary, price or cost of a product or service is presumed to be material,[25] as are express statements.[26]   "Information concerning prices or charges for goods or services is material, as it is '*likely* to affect a consumer's choice or conduct regarding a product.'"[27] Further, the information provided here was objectively false - it is mathematically certain that a guest could not cover the cost of his room in RUR with the number of USD shown on his room confirmation.

Courts have consistently held that the standard of proof under the CPPA is a "reasonable person standard."[28]   The proof necessary is that the facts represented or withheld "be material in the sense that a reasonable [person] might have considered them important in making this

---

making de novo determination on own examination); *Giant Food, Inc. v.* F.T.C., 322 F.2d 977 (D.C. Cir. 1963)(determination that advertisement was misleading where evidence established that language was capable of more than one meaning.); *In re Newbridge Networks Security Litigation,* 926 F.Supp. 1163 (D.D.C. 1996) (allegations sufficient to state a claim raising factual issues which preclude dismissal under Rule 12(b)(6)).

[25]  *Novartis v. Federal Trade Commission,* 223 F.3d 783, 786 (D.C. Cir. 2000), *citing*, *In re Cliffdale Assoc., Inc.,* 103 F.T.C. 110, 165 (1984); *Kraft, Inc. v. FTC,* 970 F.2d 311, 322-24 (7th Cir. 1992).

[26]  *Crescent Publishing Group*, 129 F. Supp. 2d 311, 321 (S.D.N.Y. 2001).*; In re Thompson Medical Co.,* 104 F.T.C. 648, 788, 818-19 (1984), *aff'd, Thompson Medical Co. v. FTC,* 791 F.2d 189 (D.C. Cir. 1986); *F.T.C. v. Wilcox*, 926 F. Supp. 1091, 1098 (S.D. Fla. 1995); *Kraft,* 970 F.2d 311, 322 (7th Cir. 1992).

[27]  *Crescent Publishing Group*, 129 F. Supp. 2d at 321 (emphasis added).

[28]  *Wells v. Allstate Insurance*, 210 F.R.D. 1, 9 (D.D.C. 2002);  *Alicke v. MCI Communications*, 111 F.3d 909 (D.C. Cir. 1997).

decision."[29]  Marriott argues that the question of who is in the group in this case for purposes of measuring a "reasonable consumer" for these claims is also a question of fact.  Marriott cites no case for that proposition.  There are no such cases; "reasonable consumer" is determined by an objective standard.[30]  "Reasonable" is generally considered to be the average or ordinary consumer; and sometimes even the least sophisticated among the audience.[31]

> Fictitious prices are illegal even though it is obvious to the sophisticated that the price tag is only a come-on. The law is not made for the protection of experts, but for the public – that vast multitude which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearances and general impressions.[32]

Nevertheless, undeterred by the lack of support for their contention, Marriott moves forward to argue that here, the "reasonable consumer" must be measured by the standard of sophisticated, frequent international travelers.[33]  Marriott purports to support this description with data that indicates that a large portion of the guests at its Russian Hotels are traveling for business.[34]  Even if this were true, the characterization of its guests as business travelers does not establish their level of sophistication.

---

[29] *Wells*, 210 F.R.D at 9*; Novartis,* 223 F.3d at 786, (*citing In re Cliffdale Associates,* 103 F.T.C. 110, 165).

[30] *Davis v. Powertel, Inc.,* 776 S.2d 971, 974 and n.1 (Fla. App. 2001) and cases cited.

[31] *Crescent Publishing Group*, 129 F. Supp. 2d at 321; *Giant Food v. F.T.C.,* 322 F.2d at 983 n.13.

[32] *Id.* at 983 n.13.

[33] Marriott Opp. Memo at 39.

[34] Plaintiffs have challenged this data on the grounds that Marriott failed to disclose this information under Rule 26(a).

Marriott argues that being sophisticated international travelers, its guests must understand "fluctuating currency values, the use of exchange rates, and payment in foreign currencies." But that premise simply misses the point of Plaintiffs' claims. Plaintiffs' claims are about Marriott's misrepresentations as to price. Marriott is certainly entitled to protect itself from shifts in currency exchange rates, but it may not do so by misrepresenting its prices to the consumer as a device for surreptitiously shifting exchange rate risks to its guests.

