UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRITT A. SHAW, et al.**  )<br> )<br> )<br>**Plaintiffs,**  )<br> )<br>v.  )<br> )<br>**MARRIOTT INTERNATIONAL, INC.**  )<br> )<br>**Defendant.**  )<br>_____ ) | Civil Action No. 05-1138(GK) |

**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO STRIKE STATEMENTS FROM MARRIOTT'S
<u>STATEMENT OF UNDISPUTED FACTS PURSUANT TO FED. R. CIV. P. 37(c)</u>**

Of Counsel:
Mark Borghesani, Esq.
c/o The Cullen Law Firm, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C., 20007
Tel: (202) 944-8600
Fax: (202) 944-8611

Paul D. Cullen, Sr. (100230)
Joyce E. Mayers (268227)
Randall S. Herrick-Stare (482452)
Amy M. Lloyd (975887)
The Cullen Law Firm, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
Tel: (202) 944-8600
Fax: (202) 944-8611
*Counsel for Plaintiffs*

July 11, 2008

## INTRODUCTION

Plaintiffs respectfully move the Court to enter an order striking statements from Marriott's Statement of Undisputed Facts[1] that have been proffered in support of Marriott's pending motion for partial summary judgment[2] and in its opposition to Plaintiffs' motion for partial summary judgment.[3]

The statements in question are based on assertions and/or opinions in the "Second Declaration of Deborah McGrath" that were not disclosed to Plaintiffs during discovery, and which are otherwise predicated on evidence that was not produced to Plaintiffs during discovery.[4] Whether Marriott's failure to disclose that evidence was intentional - or merely careless - is inconsequential, because under Fed. R. Civ. P. 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e) ***the party is not allowed to use that information or witness to supply evidence on a motion***, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id*. (emphasis added). Nor can there be any doubt that Marriott's use of these newly disclosed facts and/or opinions is prejudicial and unjustified, because they go to Marriott's efforts to evade liability for the violations of the D.C. CPPA alleged by Plaintiffs in this case. As such, the statements should be stricken, along with: (1) all corresponding portions of the McGrath Affidavit; and (2) all corresponding portions of

---

[1]    "MSUF"; Document 110-2.

[2]    "Marriott Sum. J. Motion"; Document 106-2 at pages 7-8.

[3]    "Marriott Sum. J. Opp."; Document 116 at page 39.

[4]    The McGrath Affidavit was attached as Exhibit 1 to MSUF, filed on June 3, 2008 (Document 110-2).

Marriott's briefs referencing or relating to those statements.

## BACKGROUND

### A.    Summary of Plaintiffs' Case

Plaintiffs have alleged that Marriott has violated the D.C. Consumer Protection and Procedures Act (CPPA) by misrepresenting the price of rooms in its Russian Hotels. *See generally* Plaintiffs' Motion for Partial Summary Judgment (Docket 109) at 14-23. Through Marriott's MARSHA reservation system, Marriott stated specific per night prices for rooms in U.S. Dollars (USD). *Id.*[5] At checkout from a Marriott Russian Hotel, however, the guest was charged in Russian Rubles (RUR), never USD. *Id.* The per night charge for rooms in RUR was calculated at a hotel exchange rate different from the official Central Bank of Russia. Application of the hotel exchange rate always resulted in a cost to guests in USD higher than the price in USD originally represented by Marriott. *Id.* Plaintiffs have established that Marriott's pricing practices are precisely the type of improper trade practices the D.C. Consumer Protection and Procedures Act (CPPA) was enacted to remedy. *Id.* Sections 28-3904(e) and (f) prohibit the misrepresentation or omission of a material fact; and section 28-3904(h) prohibits the advertisement or offer of a product or service without the intention to sell as advertised or offered. *Id.*

Marriott has never seriously disputed the fact that it has engaged in the pricing practices alleged by Plaintiffs, contending - for example - that other Russian hotels do the same thing that

---

[5] MARSHA stands for "Marriott Automated Reservation System for Hotel Accommodations." The MRDW (Marriott Reservation Data Warehouse) is the reporting system dedicated to providing reporting and analytic capabilities for reservations data from MARSHA.

it does.[6]  Instead, its summary judgment papers tend to focus on procedural or technical defenses - for example - whether guests who may have been in Russia for business have standing to invoke the protections of the D.C. CPPA.[7]  And, it is in connection with those defenses that Marriott has proffered the particular statements of fact that give rise to Plaintiffs' motion to strike.

### B. Marriott's Statement of Undisputed Facts

On June 2, 2008, Marriott filed its motion for partial summary judgment along with its statement of undisputed facts. The two statements of fact at issue for the purposes of Plaintiffs' motion to strike are as follows:

- **MSUF Number 22**:

   The guest data in MRDW pertains to reservations, not actual guest stays.

