# EXHIBIT 96





EXHIBIT 96

DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209-3600
T 410.580.3000
F 410.580.3001
W www.dlapiper.com

JOEL A. DEWEY
Joel.Dewey@dlapiper.com
T 410.580.4135   F 410.580.3135

July 3, 2008

VIA E-MAIL/US MAIL

Paul D. Cullen, Sr., Esquire
The Cullen Law Firm
1101 30th Street, NW
Suite 300
Washington, DC 20007

    Re:    **Shaw, et al. v. Marriott International, Inc., et al.**
            **U.S. District Court for the District of Columbia**
            **Civil Action No. 05-1138 (GK)**

Dear Mr. Cullen:

    I am in receipt of your letter dated July 1, in which you identify two discovery matters related to Marriott's document production. I will address each one in turn.

1.    <u>Discovery Produced in Support of Marriott's Statement of Undisputed Facts</u>

    Marriott has been diligent in its discovery responses and production. In the course of responding to Plaintiffs' 140 Interrogatories and Document Requests, Marriott has produced approximately 12,500 pages of hard copy documents and over 40,000 pages of documents in electronic form. Pursuant to its obligations under the Federal Rules of Civil Procedure, Marriott has produced the relevant documents in its possession in response to Plaintiffs' discovery requests. Further, Marriott consistently has supplemented its production in a timely manner. There is no ground for any allegation of a Rule 37(a) violation.

    As discussed below, the statements contained in Marriott's Statement of Undisputed Facts in Support of its Motion for Summary Judgment ("MSUF") are based on information and documents produced to Plaintiffs in discovery.

BALT2\4376220.1



Randall S. Herrick-Stare
July 3, 2008
Page 2

- <u>MSUF No. 6</u>:  "Marriott has a Washington, D.C. mailing address in addition to its Bethesda, Maryland corporate headquarters and mailing address, but Marriott does not maintain a corporate office in D.C.  McGrath Second Aff., ¶¶ 3-5."

*Response*: Plaintiffs do not contest that Marriott has a Washington, D.C. mailing address. Further, Plaintiffs Shaw, Charness, and employees of CSIS have expressly admitted that Marriott is headquartered in Bethesda, Maryland, not Washington, D.C. Still, you complain in your letter that Marriott did not produce documents showing that it does not have a corporate office in the District of Columbia. As a general rule, corporations do not paper their corporate records with documents about where they are <u>not</u> maintaining a corporate office. Marriott has supplemented its document production with materials relating to its Maryland headquarters. In addition, we have referenced publicly available filings that confirm these facts. Accordingly, your complaints are unfounded.

- <u>MSUF 22</u>:  "The Marriott Reservation Data Warehouse ("MRDW") is a central repository for data concerning Marriott hotel reservations made through the various reservation channels that access MARSHA. McGrath Second Aff., ¶ 13. The guest data in MRDW pertains to reservations, not actual guest stays. *Id.* Thus, the existence of a guest record in MRDW does not indicate that the guest actually fulfilled the reservation, stayed at the hotel, or paid for the room. *Id.* Approximately 25-30% of reservations in MRDW for the franchised hotels in Russia result in cancellations or no-shows, which is consistent with the cancel rates of North American hotels. *Id.*, ¶ 14."

*Response*:  In both Marriott's discovery responses and in the various meet-and-confer meetings between counsel, we have made significant efforts to alleviate your confusion with regard to Marriott's guest data. In fact, this was the central focus of our discussions at the courthouse to resolve the pending discovery issues on March 20, 2008.

To date, Marriott has produced multiple sets of data for each of the seven hotels at issue in this litigation. Marriott properly responded to Plaintiffs' discovery requests for "guest stay" information by producing PMS data for each of the managed hotels—which is the only PMS data in Marriott's possession and control. Because Marriott does not have custody or control of the PMS data for the franchised hotels, we agreed to an extension of discovery to allow you the opportunity to obtain that information from a third-party. In addition, and in an effort to produce all guest data in its possession, Marriott produced reservation data from its MRDW database. Estimations of cancellations or no-shows can be extrapolated from comparisons and analysis of the data provided.

- <u>MSUF 42</u>: "The MRDW contains data regarding the trip purpose as reported by guests for the years 2005 forward. McGrath Second Aff., ¶ 15. For each of these years, trip purpose data was available for between 87% to 90% of the total Marriott Russia Hotel



Randall S. Herrick-Stare
July 3, 2008
Page 3

guests stays. *Id.* From this available data, the percentage of business stays is as follows: 89% of guests stays were reported as business travel in 2007; 84% were so reported in 2006; and 79% were so reported in 2005. *Id.*"

*Response*: Your allegation that Marriott failed to disclose the information underlying this statement is wrong. At a minimum, Marriott produced several Hotel Performance Benchmark Reports-Hot Stats (14M-03015 - 14M-03154) which noted the percentages of leisure and business travel at Russian hotels. This data was distilled and confirmed in Debbie McGrath's Second Affidavit.

2. Confidentiality Designations

You have requested that Marriott "withdraw its [confidentiality] designations to the particular exhibits Plaintiffs have filed with their pending class certification and summary judgment papers." In total, Plaintiffs attached 91 exhibits to their motions and supporting memoranda. Of those 91 exhibits, only 29 are documents produced by Marriott with a "confidential" or "attorney's eyes only" stamp. As explained below, Marriott properly classified the confidentiality of its documents.

