UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* )<br>)<br>Plaintiffs, )<br>) Civil Action No. 05-1138 (GK)<br>v. )<br>)<br>)<br>MARRIOTT INTERNATIONAL, INC. )<br>)<br>Defendant. )<br>_____ ) | |

**PLAINTIFFS' OPPOSITION TO MARRIOTT'S MOTION
TO STRIKE PORTIONS OF PLAINTIFFS'
CLASS CERTIFICATION BRIEFING THAT
<u>RELY ON THREE BRICKELL DECLARATIONS</u>**

**INTRODUCTION**

Marriott's Motion to Strike is both procedurally defective and substantively without merit. Fed.R.Civ.P. 12(f) authorizes the court to strike from a *pleading* "redundant, immaterial, impertinent or scandalous matter . . . ." A brief in support of a motion for class certification with supporting documentation is not a "pleading" within the meaning of Rule 12(f). Marriott's motion and brief is yet another tedious effort to reargue the only basis it has offered in defense – that none of the victims of its unlawful trade practices have standing to complain – and raise issues not previously addressed, e.g. numerosity. Plaintiffs address the substance of Marriott's arguments as would be appropriate if responding to a second surreply to Plaintiffs' Memorandum of Points and Authorities in Reply to Marriott's Opposition to Plaintiffs' Motion for Class Certification (Doc 86) showing here that its Motion to Strike is substantively without merit.

ARGUMENT

     **I.**     **Marriott's Motion to Strike is Procedurally Defective**

The question of the status of Mr. Brickell's declarations was raised by Marriott's Motion to Strike Declarations of Timothy Brickell (Doc. 89) has been fully briefed and awaits decision by Magistrate Judge Robinson.

Fed. R. Civ. P. 12(f) motions are disfavored and considered an extreme remedy.[1]  "(The) proponent of such a motion must shoulder a 'formidable burden.'"[2]

Fed. R. Civ. P. 12(f) does not provide a mechanism to strike declarations.  "(By) its plain language, Federal Rule of Civil Procedure 12(f) cannot be used to strike an affidavit or declaration."[3]  By its terms Rule 12(f) applies to "pleadings." Pursuant to Fed. R. Civ. P. 7(a), pleadings are: a complaint, answer, answer to a counterclaim, answer to a cross-claim, third-party complaint, or answer to a third-party complaint.  A Rule 12(f) motion may not be used to attack non-pleadings.[4]

---

[1] *Stanbury Law Firm v. IRS*, 221 F.3d 1059, 1063 (8th Cir.2000).  See 2 Moore's Federal Practice § 12.37[1] at 12-93 to 12-94 (3d ed.2002).

[2] *U.S. ex rel. K & R Ltd. Partnership v. Massachusetts Housing Finance Agency,* 456 F.Supp.2d 46, 53 (D.D.C.,2006), citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 224 F.R.D. 261, 264 (D.D.C.2004).

[3] *In re Apollo Group, Inc. Securities Litigation*, 2007 WL 778653, 3 -4  (D.D.C.,2007); *Law Office of Azita Mojarad v. Aguirre,* 2006 WL 785415, 9 (D.D.C.,2006).

[4] *Skull Valley Band of Goshute Indians v. Kempthorne,*  2007 WL 915211, 7 (D.D.C. 2007), citing:  *Aftergood v. CIA*, 355 F.Supp.2d 557, 564-65 (D.D.C.2005) (Rule 12 cannot be used to strike a declaration); *Transam. Leasing, Inc. v. La Republica de Venezuela*, 21 F.Supp.2d 47, 55-56 (D.D.C.1998) (declarations "are not pleadings subject to a motion to strike pursuant to Rule 12(f)"), dismissed in part on other grounds 200 F.3d 843 (D.C.Cir.2000); and *Pilgrim v. Trustees of Tufts College*, 118 F.3d 864, 868 (1st Cir.1997) (noting that Rule 12(f) has "no applicability" to affidavits).

A motion to strike filed under Fed. R. Civ. P. 12(f) procedures must be filed within 20 days of the "pleading" to which it is addressed. Tim Brickell's first declarations was filed on October 5, 2007. He was deposed regarding that declaration on January 18, 2008. His second and third declarations were filed on March 31, 2008. April 20, 2008 was the twentieth day after Mr. Brickell's second and third declarations. He was deposed regarding his second and third declarations on May 22, 2008. June 11, 2008 was the twentieth day after his second deposition. Marriott's July 2, 2008 motion attacking those declarations is untimely.

