UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MARRIOTT INTERNATIONAL, INC. ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 05-1138 (GK) |

**OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE STATEMENTS FROM MARRIOTT'S STATEMENT OF UNDISPUTED FACTS**

Marriott International, Inc. ("Marriott"), by its attorneys, submits this Opposition to Plaintiffs' Motion to Strike Statements from Marriott's Statement of Undisputed Facts. As explained below, Marriott has complied fully with its discovery obligations, including with respect to the factual basis for the two proposed undisputed facts challenged by Plaintiffs. Accordingly, there is no basis for Plaintiffs' request that the Court strike these two proposed facts under Federal Rule of Civil Procedure 37(c).

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

In the three years that this case has been pending, Plaintiffs have repeatedly redefined their claims and their class definition—resulting in an ever-changing approach to discovery that attempted to keep pace with their shifting theories. As explained herein, the alleged discovery gaps claimed by Plaintiffs in their Motion to Strike Statements from Marriott's Statement of Undisputed Facts ("Motion to Strike") are of their own making and not the result of any discovery deficiencies by Marriott.

A.    **Plaintiffs' Shifting Class Definition and Case Theory**

When Plaintiffs initially filed their Complaint on May 13, 2005, they premised their claim on the prospective guests' reliance on a currency calculator on marriott.com. Plaintiffs' Original Complaint at ¶¶ 44-54. Accordingly, Plaintiffs' initial discovery requests focused on information relating to Marriott's website and its features, including the currency calculator.

After discovery in this case revealed that relatively few people fit within Plaintiffs' initial theory of the case (*i.e.*, hotel guests who booked their reservations on marriott.com, who viewed and relied upon Marriott's currency calculator, and whose transaction had a substantial connection to the District of Columbia), Plaintiffs significantly changed and expanded their proposed class definition to one that, as Marriott has briefed elsewhere, is vastly overbroad and unascertainable. In their motion for class certification, Plaintiffs proposed that this Court should certify the following class:

> All persons who booked a room reservation at a Marriott hotel property in Russia through the Marriott Reservation System, who received a room rate confirmation stated in U.S. Dollars, and whose final bill at checkout was stated in Russian Rubles.

Plaintiffs' Motion for Class Certification Motion (Doc. 62) at 1.

Then, after Marriott's Opposition to Plaintiffs' Motion for Class Certification (Doc. 75) identified the extreme overbreadth of this proposed class, Plaintiffs again changed their approach, limiting their proposed class to those individuals who "received a written confirmation from Marriott." Plaintiffs' Reply in Support of Motion for Class Certification (Doc. 86) at 7. As Plaintiffs now emphasize, "the key factor is whether the guest received a written price confirmation from Marriott." *Id.* at 9; *see, e.g., id.* at 1, 3, 6 ("That written confirmation is the basis for Marriott's liability.").

B.   **Marriott's Diligent And Complete Discovery Response**

Throughout the course of discovery, Marriott has made significant efforts to respond to Plaintiffs' discovery in a manner that diligently accommodated very specific requests for data while also providing wide latitude for Plaintiffs to understand the material produced. On June 15, 2007, Marriott filed and served its Rule 26(a)(1)(A) Initial Disclosures, which included a list of 41 possible witnesses. *See* Disclosure of Possible Witnesses, attached as Exhibit 1. Ms. Deborah McGrath, whose affidavit testimony is the subject of Plaintiffs' Motion to Strike, was identified in Marriott's initial disclosures. *Id.* at 5. In addition, over a period of 2 1/2 years, Marriott responded fully and completely to five sets of discovery requests propounded by Plaintiffs, totaling 140 Interrogatories and Document Requests and resulting in a document production of approximately 16,000 pages of hard copy documents and over 45,000 pages of documents in electronic form.

In response to Plaintiffs' initial Rule 30(b)(6) Deposition Notice Marriott provided four corporate designees—including Ms. McGrath—to testify about a broad range of subjects designated by Plaintiffs. Those designees testified over several days in May and August of 2007. Plaintiffs were given wide latitude in the line of questioning posed to each of the deponents, including Ms. McGrath. However, Plaintiffs did not question these deponents regarding the affidavit statements of Ms. McGrath that Plaintiffs now challenge concerning (1) cancellation/no-show rates and data and (2) trip purpose data.

