UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BRITT A. SHAW, et al.**            )<br>                                                  )<br>                                                  )<br>**Plaintiffs,**                              )<br>                                                  )   Civil Action No. 05-1138(GK)<br>**v.**                                           )<br>                                                  )<br>**MARRIOTT INTERNATIONAL, INC.**  )<br>                                                  )<br>**Defendant.**                            )<br>_____ ) | |

**PLAINTIFFS' REPLY TO MARRIOTT'S OPPOSITION TO PLAINTIFFS'
MOTION TO STRIKE STATEMENTS FROM MARRIOTT'S STATEMENT
OF UNDISPUTED FACTS PURSUANT TO FED.R.CIV.P. 37(c)**

Of Counsel:
Mark Borghesani, Esq.
c/o The Cullen Law Firm, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C., 20007
Tel: (202) 944-8600
Fax: (202) 944-8611

Paul D. Cullen, Sr. (100230)
Joyce E. Mayers (268227)
Randall S. Herrick-Stare (482452)
Amy M. Lloyd (975887)
The Cullen Law Firm, PLLC
1101 30th Street, N.W., Suite 300
Washington, D.C. 20007
Tel: (202) 944-8600
Fax: (202) 944-8611
*Counsel for Plaintiffs*

August 1, 2008

**INTRODUCTION AND SUMMARY**

Marriott begins as usual with an argument related to class certification rather than with the question at hand – whether Marriott's Statement of Undisputed Facts (MSUF's) Nos. 22 and 42 should be stricken under Fed.R.Civ.P. 37(c) because they are based upon factual representations and evidence not produced by it prior to the close of discovery. Plaintiffs respond first to the merits of Plaintiffs' pending motion and then provide a few brief comments on the implications of the present motion on class certification.

During discovery, Plaintiffs consistently asked for documents showing guest stays at Marriott's Russia hotels, and Marriott responded to those requests consistently identifying the electronic data it provided from its MRDW data warehouse as evidence of guest stays. Plaintiffs accepted these representations at face value and saw no reason not to believe Marriott. It was not until dispositive motions were filed that Marriott first asserted that the guest data it previously produced was not what it was represented to be. Marriott now wishes to offer evidence – long after discovery has closed – of cancellations and no-shows. Because Marriott never provided documents on cancellations and no-shows as it was required to do under Fed.R.Civ.P. 26(a)(1)(A)(ii) it may not blind-side Plaintiffs with that evidence under Fed.R.Civ.P. 37(c).

**ARGUMENT**

    **I.**    **Marriott Failed to Produce Documents Relevant to its Defenses**

        **A.**    **Plaintiffs Requested and Marriott Produced Documents Covering Guest Stays**

During discovery, Plaintiffs' propounded several discovery requests seeking information

related to **guests stays** at Marriott Russia Hotels.[1]  Marriott consistently represented that the MARSHA/MRDW it produced in response to these requests was guest information.  Marriott's written discovery responses and transmittal letters accompanying the production of electronic data consistently refer to *guest information.*   For example:

1. In a letter dated June 21, 2007 from counsel, Marriott explains that the enclosed CD "contains guest information ......" and "consistent with the parties' agreement and the previous production of guest data for other Russian hotels ......"  The fields of data produced include the guests' *arrival* date and *check-out* date.  Exhibit 98.

2. A letter dated August 2, 2007 from Marriott counsel states, "[e]nclosed for production please find CD Vo1006, which contains worldwide guest information for the Renaissance Moscow hotel."  The letter identified the fields of data produced, these include the guests' *arrival* date and *check-out* date.  Exhibit 99.

3. A letter dated May 7, 2007 from Marriott counsel states that the data on one enclosed CD corresponds to US guest information previously produced for other Marriot Russia hotels and that the data on the second enclosed CD is guest information from Marriott International for the following properties: Renaissance Samara; Renaissance St. Petersburg Baltic; Moscow Marriott Royal Aurora; Moscow Marriott Grand; Moscow Marriott Tverskaya and the Renaissance Moscow hotel.  Exhibit 100.

4. In a letter dated August 1, 2007 from counsel, Marriott explains that the 2007 worldwide guest data was compiled by the Marriott Reservations Data Warehouse (MRDW) Group, which uses data from MARSHA, Marriott's reservation database, to compile the 2007 worldwide guest data.  The letter also states that "this data contains guest information from both MARSHA and the PMSs and thus should be consistent with the 2005 US guest data previously produced."  Exhibit 101.

5. Interrogatory No. 1 of Plaintiffs' first discovery requests sought information related to "all *guests* of the Marriott Russia hotels during the relevant time period," including "dates of their *stays*, the room rates quoted and/or provided to them upon making their reservations, and the amount of their *final bills* in Russian rubles."  Marriott agreed to produce documents containing responsive *guest* information for May 2002 to the present.  Exhibit 7 to Plaintiffs' Memorandum in Support of Motion for Class Certification.  (Doc. 109).

