**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BRITT A. SHAW, <u>et al.</u>, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :     Civil Action No. 05-1138 (GK) |
| | : |
| MARRIOTT INTERNATIONAL, INC., | : |
| | : |
| Defendant. | : |

**MEMORANDUM OPINION**

Plaintiffs, Britt A. Shaw, Irina Paliashvili, and Neal M. Charness filed a putative class action complaint against Defendant Marriott International, Inc. ("Marriott").[1]  On October 19, 2007, the Complaint was amended to, among other things,[2] withdraw Ms. Paliashvili as a named plaintiff and add Dr. Sarah Mendelson and The Center for Strategic and International Studies, Inc. ["CSIS"] as named plaintiffs.  Plaintiffs allege unlawful trade practices in violation of the District of Columbia Consumer Protection

---

[1]Marriott operates over 2,600 hotels in the United States and 65 other countries and territories.  Marriott is a Delaware corporation headquartered in Bethesda, Maryland.  As discussed below, Marriott admits that it has represented to the public that it is headquartered in Washington, D.C., which representation is the subject in part of a misrepresentation claim alleged in Plaintiffs' Second Amended Class Action Complaint.

[2]In addition to revising the named plaintiffs, the Second Amended Complaint also added a claim for misrepresentation. Defendant asserts that the Second Amended Complaint also broadened the class of putative plaintiffs to include not only U.S. residents and citizens who accessed Marriott's website to make reservations for hotel accommodations in Russia, but also individuals worldwide who reserved rooms at Marriott's Russian hotels through any means. Mot. for Partial Dismissal at 1.

Procedures Act ("CPPA" or the "Act"), D.C. Code §§ 28-3901, <u>et</u> <u>seq.</u> ("Count I"), and unjust enrichment ("Count II").

This matter is before the Court on Marriott's Motion for Summary Judgment [Dkt. No. 106] and Plaintiffs' Motion for Summary Judgment on the Issue of Liability [Dkt. No. 109]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Marriott's Motion for Summary Judgment is **granted**, and therefore Plaintiffs' Motion for Summary Judgment on the Issue of Liability is **denied as moot.**

I.    **BACKGROUND**

     **A.    Facts**[3]

This case involves Marriott's alleged "misrepresentations and omissions to its hotel guests -- Plaintiffs and [the putative] class members herein -- regarding pricing practices at Marriott's Moscow, Russia hotel properties."  Am. Compl. ¶ 1.

According to Plaintiffs, prospective guests of Marriott's Moscow, Russia hotels log onto the Marriott website where Marriott provides price quotes in U.S. dollars.  The Marriott website also provides a currency calculator that translates U.S. dollars into Russian rubles at the official exchange rate set by the Central Bank of Russia.

_____

[3] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Material Facts submitted pursuant to Local Civil Rule 7(h).

Upon checkout, Marriott renders the final bill in U.S. dollars, which is then converted into Russian rubles at an exchange rate that is higher than the official exchange rate set by the Central Bank of Russia. Guests pay the bill in rubles. They arrive home to discover on their credit card statements that the credit card company has converted the payment amount back into U.S. dollars at the lower, official exchange rate. As a result of this differential in exchange rates, hotel guests pay a final price approximately 18 percent higher than the original price Marriott quoted, and confirmed at the time of mailing the reservations, as calculated on its website into Russian rubles, at the official exchange rate set by the Central Bank of Russia.

Putative class representative Britt A. Shaw made a reservation on the Marriott website on April 14, 2005 to stay at the Renaissance Moscow Hotel (a Marriott hotel) on April 19, 2005. He received a confirmation with a quoted room rate of U.S.$425 per night. The currency calculator on Marriott's website indicated an exchange rate of 27.78 Russian rubles per one U.S. dollar.

