UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRITT A. SHAW, *et al.* )<br>)<br>)<br>    Plaintiffs, )<br>) Civil Action No. 05-1138 (GK)<br>        v. )<br>)<br>)<br>MARRIOTT INTERNATIONAL, INC. )<br>)<br>    Defendant. )<br>_____) | |

**PLAINTIFFS' MOTION FOR RECONSIDERATION OF
GRANT OF SUMMARY JUDGMENT TO MARRIOTT**

Plaintiffs move pursuant to Rule 59(e), Fed. R. Civ. P., for reconsideration of this Court's grant of summary judgment to Marriott International.

**I.     INTRODUCTION**

Respectfully, in granting summary judgment for Marriott, this Court erred in its interpretation and application of the CPPA by finding that Plaintiffs CSIS, Sarah Mendelson, and Britt Shaw are not "consumers" within the meaning of the CPPA. This Court has misinterpreted the reach of the CPPA by overlooking the plain inclusion of business entities in the definition of consumer, and failing to follow controlling case law issued from the D.C. Court of Appeals which includes business related transactions under the CPPA.

(1) The CPPA defines "consumer" as a "person" who would purchase consumer goods or services and defines "person" as including business entities such as corporations and partnerships.  DC Code §28-3901(a)(1) and (2).  The CPPA provides a right of action to any "***person***" seeking relief from improper trade practices. DC Code §28-3905(k)(1).

(2) Given the intended broad reach of the CPPA, the D.C. Court of Appeals has analyzed the coverage of the CPPA by focusing on the nature of the transaction and its place in the chain of distribution. As stated by the D.C. Court of Appeals, a "merchant" excluded from CPPA coverage is a party on the supply side of a transaction completed in the regular conduct of the party's business. The ultimate retail customer is not on the supply side of the transaction, and so is a "person" with a right of action covered by the CPPA. The party's status as a corporation does not defeat its right to protection under this analysis.

## II. ARGUMENT

### A. Standard for Reconsideration

Motions for reconsideration are granted by demonstration of a clear error of law.[1] Respectfully, this Court committed clear error in its analysis of the application of the CPPA in its disposition of the motions for summary judgment in this case.

### B. Plaintiffs CSIS, Mendelson and Shaw Have a Right of Action Under the CPPA In the Circumstances in Which Each Purchased Hotel Stays

First, this Court failed to address the plain inclusion of "organizations like CSIS" as persons with a right of action under the CPPA.[2] The CPPA defines "consumer" as a "*person* who would purchase consumer goods or services . . . . or would provide the economic demand for a trade practice." DC Code 28-3901(a)(2). *"Person"* under the CPPA, 28-3901(a)(1), includes, among other designations, corporations and partnerships – two legal entities rarely engaged in activities other than those which are business related. The Court focuses on the second clause of

---

[1] *Ciralsky v. Central Intelligence Agency,* 355 F.3d 661, 376 (D.C. Cir. 2004); *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996).

[2] DC Code 28-3905(k)(1).

the definition of "consumer" providing that as used as an adjective, the term means related to "personal, household or family use." 28-3901(a)(2).[3] But used as an adjective, "consumer" modifies "goods or services" subject to trade practices; it does not limit persons possessing a claim under the CPPA to non-business related individuals or entities as this Court ruled.

Further, the CPPA does not limit the right to relief to a "consumer," but expressly grants a right of action to a "person." 28-3905(k)(1). Indeed, amendments to the CPPA in 2000 expanded the private right of action from "consumer" to "person."[4] The 2000 amendments expressly enabled corporations like CSIS – business entities – to bring claims for relief for improper trade practices under the CPPA. Plaintiffs Shaw and Mendelson are each an employee of a corporation. Having established that "corporations" are expressly granted a right of action under the CPPA, it follows that an employee of a corporation is not disqualified by that "business" connection.

