IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRITT A. SHAW, et al.,
on behalf of themselves and all others
similarly situated,

        Plaintiffs,

v.

MARRIOTT INTERNATIONAL, INC.

        Defendant.

Civil Action No. 05-1138 (GK)

## MARRIOTT INTERNATIONAL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF GRANT OF SUMMARY JUDGMENT TO MARRIOTT

Marriott International, Inc. ("Marriott"), by its attorneys, hereby submits this Opposition to Plaintiffs' Motion for Reconsideration under Federal Rule of Civil Procedure 59(e).

Plaintiffs' Rule 59(e) Motion ("Motion") is limited to this Court's grant of summary judgment against Plaintiffs Center for Strategic and International Studies ("CSIS"), Sarah Mendelson, and Britt Shaw, based on the Court's conclusion that those Plaintiffs are not "consumers" with actionable claims under the D.C. Consumer Protection Procedures Act ("D.C. CPPA"). *See Shaw v. Marriott Int'l, Inc.*, 2008 U.S. Dist. LEXIS 62498, *12-20 (D.D.C. Aug. 12, 2008). Plaintiffs do not challenge the Court's ruling that the D.C. CPPA does not apply to non-D.C. consumers (such as Plaintiffs Shaw and Neal Charness) or non-D.C. corporations (such as Marriott). *See Shaw*, 2008 U.S. Dist. LEXIS 62498, at *20-29. Nor do Plaintiffs challenge the Court's rejection of Plaintiffs' unjust enrichment claim. *See id.* at *29-32.[1]

---

[1] Because of those unchallenged rulings, and for the reasons stated in Marriott's motion for summary judgment, Marriott is entitled to summary judgment with respect to all Plaintiffs, regardless of the Court's resolution of Plaintiffs' Motion for Reconsideration. As explained below, Plaintiffs' Motion should be rejected because the Court's summary judgment ruling was correct. But in no event would a grant of reconsideration on the grounds raised by Plaintiffs entitle CSIS, Mendelson or Shaw "a right of action under the CPPA," as Plaintiffs claim. Motion at 7.

1

Plaintiffs' Motion should be denied because it presents no new authority or reasoning to the Court, but rather simply reiterates the arguments that Plaintiffs have made previously in the parties' voluminous summary judgment, dismissal and class certification briefings. The Court already carefully considered and rejected Plaintiffs' arguments. As the case law makes clear, a motion for reconsideration should not be used – as Plaintiffs attempt – to rehash arguments that the Court has rejected. In any event, Plaintiffs' arguments still lack merit. Accordingly, Plaintiffs' Motion should be denied in full.

## ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE IT MERELY REPEATS ARGUMENTS PREVIOUSLY MADE AND REJECTED.

As a threshold matter, Plaintiffs' Motion fails to meet – or attempt to meet – the standards for reconsideration. It is settled that a Rule 59(e) motion "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ciralsky v. CIA*, 355 F.3d 661, 672 (D.C. Cir. 2004) (citation omitted). Plaintiffs have not cited an "intervening change of controlling law" or "the availability of new evidence," because there is none. Nor have they argued that reconsideration is needed to "prevent manifest injustice," because it is not. Rather, Plaintiffs' entire argument for reconsideration is based on their assertion that the Court committed a "clear error" of law regarding the meaning of the D.C. CPPA. *See* Motion at 2. However, as made clear below, no such error has been committed.

With respect to alleged "clear error," this Court and the Court of Appeals have made clear that "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments . . . ." *Carter v. WMATA*, 503 F.3d 143, 145 n.2 (D.C. Cir. 2007) (citation omitted). Thus, a party seeking reconsideration on the basis of alleged "clear error" must do more than

"reargue facts and theories upon which a court has already ruled." *Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (citation omitted); *accord, e.g., Lincoln v. Billington*, No. 98-5242, 1998 U.S. App. LEXIS 28550, at *2 (D.C. Cir. Oct. 29, 1998) (affirming denial of reconsideration because the moving party "merely sought to reargue his case"); *United States v. York*, 890 F. Supp. 1117, 1140 (D.D.C. 1995); *New York v. United States*, 880 F. Supp. 37, 39 (D.D.C. 1995) (denying a Rule 59(e) reconsideration motion because it was "essentially a rehash of the arguments presented to and previously rejected by this Court"); *see also, e.g.*, MOORE'S FEDERAL PRACTICE (CIVIL) §§ 59.30[4], [6] (explaining that "reconsideration of a previous authority is an extraordinary remedy" and that a Rule 59(e) motion "may not be used to relitigate the same matters already determined by the Court").