### III.    Plaintiffs Have Standing

Plaintiffs here address for the third time in this action the issues Marriott has collectively labeled "standing." Nevertheless, Marriott complains that Plaintiffs were required to separately establish "standing" for each of the named parties in its opening brief on summary judgment. None of the cases cited by Marriott impose any such requirement.[35] While Plaintiffs accept their burden to demonstrate that they have standing, once challenged, each of the named parties here has established standing, supported by admissible evidence, in the briefing on class certification and in the Opposition to Marriott's Motion for Summary Judgment.[36] Plaintiffs again submit

---

[35] *International Brotherhood of Teamsters v. TSA,* 429 F.3d 1130, 1134 and n. 2 (D.C. Cir. 2005) (administrative review case involving D.C. Circuit Rule governing petitioner or appellant not directly regulated by the agency action under review); *Miami Building and Construction Trades Council AFL/CIO v. Secretary of Defense,* 493 F.3d 201, 206-07 (D.C. Cir. 2007) (injury alleged not redressable by order of the court because decision on use of the property within control of third party); *Oglala Sioux Tribe v. U.S. Army Corps of Engineers,* 537 F. Supp. 2d 161, 171-72 (D.D.C. 2008) (Plaintiff lacks standing because interest in lands at issue extinguished by 1889 Act so Tribe has no legally protected interest and no present injury); *Oconus DOD Employee Rotation Action Group v. Cohen*, 140 F.Supp.2d 37 (D.D.C. 2001) (no final agency action yet implemented so possibility that Plaintiffs will be denied extensions of tours of duty sometime in the future is conjectural and hypothetical).

[36] See, Plaintiffs Statement of Material Facts in Support of their Motion for Summary Judgment and Plaintiffs' Response to Marriott's Statement of Fact submitted in opposition to Marriott's Motion for Summary Judgment.

their previous arguments and evidence in the context of the various "standing" issues raised by Marriott. The evidence supporting standing is discussed in connection with the appropriate arguments which follow.

### A. CSIS Is A Consumer Under D.C. CCPA § 28-3904(a)(1) and (2).

CSIS's standing was fully briefed in Plaintiffs' Opposition to Marriott's Motion for Summary Judgment.[37] (Doc 115 at 1-27). In the interest of avoiding needless repetition, Plaintiffs' incorporate by reference the arguments raised in their Opposition Brief and provide only a brief summary here.

D.C. CPPA § 29-3901(a)(1) and (2) make it quite clear that a corporation may have the status of a consumer. Section 28-3901(2) defines consumer as a "person" while Section 28-3901(1) defines "person" to include a corporation. A similar statute in New Jersey has been found to confer consumer status on corporations.[38] Given these statutory provisions, there can be little doubt that CSIS does not lack standing under the CPPA because it is a corporation.

CSIS also satisfies the factors for being a consumer under controlling precedent of the D.C. Court of Appeals. In *Adam A. Wechsler & Son, Inc. v. Klank*[39] that court held that a person is a consumer when he is not in the chain of distribution as a regular business buying and selling the product or service involved. CSIS is obviously not in the business of providing hotel

---

[37] *Hundred East Credit Corporation v. Eric Schuster Corporation*, 515 A.2d 246, 249 (N.J. Super A.D. 1986); *The Dreier Co., Inc. v. Unitronix Corp.,* 527 A.2d 875, 882 (N.J. Super A.D. 1986).

[38] *Id.*

[39] 561 A.2d 1003 (D.C. 1993). *See also Ford v. ChartOne, Inc.* 908 A.2d 72, 83 (D.C. 2006) citing *Wechsler.*

16

accommodations and clearly falls on the consumer side of the transactions at issue here.

### B.    Plaintiffs Shaw and Mendelson Have Experienced Injury-in-Fact.

Article III standing "is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."[40]  The irreducible minimum for constitutional standing requires three elements – injury, causation and redressability.[41]  Plaintiffs' have established, based upon record evidence, both in its opening brief on this Motion for Summary Judgment and in Opposition to Marriott's Motion for Summary judgment: (1)  Plaintiffs suffered an **injury**  – their right to honest and fair dealing in their transactions with Marriott were impaired; and guests were overcharged for their hotel rooms.  (2) Marriott's improper trade practices as established by Plaintiffs **caused** the injury.  (3) Marriott's wrongful conduct is **redressible**  – the CPPA provides for statutory damages for a violation of its provisions, without proof of actual damages.