   McGrath Second Aff. at 13.  Thus, the existence of a guest record in MRDW does not indicate that the guest actually fulfilled the reservation, stayed at the hotel, or paid for the room.  *Id.*  Approximately 25 -30% of reservations in MRDW for the franchised hotels in Russia result in cancellations or no -shows, which is consistent with the cancel rates of North American hotels.  *Id.*, at 14.

---

[6]   Marriott Sum. J. Opp. (Docket 116 at 10).

[7]   *See, e.g.*,  Marriott Sum. J. Motion (Document 106-2 at 2, 4, 11-12, 16, 18-29, 26, 29, 30 and 45); Marriott Sum. J. Opp. (Document 116 at 25-26, 30-32, 46 and 52).  Marriott thus argues that because Plaintiff CSIS is a corporation, it cannot be a consumer under the D.C. CPPA.  Marriott Sum. J. Motion at 28-29.  However, the plain language of the statute provides otherwise.  Section 28-3901(a)(2) defines a consumer as "a *person* who does or would purchase...or receive consumer goods or services...including a person who does or would provide the economic demand for a trade practice. . . ." (Emphasis added).  Section 28-3901(a)(1) defines a "person" to include "an individual, firm, *corporation*, partnership, cooperative, association or any other organization, legal entity or group of individuals however organized." (Emphasis added).  Since a consumer "means a person" under Section 28-3901(a)(2) and a person includes a corporation under Section 28-3901(a)(1), there is obviously no bar to a corporation *qua* corporation enjoying the status of a consumer under the D.C. CPPA.

- **MSUF Number 42**

The MRDW contains data regarding the trip purpose as reported by guests for the years 2005 forward. McGrath Second Aff. ¶ 15. For each of these years, trip purpose data was available for between 87% to 90% of the total Marriott Russia Hotel guests stays. *Id.* From this available data, the percentage of business stays is as follows: 89% of guests stays were reported as business travel in 2007; 84% were so reported in 2006; and 79% were so reported in 2005. *Id.*

Marriott has cited the foregoing "facts," both in support of its own motion for partial summary judgment, and in its opposition to Plaintiffs' motion for partial summary judgment. For example, Marriott cites MSUF Number 42 in its opposition to Plaintiffs' motion for summary judgment, asserting that "Marriott's own data indicates that an overwhelming proportion of guests at Marriott Russia Hotels are business travelers."[8] Marriott cites MSUF Number 22 in support of its own motion for partial summary judgment, asserting: "The guest data in MRDW pertains to reservations, not guest stays. *Id*. Thus, the existence of a guest record in MRDW does not indicate that the guest actually fulfilled the reservation, stayed at the hotel, or paid for the room. *Id*. A significant percentage of reservations in MRDW result in cancellations or no-shows. *Id*."[9]

  **(3)**   **Plaintiffs' Challenges**

After receiving Marriott's Statement of Undisputed Facts, Plaintiffs inquired with Marriott's counsel about the origin of the statements made in MSUF Numbers 22 and 44 - as Plaintiffs were unaware of any documents or testimony establishing the facts asserted therein. Through the course of the parties' meet and confer process, Marriott represented that the

---

[8]   Document 116 at 39.

[9]   Document 106-2 at 8.

statements were derived from conclusions set forth in the McGrath Declaration.[10]  Notably, the McGrath Affidavit, itself, was not produced to Plaintiffs until long after the close of discovery.[11] Apart from the fact that the McGrath Affidavit was not produced to Plaintiffs until after the discovery cutoff, Marriott acknowledged that a number of her conclusions were not based on documents that had been produced to Plaintiffs - and that even if they were - her conclusions were based on "estimations," "extrapolations," and/or "distillations," as follows:

**MSUF Number 42** - Marriott stated that it had produced "several Hotel Performance Benchmark Reports . . . which noted the percentages of leisure and business travel at Russian Hotels."[12]  It then stated that the data in those reports had been "***distilled*** and confirmed in Deborah McGrath's Second Affidavit."[13]  As further discussed below, Marriott's response confirms that MSUF 42 must be stricken for the following reasons:

(1) the McGrath Affidavit was not produced to Plaintiffs until long after the discovery cutoff date;

(2) the McGrath Affidavit is based on "summary" conclusions in the "Hotel Benchmark Report" which were obviously prepared by a third-party, thus constituting inadmissible hearsay;

(3) the summary "Hotel Benchmark Report" documents relied upon by Ms. McGrath were obviously compiled from voluminous records which were not made available to Plaintiffs in contravention of Fed. R. Evid. 1006;

---

[10]  *See* July 3, 2008 Letter from Joel A. Dewey, Esq. to Paul D. Cullen, Sr., Esq., attached as Exhibit 96.