- Exhibit 2 to Plaintiffs' Memorandum in Support of Their Motion for Class Certification ("Class Cert. Mem."): License Agreement for the Moscow Marriott Hotel Tverskaya. Marriott's license agreements with its hotels, on their face, contain "proprietary, financial, business, trade secret or other competitively sensitive commercial information." This is precisely the type of proprietary document that protective orders are intended to protect. Marriott fails to understand Plaintiffs' bald assertion that "the documents do not remotely qualify as 'proprietary . . . ,' eligible for such protection under the Protective Order." Letter at 1.

- Exhibit 6 to Class Cert. Mem.: Marriott Glossary of Terms. Although the document's title may suggest it to be innocuous, it actually contains confidential business information, including how Marriott calculates hotel room demand and price sensitivity, as well as other information that Marriott—as a matter of business practice—maintains confidentially.

- Exhibit 16 to Class Cert. Mem.: Hotel Exchange Rate Data. This spreadsheet contains hotel business and financial information which falls within the confidentiality parameters of the Stipulated Protective Order.

- Exhibits 25 and 26 to Plaintiffs' Reply Memorandum in Support of Their Motion for Class Certification ("Class Cert. Reply"): Internal Marriott memoranda



Randall S. Herrick-Stare
July 3, 2008
Page 4

discussing pricing and currency conversion. Both documents were designated by Marriott employees in the normal course of business as confidential and containing "Proprietary Information." In fact, the August 11, 2005 Memorandum (Exhibit 25) expressly and conspicuously advises:

> The contents of this material are confidential and proprietary to Marriott International, Inc. and may not be reproduced, disclosed, distributed or used without the express permission of an authorized representative of Marriott. Any other use is expressly prohibited.

Contrary to Plaintiffs' allegation, such confidential designations were not imposed *ad hoc* by legal counsel in the course of discovery.

- Exhibit 28 to Class Cert. Reply: MRDW Reports General Information. This document is a copyrighted manual by Marriott regarding its reporting system and analytic capabilities for its reservation data from MARSHA. Independent of and in addition to any confidential designation made by counsel in the course of this litigation, the manual is labeled "Copyrighted, confidential and proprietary information of Marriott International, Inc." There can be no question that this document, bearing such a legend, was designated as confidential in good faith.

- Exhibits 29-34 to Class Cert. Reply: MARSHA Reference Guide and Related Materials. These documents explain Marriott's proprietary reservation systems and discuss the revenue implications of those systems. The MARSHA Guides describe, in exhaustive detail, Marriott's sell strategies, inventory management, and revenue management. To the extent that you continue to dispute the appropriateness of a confidential designation for these materials, please explain how such information could be construed as anything other than proprietary business and competitively sensitive information.

- Exhibits 35 and 38 to Class Cert. Reply and Exhibits 46-50, 67, 68 to Plaintiffs' Motion for Partial Summary Judgment ("SJ Mem."): Marriott Customer Care Reports and Guest Correspondence. Notwithstanding your complaint as to "all of Marriott's confidentiality designations," the only document on which you specifically rely for your inappropriate contention that Marriott "exploit[ed] a court ordered [sic] confidentiality order" is a Marriott Customer Care report. All Marriott Customer Care records are marked as "Confidential and Proprietary Information" for the simple fact that they contain personal guest data, including mailing addresses, e-mail addresses, employment information and partial credit card information. Moreover, and contrary to your speculation as to Marriott's

BALT2\4376220.1

4



opinion of its records, Marriott is not "embarrassed" by these documents, which demonstrate a high level of attention to customer care and thorough responses to its guests.

- <u>Exhibits 62-66 and 71-72 to SJ Mem.</u>: Moscow Renaissance Board Minutes; Business Correspondence. Both of the Board Minutes are replete with proprietary financial, business and competitively sensitive information, including but not limited to financial forecasts and results, market share, and pricing. These documents are the very definition of proprietary. Similarly, the communications (primarily between senior management of the Marriott-franchised hotels and the Marriott-managed hotels) detail confidential discussions regarding revenue management and "internal Accounting perspective." The remaining communications address confidential discussions of disclosures.

- <u>Exhibit 70 to SJ Mem.</u>: Marriott withdraws its "Confidential" designation of this document.

Marriott's confidentiality designations are consistent with the letter and intent of the Stipulated Protective Order. Notwithstanding its voluminous production, Marriott has exercised care and restraint in its designations of "confidential" or "attorney's eyes only" material. In contrast, Plaintiffs marked every single page of CSIS's document production as "Confidential – Attorney's Eyes Only," including reservation confirmations and administrative e-mail correspondence to Interstate soliciting reservations.

Moreover, Marriott's good faith designations have not impeded Plaintiffs in their case. Confidential documents have been proffered by both parties in the extensive briefings submitted to the Court. Likewise, as per Paragraph 13 of the Stipulated Protective Order, none of Marriott's designations will prevent the use of confidential information at a hearing, trial or in depositions. The only effect of the confidential designations (by both parties) is a restriction on widespread publication of the documents to persons who have no part in this litigation.

I look forward to your response.

Very truly yours,

Joel A. Dewey