Fed. R. Civ. P. 12(f) motions are disfavored, and appropriate to address only a limited number of matters including "redundant, immaterial, impertinent or scandalous matter."[5] Marriott does not suggest that Mr. Brickell's declarations are "redundant, ...(or) impertinent or scandalous matter." To be "immaterial" the matter must have "no possible bearing of (sic) the litigation."[6] Further, the Court must view the "pleading" being attacked in the light most favorable to,[7] and resolve any doubts in favor of, the non-moving party.[8] However, evidence is analyzed under relaxed standards of admissibility at the class certification stage.[9] Under these principles, Mr. Brickell's declarations regarding his sort and tally operations on Marriott's data are not "immaterial." They have a bearing on issues of numerosity, ascertainability, choice of

---

[5] *Biodiversity Conservation Alliance v. Norton,* 2006 WL 1274764, 1 (D.D.C. 2006).

[6] *McPhail v. First Command financial Planning, Inc.*, 247 F.R.D. 598, 604 (S.D.Cal. 2007), quoting *Platte Anchor Bolt, Inc. V. IHI Inc.*, 352 F.Supp.1048, 1057 (N.D.Cal. 2004).

[7] Id.

[8] Id., citing *In re 2TheMart.com, Inc. Sec. Litig.*, 1030.114 F.Supp.2d 955, 965 (C.D.Cal. 2000).

[9] Id. at 604, citing *Dukes v. Wal-Mart, Inc.*, 474 F.3d 1214, 1227 (9th Cir. 2007).

law, and propriety of statutory remedies.

The cases cited by Marriott in support of its reliance upon Fed. R. Civ. P. 12(f) are of no support to Marriott's position. In the *McPhail*[10] case, the court rejected as untimely under Rule 12(f) certain of the arguments defendants presented.[11] Above, the Plaintiffs rely upon those same time constraints in pointing out the untimeliness of Marriott's motion. Further, the *McPhail* court rejected the use of the motion to strike mechanism as a way to resolve issues more appropriately dealt with under Rule 12(b)(6) principles.[12] Substantively, the *McPhail* court found that there was no evidence to support a portion of the declaration in question; it found that his assumptions were "purely hypothetical."[13] Marriott does not argue here that Mr. Brickell lacked an evidentiary basis for his sort and tally operations. The underlying data is that produced by Marriott. The *McPhail* court denied the motion to strike with regard to the rest of the challenged report. In sum, the *McPhail* case supports the Plaintiffs' criticisms of untimeliness and misuse of Rule 12(f).

Both the *McPhail* court and Marriott cite to the *Fisher* case.[14] In that case the court deemed the expert report at issue to not be an expert at all, but just a recitation of the evidence in the record; it said, "Simply put, the Court does not perceive McFaddin's report as an 'expert

---

[10]*McPhail v. First Command Financial Planning, Inc.*, 247 F.R.D. 598, 604 (S.D.Cal. 2007).

[11]Id. at 606.

[12]Id. at 606 - 607.

[13]Id. at 605.

[14]*Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D. Ala. 2006).

report' at all, but rather as written advocacy by a lawyer...."[15] The *Fisher* court does not comment on whether the report in question is a F.R.E. 1006 summary. Mr. Brickell's declarations comprise summaries of voluminous data, not expert opinions.

Mr. Brickell's declarations are reports of sort and tally operations on Marriott's data, precisely the same operations Marriott relies upon, but without having made any Rule 26(a)(2) disclosures.[16] The *Fisher* court found it "curious" that a party would attack in its motion to strike precisely the type of evidence it also relied upon.[17] The Plaintiffs find Marriott's inconsistent positions regarding sort and tally exercises on its own data to be "curious" as well. Marriott's reliance on McGrath's declaration regarding data tallies involving the same type of sorting and counting exercise is persuasive on the question of whether tallies require expertise. Marriott did not designate Ms. McGrath as an expert for the same reason that Plaintiffs did not designate Mr. Brickell as an expert. Sorting and counting electronic records is routine clerical work, less complex than a Westlaw legal search, that does not require an expert as defined in the rules.

**II.     Mr. Brickell is Not Offered as an Expert Witness**

Marriott criticizes Mr. Brickell because he made no attempt to ascertain who was in the proposed class and because he did not inform himself as to what the class definition was. Such a criticism might be appropriate if Mr. Brickell had been asked to offer an opinion as to who was in the class. But Mr. Brickell's function was to examine electronic data produced by Marriott to determine if there were records of guest reservations/stays that met certain criteria. Thus, Mr.