As the end of the discovery period neared, on February 27, 2008, Plaintiffs served Marriott with an additional Notice of Rule 30(b)(6) Deposition ("Notice") on the following subject areas of examination:

> 1. Marriott's data associated with Marriott's Reservation System; including the persons and departments responsible for processing,

storage, preserving, and transmittal of both electronic and 'hard copy' data associated with guest reservations at Marriott Russia hotels, including the MARSHA and OSCAR systems (including storage on magnetic media and optical disk, *see* 7M-001183) and the Marriott Data Warehouse. Marriott's policies and procedures regarding data retention both before and after May 2002.

2. Information regarding the guest reservation data provided to Plaintiffs in discovery in this matter, including the identification of the data fields utilized by Marriott; the information contained in each data field; the source of information for each guest reservation; Marriott's processes of gathering and producing the electronic data; and the databases accessed to respond to Plaintiffs' discovery requests.

Notice, attached as Exhibit 2 at 3-4. In response, Marriott objected to Plaintiffs' Notice as improper because, among other things, the topics for examination either had already been explored with prior 30(b)(6) witnesses, or could have been explored with prior 30(b)(6) witnesses because the relevant documents had been produced prior to those witnesses' depositions. *See Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 244 F.3d 189, 193 (1st Cir. 2001). As Marriott explained to the Court, Plaintiffs had ample opportunity to explore each of the topics during the prior corporate depositions of Marriott, and because "plaintiffs did not explore those topics in the level of detail that they now wish they had does not make plaintiffs' current request to depose Marriott again on these topics proper." Joint Status Report Regarding Discovery filed on March 18, 2008 (Doc. 80) at 12-15. In apparent recognition that they missed their opportunity to explore these areas of inquiry, Plaintiffs voluntarily withdrew the new Notice. Joint Status Report Regarding Resolution of Discovery Issues filed on March 28, 2008 (Doc. 84) at 4 ("The parties have met and conferred, and plaintiffs have agreed to withdraw their February 27, 2008 Notice of Rule 30(b)(6) Deposition directed to Marriott.").

On June 2, 2008, Marriott filed its Motion for Summary Judgment (Doc. 106) and an accompanying Statement of Undisputed Facts in Support of its Motion for Summary Judgment.

Of Marriott's seventy-six Statements of Undisputed Facts ("MSUF"), Plaintiffs now take issue with two: MSUF 22 and MSUF 42.

> Marriott's Statement of Undisputed Fact (MSUF) No. 22 states:
>
>> The Marriott Reservation Data Warehouse ("MRDW") is a central repository for data concerning Marriott hotel reservations made through the various reservation channels that access MARSHA. McGrath Second Aff., ¶ 13. The guest data in MRDW pertains to reservations, not actual guest stays. *Id.* Thus, the existence of a guest record in MRDW does not indicate that the guest actually fulfilled the reservation, stayed at the hotel, or paid for the room. *Id.* Approximately 25-30% of reservations in MRDW for the franchised hotels in Russia result in cancellations or no-shows, which is consistent with the cancel rates of North American hotels. *Id.*, ¶ 14.

Marriott cited to the foregoing fact only in its factual summary relating to reservations for the Marriott Russian Hotels. *See* Marriott's Motion for Summary Judgment (Doc. 106) at 7-8. Although Plaintiffs move to strike the entirety of MSUF No. 22, the argument in their Motion to Strike is directed only at the final sentence of this MSUF. *See infra* n. 3.

> Marriott's Statement of Undisputed Fact (MSUF) No. 42 states:
>
>> The MRDW contains data regarding the trip purpose as reported by guests for the years 2005 forward. McGrath Second Aff., ¶ 15. For each of these years, trip purpose data was available for between 87% to 90% of the total Marriott Russia Hotel guests stays. *Id.* From this available data, the percentage of business stays is as follows: 89% of guests stays were reported as business travel in 2007; 84% were so reported in 2006; and 79% were so reported in 2005. *Id.*

Marriott cited to the foregoing fact in Opposition to Plaintiffs' Motion for Partial Summary Judgment which was filed on June 16, 2008. *See* Marriott's Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 116) at 39.