---

[1] See Plaintiffs' opening brief (Doc. 131 at 7 of 11, note 15).

2

6.  Document Request No. 1 of Plaintiffs' second set of discovery requests sought electronic data relating to *guest stays,* including the date of *arrival* and *check-out*. Marriott agreed to produce documents containing the requested information. Exhibit 89 to Statement of Material Facts as to Which There Is No Genuine Dispute in Support of Plaintiffs' Motion For Partial Summary Judgment on the Issue of Liability. (Filed under seal per Doc. 104).

Marriott's discovery responses consistently make reference to guest information and never mention anything about cancellations or no-shows. Indeed, there are no individual fields of information contained in the electronic data produced by Marriott that identify data related to cancellations or no-shows. See fields of information identified in Exhibits 98, 99, &100. Plaintiffs have no doubt that Marriott hotels experience cancellations and no-shows, but Marriott provided data in response to Plaintiffs' request for information on guest stays and gave every reason to believe that that guest data it produced showed actual guest stays *net* of cancellations and no-shows.

      **B.    Marriott Never Fulfilled its Obligation Under Fed.R.Civ.P. 26(a)(1)(A)(ii) to Produce Documents Dealing with Cancellations and No-Shows that it Intended to Use as a Defense**

           **1.    Marriott's Factual Contention was Raised for the First Time Following the Close of Discovery**

On March 20, 2008, one week prior to the close of discovery, Theresa Coetzee, counsel to Marriott made oral references to cancellation rates during a meeting of counsel held at the request of the Magistrate Judge Robinson. No specific numbers were mentioned and no documents were produced. Prior to Marriott's submission of MSUF No. 22, the record on guest stays was comprised solely of data submitted by Marriott MARSHA/MRDW database that Marriott consistently characterized as guest data. On the strength of those representations, counsel for Plaintiffs had no reason to probe beyond the face of the data presented. Notably, to

date Marriott has failed to produce documentary evidence of cancellations and no-shows and is relying solely on the unsupported statements of Marriott executive Deborah McGrath.

Despite consistently representing that the MARSHA/MRDW data it produced was guest data, after discovery closed Marriott reversed this position and claimed the data related to reservations, not actual guest stays. Marriott's belated argument in MSUF No. 22 that approximately 25-30% of reservations in MRDW for the **franchised hotels** in Russia result in cancellations or no-shows contradicts repeated representations by Marriott through its counsel that the MARSHA/MRDW data it produced was guest data.

Curiously, Marriott's argument that it fully complied with its discovery obligations begins with a recitation of the very rule it violated. Marriott recites Fed. R. Civ. P. 26(a)(1)(A)'s requirement that a party provide the names of persons with discoverable information and a ***copy or description by category of all documents and electronically stored information*** that the party may use to supports its claims or defenses.[2] Marriott points to its 26(a) witness disclosures dated June 15, 2007 as evidence that the factual basis for MSUFs Nos. 22 and 42 was disclosed to Plaintiffs. Yet ignores the elephant in the room – its failure to provide a copy or description by category of *documents* pursuant to 26(a)(1)(A)(ii). Marriott purports to have complied with its 26(a) obligation by identifying "by category of electronically stored information, the guest databases in its possession, custody, and control." But none of the data actually disclosed makes reference to cancellations or no-shows.

Marriott contends that Plaintiffs have not asked the right questions to elicit information on cancellations or no-shows. Marriott argues that the discovery gaps at issue are because

---

[2] Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

"Plaintiffs did not question these deponents regarding the affidavit statements of Ms. McGrath that Plaintiffs now challenge concerning (1) cancellation / no-show rates and data and (2) trip purpose data." Marriott conveniently ignores the fact that McGrath's Second Affidavit *did not exist* until nearly a year *after* she was deposed and after the close of discovery. More importantly, McGrath statements regarding cancellation / no-show rates is contradicted by Marriott representations throughout discovery. Plaintiffs accepted those representations at face value and simply had no reason to inquire further.

    2.    **Marriott Provides No Evidentiary Support for MSUF No. 22.**

The sole basis for this representation regarding cancellations and no-shows is a declaration executed by one of Marriott's own executives two months *after* the close of discovery.[3] Ms. McGrath fails to cite a single document in support of her assertions and/or opinions that were disclosed to Plaintiffs during discovery. Plaintiffs are left wondering what data and/or methodology Marriott is using to arrive at the 25-30% cancellations or no-show number at the franchised hotels. It is also interesting that the 25-30% number supposedly represents events at Marriott's *franchised hotels* as to which Marriott constantly tells Plaintiffs it has no data. Marriott offers no representations as to cancellations and no-shows at its *managed* hotels where one would assume it would have a great deal of data. Marriott still has not provided documents to support its representation as to cancellations and no shows as to any individual hotels or guests.