When he checked out of the Renaissance Moscow Hotel, his bill was reflected in undefined units entitled "UNT"s. The bill showed the room rate of 425.00, along with other hotel expenses, for a total of "658.70 UNT." The bill indicated an exchange rate of 32 Russian rubles per UNT, for a total charge of 21078.40 rubles. He paid his bill with his American Express card. When he received his

American Express statement, his hotel bill was charged at U.S.$775.69, which reflects the credit card's conversion of the 21078.40 rubles into U.S. dollars at the official exchange rate of 27 Rubles per U.S. dollar.

Plaintiffs allege that Dr. Mendelson, CSIS (through its employees), Mr. Charness, and other putative class members had similar experiences as a result of Marriott's misrepresentations.

Mr. Shaw is an American citizen, with a Florida domicile for tax purposes, who currently lives in London, England but previously resided in New York; Mr. Charness is a resident of the state of Michigan; Dr. Mendelson is a resident of the District of Columbia and employee of CSIS; and CSIS is a nonprofit Delaware corporation headquartered in the District of Columbia.

**B.    Procedural History**

On May 13, 2005, Plaintiffs filed this suit in the Superior Court of the District of Columbia.  Marriott removed the case to this Court on June 9, 2005.  Plaintiffs filed their Amended Complaint on July 1, 2005.  The Amended Complaint, filed under Rule 23 of the Federal Rules of Civil Procedure, alleges that Marriott's misrepresentations and omissions to its hotel guests regarding its pricing practices violated the CPPA (Count I) and provided unjust enrichment to Marriott (Count II).  Plaintiffs seek an order requiring an accounting, enjoining Marriott from engaging in the complained of pricing practices, awarding the greater of damages in

4

the amount of $1,500 per violation or treble damages, and creating a constructive trust or restitution of the monies wrongfully withheld by Marriott. Plaintiffs also seek an award of attorneys' fees, interest, and costs.

On February 22, 2007, the Court denied Marriott's Motion to Dismiss the First Amended Complaint, concluding that the suit should not be dismissed on forum <u>non conveniens</u> grounds, and that, assuming as true the factual allegations of the complaint, the CPPA, rather than Russian law, was applicable to the dispute. <u>See</u> <u>Shaw v. Marriott Int'l, Inc.</u>, 474 F. Supp. 2d 141 (D.D.C. 2007).

On October 19, 2007, the Complaint was amended, with leave from the Court, to withdraw Ms. Paliashvili as a named plaintiff and add Dr. Sarah Mendelson and CSIS as named plaintiffs. The Second Amended Complaint also added a cause of action for misrepresentation against Marriott for allegedly misrepresenting its "geographic origin" in violation of the CPPA, D.C. Code §§ 28-3904 (a), (t).

On October 26, 2007, Plaintiffs filed a Motion to Certify Class [Dkt. No. 62], and on November 2, 2007, Defendant Marriott filed a Motion for Partial Dismissal of Plaintiffs' Second Amended Complaint [Dkt. No. 65]. On June 2, 2008, Defendant filed its Motion for Summary Judgment [Dkt. No. 106] and Plaintiffs filed their Motion for Partial Summary Judgment on the Issue of Liability

[Dkt. No. 109].  These summary judgment motions became ripe on July 2, 2008.[4]

## II.  STANDARD OF REVIEW

As a general rule, courts decide class certification motions before addressing dispositive motions.  Hyman v. First Union Corp., 982 F. Supp. 8, 11 (D.D.C. 1997).  However, Federal Rule of Civil Procedure 23 also gives district court judges "great discretion in determining the appropriate timing for such a ruling."  Id.  The Court of Appeals has recognized that "a decision on class certification cannot be made in a vacuum."  In this case, because it is more practicable to do so, it will save time and resources in the long run, and the parties will not suffer any prejudice as a result, the Court will address the merits of the summary judgment motion first.  Id. (citing Wright v. Schock, 742 F.2d 541, 543-44 (9th Cir. 1984)).

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006).  In other words, the moving party must satisfy two requirements:  first, demonstrate

---

[4]In addition to the motions cited above, various other discovery-related motions are currently pending before a magistrate judge.  See Dkt. Nos. 89, 127, 131.

that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case. "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, 473 F.3d at 333, quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Liberty Lobby, 477 U.S. at 248.