The CPPA's expansive provision of a right of action to remedy improper trade practices has been consistently recognized by the D.C. Court of Appeals.[5] The statute itself provides that its terms are to be "construed and applied liberally to promote its purpose." DC Code §28-

---

[3] Plaintiffs raised these issues in their Opposition to Marriott's Motion for Summary Judgment (Doc. 115) at 8.
   The New Jersey consumer protection statute with similar definitions has been interpreted as conferring consumer status on corporations. *Hundred East Credit Corporation v. Eric Schuster Corporation*, 515 A.2d 246, 249 (N.J. Super A.D. 1986); *The Dreier Co., Inc. v. Unitronix Corp.,* 527 A.2d 875, 882 (N.J. Super A.D. 1986).

[4] DC Code §28-3905(k)(1), DC Law 13-172 (October 19, 2000).

[5] *District Cablevision Limited Partnership v. Bassin,* 828 A.2d 714, 722-23 (D.C. 2003) and cases cited therein.

3901(c). Indeed, this Court expressly recognized the CPPA's broad application.[6] This Court's narrow interpretation of persons with a right of action is further error.

Second, this Court failed to consider the detailed analysis applied by the D.C. Court of Appeals, in two controlling cases, to determine coverage of the CPPA by the nature of the transaction at issue.[7] This Court brushes aside Plaintiffs' argument based on that analysis with the misplaced criticism that just because a party to a transaction is not a "merchant" does not mean that the party is a "consumer" for purposes of bringing the claim under the CPPA.[8] But, as applied by the D.C. Court of Appeals, that is precisely what the Court of Appeals has routinely found.[9]

The D.C. Court of Appeals' analysis is consistently focused on distinguishing commercial transactions from consumer transactions because the CPPA is intended to redress consumer/merchant, not merchant/merchant, transactions.[10] "The CPPA does not protect merchants in their commercial dealings with suppliers or other merchants."[11] To make this distinction, the D.C. Court of Appeals looks primarily to the supplier versus purchaser relationship between the parties.[12]

---

[6] *Shaw v. Marriott International,* 474 F. Supp. 2d 141, 147 (D.D.C. 2007).

[7] *Wechsler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989); *Ford v. ChartOne, Inc.,* 901 A.2d 72 (D.C. 2006).

[8] Slip Op. At 10 n.6.

[9] *Wechsler & Son*, 561 A.2d at 1004-05; *ChartOne,* 901 A.2d at 83-84.

[10] *Id.*

[11] *ChartOne,* 901 A.2d at 83.

[12] *Howard v. Riggs Nat'l Bank,* 432 A.2d 708 (D.C. 1981).

> This analysis, as well as the language of the statute itself, indicates that the relevant distinction is one between retail and wholesale transactions. Transactions along the distribution chain that do not involve the ultimate retail customer are not consumer transactions that the Act seeks to reach. Rather, it is the ***ultimate retail transaction*** between the final distributor and the individual member of the consuming public that the Act covers.[13]

Cases determining if a claimant has a right of action under the CPPA turn on which side of transaction – where along the distribution chain – the claimant resides. A corporation engaged in the resale of interstate long distance telephone services did not have a right of action under the CPPA because "the case at bar involves a relationship between two entities which are both on the supply side of a consumer-merchant transaction."[14] A taxi driver did not have a right of action against a gasoline supplier because he was not providing the economic demand for the transportation services requiring the gasoline, "he was providing the service itself."[15] The purchase of an antique trunk for investment purposes was covered under the CPPA because the purchaser "is not in the regular business of the retail sale of antiques."[16] The purchase of medical records by an attorney for use on behalf of a client in a personal injury lawsuit was

---

[13] *Wechsler & Son, Inc.*, 561 A.2d at 1004-05. Rather than follow the analysis set out by the D.C. Court of Appeals in the controlling cases, this Court cites a federal district court opinion decided before *Wechsler* and *ChartOne,* and before the DC Council amended 28-3905(k)(1) in 2000. Slip Op. at 11 n. 7. In any event, in *Clifton Terrace Assoc. v. United Techs Corp.,* 700 F. Supp. 588, 591 (D.D.C. 1988), while the district court did refer to the status of the plaintiff as a corporation, the court did not examine the definitions in Section 3901(a)(1) and (2). Further, the district court's analysis showed that the plaintiff was not deemed to be a consumer of elevator repair services because it was on the supply side of the distribution chain – it was a provider of the elevator service – not simply because it was a corporation. *Id.*

[14] *Independent Communications Network v. MCI Telecommunications Corp.,* 657 F. Supp. 785, 788 (D.D.C. 1987).