Although Plaintiffs allege a "clear error" of law, their Motion does nothing but repeat the exact same arguments made in Plaintiffs' summary judgment briefing. They have identified no new or controlling authority that the Court overlooked. They also incorrectly claim that the Court "failed to address," "failed to consider," and "brushe[d] aside" certain of their arguments, Motion at 2, 4, when the fact of the matter is that the Court received and considered those arguments, but simply rejected them as incorrect. Because Plaintiffs "do nothing but regurgitate arguments made throughout the voluminous pleadings carefully considered and rejected by the Court" in its summary judgment order, "[o]n this basis alone, [Plaintiffs'] Motion must be denied." *York*, 890 F. Supp. at 1140.

## II.   THE COURT CORRECTLY RULED THAT THE D.C. CPPA DOES NOT APPLY TO THE BUSINESS TRANSACTIONS OF CSIS, SHAW AND MENDELSON.

In addition to their failure to satisfy the threshold standard for reconsideration, Plaintiffs have failed to identify any clear error of law justifying reconsideration of the Court's grant of summary judgment. Plaintiffs' Motion is based on the fundamentally flawed argument that

3

business customers like CSIS, Mendelson and Shaw are "plain[ly] inclu[ded]" within the coverage of the D.C. CPPA. Motion at 1. To the contrary, and as set forth in the Court's Opinion and Marriott's prior briefing, such customers are plainly <u>excluded</u> from coverage under the D.C. CPPA. As with all of their previous briefing on this issue, Plaintiffs refuse to confront the applicable statutory language and case law. Both of these sources make clear that the D.C. CPPA does not apply to CSIS, Mendelson and Shaw.

### A. The Plain Terms Of The D.C. CPPA Support The Court's Ruling.

The "trade practices" proscribed by the D.C. CPPA and enforceable by private litigants, D.C. Code §§ 28-3904, 28-3905(k)(1), are only those that pertain to "<u>consumer</u> goods or services," *id.* § 28-3901(a)(6) (emphasis added). In turn, "consumer" goods or services are defined as goods or services that are "<u>primarily for personal, household, or family use</u>." *Id.* § 28-3901(a)(2) (emphasis added). Thus, the "trade practices" covered by the D.C. CPPA are those pertaining to personal, household, or family use – not business use.

Moreover, the statutory language makes clear that a "consumer" under the D.C. CPPA is "a person who does or would purchase, lease (from), or receive <u>consumer goods or services</u>" or "a person who does or would provide the economic demand for a <u>trade practice</u>." D.C. Code § 28-3901(a)(2) (emphasis added). As set forth in the previous paragraph, both the terms "consumer goods or services" and "trade practice" are limited to transactions pertaining to personal, household, or family use – not business use. Thus, the "consumers" protected by the D.C. CPPA are only those whose transactions pertain to personal, household or family use.

Plaintiffs claim – as they did in their summary judgment briefing – that, despite the clear statutory language discussed above, CSIS and other corporations may bring claims under the D.C. CPPA because the statute defines the term "person" to include corporations, *see* D.C. Code

4

§ 28-3901(a)(1), and because, as of 2000, the statute grants a right of action to a "person," *see id.* § 28-3905(k)(1). *See* Motion at 2-3. Plaintiffs go on to assert that "[t]he 2000 amendments expressly enabled corporations like CSIS – business entities – to bring claims for relief for improper trade practices." *Id.* at 3. Plaintiffs' statutory arguments are wrong.[2]

As the Court recognized in its summary judgment ruling, regardless of the definition of "person" under the statute, the separate definitions of "consumer" and "trade practices" – unaddressed by Plaintiffs – make clear that the D.C. CPPA does not apply to business transactions. *See Shaw*, 2008 U.S. Dist. LEXIS 62498, at *15, *18-20. There is no support for Plaintiffs' speculation about the intent of the 2000 amendments. As courts have observed, the 2000 amendments were designed "to expand the potential plaintiff class so as to permit representative actions on behalf of <u>consumers</u>." *Ford v. ChartOne, Inc.*, 908 A.2d 72, 81 n.8 (D.C. 2006) (emphasis added); *accord, e.g., Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 8 (D.D.C. 2002) (explaining that the 2000 amendments "had the effect of making it easier for <u>consumers</u> to bring a claim under the [D.C. CPPA]" (emphasis added)). There is no evidence – and Plaintiffs present none – that those amendments were designed to allow corporations to sue based on business transactions.