Nevertheless, Marriott continues to argue that neither Shaw nor Mendelson can demonstrate injury-in-fact based ***solely*** on Marriott's argument that each was reimbursed for the cost of the room in a Marriott Russian Hotel.  Marriott has yet to cite any case that requires an economic loss to establish injury-in-fact.

The "injury" required by Article III, "can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'"[42]  Here, D.C. CPPA, § 28-3904 creates in

---

[40]  *Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 151-52 (1970).

[41]  *Miami Building and Construction Trades Council,* 493 F.3d at 205, *citing, Rainbow/Push Coal. v. FCC,* 396 F.3d 1235, 1240 (D.C. Cir. 2005).

[42]  *Warth v. Seldin,* 422 U.S. 490, 500 (1975).

Plaintiffs, including Shaw and Mendelson, a legally protected interest to be free from improper trade practices, and § 28-3905(k)(1) provides remedies to consumers whose rights are violated.[43] Further, the statute provides expressly for a situation like that presented by Shaw and Mendelson. Section 28-3905(k)(1) provides a remedy to "a person whether acting for the interests of itself, its members, or the general public."[44]

Further, Marriott has never addressed the amendment of the CPPA to remove the requirement for actual damages and provide for statutory damages. The CPPA has, since October 2000, provided for the recovery of statutory damages expressly to allow consumers, such as Shaw and Mendelson, a remedy regardless of proof of pecuniary damage.[45] Statutes such as the CPPA, which provide for statutory damages without proof of economic injury, "effect[] a per se injury on consumers."[46]

Cases cited by Marriott do not compel a contrary result here. In both *Williams v. Purdue Pharma*[47] and *Hoyte v. Yum Brands, Inc.,*[48] plaintiffs failed to allege any injury to themselves at all.  In *Williams,* plaintiffs did not allege any defect in the product at issue, nor that the drug did not provide the effective pain relief advertised.[49]  In *Hoyte,* plaintiffs alleged nothing more than

---

[43]  D.C. CPPA §§ 28-3901 and 28-3905(k)(1); *Shaw,* 474 F.Supp.2d at 147.

[44] *Snowder v. District of Columbia,* No. 06-cv-959, 2008 D.C. App. LEXIS 261 (D.C. June 5, 2008), at ___ and  n. 10.

[45] *Wells,* 210 F.R.D.at 9.

[46] *Aspinall v. Phillip Morris Companies,* 813 N.E.2d 476, 492 (Mass. 2004).

[47]  297 F.Supp.2d 171 (D.D.C. 2003).

[48]  489 F.Supp.2d 24 (D.D.C. 2004).

[49]  297 F.Supp.2d at 176, 178.

there were healthier oils available for food preparation than the trans fats used by defendant.[50]

Plaintiffs have presented an adverse dispute, resulting in concrete injury which is redressible by an award of statutory damages as provided under the CPPA.  Shaw and Mendelson have suffered injury in fact, and have standing to adjudicate their claims in this action.

### C.     There Is No Statutory Basis To Exclude Shaw And Mendelson's Consumer Transactions Where They Are Reimbursed By Their Employers.

The notion that individuals are not entitled to honest and fair dealings with vendors in meeting their personal needs while on travel for status for their employers finds no support in the text of D.C. CPPA § 28-3904 and defies common sense.  See Plaintiffs' Memorandum of Points and Authorities In Opposition to Marriott's Motion for Summary Judgment.  Doc. 115 at 20-21 of 49.

### D.     Plaintiffs' Claims Should Be Adjudicated Under D.C. Law.

Marriott raises the same choice of law issues in its opposition to Plaintiffs' Motion for Partial Summary Judgment as it did in its own affirmative motion for summary judgment. Marriott's Opposition Brief raises nothing new.  We incorporate by reference all of the argumentation and record citations contained in that earlier brief as well as those in our Reply to Marriott's Opposition to Class Certification, which also addressed the same choice of law issue in the context of predominance under Fed.R.Civ.P 23(b)(3).