[11]  The Second McGrath Affidavit - dated May 28, 2008 - was not produced to Plaintiffs until June 3, 2008, two months after the discovery cutoff date of April 1, 2008.

[12]  Exhibit 96 at page 3.

[13]  *Id.*

5

(4) Plaintiffs were not provided a complete group of the summary documents which Ms. McGrath purportedly "distilled" in reaching her conclusions; and

(5) even assuming *arguendo* that a complete set of such reports had been produced to Plaintiffs, Ms. McGrath's "distillation" procedures were never revealed, and her conclusions should be stricken as untimely "expert" opinions.

**MSUF Number 22** - Marriott stated that it did not have "custody or control over of the PMS data for [its] franchised hotels," but that on the basis of PMS data from its own MRDW database, "[e]stimations of cancellations or no-shows can be extrapolated from comparisons and analysis of the data provided."[14]  In turn, MSUF 22 - which is predicated on the McGrath Affidavit - states "[a]pproximately 25% to 30% of reservations in MRDW for franchised Russian hotels result in cancellations or no-shows.  The rate is consistent with cancel rates of North American hotels." *Id*.   Again, the problems with these conclusions are self-evident:

(1) the McGrath Affidavit was not produced to Plaintiffs until *long after* the discovery cutoff date;

(2) the McGrath Affidavit is not based on any documents at all; indeed, by Marriott's own admission, it did not have "custody or control over of the PMS data for [its] franchised hotels" (Exhibit 96 at 2);

(3) to the extent Ms. McGrath "estimated" or "extrapolated" data from Marriott's non-franchised hotels, there is no indication in that data showing whether a customer was a "cancellation" or a "no-show;"[15]

---

[14] Exhibit 96 at page 2.

[15] Throughout discovery, Marriott consistently represented that the MARSHA/MRDW it produced related to guests who *stayed* at the Marriott hotels.  Marriott stated that the data it was providing (MARSHA/ MRDW) covered guest **stays** during the relevant period.  For example, Interrogatory No. 1 of Plaintiffs' first discovery requests sought information related to "all *guests* of the Marriott Russia hotels during the relevant time period," including "dates of their *stays* at Marriott Russia Hotels." (*See* Plaintiffs' Sum J. Motion, Exhibit 7 at 4-5).  Document Request No. 5 requested, in part, documents identifying hotel *guests*.  And finally, request No. 1 of Plaintiffs' second set of discovery requests sought electronic data relating to *guest stays,* including the date of arrival and check-out.  Marriott consistently represented that the MARSHA/MRDW discovery it produced related to guests who *stayed* at the Marriott hotels. (Exhibit 89 (Marriott''s Response to Plaintiffs'' Second Set of Discovery

(4) Marriott failed to produce any documents or testimony supporting the conclusory assertion that "approximately 25-30% of reservations. . .result in cancellations or no shows;"[16]

(5) to the extent Ms. McGrath relied on any summary documents, the underlying documentation was not produced to Plaintiffs; and

(6) assuming *arguendo* that a complete and admissible body of supporting documentation had been produced, the methodology behind Ms. McGrath's "estimations" and "extrapolations" were never revealed to Plaintiffs, and her conclusions should be stricken as untimely "expert" opinions.

## ARGUMENT

A. **Fed. R. Civ. P. 37 Mandates Preclusion of Evidence Not Produced in Discovery**

The Federal Rules of Civil Procedure require parties to produce relevant documents and other materials in response to another party's discovery requests. *See* Fed. R. Civ. P. 26(b), 33(b), and 34(b). A party who has made an initial disclosure must supplement it if the party learns or discovers that the information previously disclosed is incomplete. Fed. R. Civ. P. 26(e). Federal Rule of Civil Procedure 37(c) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless.[17]

---

Requests)).

[16] In fact, McGrath's reference to *"approximately* 25-30%" belies the arbitrary, speculative, and self-serving nature of her purportedly "factual" conclusions. That point aside, Plaintiffs question how they could be in possession of information that Marriott itself seems to not know — at least with any admissible level of precision.