---

[15] Id. at 281.

[16] See McGrath Declaration attached as Exhibit 4 to Doc. No. 127, filed under seal.

[17] *Fisher* at 279, at Footnote 9.

Brickell was asked by counsel whether guest records contained room price quotes in USD. Whether room prices were quoted in USD, RUR or Units is an important factor in the briefing on the pending motions for class certification and summary judgment. Mr. Brickell was asked to determine the fact of USD denominated room rates, not what the legal significance of that fact might be. The legal significance of that fact is a matter for counsel to place before the court, not Mr. Brickell. So too, Mr. Brickell found that every one of the 402,000 non-duplicative records produced by Marriott had its own confirmation number. Mr. Brickell was not asked for an opinion of what the legal significance of that fact may be. That is for counsel to present to the Court. Marriott creates a straw man by supposing that Mr. Brickell is offering expert testimony and then measuring his simple factual findings against the standard one would impose upon expert opinion testimony. Mr. Brickell was not asked for his opinion on any subject and he offered no opinions.[18]

### III.     Mr. Brickell's Factual Findings With Respect To D.C. Addresses.

During the preparation of various legal briefs on the issue of choice of law, counsel for Plaintiffs concluded that it would be useful to identify the number of guests with Washington, D.C. addresses who stayed at one or more of Marriott's Russia hotels during the recovery period. MARSHA/MRDW data produced by Marriott in electronic format (Exhibit 41) contains fields of information about guest reservations/stays including address fields. Counsel instructed Mr.

---

[18]     Q (by Mr. Cullen).     Have you ever been asked to offer an opinion with respect to which guests or what guests are included in any class that the plaintiffs have asked the court to certify?
          A.     No, sir.
          Q.     Do you hold an opinion with respect to that question?
          A.     No, sir.
Brickell Deposition at 194 (Marriott Exhibit 3).

Brickell to query the address fields (particularly the "state" field) to identify records with indications of a Washington, D.C. address. Mr. Brickell identified 11,324 non-duplicate guest records with D.C. in the "state" field and reported this in his Second Declaration. These records included 8,199 individual guests some of whom had multiple stays.[19] On the evening prior to Mr. Brickell's second deposition, counsel noticed that there were some records that had "D.C." in the state field which also contained indications in other fields that were inconsistent with a D.C. location. At his deposition on the following day, Mr. Brickell testified that there were 787 guests with such records. The revised count was included in subsequent filings with he Court.[20] Whether there were 8,199 guest with Washington, D.C. addresses or only 7,412 is immaterial as to whether the District has sufficient contacts to create state interests such that the assertion of D.C. law would be neither arbitrary nor fundamentally unfair.[21] Mr. Brickell's count of these records is certainly relevant and Marriott's challenge goes to the weight that should be attached to Mr. Brickell's declaration, not it's admissibility. In this connection, Mr. Brickell's corrected record count seems to have become necessary because of anomalies in Marriott's data (the use of "DC" in the state field where no reference to the District of Columbia was intended) rather than flaws in Mr. Brickell's counting methodology.

---

[19] Second Brickell Declaration at ¶¶ 13, 17.

[20] Plaintiffs' Memorandum of Points and Authorities In Opposition to Marriott's Motion for Summary Judgment (Doc. 115 at 26 of 49, note 61).

[21] Marriott's number - 7,412 - resulted from its erroneous subtraction of the number of guest stays (787) from guests (8199) (apples and oranges). The corrected number should be 7,628 D.C. guests. In any event, the difference is immaterial for present purposes.

Marriott attempts to scale back the number of guests with D.C. addresses by repeating its arguments related to issues it characterizes as "standing" thereby eliminating corporations, business guests, government employees, as well as those without email addresses and fax numbers. We will not burden the Court by reciting here Plaintiffs arguments on "standing" which are made elsewhere and fully address these issues.

## IV.   Written Confirmations

Marriott spends a great deal of effort here and elsewhere on the subject of written confirmations. This subject has been given a good deal of attention in Plaintiffs' Memorandum of Points and Authorities in Reply to Marriott's Opposition to Plaintiffs' Motion for Partial Summary Judgment.[22] The recent merits briefs provide additional focus and clarity since this question was originally addressed in the class certification briefs. Marriott's position that confirmations must be both *written* and *delivered* to guests *directly* by it cannot stand critical analysis.