On July 1 and July 9, 2008, Plaintiffs requested that Marriott withdraw these two MSUFs. On July 3 and July 11, 2008, Marriott refused Plaintiffs' requests because the factual

statements at issue are based on witnesses' knowledge and documents that were available to Plaintiffs in discovery.[1]

## II.   ARGUMENT

The Federal Rules of Civil Procedure clearly delineate the obligations of a party to disclose and produce relevant documents and other materials in the course of litigation. Pursuant to Rule 26(a)(1), a party must provide the names of *persons with discoverable information* and a copy *or description by category* of all documents and electronically stored information that the party may use to support its defenses. Fed. R. Civ. Pro. 26(a)(1)(A)(i)-(ii). Pursuant to Rules, 33 and 34, a party must produce relevant documents and other materials *in response to another party's discovery requests*. Fed. R. Civ. P. 33(b), and 34(b). Rule 37(c) provides for the extreme consequence of exclusion only if "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," and, even then, only if such failure was not "substantially justified or harmless." Fed. R. Civ. P. 37(c).

Marriott has complied with its obligations. After being served with the Complaint, Marriott timely identified, by category of electronically stored information, the guest databases in its possession, custody and control—namely the Marriott Reservation Data Warehouse ("MRDW") and the Property Management Systems ("PMS") for the managed hotels. Also pursuant to Rule 26(a), Marriott provided Plaintiffs with the names of all persons with discoverable information, including Ms. McGrath. In addition, Marriott provided complete responses to all of Plaintiffs' discovery requests pursuant to Federal Rules 33 and 34. However, the two discrete facts to which Plaintiffs now object were never requested in discovery or sought

---

[1] For the reasons stated in Marriott's Opposition to Plaintiffs' Motion for Partial Summary Judgment, Marriott disagrees with Plaintiffs' case summary in its Motion to Strike. *See generally* Marriott's Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 116).

from Marriott witnesses in deposition, despite that the source of this data and the relevant witnesses were disclosed by Marriott pursuant to Federal Rule 26(a). Accordingly, there is no basis for striking any of the challenged statements under Federal Rule 37.[2]

### A.     MSUF 22:  Marriott's Reservation Data

Plaintiffs request that the Court strike MSUF 22, relating to the content of Marriott's reservation data, on the ground that the cited testimony was provided only after discovery and that the underlying data supporting the factual allegation was not produced in the course of discovery.[3] Motion to Strike at 8-9. Plaintiffs' objection is misplaced.

---

[2] The only Rule 37 case cited by Plaintiffs in support of their argument that the two MSUFs should be precluded—*Norden v. Samper*, 544 F.Supp.2d 43 (D.D.C. 2008)—supports Marriott's position. Unlike the present case, the plaintiff in *Norden* failed to produce a letter that was clearly requested by the defendant. *Id.* at 49 (holding that the "letter was never produced by either party in discovery, although their respective document requests to each other would have encompassed it"). Moreover, the late-produced letter in *Norden* was both central to the plaintiff's claim and directly responsive to the defense. *See id.* Further, unlike here, *Norden* did not pertain to the situation of testimony given by a witness whom the opposing party had a full opportunity to depose about the topic of the testimony at issue. As other cases (including those cited in *Norden*) make clear, "it would be inappropriate to exclude" testimony of witnesses who were properly disclosed under Rule 26 – as Ms. McGrath was in this case. *See Elion v. Jackson*, 544 F. Supp. 2d 1, 7-8 (D.D.C. 2008).

[3] Although Plaintiffs request that MSUF 22 be stricken in its entirety, Plaintiffs only take issue in their Motion to Strike with the final sentence of this MSUF relating to the percentage of reservations contained in the MRDW database that did not result in actual guest stays. Motion to Strike at 6-7, 8-9. Plaintiffs do not—and cannot—object to the other portions of this MSUF, such as Marriott's valid statement that the MRDW "is a central repository for data concerning Marriott hotel reservations" and, as such, contains guest data relating to "reservations, not actual guest stays." Likewise, Plaintiffs do not—and cannot—object to Marriott's statement that "the existence of a guest record in MRDW does not indicate that the guest actually fulfilled the reservation, stayed at the hotel, or paid for the room." These factual assertions are correct, obvious from the name of the database ("Marriott *Reservation* Data Warehouse"), and consistent with Marriott's discovery responses, guest data production and prior submissions to this Court.