Prior to filing this motion, Plaintiffs engaged in a meet and confer process in the hopes or

---

[3] Second Declaration of Deborah McGrath is Exhibit 1 to Marriott's Statement of Undisputed Facts filed on June 3, 2008 (Docket 110-2).

resolving this issue without burdening the court. During this process Marriott represented that "[e]stimations of cancellations or no shows can be extrapolated from comparisons and analysis of the data provided." Marriott has failed to provide any information as to what "comparisons and analysis" was performed, nor has Marriott identified the data compared. Marriott's representation that "estimations" "can be extrapolated from comparisons and analysis" further proves that MSUF No. 22 is not an undisputed fact. Rather, it is either an expert opinion or a Fed. R. Civ. P. 1006 summary without the required accompanying documentary support. Either way, Marriott has failed to comply with the Fed. R. Civ. P. requirements for offering an expert opinion *or* a Fed. R. Civ. P. 1006 summary.

      **C.    Marriott Never Fulfilled its Obligation Under Fed.R.Civ.P. 26(a)(1)(A)(ii) to Produce Documents Related to the Purpose of Guest Stays**

In violation of Fed.R.Civ.P. 26(a)(1)(A)(ii) Marriott failed to provide or identify documents in support of its claim that the majority of guests at Marriott Russian Hotels were on business travel.[4] Despite this failure, in June 2008, two months after the close of discovery, Marriott hinted at this affirmative defense. The Second Declaration of Marriott executive Deborah McGrath[5] attached as Exhibit 1 to Marriott's Statement of Undisputed Facts contains highly specific representations regarding trip purpose data for 2005 to 2007. These assertions are not supported by documentary evidence or deposition testimony. In fact, the Second McGrath Declaration is the only "evidence" cited in support of MSUF No. 42.

---

[4] Fed. R. Civ. P. 26(a)(1)(A)(i)-(ii).

[5] Second Declaration of Deborah McGrath is Exhibit 1 to Marriott's Statement of Undisputed Facts filed on June 3, 2008 (Docket 110-2).

When pressed as to the evidentiary basis for these claims Marriott identified documents produced in their 14th submission on May 7, 2008 - fully nine months after Plaintiffs deposed Ms. McGrath[6] and six weeks after the close of discovery.  These documents are all entitled "Hotel Performance Benchmarking Report"[7] and appear to be a series of generic surveys produced by an outside consultant.  In its brief in opposition to Plaintiffs' motion to strike Marriott admitted that these reports "span 2 years (2006 and 2007) and purport to identify the types of guests who stay at both the *Marriott Renaissance* Moscow Hotel and hotels in the **aggregate Russian market**."[8] (Emphasis added).  Despite Marriott's admission that these documents pertain to only one of the seven hotels at issue (Marriott Renaissance) and are limited to 2006 and 2007, Marriott cites them in support of the representations made in MSUF No. 42 regarding all Marriott Russian hotels for years 2005 forward.

Marriott's estimates regarding the business nature of guest travel generally do not appear to be linked to individual guests.  Even if Marriott could establish a business purpose for individual guest stays, such data is legally irrelevant given the CPPA's definition of consumer that includes corporate persons.  D.C. CPPA §29-3901(a)(1) and (2).  See Plaintiffs' Memorandum of Points and Authorities in Reply to Marriott's Opposition to Plaintiffs' Motion for Summary Judgment (Doc. 129 at 16-17 of 32).  Further, Marriott can point to no statutory bar to the status of employees as consumers simply because they are reimbursed for their personal expenses while on travel status.  Indeed, the statute was amended in 2000 to delete the

---

[6] Ms. McGrath's deposition was taken on August 7, 2007.

[7] Marriott identified 14M-02856-905; 14M-03056-65; and 14M-03135-54.

[8] Doc. 135 at 11.

requirement for actual damages making the issue of reimbursement irrelevant. Thus, even if the Court were to permit Marriott to introduce previously undisclosed evidence as to the purpose of a guest stay, that evidence would be legally irrelevant to either class certification or remedy.

## II.     Class Certification

Marriott protests that Plaintiffs have shifted their class definition and case theory. Marriott's Opp. Br. at 2.   In truth, Plaintiffs have made no changes to the class definition proposed in their Motion for Class Certification (Doc. 62 at 1).  Plaintiffs have made a number of arguments in response to Marriott's innovative and shifting defenses to class certification, but have never changed their proposed definition.