In its most recent discussion of summary judgment, in Scott v. Harris, __ U.S. __, 127 S.Ct. 1769, 1776 (2007), the Supreme Court said,

> [a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."

Liberty Lobby, 477 U.S. at 247-48.

       However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248, 249. In both Liberty Lobby and

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. Liberty Lobby, 477 U.S. at 255.

In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "[t]he non-moving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Liberty Lobby, 477 U.S. at 255). "To survive a motion for summary judgment, the party bearing the burden of proof at trial . . . must provide evidence showing that there is a triable issue as to an element essential to that party's claim." Arrington, 473 F.3d at 335[5]; see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). "[I]f the evidence presented on a dispositive issue is subject to conflicting interpretations, or reasonable persons might differ as to its significance, summary judgment is improper." United States v. Philip Morris, 316 F. Supp. 2d 13, 16 (D.D.C. 2004) (quoting Greenberg v. FDA, 803 F.2d 1213, 1216 (D.C. Cir. 1986)).

---

[5] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. Greene v. Dalton, 164 F.3d 671, 674-75 (D.C. Cir. 1999); Arrington, 473 F.3d at 337.

III. **ANALYSIS**

Defendant makes a multitude of arguments as to why summary judgment should be granted as to all of Plaintiffs' claims. In particular, Defendant contends that Plaintiffs Shaw, Mendelson, and CSIS are not "consumers" as the term is defined in the CPPA, and therefore summary judgment on Count I must be granted against them. Defendant further argues that, once those Plaintiffs' CPPA claims are extinguished, it is inappropriate to apply D.C. law to the instant case, thereby requiring dismissal of the remaining Plaintiff's (Charness's) CPPA claim. Finally, Defendant contends that summary judgment must be awarded with respect to Plaintiffs' unjust enrichment claims because, among other reasons, the existence of express contracts precludes those claims. For the reasons stated below, Defendant's Motion for Summary Judgment is **granted.**

A.   **Count I:  The D.C. Consumer Protection Procedures Act ("CPPA")**

The CPPA "affords a panoply of strong remedies, including treble damages, punitive damages, and attorneys' fees, to consumers who are victimized by unlawful trade practices." Ford v. ChartOne, Inc., 908 A.2d 72, 80-81 (D.C. 2006) (citation and quotation marks omitted). While the protections afforded by the CPPA "apply to a wide range of practices and transactions," the Act "was designed to police trade practices arising only out of consumer-merchant relationships." Id. at 81 (citation and quotation marks omitted)

(emphasis added). Civil actions under the CPPA may be brought only by "aggrieved consumers," and the claim must arise from a "consumer transaction." <u>Id.</u> The CPPA "does not apply to commercial dealings outside the consumer sphere." <u>Id.</u> (citations omitted).

> **1. CSIS Is Not a "Consumer" under the CPPA, and Therefore Has No Cause of Action.**

Defendant argues in both its Motion for Partial Dismissal and its Motion for Summary Judgment that because CSIS is not a "consumer" under the CPPA, it cannot bring a claim pursuant to the statute. Plaintiffs respond to Defendant's summary judgment arguments by proposing an expansive definition of the term "consumer."[6] Notwithstanding Plaintiffs' creative arguments to the contrary, the CPPA clearly was not intended to extend its protections to an organization like CSIS.