[15] *Mazanderan v. Independent Taxi Owners Association*, 700 F. Supp. 588, 591 (D.D.C. 1988).

[16] *Wechsler & Son*, 561 A.2d at 1005.

covered since "Ford did not purchase his medical records from ChartOne as part of a 'regular business of purchasing and reselling' such records."[17]

The determining factor is not whether there is some tangential "business connection" to the transaction as this Court held, but whether the transaction is integral to the conduct of the purchaser's regular business dealings. This Court did not consider the controlling analysis set forth by the D.C. Court of Appeals for determining the reach of the CPPA:

> [I]t is not the use to which the purchaser ultimately puts the goods or services, but rather the nature of the purchaser that determines the nature of the transaction. If the purchaser is regularly engaged in the business of buying the goods or service in question for later resale to another in the distribution chain, or at retail to the general public, then a transaction in the course of that business is not within the Act. If, on the other hand, the purchaser is not engaged in the regular business of purchasing this type of goods or service and reselling it, then the transaction will usually fall within the Act.[18]

Neither CSIS, Mendelson nor Shaw purchased guest stays at the Marriott Russian hotels for resale in a travel related distribution chain; but booked the rooms for their personal use while they were in Russia. Travelers need a place to sleep and wash. Those functions have nothing to do with the conduct of their business. Plaintiffs were in no way connected to the "supply side" of any transaction related to their booking of rooms at the Marriott Russian hotels. Bed and bath are *not* to policy analysis as gasoline is to taxi transportation services. The purchase of the hotel stay was the ultimate retail transaction by Plaintiffs acting as consumers.

Contrary to this Court's findings, under the controlling analysis stated by the D.C. Court of Appeals, the determination that none of these Plaintiffs was a "merchant" must lead to the

---

[17] *ChartOne,* 901 A.2d at 84.

[18] *Adam A. Weschler & Son*, 561 A.2d at 1005; *Chartone*, 908 A.2d at 84.

conclusion that the Plaintiffs are "consumers" – "*persons"* with a right of action under the CPPA.

### III. CONCLUSION

This Court's grant of summary judgment to Marriott, based wholly on its exclusion of Plaintiffs CSIS, Mendelson and Shaw as "consumers" under the CPPA, is clear error. The interests of justice weigh heavily in favor of sparing Plaintiffs the time and expense of an appeal to secure the correction of this error. This Court should reconsider its rulings in its August 12, 2008 Opinion. Should this Court correct the error in interpretation and application of the CPPA, allowing Plaintiffs CSIS, Mendelson and Shaw a right of action under the CPPA, Plaintiffs request that this Court decide their Motion for Partial Summary Judgment on Liability.

Respectfully submitted,

/s/ Paul D. Cullen, Sr.
Paul D. Cullen, Sr., D.C. Bar # 100230
Joyce E. Mayers, D.C. Bar # 268227
Randall Herrick-Stare, D.C. Bar # 482752
Amy M. Lloyd, D.C. Bar # 975887
The Cullen Law Firm, PLLC
1101 30th Street NW, Suite 300
Washington, D.C. 20007
(202) 944-8600
*Counsel for Plaintiffs*

Mark W. Borghesani, Esq., D.C. Bar # 426745
c/o The Cullen Law Firm PLLC
1101 30th Street NW, Suite 300
Washington, D.C. 20007
(202) 944-8600
*Of Counsel*

Dated: August 26, 2008