Remarkably, Plaintiffs continue to claim that "[t]he New Jersey consumer protection statute <u>with similar definitions</u> has been interpreted as conferring consumer status on corporations." Motion at 3 n.3 (emphasis added). As Marriott has explained in prior briefing, and as Plaintiffs simply ignore, Plaintiffs seriously misrepresent the New Jersey statute and case law. Unlike the D.C. CPPA, the New Jersey statute does not define "consumer" or limit coverage to transactions "primarily for personal, household, or family use." *Compare* D.C. Code

---

[2] As noted above, because Plaintiffs merely rehash previously rejected arguments, their Motion for Reconsideration should be denied outright.

§ 29-3901(a)(2), *with*, N.J. Stat. § 56:8-1. Indeed, it was the <u>absence</u> of such express limitations in the New Jersey statute – unlike in the D.C. CPPA – that led the New Jersey courts, in the cases cited by Plaintiffs, to refuse to read into the statute a non-existent "'personal, family or household use'" limitation. *Hundred East Credit Corp. v. Schuster Corp.*, 515 A.2d 246, 248-49 (N.J. Super. 1986). The New Jersey statute and cases thus further support the Court's ruling. The Court correctly concluded that neither the definition of "person" nor the 2000 amendments undercut the D.C. CPPA's clear exclusion of business transactions.

B.  **The Case Law Clearly Supports The Court's Ruling.**

Based on the clear statutory language, and as recognized by the Court's summary judgment ruling, the case law is clear that the D.C. CPPA "'was designed to police trade practices arising <u>only out of consumer-merchant relationships</u>,'" and thus "[c]ivil actions under the CPPA may be brought only be 'aggrieved consumers,'" based on "'consumer transactions.'" *Shaw*, 2008 U.S. Dist. LEXIS 62498, at *12-13 (emphasis in original) (quoting *Ford*, 908 A.2d at 80-81). "[A] valid claim for relief under the CPPA must originate out of a <u>consumer transaction</u>." *Ford*, 908 A.2d at 81 (emphasis added).

Also based on the clear language of the D.C. CPPA, the D.C. Court of Appeals has held that determining whether a "consumer transaction" is at issue (and thus covered by the D.C. CPPA) requires determining whether the transaction at issue pertains to "personal, household or family use," as opposed to business or commercial use. *See, e.g., Ford*, 908 A.2d at 83 (inquiring whether the plaintiff's transaction was "'for personal, household, or family use,'" and concluding that "[u]sing medical records to secure compensation for injuries in a lawsuit" is "'personal'" (quoting D.C. Code § 28-3901(a)(2)); *id.* at 89 (recognizing that to maintain a D.C. CPPA claim, "each potential class member" would have to demonstrate that their medical

records were obtained "primarily for personal, household, or family use"). As the Court explained in granting summary judgment to Marriott, this controlling case law from the D.C. Court of Appeals is consistent with case law from other jurisdictions, which recognize that similarly worded statutes exclude business transactions and cover only transactions "primarily for personal, family, or household purposes." *Shaw*, 2008 U.S. Dist. LEXIS 62498, at *19 (citing *Levant v. Am. Honda Fin. Corp.*, 356 F. Supp. 2d 776, 782 (E.D. Mich. 2005)).[3]

Plaintiffs rehash their argument that under D.C. CPPA case law, the only inquiry relevant to D.C. CPPA coverage is whether or not a plaintiff is a "merchant" – *i.e.*, on the "supply side" of a transaction. Motion at 4-7.[4] Ignoring both the D.C. CPPA's clear limitation to transactions for "personal, household or family use," and case law applying that limitation, Plaintiffs claim that "the determination that none of these Plaintiffs was a 'merchant' must lead to the conclusion that the Plaintiffs are 'consumers.'" *Id.* at 6-7. According to Plaintiffs, so long as a purchaser is the end-user of a good or service, and is not on the "supply side" of the "distribution chain," that purchaser is not a "merchant" and must be a "consumer" – regardless of the nature of the transaction. *See id.* at 4-7.[5]