We pause to make two brief points.  First, this Court's earlier order denying Marriott's first motion to dismiss properly identified the District's modified governmental interest test for choice of law.  The District may impose its own law on a controversy when it determines that it

---

[50]  489 F.Supp.2d at 28.

has an interest in the controversy that is at least as great as the interest of any other jurisdiction. This Court properly found that the District has an important interest in enforcing the CPPA and that "Marriott has held itself out as a District of Columbia corporation and has reaped the commercial advantages that go along with such representations."[51]  This Court noted that Marriott's inconsistent positions with respect to the location of its headquarters further support the application of District of Columbia law in this case.[52]  Marriott has offered further proof that its headquarters is located in Maryland, but provides nothing new by way of discovery that would support a finding that Maryland or any other jurisdiction has an interest in this litigation that is greater than that of the District of Columbia.

Second, the selection of District of Columbia law passes constitutional muster.  The key question from a constitutional perspective is whether the controversy has contacts or an aggregation of contacts that create state interests such that the choice of law is neither arbitrary nor fundamentally unfair.[53]  Marriott addresses this standard by saying that its contacts with the District of Columbia are limited to a root beer stand opened by its founder J.W. Marriott in 1927 and its current mailing address.[54]  Marriott also notes that its computer servers for its website are in Maryland, not the District.[55]  Of course, the location of Marriott's computer servers has no

---

[51] *Shaw,* 474 F.Supp.2d at 148.

[52] *Id.*

[53] *Allstate Insurance Company v. Hague,* 472 U.S. 797, 811 (1985).

[54] Facts ¶ 5, 6.

[55] Facts ¶ 7.

importance to the choice of law issue.[56]

We find it somewhat curious that after three major brief writing exercises on this subject, Marriott is unable or unwilling to address the factors which this Court has already observed are highly relevant to its choice of law analysis – its longstanding, widespread and persistent representations that it is headquartered in the District of Columbia.[57]  Until Marriott faces up to these inconvenient facts, there is really nothing further to which we can reply.  On this state of the record, it cannot be said that the application of D.C. law to this controversy would be arbitrary or fundamentally unfair.

## IV.    Decisions Reached Under Illinois and Minnesota Law Have No Precedential Value In Interpreting Materially Different Provisions In D.C. Law.

Apparently unable to find any case decided under the CPPA which would relieve Marriott from liability to Plaintiffs, Marriott again urges this Court to follow the reasoning of the Illinois and Minnesota courts in cases filed against the Hyatt and Radisson Hotels.  As argued previously, findings in those cases cannot be applied to the claims brought under the CPPA in this action.

In *Shaw v. Hyatt International,* the Seventh Circuit, based upon the district court's finding of an express contract, held that the claims had been properly dismissed because the Illinois Consumer Fraud Act did not provide a cause of action for a breach of contractual

---

[56] *Medina v. Am. Airlines, Inc.,* No. 02-22133, 2005 U.S. Dist. LEXIS 18916 at *19 (S.D.Fla. July 5, 2005), cited in *Shaw v. Marriott*, *supra*, 474 F.Supp.2d at __.   As the Declaration of Kelly Taylor made plain, Marriott's website is managed by a firm that could locate it on any one of 25,000 servers operated worldwide.  Plaintiffs' Exhibit 37 at ¶ 4-6.

[57] PC-SUF No. 180-187 found in Plaintiffs' Answer and Counterstatement to Marriott International Inc.'s Statement of Undisputed Facts in Support of Motion for Summary Judgment.

promise, without more.[58]  In an attempt to squeeze this action within the limited ruling of the

Seventh Circuit, Marriott misstates Plaintiffs claim as an "undisputed" allegation of breach of

contract. Plaintiffs opening Memorandum on this Motion for Summary Judgment

overwhelmingly disputes that contention.  Plaintiffs here challenge Marriott with three separate

unlawful trade practices: misrepresentation, failure to disclose material facts and offering

services for sale without the intent to sell as offered.  Even if the facts here additionally satisfy

the elements of a breach of contract, such claims are not precluded from action under the CPPA.

The CPPA is intended to reach all improper trade practices, including those that violate other

laws, *including the common law.*[59]  "The CPPA's extensive enforcement mechanisms apply not

only to the unlawful trade practices proscribed by § 28-3904, but to all other statutory and

common law prohibitions."[60]  Thus, the reach of D.C. CPPA § 28-3904 does not suffer from the

narrow constraints that the Seventh Circuit found applicable under the Illinois Statute.  The

Court's holding in *Shaw v. Hyatt* simply has no application here.

 *Bykov v. Radisson Hotels International,* is distinguishable from the instant case both on

the facts and the law.[61]  In *Bykov*, both the Plaintiff and his assistant looked at the USD price

quoted by Radisson, but did not examine the "Slavyanskaya's website or any other information

---

 [58]  461 F.3d 899 (7th Cir. 2006).