[17] *See Norden v. Sampler*, 544 F.Supp 2d 43, 49 (D.D.C. 2008)("Rule 37(c)(1) is a self-executing sanction, and the motive or reason for the failure is irrelevant. It therefore is unnecessary to decide whether the [Plaintiff] acted in bad faith ... or was simply sloppy in its search for relevant documents and in assisting its litigation counsel in responding to interrogatories.")(quoting *Elion v.*

7

Expert opinions formulated after the close of discovery and not produced prior to summary judgment briefing are also subject to preclusion.[18]  Further, the introduction of summaries pursuant to Fed. R. Civ. P. 1006 is permissible only if the records from which the summaries were prepared are admissible and are made available to the opposing party for examination or copying.[19]

### B.   Marriott's Statements Should be Stricken

In light of the foregoing authorities, both MSUF Number 22 and Number 42 should be stricken pursuant Fed. R. Civ. P. 37 (c) for the following reasons:

- The McGrath Affidavit was not produced to Plaintiffs until long after the discovery cutoff date.  It is fundamentally unfair and prejudicial for Marriott to predicate a motion for summary judgment on McGrath's untimely assertion of facts and/or opinions that were not produced in discovery.
- Documents underlying McGrath's statements and/or opinions were not produced to Plaintiffs.  With respect to MSUF 22, the McGrath Affidavit is not based on any documents at all; indeed, by

---

*Jackson*, No. 05-0992, 2006 WL 2583694, at *1, 2006 U.S. Dist. LEXIS 63854, at *2-3 (D.D.C. Sept. 8, 2006)). "The overwhelming weight of authority is that preclusion is required and mandatory absent some unusual or extenuating circumstances--that is, a 'substantial justification.'" *Elion* at 2006 WL 2583694, at *1, 2006 U.S. Dist. LEXIS 63854, at *3.

[18]   *United States ex. rel Fago v. M&T Mortgage Corp.*, 2006 WL 949899 (D.D.C. 2006).

[19]   *Conoco Inc. v. DOE*, 99 F.3d 387, 393 (Fed.Cir.1996).  *See also AFD Fund v. United States*, 61 Fed.Cl. 540, 546 (2004) ("A proponent of a summary of evidence must properly authenticate it by satisfying four requirements. First, the summarized writings must be so voluminous so as to be unable to be conveniently examined in court. Second, the underlying evidence must itself be admissible. Third, the original or copies of the summarized writings must be made available to the opposing party. And, fourth, the proposed summary (or chart or calculation) must accurately summarize (or reflect) the underlying document(s) and only the underlying document(s)") (internal citations omitted)). "[T]he rules recognize that the preparation of summaries from other documents carries risks of error or distortion that must be guarded against by giving the opposing party an opportunity to review and object to the underlying documents." *Conoco*, 99 F.3d at 393; *accord Air Safety, Inc. v. Roman Catholic Archbishop*, 94 F.3d 1, 7-9 (1st Cir.1996)

- Marriott's own admission, it did not have "custody or control of the PMS data for [its] franchised hotels" (*see* Exhibit 96 at 2). With respect to MSUF Number 42, Marriott has cited a single so-called "Benchmarking Report" (*see* Exhibit 96 at 3); however, that report relates to only *one* hotel and for *only* year (*see* Exhibit 97 at 3). In contrast, McGrath's Affidavit purports to aggregate such data for *all* Marriott hotels for *three* years. *Id*. at ¶ 15. Moreover, the "Benchmarking Report" appears to have been a summary and/or analysis of voluminous data conducted by a third party - "TRJ Hospitality Consulting," as noted in the legend to Plaintiffs' Exhibit 97. Yet none of the underlying documentation that was analyzed by TRJ Hospitality Consulting has been produced to Plaintiffs. Nor has Marriott attempted to establish its admissibility under Fed. R. Civ. P. 1006.

- Marriott has failed to identify the methodology or criteria by which Ms. McGrath "distilled" any data she reviewed in support of MSUF Number 42. It has also failed to identify the methodology or criteria by which Ms. McGrath "estimated" or "extrapolated" purported cancellations or "no-shows" in support of MSUF Number 22.

- McGrath's statements are nothing more than backdoor expert opinions which should be stricken as untimely.

**LcvR 7.1 STATEMENT**

Counsel for Plaintiffs has met and conferred with Counsel for Marriott in an attempt to narrow the areas of disagreement regarding the relief sought by Plaintiffs; however, the parties were unable to reach an agreement, and Marriott opposes the relief requested.

9

**CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (1) striking MSUF Number 22 and Number 42 from Marriott's Statement of Undisputed Facts; (2) striking all corresponding portions of the McGrath Affidavit; and (3) striking all corresponding portions of Marriott's briefs referencing or relating to those statements.

|  |  |
|---|---|
|  | /s/ Paul D. Cullen, Sr. |
| Of Counsel: | Paul D. Cullen, Sr. |
| Mark W. Borghesani, Esq. | Joyce E. Mayers |
| c/o The Cullen Law Firm PLLC | Randall Herrick-Stare |
| 1101 30th Street NW, Suite 300 | Washington, D.C. 20007 |
| (202) 944-8600 | The Cullen Law Firm, PLLC |
|  | 1101 30th Street NW, Suite 300 |
|  |  |
|  | Counsel for Plaintiffs |