First, the merits briefs show that neither § 28-3904(e), (f), or (h) of the D.C. CPPA require a writing as an element of liability. There is no requirement that misrepresentations under § 28-3904(e) or offers to sell under § 28-3904(h) be in writing. Further, while writings may provide useful evidence to establish liability, they are not part of the offense per se. Indeed, a failure to disclose material facts under § 28-3904(h) could be proven, in part, through the absence of written disclosures.

Second, consistent with these legal standards, Plaintiffs' proposed class definition makes no reference to a writing:

---

[22] Doc. 129 at 13-15 of 32.

> All persons who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, who received a room rate confirmation stated in U.S. Dollars, and whose final bill at checkout was stated in Russian Rubles.

(Doc. 62 at 1 of 25). Note that the proposed class definition requires only that the class member receive a room rate confirmation stated in U.S. Dollars. It provides nothing with respect to how that confirmation is transmitted. U.S. Dollar denominated prices and confirmation numbers are recorded in MARSHA and stored permanently in Marriott's MRDW database. Those records of relevant transactions are sufficient to establish Marriott's liability even if the information was communicated electronically to travel agents on behalf of the guests or orally by Marriott's toll-free operators who documented the reservations they handled on MARSHA.

The electronic records produced by Marriott reflect that each of the 402,000 reservation/stays reported in MARSHA/MRDW had its own reservation confirmation number and each had a room quote in USD. While it appeared initially that Marriott issued these reservation numbers and USD room price quotes directly to guests, Marriott steadfastly insists that it communicated this information *directly* to only a few guests. So few, it would appear, that Marriott raises numerosity for the first time in the Motion to Strike. Plaintiffs deal with this position in their Motion for Partial Summary Judgment by demonstrating that misrepresentations to guests through travel agents are legally sufficient to constitute misrepresentations to the guests whose identities (and usually credit card numbers) are given to Marriott by the travel agents.[23] So too, members of a group that are given a USD denominated group rate, later translated into an inflated RUR price, have been victimized by Marriott even if the group rates are communicated directly only to the group's leaders or representatives rather than to each individual member of

---

[23] Doc. 129 at 12-13 of 32.

the group separately.

Marriott's business requires that reservations be communicated to guests one way or another with a rate, date of the stay, and a confirmation number by which a guest can link himself with the reservation. Otherwise, a guest cannot demonstrate that he is entitled to a room when he presents himself at the check-in desk. By the same token, without this information, Marriott could not charge the guest's credit card if he becomes a "no-show" without cancelling the reservation. Marriott is linked with this information and it can hardly disavow its misrepresentations and failures to disclose merely because of an industry-wide practice of dealing through travel agents and other intermediaries. Marriott's liability does not depend upon a *direct written* communication to each individual class member.[24] Indirect communications through intermediaries where 402,000 USD denominated price quotes with unique confirmation numbers are recorded in Marriott's own business records are surely adequate. Numerosity is simply not a problem.

The question of ascertainability is not changed materially by whether Marriott provided written confirmations directly to its guests or whether it did so indirectly through travel agents. There are records that will permit the identification of individual guests who almost certainly registered at Marriott hotels with a name, address and credit card information. That information is available either through Marriott's own records including, but not limited to, its MARSHA/MRDW database, the Property Management System ("PMS") records of the individual hotels, or perhaps even through travel agency records. In short, if there was ever a class with a good paper trail from which its members could be identified, it is this one. The class

---

[24] *Id.*

definition proposed here is objective and the ascertainment of those who satisfy that definition will not require one to solve any great mysteries.

**CONCLUSION**

Marriott's Motion to Strike Portions of the Plaintiffs' Class Certification Brief should be denied, and the arguments made therein, ignored.

                                        Respectfully submitted,


                                        /s/ Paul D. Cullen, Sr.
                                        Paul D. Cullen, Sr., D.C. Bar # 100230
Mark W. Borghesani, Esq., D.C. Bar # 426745    Joyce E. Mayers,  D.C. Bar # 268227
c/o The Cullen Law Firm PLLC            Randall Herrick-Stare, D.C. Bar # 482752
1101 30th Street NW, Suite 300          Amy M. Lloyd, D.C. Bar # 975887
Washington, D.C. 20007                  The Cullen Law Firm, PLLC
(202) 944-8600                          1101 30th Street NW, Suite 300
*Of Counsel*                            Washington, D.C. 20007
                                        (202) 944-8600
                                        *Counsel for Plaintiffs*

Dated: July 15, 2008