For example, in Marriott's Surreply in Opposition to Plaintiffs' Motion for Class Certification ("Surreply") (Doc. 62), which was filed approximately 2 months prior to Marriott's MSUFs, Marriott made clear that the MRDW data upon which Plaintiffs' expert, Timothy Brickell, relied related only to reservations, not actual guest stays:

> Mr. Brickell purports to rely on "statement made by opposing counsel" concerning the Marriott data he analyzes, Brickell Second Decl. ¶ 3, but neglects to mention the significant fact that undersigned counsel expressly advised Mr. Brickell that the data at issue [MRDW] accounts for <u>reservations</u>, not actual <u>guest stays</u>, and that the high rate of cancellations and no shows is both surprising and meaningful. Thus, the reservation data upon which Mr. Brickell relies overstates actual guest stays.

To begin with, MSUF 22 is supported by Ms. McGrath's testimony, and Plaintiffs had a full and fair opportunity to depose Ms. McGrath on this matter, but they chose not to. In the months prior to Ms. McGrath's corporate designee deposition, Marriott produced three sets of discovery responses and several batches of the guest data, including MRDW records. In the course of her deposition, Ms. McGrath responded fully to questions regarding distinctions between the PMS and MRDW databases. *See* Deposition of Deborah McGrath at 67 (responding "Yes, sir. That's the reservation warehouse . . ." in response to inquires regarding the MRDW acronym); *id.* at 69-71 (referring to PMS data as capturing guest stays) (McGrath Dep. excerpts attached as Exhibit 4). Plaintiffs opted not to explore the content and scope of Marriott's databases beyond superficial inquires posed during Ms. McGrath's deposition. It is irrelevant whether her affidavit came after the close of discovery, because Plaintiffs could have deposed her in the discovery period and, indeed, voluntarily withdrew their new notice of deposition which intended to do just that. *See supra* 3-4, n. 3, discussing Marriott's efforts to educate Plaintiffs as to the scope and contents of the guest databases.

In addition, to the extent Plaintiffs complain not only about Ms. McGrath's testimony, but documents related to that testimony, Marriott fully complied with its disclosure and discovery obligations regarding Plaintiffs' request for Marriott Russia Hotels guest data in Marriott's custody, possession and control. In compliance with Rule 26(a), Marriott fully disclosed the categories of guest information and relevant electronic databases. Moreover, in

---

Surreply at 8-9 (emphasis in original). In fact, in their Motion to Strike, Plaintiffs acknowledge that "MRDW (Marriott Reservation Data Warehouse) is the reporting system dedicated to providing reporting and analytic capabilities for reservation data from MARSHA." Motion to Strike at 2, n. 5.

Moreover, and contrary to Plaintiffs' unsupported assertion that "Marriott consistently represented that the MARSHA/MRDW [sic] it produced related to guests who stayed at the Marriott hotels," *id.* at 6, n. 15, Marriott's discovery transmittal letters attaching MRDW records *consistently* referred to the MRDW data as "guest data" or "guest information," not "guest stay" data. *See, e.g.,* Letters dated May 7, 2007; June 21, 2007; August 1, 2007; February 27, 2008; and May 7, 2008, attached collectively as Exhibit 3.

EAST\41998647.3                                            8

response to discovery propounded by Plaintiffs seeking information related to guest stays at Marriott Russian Hotels, Marriott objected, explaining that it only had possession of guest stay data for the managed hotels. *See, e.g.,* Marriott's Responses to Plaintiffs' First Set of Interrogatories and Requests for Production at 2 (objecting to the term "Marriott Russia Hotels" because it included hotels owned by franchises that are independent entities); *id.* at 5 (conceding that Marriott will produce responsive guest stay data for the Marriott managed hotels). Accordingly, Marriott properly responded to Plaintiffs' discovery requests for "guest stay" information by producing PMS data for each of the managed hotels—which is the only "guest stay" data in Marriott's possession and control. In addition, and in an effort to produce all guest data in its possession, Marriott also produced reservation data from its MRDW database—which includes guest reservation data for both managed and franchised hotels.[4] The data produced by Marriott regarding each of the seven hotels at issue in this litigation supports and is consistent with MSUF 22.