Plaintiffs' class definition is appropriately directed toward capturing all Marriott guests with a claim similar to that of the named Plaintiffs.  The claimed misrepresentations and omissions of material fact were made by Marriott through its Reservation System.  Thus, under the proposed definition a guest is within the class if he or she booked a room through Marriott's Reservation System, received a room rate confirmation in U.S. Dollars (USD) and paid at checkout in Russian Rubles (RUR).  A guest books a room through Marriott's Reservation System whether he does so directly with Marriott or indirectly through a travel agent who receives USD price quotes and confirmation numbers from MARSHA.  Neither the proposed class definition nor the substantive provisions of D.C. CPPA §28-3604 require *direct written communications* by Marriott to individual class members.  Indirect communications that incorporate bogus USD price quotations and confirmation numbers that have all been recorded in MARSHA are sufficient.  There is no requirement that class members be ascertained prior to class certification – only that they be identifiable.  *Fainbrun v. Southwest Credit Systems, L.P.*,

246 F.R.D. 128, 133 (E.D.N.Y. 2007) (citing *Hnot v. Willis Group Holdings Ltd.*, 228 F.R.D. 476, 481 n. 2 (S.D.N.Y.2005)).  There is no indication that the names of individual class members will not be ascertainable through reservation and/or registration records following class certification.

      Fed.R.Civ.P. 23(c)(1)(C) and (d)(2) provide great flexibility to a trial court in defining a class or amending the class definition at any time prior to final judgment.  There is no legal support for Marriott's effort to handcuff either the Plaintiffs or the Court to a specific class definition prior to class certification particularly where extensive merits discovery has been ongoing prior to class certification.  In point of fact, Plaintiffs have not changed the class definition proposed in their pending motion.  Even if they had, under the rules the court is free to make whatever adjustments may be necessary or appropriate as the case develops.  At this stage of the proceeding, after both sides have filed dispositive motions, the Court is free to address class certification on the basis of the full record before it.

      Marriott's opposition invites several comments on the implications of the pending motion to strike on class certification.  First, in MSUF No. 22, Marriott contends that "25 - 30% of reservations in MRDW . . . will result in cancellations or no shows at franchised hotels . . . ."  Marriott apparently cannot identify individual guests that fall into either category.  This makes a big difference because of Marriott's admitted practice of charging "no-shows" for one night's lodging if they do not cancel in advance.[9]  A no-show who was charged for a night's lodging would certainly be in the class even if guests who cancelled their reservations in advance without charge are not.  It does not appear that Marriott has specific data identifying individual guests in

---

[9] Doc. 129-5 (Deposition of Mr. Jesus Humberto Chacon) at 8.

9

either of these categories. It certainly produced none to date. General estimates of cancellations and no-shows that cannot be tied to individual guests are of no value in contradicting guest specific data previously produced by Marriott in response to requests for data on guest stays.

Even if Marriott had individual guest data to support its position that 25 - 30% of the guest records for the franchised hotels produced by it in the MARSHA/MRDW database represented cancellations or no-shows, that evidence would not impact either class certification or Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability (Doc. 109). 25 - 30% of the 402,000 guest records produced by Marriott represents only about 100,000 to 120,000 guest stays leaving 280,000 to 300,000 guest stays made by over 200,000 individual guests. Hardly a numerosity problem. Moreover, each guest record has a USD denominated price quote and a unique confirmation number linked either to the guest or a travel agent. Ascertainability following class certification does not appear to be an insurmountable problem.

**CONCLUSION**

MSUF Nos. 22 and 42 should be stricken on the grounds that they involve factual matters as to which Marriott failed to provide discovery. Indeed, MSUF No. 22 involves a repudiation of prior representations respecting guest data. Quite apart from the fact that these statements should be stricken because of Marriott's failure to provide discovery under Fed.R.Civ.P. 26(a)(1)(A)(ii), there is no evidentiary support in the record actually submitted by Marriott to accept these representations as true and correct.

| | |
|---|---|
| August 1, 2008 | Respectfully submitted, |
| | /s/ Paul D. Cullen, Sr. |
| Of Counsel: | Paul D. Cullen, Sr. (100230) |
| Mark W. Borghesani, Esq. | Joyce E. Mayers (268227) |
| c/o The Cullen Law Firm PLLC | Randall Herrick-Stare (482452) |
| 1101 30th Street NW, Suite 300 | Amy M. Lloyd (975887) |
| Washington, D.C. 20007 | The Cullen Law Firm, PLLC |
| (202) 944-8600 | 1101 30th Street NW, Suite 300 |
| | Washington, D.C. 20007 |
| | (202) 944-8600 |
| | |
| | Counsel for Plaintiffs |