In their argument that CSIS is a consumer under the CPPA, Plaintiffs rely upon a portion of the statutory definition of consumer which defines the term as "a person who does or would

---

[6]In their response to Defendant's Motion for Partial Dismissal, Plaintiffs also advocate a strikingly narrow definition of the term "merchant," arguing that merchants are only those who are in the regular business of buying and selling whatever goods are at issue. In other words, Plaintiffs argue that because CSIS is in the business of research, analysis, and policy development – not in the travel, hotel, or hospitality business – CSIS is not a "merchant," and therefore must be a "consumer" under the statute. Pls.' Opp. to Marriott's Mot. for Partial Dismissal of Second Am. Class Action Compl. The Court is not persuaded by Plaintiffs' reasoning. Just because CSIS is not a "merchant," does not necessarily mean that it is a "consumer" as the CPPA defines that term.

provide the economic demand for a trade practice." D.C. Code §
28-3904 (a)(2). The CPPA defines "trade practice" as "any act
which . . . would create . . . a sale, lease or transfer of
consumer goods or services." D.C. Code § 28-3904 (a)(6).
"Consumer" goods or services are defined as "anything, without
exception, which is primarily for personal, household, or family
use." D.C. Code § 28-3904 (a)(2).

Plaintiffs argue that, because "CSIS provides the economic
demand for the hotel stays in Russia and therefore the economic
demand for Marriott's trade practices," it must be a "consumer"
under the statute. Opp. to Marriott's Mot. for Summ. J. at 8.
Accepting Plaintiffs' logic would allow virtually anyone to sue
under the statute[7] and would require the Court to ignore the
statute's plain and unambiguous definition of the term "consumer."
CSIS, a nonprofit "think-tank" which develops policy initiatives
with respect to defense and security policy, global challenges, and
regional transformation, is not involved in activities which provide

---

[7]Plaintiffs' interpretation of the CPPA would so broaden its
protections that virtually any business could apply it to routine
commercial disputes. This is clearly not what the District of
Columbia City Council intended, nor is it within the bounds of the
statutory interpretation set forth by the District of Columbia
Court of Appeals. Citing District of Columbia precedent, this
Court has noted that "the legislative history of the CPPA, along
with a consistent reading of its provisions, unequivocally
indicates that the CPPA was intended to protect consumer-plaintiffs
only, and not corporations." Clifton Terrace Assocs., Ltd. v.
United Techs. Corp., 728 F. Supp. 24, 34 (D.D.C. 1990) (rev'd in
part on other grounds).

the economic demand for a sale, lease, or transfer of goods or services that are "primarily for <u>personal, household, or family use</u>" (emphasis added). Therefore, CSIS is not a "consumer" under the statute.

In <u>Ford v. ChartOne</u>, the D.C. Court of Appeals held that the CPPA "does not apply to commercial dealings outside the consumer sphere," and for that reason, such actions as "[a] purchase of supplies or equipment for a business operation" are not within the scope of the CPPA's protection. 908 A.2d at 81-84. Likewise, in <u>Mazanderan v. Indep. Taxi Owners' Ass'n</u>, this Court held that a taxi operator's purchase of gasoline and supplies was not a transaction covered by the CPPA because it was made "in connection with his role as an independent businessman." 700 F. Supp. 588, 591 (D.D.C. 1998).

CSIS's purchase of Russian hotel rooms[8] was made in connection with its operation as a business entity, albeit a nonprofit one, and in furtherance of its regular business operations. Therefore that purchase falls outside the scope of the CPPA. Indeed, Plaintiffs concede as much in their Second Amended Complaint, admitting that the hotel stays in question – approximating 15 per year – were "[i]n furtherance of [CSIS] programs." Compl. at 5. Because CSIS is not

---

[8]Plaintiffs concede that CSIS booked the rooms for the use of its employees while they were in Russia on CSIS business and "paid for those rooms either directly when its own credit cards were used at checkout or indirectly when it reimbursed employees for hotel charges." Opp. to Marriott's Mot. for Summ. J. at 8-9.

a consumer within the definition of the CPPA, it has no cause of action under that statute, and therefore summary judgment is granted as to its CPPA claim.

2.  **Shaw and Mendelson Are Not "Consumers" under the CPPA, and Therefore Have No Cause of Action.**

For similar reasons, Plaintiffs Shaw and Mendelson also are not "consumers" as defined by the CPPA and therefore cannot bring claims under the act.  Defendant argues that Plaintiffs Shaw and Mendelson[9] lack standing to bring a claim under the CPPA because their stays at the Marriott Russia hotels were for business purposes, and therefore they do not meet the statutory definition of "consumer." The Court does not agree with Defendant that a standing analysis is appropriate under these facts, but agrees that travel for business purposes does not fit within the definition of "consumer" goods or services set forth in the CPPA.