---

[3] The Court's citation to *Levant* specifically rebuts Plaintiffs' erroneous argument that because Shaw and Mendelson's business transactions were <u>reimbursed</u> by their employers, those transactions fall within the D.C. CPPA, even if a corporation's transactions do not. *See Shaw*, 2008 U.S. Dist. LEXIS 62498, at *19. However, *Levant* is but one of many non-D.C. cases holding – like *Ford* – that "personal, family or household purposes" limitations in statutes like the D.C. CPPA <u>exclude</u> business transactions from statutory coverage. *See, e.g., First Gibraltar Bank FSB v. Smith*, 62 F.3d 133, 135-36 (5th Cir. 1995) (holding, under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, that transactions may not be for commercial purposes, but must be for personal or household purposes); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1074-75 (9th Cir. 2001) (same, with respect to the FDCPA and a Hawaiian consumer protection statute); *Schram v. Federated Fin. Corp. of Am.*, No. 06-12700, 2007 U.S. Dist LEXIS 31049 (E.D. Mich. Apr. 27, 2007) (applying *Levant* as well as FDCPA case law).

[4] The D.C. CPPA defines "merchant" as "a person who does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or services, or a person who does or would supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901 (a)(3).

[5] Plaintiffs' "supply side" argument relies almost completely on *Adam A. Weschler & Son, Inc. v. Klank*, 561 A.2d 1003 (D.C. 1989). That case did not, as Plaintiffs incorrectly claim, hold that if an individual is not a "merchant" or "reseller," then the D.C. CPPA automatically applies. Although *Weschler* makes clear that "merchants" – *i.e.*, resellers – <u>cannot</u> be consumers under the D.C. CPPA, it explains that the relevant inquiry for whether the D.C.

As the Court has recognized, Plaintiffs' argument is not the law. Far from "brush[ing] aside" this argument, as Plaintiffs contend, *see* Motion at 4, the Court carefully addressed and rejected Plaintiffs' claim that anyone who is not a "merchant" must be covered under the D.C. CPPA as a "consumer." *See Shaw*, 2008 U.S. Dist LEXIS 62498, at *13-15 & nn. 6-7. Indeed, as the Court correctly observed, "[j]ust because CSIS is not a 'merchant'" because it does not resell the hotel rooms it purchases, that "does not necessarily mean that it is a 'consumer' as the CPPA defines that term." *Id.* at *13 n.6. Rather, with respect to non-merchants like Plaintiffs here, the terms "consumer" and "trade practices" expressly limit the D.C. CPPA's coverage to non-business transactions and require an inquiry into whether the transactions at issue are primarily for personal, household or family use. *Id.* at *15, *18-19. As the Court properly reasoned, Plaintiffs' argument "would require the Court to ignore the statute's plain and unambiguous definition of the term 'consumer.'" *Id.* at *15. Plaintiffs' argument also "would allow virtually anyone to sue under the statute" and "would so broaden its protections that virtually any business could apply it to routine commercial disputes" – in conflict with the clear statutory language and legislative intent. *Id.* at *15 & n.7.[6] Accordingly, the Court correctly rejected Plaintiffs' "supply side" argument in granting summary judgment to Marriott, and it should do so again here.

---

CPPA applies to non-merchants (as here) is whether a "'consumer' transaction" is at issue – *i.e.*, one that falls within the "'personal, household or family use' definition given by the Act." *Id.* at 1004. Moreover, and again ignored by Plaintiffs, the D.C. Court of Appeals has made clear that "*Weschler* did not set forth an ironclad rule" that so long as goods are not resold the purchaser is a "consumer," and thus "[a] purchase of supplies or equipment for a business operation, for example, might be exempt even though such goods would not be resold." *Ford*, 908 A.2d at 84 n1.2.