 [59]  *District Cablevision Limited Partnership v. Bassin,* 828 A.2d 714, 723 (D.C. 2003); *Atwater v. District of Columbia Dept. Of Consumer and Reg. Affairs,* 566 A.2d 462, 465 (D.C. 1989); *Osbourne v. Capital City Mortgage Co.,* 727 A.2d 322, 325-26 (D.C. 1999).

 [60]  *Osbourne,* 727 A.2d at 325-26.

 [61]  2006 WL 752942 (D. Minn.)., *aff'd per curiam,* (8th Cir. Doc. No. 06-2102, Feb. 12, 2006).

about the Slavyanskaya's pricing practices."[62] Additional language on the website made reference

to the conversion of the USD price quote into RUR at the hotel exchange rate.[63]  While the

Plaintiff in *Bykov* contended that the additional language was not exculpatory and could not cure

the deception created by the USD denominated price quote, both the district court and Eighth

Circuit in its unpublished per curiam opinion found that Plaintiffs could not demonstrate reliance

as required by the Minnesota statute without reading the additional language.[64]  Plaintiffs'

seeking relief under Minnesota's consumer protection statutes are required to file under

Minnesota's private attorney general statute which requires proof of reliance on the wrongful

statements or conduct.[65]  D.C. CPPA § 28-3904 provides for liability without proof that

individuals were misled or deceived.  Courts applying the D.C. CPPA have consistently held that

reliance is not an element of proof of a claim under the DC statute.[66]  Further, the facts in *Bykov*

were starkly different from those established on this motion.  In *Bykov,* Radisson included

information which might have informed the hotel guest that the RUR charge at checkout could

vary from that represented in USD.  Neither Bykov nor his assistant saw the information, and so

*neither could have relied upon the information as required by Minnesota law.*[67]  Here, by

---

[62] 2006 WL 752942 *5.

[63] *Id.*

[64] *Id.*

[65] *Id.* at *4, 5.

[66] *Wells*, 210 F.R.D at 9; *District Cablevision Limited Partnership,* 828 A.2d at 725 and
n. 14.

[67] 2006 WL 752942 at *5, *6.

23

contrast, Plaintiffs' claim is that references to the hotel exchange rate were demonstrably

inadequate and constituted a failure to disclose material facts that had a tendency to mislead.  The

Minnesota statute contains no provision similar to Section 28-3901(f)'s coverage of failure to

disclose material facts.

These holdings applying Illinois or Minnesota law have no application to the long

established precedents of the D.C. courts interpreting the CPPA.

**V.    Guests Who Do Not Satisfy The Class Definition**

Marriott has produced over 400,00 records from its MARSHA database showing

confirmation numbers, USD price quotes and guest identification data.  Other documents

produced by Marriott make reference to special corporate and other rates offered by Marriott and

its affiliated hotels in Russia.  Guests with stays under special rates would still be in the proposed

class if they were quoted room rates in USD and paid in RUR calculated at the hotel exchange

rate.  Guests who were quoted in some other currency (Units, for example) or who received the

Central Bank exchange rate for any reason (U.S. Embassy employees may have been treated

differently) would probably fall outside of the class.  Decisions on such hybrid cases should be

made during the remedy phase of this proceeding.  The fact that some transactions may not

satisfy the class definition happens regularly in class action litigation.  Such transactions provide

no reason to deny class certification or summary judgment for the 400,000 plus guests who *are*

similarly situated to the named Plaintiffs.

**CONCLUSION**

Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability should be granted.

Respectfully submitted,


/s/ Paul D. Cullen, Sr.

Paul D. Cullen, Sr., D.C. Bar # 100230

Mark W. Borghesani, Esq., D.C. Bar # 426745    Joyce E. Mayers,  D.C. Bar # 268227
c/o The Cullen Law Firm PLLC    Randall Herrick-Stare, D.C. Bar # 482752
1101 30th Street NW, Suite 300    Amy M. Lloyd, D.C. Bar # 975887
Washington, D.C. 20007    The Cullen Law Firm, PLLC
(202) 944-8600    1101 30th Street NW, Suite 300
*Of  Counsel*    Washington, D.C. 20007
    (202) 944-8600
    *Counsel for Plaintiffs*


Dated: July 2, 2008