Notably, Plaintiffs do not—and cannot—allege that Marriott either failed to identify Ms. McGrath as a person with discoverable information or failed to identify a category of electronically stored information, specifically MRDW data, that may be used in support of Marriott's defenses. Further, Plaintiffs never propounded discovery seeking information relating to Marriott's reservation cancellation and no-show rates. Plaintiffs have identified no interrogatory or document production request that encompasses this information. None of the interrogatories or document production requests referenced in Plaintiffs' July 1 or July 9 meet-and-confer letters sought this information. Further, in their Motion to Strike, Plaintiffs do not proffer any discovery request to which such information would be responsive.

---

[4] Plaintiffs apparently assumed that the inclusion of check-in and check-out dates in the MRDW guest data fields is

Marriott purposefully worked to educate Plaintiffs on the scope and contents of its various guest databases. If Plaintiffs required clarification of Marriott's discovery objections, answers or data (including cancellation and no-show rates), Plaintiffs should have taken full advantage of their opportunity to propound discovery or question Marriott witnesses on these issues. As the Federal Rules discussed above make clear, Marriott is under no obligation to voluntarily produce volumes of unsolicited electronic data, where the *source* of such data was already made known to Plaintiffs, and where *witnesses* with knowledge of such data were made fully available for deposition.[5]

### B.   MSUF 42:   Trip Purpose Data

Plaintiffs request that the Court strike MSUF 42, relating to Marriott's trip purpose data, on the grounds that the cited testimony was provided only after discovery and that the information constitutes "newly disclosed facts" that are "prejudicial" to Plaintiffs. Motion to Strike at 1; *see id.* at 8-9. Plaintiffs' objections are unfounded.

All of the information stated in MSUF 42 is contained in Marriott's MRDW database. Ms. McGrath attested to the database's contents, including the field of "trip purpose" data. Both the database and witness were made known and available to Plaintiffs in compliance with Marriott's Rule 26(a) disclosure obligations. Further, based on prior filings, Plaintiffs were well aware of this defense while discovery was still pending. *See, e.g.,* Motion Partial Dismissal of Plaintiffs' Second Amended Class Action Complaint (Doc. 65). The only reason Plaintiffs are

---

indicative of an actual stay. Plaintiffs are wrong. Such information identifies the beginning and end of a guest's reservation dates—as Plaintiff could have learned through additional discovery they did not pursue.

[5] Although Marriott has not failed to provide any required information, Plaintiffs' Motion to Strike fails for the additional reason that the alleged failure was harmless. *See* Fed. R. Civ. P. 37(c). Based on the guest data undeniably provided to Plaintiffs by Marriott, (i.e., the MRDW data and the PMS data for the managed hotels with one-way interfaces), Plaintiffs could determine an average cancellation or no-show rate for managed hotels and then extrapolate the percentage of MRDW reservations for the franchised hotels that did not result in an actual stay.

unfamiliar with the MRDW statistics contained in MSUF 42 is because they never explored the data pertaining to the trip purpose of Marriott's guests.

Pursuant to its discovery and disclosure obligations, Marriott advised Plaintiffs of the MRDW electronic database and provided ample manuals and materials discussing the databases' contents. However, Plaintiffs failed to examine this issue in either written discovery or depositions. Although Marriott's MRDW data contains trip purpose designations as reported by guests for the years 2005 forward, Plaintiffs never requested its production. To the contrary, Plaintiffs expressly customized their request for guest data production, specifying both the scope and format of the data that Marriott was instructed to produce. Further, Plaintiffs voluntarily abandoned their corporate designee deposition in which they intended to inquire into "[i]nformation regarding the guest reservation data provided to Plaintiffs in discovery in this matter, including the identification of the data fields utilized by Marriott." *See* Joint Status Report Regarding Discovery (Doc. 80) at 12; Joint Status Report Regarding Resolution of Discovery Issues (Doc. 84) at 4. Plaintiffs cannot now complain that they did not receive information that they failed to request after relevant witnesses and categories of documents were disclosed in compliance with Rule 26(a).