Plaintiffs contend that "[w]here a product or service is primarily for personal use of the employee, rather than for the direct use of the employer in its business, the employee does not lose his status as a consumer merely because he receives reimbursement for personal expenses while in travel status."  Opp. to Marriott's Mot. for Summ. J. at 13.  This appears to be a legal question which the D.C. Court of Appeals has not yet had occasion to address.

---

[9]Defendant does not contest Plaintiff Charness's status as a "consumer" under the CPPA.

As discussed above, the protections of the CPPA extend to goods or services that are "primarily for personal, household, or family use," D.C. Code § 28-3904 (a)(2), not for purchases that are for business or commercial use.  Shaw and Mendelson's use of Marriott hotel rooms in furtherance of their or their employer's business may not be as concrete a non-consumer use as the taxi operator's purchase of gasoline in <u>Mazanderan</u>, 700 F. Supp. 591, or the attorney's purchase of office supplies referenced in <u>Ford v. ChartOne</u>, 908 A.2d at 82 n.10.  Nevertheless, neither party disputes that Shaw and Mendelson's respective overseas travel, and the resultant hotel stay, was undertaken for commercial purposes – not for personal enjoyment or use.  In short, Shaw and Mendelson were in Russia and stayed at Marriott hotels because they were carrying out their or their employer's "business."  But for the business they were conducting in Russia, they would not have been "consuming" (i.e., using) Marriott's hotel rooms.[10]

Indeed, the only other court to have addressed this question reached the same conclusion.  In <u>Levant v. American Honda Finance Corporation</u>, 356 F. Supp. 2d 776, 783 (E.D. Mich. 2005), the District Court for the Eastern District of Michigan interpreted a Michigan statute which was similarly limited to purchases "primarily

---

[10]Plaintiffs argue that an employee should not lose its status as a consumer merely because it receives reimbursement.  Opp. to Marriott's Mot. for Summ. J. at 13.  Plaintiffs' focus on "reimbursement" is misplaced.  Reimbursement is not the key issue, the use of the hotel rooms for business purposes is.

for personal, family, or household purposes."  In that case, the court held that the lease of a vehicle that was undertaken in an employee's personal capacity,[11] but was reimbursed or paid for by her employer, could not be considered for "personal, family, or household purposes."  Id.  Likewise, hotel stays undertaken for the purposes of an employer, which were either reimbursed or paid for by that employer, cannot be considered as being undertaken for "personal, family, or household use."

### 3.   D.C. Law Does Not Apply Because No Plaintiffs Are D.C. Residents and Defendant Is Not a D.C. Corporation.

On February 22, 2007, this Court denied Marriott's Motion to Dismiss the First Amended Complaint. Shaw v. Marriott Int'l, Inc., 474 F. Supp. 2d 141 (D.D.C. 2007).  In reaching that conclusion, the Court assumed as true, as it was required to, the factual allegations of the Complaint, one of which was that the Defendant, Marriot International, Inc., was headquartered in Washington, D.C. Id. at 149 ("The Court assumes, as it must at this stage, that Marriott is headquartered in the District of Columbia.").  In addition to relying upon Plaintiffs' allegation that Defendant was headquartered in Washington, D.C., the Court also relied upon the

---

[11]On the original lease document, the employee had checked the box marked "personal, family, or household" as the "primary use" of the vehicle in question.  Id.

fact that at least one of the Plaintiffs was a D.C. resident, namely Irina Paliashvili. Id. These factual assumptions have since been proven untrue or are no longer true.[12]

In a diversity case such as this,[13] "the law of the forum state supplies the applicable choice-of-law standard." Williams v. First Gov't Mortgage & Investors Corp., 176 F.3d 497, 499 (D.C. Cir. 1999) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Under District of Columbia law, courts employ "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." Washkoviak v. Student Loan Marketing Ass'n, 900 A.2d 168, 180 (D.C. 2006) (internal quotations omitted).