[6] The Court correctly cited for this point *Clifton Terrace Assocs. Ltd. v. United Techs. Corp.*, 718 F. Supp. 24, 34 (D.D.C. 1990). *See Shaw*, 2008 U.S. Dist LEXIS 62498, at *15 n.7. Yet, Plaintiffs continue to insist that *Clifton Terrace* should be disregarded despite its obvious relevance, insisting that the case supports Plaintiffs' proposed "supply side" analysis. Notably, and as Marriott has briefed previously, *Clifton Terrace* never discussed any such "supply side" analysis, as Plaintiffs claim, but instead found the plaintiff's corporate status (and concurrent business purposes) controlling: "the legislative history of the CPPA, along with a consistent reading of its provisions, unequivocally indicates that the CPPA was intended to protect consumer-plaintiffs only, and not corporations." *Shaw*, 2008 U.S. Dist LEXIS 62498, at *15 n.7 (quoting *Clifton Terrace*, 728 F. Supp. at 34).

### C. The Court Correctly Applied The Controlling Legal Framework In Granting Summary Judgment Against CSIS, Mendelson, And Shaw.

It is undisputed that transactions of CSIS, Mendelson and Shaw at issue here are hotel stays in Russia for business purposes, paid for by their respective employers. *See Shaw*, 2008 U.S. Dist. LEXIS 62498, at *16 n.8; *19. As the Court correctly concluded, because those stays were for business purposes – not "personal, household, or family use" as the D.C. CPPA requires – those transactions are excluded from coverage under the statute. *See id.* at *15, *18-20.

As the Court recognized, that conclusion is entirely consistent with – indeed, compelled by – prior case law. For example, in *Ford*, the D.C. Court of Appeals held that "such actions as '[a] purchase of supplies or equipment for a business operation' are not within the scope of the CPPA's protection." *Shaw*, 2008 U.S. Dist LEXIS 62498, at *16 (quoting *Ford*, 908 A.2d at 81-84). Likewise, in *Mazanderan v. Independent Taxi Owners Ass'n*, 700 F. Supp. 588 (D.D.C. 1998), this Court concluded that "a taxi operator's purchase of gasoline and supplies was not a transaction covered by the CPPA because it was made 'in connection with his role as an independent businessman.'" *Shaw*, 2008 U.S. Dist LEXIS 62498, at *16 (quoting *Mazanderan*, 700 F. Supp. at 591). Similarly here, the hotel stays of CSIS, Mendelson and Shaw undisputedly were made in connection with and to enable their companies' business in Russia – not for vacation or some other "personal, family or household" use. *See Shaw*, 2008 U.S. Dist. LEXIS 62498, at *16 n.8; *19. The Court's summary judgment ruling thus correctly rejected Plaintiffs' unsupported claim – repeated yet again by Plaintiffs in their Motion, without any factual or legal support – that the hotel stays at issue "have nothing to do with the conduct of their business." Motion at 6. As the Court aptly stated, "[b]ut for the business they were conducting in Russia,

9

they would not have been 'consuming' (*i.e.*, using) Marriott's hotel rooms." *Shaw*, 2008 U.S. Dist LEXIS 62498, at *19.[7]

## CONCLUSION

For the foregoing reasons, and all others apparent to the Court, Marriott respectfully requests that the Court deny Plaintiffs' Motion for Reconsideration.

Dated: September 9, 2008

Respectfully submitted,

/s/ Joel Dewey
Joel Dewey (Bar No. 358175)
Holly Drumheller Butler (Bar No. 459681)
Sonia Cho (Bar No. MD26995)
Jennifer Skaggs (Bar No. 500014)
DLA Piper US LLP
6225 Smith Avenue
Baltimore, Maryland 21209
410-580-3000
410-580-3001 (facsimile)

*Attorneys for Defendant
Marriott International, Inc.*

---

[7] As both D.C. precedent and the non-D.C. cases cited in *supra* n.3 make clear, the relevant analysis for coverage under the D.C. CPPA is whether a given transaction was primarily for personal use or for business use. Occasionally, there is a factual dispute on that issue – such as in *Levant*, where the plaintiff claimed that a car was used primarily for personal and family matters, but not to conduct business, or as in *Slenk*, where the plaintiff claimed that he used a backhoe only for construction of his home, but not for his construction company. In this case, however, it is <u>undisputed</u> that the CSIS, Mendelson and Shaw hotel stays in Russia were integral to their business travel and paid for by their employers. *Shaw*, 2008 U.S. Dist LEXIS 62498, at *16 n.8, *18. Thus, Plaintiffs' only arguments for reconsideration are the erroneous legal contentions that the D.C. CPPA covers both business and personal transactions and that anyone who is not a "merchant" under the Act is automatically a "consumer," regardless of the nature of the transaction at issue.