Despite Plaintiffs' failure to request such trip purpose data, the failures alleged by Plaintiffs are harmless. *See* Fed. R. Civ. P. 37(c). Marriott produced a series of business records relating to the volume mix of corporate and leisure travel for the Russian hotel market. *See* 14M-02856 – 14M-02905; 14M-03056 – 14M-03065; 14M-03135 – 14M-03154. The Hotel Performance Benchmarking Reports produced by Marriott span 2 years (2006 and 2007) and identify the types of guests who stay at both the Marriott Renaissance Moscow Hotel and hotels in the aggregate Russian market. Based on these reports (of which there are 8, not 1 as Plaintiffs

allege, *see* Motion to Strike at 9), the corporate/conference guests comprise in excess of 50% of the guests, while leisure travelers comprise only 1-4% of the guests. *See* Hotel Performance Benchmarking Reports, attached collectively as Exhibit 5.[6]

Moreover, Plaintiffs' own experiences substantiate that "an overwhelming proportion of guests at Marriott Russian Hotel are business travelers." Marriott's Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 116) at 39. Of the four named plaintiffs, three (Shaw, Mendelson, and the employees of CSIS) stayed at the Marriott Russia Hotels for business purposes. *See* Marriott's Memorandum in Support of its Motion for Summary Judgment (Doc. 106) at 11-12, 18-19, 26, 30-31; *see also* Marriott's Motion Opposition to Plaintiffs' Motion for Partial Summary Judgment (Doc. 116) at 18-19, 23, 24-25. Accordingly, contrary to Plaintiffs' contention, the assertion in the MSUF the fact that a majority of Marriott Russian Hotel guests are business travelers is well supported by the record.

### C. Plaintiffs Provide No Basis for Claim that Marriott's Facts Constitute Expert Opinions

In an effort to avoid the necessary implications of their failure to conduct discovery into the facts at issue here, Plaintiffs baldly allege that the facts must somehow be construed as "expert opinions." Plaintiffs offer no reasoning or basis to support this conclusory allegation. Ms. McGrath has not offered any expert opinions in connection with MSUFs 22 and 42. She has reported factual information that Plaintiffs could have discovered had they sought to. Despite Plaintiffs' failure to do so, Marriott—in its meet-and-confer letters—offered Plaintiffs alternative mechanisms to extrapolate the factual conclusions at issue from the discovery produced. The

---

[6] Plaintiffs' evidentiary objections to these reports are incorrect. First, contrary to Plaintiffs' suggestion, the fact that the Benchmarking Reports compile company data does not render the document a summary of voluminous writing under Federal Rule of Evidence 1006, and Plaintiffs offer no authority to support their assertion. Second, the fact that the Benchmarking Reports were authored by a vendor on the company's behalf does not render the document hearsay. As the reports were kept in the course of a regularly conducted business activity and it was the

Court should reject Plaintiffs' unsupported effort to transform their lack of diligence in discovery into an argument that Marriott's Statements of Facts are based on expert opinions.

## CONCLUSION

Pursuant to its obligations under the Federal Rules of Civil Procedure, Marriott has identified the witnesses at issue and has made those witnesses available for deposition. Marriott has produced the relevant documents in its possession pursuant to Rule 26(a) and in response to Plaintiffs' discovery requests. Further, Marriott consistently has supplemented its production in a timely manner. There is no ground for any allegation of a Rule 37(a) violation. For the reasons discussed herein, Marriott requests that Plaintiffs' Motion to Strike Statements from Marriott's Statement of Undisputed Facts be denied.

Respectfully submitted,

Dated: July 22, 2008

/s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Charles P. Scheeler (Bar No. MD00295)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant Marriott International, Inc.*

---

regular practice of that business activity to make the report, the documents clearly fall within a hearsay exception. Fed. R. Evid. 803(6).