Under this analysis, the Court must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." Id. As part of

---

[12] As discussed above, the sole remaining plaintiff with standing to bring a claim under the CPPA is Plaintiff Neal M. Charness. Charness is a resident of the State of Michigan. Second Am. Compl. ¶ 13.

With respect to Marriott's official corporate headquarters, although the headquarters address is in Washington, D.C., neither party disputes that the corporate headquarters are in fact physically located in Bethesda, Maryland. Second Am. Compl. ¶¶ 36-37; Def.'s Mot. for Summ. J. at 21.

[13] Marriott removed to this court based on the Class Action Fairness Act of 2005, which amended the diversity jurisdiction statute to allow removal of class actions over $5,000,000, even where the parties are not in complete diversity. 28 U.S.C. §§ 1332(d).

this analysis, courts "also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145: a) the place where the injury occurred; b) the place where the conduct causing the injury occurred; c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and d) the place where the relationship is centered." Id.

The CPPA "is a comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers." Atwater v. District of Columbia Dep't of Consumer & Reg. Affairs, 566 A.2d 462, 465 (D.C. 1989). It is, "an ambitious piece of legislation which seeks to prohibit a long list of 'unlawful trade practices.'" DeBerry v. First Gov't Mortg. & Investors Corp., 170 F.3d 1105, 1108 (D.C. Cir. 1999) (citing Howard v. Riggs National Bank, 432 A.2d 701, 708 (D.C. 1981)). "The purposes of the CPPA are to 'assure that a just mechanism exists to remedy all improper trade practices [and to] promote, through effective enforcement, fair business practices throughout the community. . . .'" Williams v. Central Money Co., 974 F. Supp. 22, 27 (D.D.C. 1997) (citing D.C. Code § 28-3901(b)). As the statute itself directs, it "shall be construed and applied liberally to promote its purpose." D.C. Code § 28-3901(c).

In this case, however, Plaintiffs seek to apply the CPPA to remedy allegedly improper trade practices which took place outside the District of Columbia "community," to a plaintiff, Charness, who

is not a resident of the District of Columbia, to address injuries allegedly caused by a corporation which is neither incorporated nor headquartered in the District of Columbia.[14]  Given the dismissal of the CPPA claims of Shaw, Mendelson, and CSIS, Charness is the sole remaining plaintiff.  As already noted, Charness is a resident of the State of Michigan, not the District of Columbia.  Second Am. Compl. ¶13.  Given these facts, the Court concludes that Charness is not among the consumers the CPPA was drafted to protect.

Nor is Marriott among the corporations the CPPA was drafted to police.  Marriott asserts that its headquarters and principal place of business are located at 10400 Fernwood Road, Bethesda, Maryland, and have been at all times relevant to this litigation.  MSUF ¶¶ 3, 6.

In their Opposition to Marriot's Statement of Undisputed Facts, Plaintiffs do not controvert that fact, as is required under Local Rule 7(h).  Instead, Plaintiffs avoid the issue in an attempt to preserve their access to this forum and D.C. laws, without sacrificing their claim that Marriott deceptively represented that it was headquartered in Washington, D.C.  In response to Marriott's assertion that its headquarters and principal place of business are in Maryland, Plaintiffs respond that they "do not dispute that

---

[14] Marriott is incorporated in Delaware and headquartered in Maryland.  Marriott's Statement of Undisputed Facts in Support of its Mot. for Summ. J. ¶¶ 3, 6 ["MSUF"] ¶¶ 2, 3.

Marriott has a place of business located in Bethesda, Maryland. Marriott has frequently represented that its headquarters is located in Washington, D.C."[15]  Plaintiffs' Answer and Counter-Statement to Marriott International, Inc.'s Statement of Undisputed Facts in Support of Mot. for Summ. J. at 2.  Plaintiffs' response fails to controvert the facts outlined in Marriott's Statement of Undisputed Facts, and therefore the Court will assume them to be admitted under Local Civil Rule 7(h).

Even were such facts not considered "admitted," Plaintiffs' response makes clear that any dispute as to these facts is not "genuine."  Plaintiffs do not argue or point to any facts other than Marriott's representations – which Marriott has conceded to be false – that Marriott has a principal place of business in the District of Columbia.[16]  Nor do they make any argument as to why the District of Columbia should treat a Maryland corporation as a District of Columbia resident simply because it falsely represented itself as

---

[15]In response to another Marriott assertion, that it has a Washington, D.C. mailing address, but is headquartered in Maryland, Plaintiffs raise a discovery argument to avoid addressing the underlying facts, arguing that Marriott failed to disclose, pursuant to Federal Rule of Civil Procedure 26(a), the evidence on which those facts were based.  Id. at 3-4.  Whether that is true or not, the relevant fact is that Plaintiffs' response fails to controvert the facts outlined in Marriott's Statement of Undisputed Facts, and therefore the Court will assume them to be admitted.

[16] Indeed, at least one plaintiff, Shaw, has admitted outright in interrogatory responses that Marriott is, in fact, headquartered in Bethesda, Maryland.  Shaw First Interrogatory Resp. No. 18, Ex. 2 to MSUF.

such.  Therefore, Plaintiffs have failed to demonstrate a genuine
dispute of material fact as to the true location of Marriott's
corporate headquarters.

Given that Marriott is a Maryland-based corporation and
Charness is a Michigan resident, it is difficult to argue that the
District of Columbia has "the most significant relationship to" this
dispute under the governmental interests analysis. Washkoviak, 900
A.2d at 180.  Indeed, application of the Restatement factors further
demonstrates the inappropriateness of applying the District of
Columbia's law to this case.

Although in misrepresentation cases, the first Restatement
factor, the place of injury, is a "less significant" component of
the Restatement analysis, it clearly does not support the
application of the laws of the District of Columbia in this case.
Restatement (Second) of Conflict of Laws § 145(2) cmt. f.;
Washkoviak, 900 A.2d at 181-82.  The injuries at issue here occurred
where Charness "received the alleged misrepresentations,"
Washkoviak, 900 A.2d at 181, which no one alleges occurred within
the District of Columbia.

The second Restatement factor, the place of the conduct causing
the injury, also weighs against applying District of Columbia law.
Plaintiffs do not allege that any of the decisions setting
Marriott's pricing practices and policies, which caused the conduct
that occurred in Russia, were developed in the District of Columbia.

Instead, they rely on their argument that Marriott's representation of having headquarters in the District of Columbia alone is sufficient to warrant the application of D.C. law.  Plaintiffs cite to no case which supports the application of a state's law to a foreign corporation solely on the basis of its representation of being headquartered there, nor have they presented any legal reason for doing so.  Accordingly, the second Restatement factor supports the conclusion that the CPPA cannot be applied to this case.

The third Restatement factor (domicile, residence, nationality, place of incorporation and place of business of the parties) also weighs in favor of not applying District of Columbia law, for the reasons discussed above.

As to the fourth Restatement factor, where the relationship is centered, Plaintiffs allege they made hotel reservations over the Internet or by phone, which does not point to this jurisdiction having more interest than any other.  Marriott's online reservation system, "MARSHA," does not have any servers located in Washington, D.C., nor are any Marriott toll-free call centers located in the District of Columbia.  MSUF ¶ 7, 27.

While the governmental interests analysis is not merely a matter of "counting contacts," Washkoviak, 900 A.2d at 181, it is plain in this case that there are very few contacts to be counted. The lack of contacts between the District of Columbia and this

controversy bolsters the conclusion that the District of Columbia does not have a strong governmental interest in applying its laws to the facts of this case.  Therefore, the CPPA cannot be invoked by the remaining plaintiff, Charness, and summary judgment must be granted as to Count I.

## B.  Count II: Unjust Enrichment

Defendant argues that each Plaintiff is precluded from bringing an unjust enrichment claim because express contracts govern this dispute, and that Shaw, Mendelson, and CSIS lack standing[17] to bring an unjust enrichment claim.[18]  Marriott Int'l, Inc.'s Mot. for Summ. J. at 38.  Plaintiffs do not so much as mention the "unjust enrichment" claim in their opposition to Defendant's Motion for Summary Judgment – neither with respect to Defendant's argument that express contracts preclude unjust enrichment claims, nor with respect to Defendant's argument that certain plaintiffs lack standing.[19]  Because Plaintiffs have failed to oppose Defendant's

---

[17] As referenced above, the Court does not agree with Defendant that a standing analysis is appropriate under these facts. Nevertheless, summary judgment will be granted as to Count II for the reasons set forth in this section.

[18] Defendant makes no argument that Plaintiff Charness lacks standing to bring an unjust enrichment claim.  See Marriott Int'l, Inc.'s Mot. for Summ. J. at 38.

[19]While Plaintiffs expend a substantial number of pages responding to Defendant's standing argument in the CPPA context, see Opp. to Marriott Int'l, Inc.'s Mot. for Summ. J. at 1-7, they completely ignore Defendant's argument as it applies to the unjust enrichment claim.

Motion for Summary Judgment as to the unjust enrichment claim, the Court may treat those arguments as conceded. See Fed. R. Civ. Pro. 56(e)(2).[20]

Moreover, even assuming Plaintiffs' failure to respond to Defendant's arguments was not reason enough to grant summary judgment, it still would be warranted under the undisputed facts on record in this case. Defendant correctly argues that Plaintiffs' unjust enrichment claims must fail because "they are 'governed by an express contract between the parties.'" Marriott Int'l, Inc.'s Mot. for Summ. J. at 38 (quoting Bykov v. Radisson Hotels Int'l, Inc., 2006 WL 752942, at *20 (D. Minn. Mar. 22, 2006)). Plaintiffs have not disputed Defendant's assertion of the existence of express contracts in this case.

Under District of Columbia law, a party to a valid contract cannot bring a claim for unjust enrichment related to the subject matter of an express contract between the parties. Jordan Keys &

_____

[20]It is well-settled that where a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded. Malik v. District of Columbia, 538 F. Supp. 2d 50, 52-53 (D.D.C. 2008). Where, as here, "a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." Id.; Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing Fed. Deposit Ins. Corp. v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); Stephenson v. Cox, 223 F. Supp. 2d 119, 121 (D.D.C. 2002). Because Plaintiffs have totally failed to respond to any of Defendant's arguments that summary judgment should be granted with respect to their unjust enrichment claim, such failure to respond is reason enough to award summary judgment as to Count II.

<u>Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.</u>, 870 A.2d 58, 64 (D.C. 2005); <u>Schiff v. Am. Ass'n of Retired Persons</u>, 697 A.2d 1193, 1194 (D.C. 1997) ("there can be no claim for unjust enrichment when an express contract exists between the parties"); <u>see also Bloomgarden v. Coyer</u>, 479 F.2d 201, 210 (D.C. Cir. 1973) (noting that unjust enrichment theory is not available unless no contract exists, either express or implied).  Because there is no dispute as to the existence of express contracts in this case, summary judgment must be granted as to Plaintiffs' unjust enrichment claim in Count II.  <u>U.S. v. Science Applications Int'l Corp.</u>, 2008 WL 2060602, at *15 (D.D.C. May 15, 2008).

**IV.  CONCLUSION**

For the foregoing reasons, Marriott's Motion for Summary Judgment is **granted**, and Plaintiffs' Motion for Summary Judgment on the Issue of Liability and all other pending motions are therefore **denied as moot.**

An Order will issue with this Memorandum Opinion.


                              /s/
                              _____
August 12, 2008               Gladys Kessler
                              United States District Judge


**Copies to**: **attorneys on record via ECF**